A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

00 - 6087

FILED by _____ D.C.
INTAKE
JAN 1 8 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF A. MIAMI

WILLIAM M HICKS,
pro.se,
Plaintiff,

CASE No.* 96-6496-CIV-
UNGARO - BENAGES.

CIV - DIMITROULEAS

MAGISTRATE JUDGE
SORRENTINO

VS.

MAGISTRATE JUDGE
SORRENTINO
Jury Trial Demanded

Broward county sheriff, Ken Jenne,
Susan McCampbell, Barbara Hanson-Evans,
unitmager Bechard, unitmanager Robinson,
Sgt Locket, Sgt garrison, Sgt watson,
John Doe #1, John Doe #2, Barbra Law,
Stanley Holmes, case worker miss Schwartz,
willie Roberts, Sgt wimberly, and EMERGENCY
MEDICAL SERVICE ASSOCIATION, IN phynet, Kevin
J. R.N., DR.W.C. Davis, m.D., DR ucker, m.D., DR Trevor
weathors, DDS., DR. cline, DDS, DR.G. Pearson, DDS,
DR. Pearson, DDS, and BROWARD county commissioners,
Sylvia poitier, pete corwin, miss parish.
Defendants,

cat/div B. Broward ("1983")
Case # O: OOcv 6087
Judge WPD — Mag OHS
Motn Ifp YES — Fee pd $ —
Receipt # _____

Notice of Amended Complaint

PlaintiFF submits amended complaint under case *
96-6496-CIV-UNGARO-BENAGES. This case was dismissed
by PlaintiFF without prejudice on november 20, 1996.
See exhibit G order of dismissal do to severe
crimal trial and stress related problems that both
sheriffs department and E.M.S.A. medical had created.

SCANNED

# Table of Contents

## AMENDED ComplainT

(A.) 1.) 42. U.S.C. $\$1983$ complaint  Hicks VS. Ken Jenne, EMSA.

2.) motion to proceed in Form Pauperis.

3.) Exhibits,
 # 4(a) STructure of the skull.
 # 4(b) Lay out of N.B.D.C. Jail reck yard.
 # 4(c) grievance by Barbara Hanson-Evans, HSA, BSO.
 # (G) order of Dismissal of 42 U.S.C. $\$1983$ in year 1996 by Judge URSULA UNGARO-BENAGES.

(B.) 1.) Pre-suit complaint against EMSA medical.

2.) Exhibits

## I PREVIOUS LAWSUITS

A. yes, plaintiff has filed in state court as to his case relating to his imprisonment and pre-suit. As well Federal court.

B. 1.) Plaintiff: William M Hicks, proSE.
Defendants: Ron Cochran, Sheriff and E.M.S.A. medical.

2.) Court: United States District Court Southern District of Florida.

3.) Docket number: 96-6496-CIV-UNGARO-BENAGES.

4.) Judge name: Sorrentino.

5.) Case was dismissed by notice on plaintiffs behalf without prejudice on November 19, 1996.

II. Place of present confinement: Department of Corrections at Tomoka Correctional Institution, 3950 tiger bay Road, Daytona Beach. Florida 32124

A. This complaint is when plaintiff was a detainee at Broward Sheriffs office and done all grievance procedures.

B. Plaintiff was denied due process and adequate medical for fractures to skull, Facial and Jaw.

## PART TWO OF PREVIOUS LAW SUITS

A. Yes, plaintiff filed case in county court relating to his imprisonment and done pre-suit investigation.

B. 1.) Plaintiff: William M Hicks, pro SE.
Defendant: DR. ABRAHAM FIEMENBAUM, M.D. is a psychiatrist.

2.) Court: Broward county court of the 17TH Judicial circuit.

3.) Docket number: 99016447.

4.) Judge name: 03 HENNING.

5.) Case is still pending as it was filed Sept 24, 1999.

II. Place of Present Confinement: Department of corrections at Tomoka Correctional Institution, 3950 Tiger Bay Road, Daytona Beach Florida 32124.

A. This case does not apply to Department of corrections.

## Preliminary Statement

This is a civil rights action filed by william m Hicks, pro se, a state prisoner now. Actions that lead to complaint is when plaintiff was a detainee at broward county sheriffs department under old sheriff, Ron cochran now deceased and new sheriff is, ken Jenne. Suit for damages and injunctive relief under 42 u.s.c. §1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution and confinement in segregation in violation of the Due process clause of the Fourteenth Amendment to the Constitution. The plaintiff also alleges the torts of assault and battery and Negligence.

## Jurisdiction

1.)  The court has jurisdiction over the plaintiffs' claims of violation of Federal constitutional rights under 42 u.s.c. §§ 1331 and 1343;

2.)  The court has supplemental jurisdiction over the plaintiffs state law tort claims under 28 u.s.c. § 1367.

## Parties

3.)  The plaintiff, william m Hicks, was incarcerated at Broward county Jails under the supervision of Broward Sheriffs office during the events described in this complaint;

4.)  Defendant Ken Jenne is sheriff, of broward countys sheriff department. Duties to insure all operations of his policies and procedures are followed out by all under his command. He's sued in his official capacities

5.) Defendant Susan McCampbell is director of Broward Sheriffs office, in charge of inforcing all policies and procedures set in place by the Sheriff and commissioners. She's sued in her individual and official capacities;

6.) Defendants Barbra Law is superintendent of N.B.D.C. Jail, and willie Roberts is superintendent of main Jail. Both are incharge of all operations of Jails procedures and policies and to assume all responsibilities for all under their care and command. They are sued in their individual and official capacities;

7.) Defendants unit manager Bechard of N.B.D.C. Jail is incharge of enforcing all policies and procedures set by superintendent and displinary hearing appeals, and unit manager Robinson of both jails incharge of all programs. They are sued in their individual and official capacities;

8.) Defendants Sgt Locket, Sgt garrison and Sgt watson are sergeants at N.B.D.C. Jail incharge of duties of day shift. Sgt garrison is or was L.T. garrison now at main Jail. They are sued in their individual and official capacities;

9.) Defendants John Doe #1 and John Doe #2 are deputies of B.S.O. who names are not presently known to plaintiff. Both defendants were recreation deputies at time of assault by known violent detainee Norman Beech. They are sued in their individual and official capacities;

10.) Defendant Barbara Hanson-Evans, HSA, B.S.O. is medical Administrator for B.S.O. at N.B.D.C. Jail and is generally responsible for ensuring the provision of medical care to all detaineds and specifically for scheduling medical appointments outside the jail when a detainee needs specialized treatments

or evaluation. She is sued in her individual and official capacities;

11.) Defendant Stanley Holmes is ombudsman for B.S.O. at both Jails. Duties and responsibilities are reviewing all administration appeals of disciplinary charges filed by detainees at both Jails. Also to insure all detainees recieve adequate medical care and detainees rights are not denied. He's sued in his individual and official capacities;

12.) Defendant case worker Schwartz works for B.S.O. at N.B.D.C. Jail incharge of all duties of insuring detainees recieve all personal and legal issues resolved. Also to serve on all displinary hearings to be an impartial member to insure detainees due process rights are not violated. She is sued in her Individual and official capacities;

13.) Defendant Sgt Wimberly is sergeant for main Jail and works for B.S.O. At time he was highest ranking sergeant for all policies and procedures to be followed out under the supervision of Willie Roberts. He is sued in his individual and official capacities;

14.) Defendant "E.M.S.A." Emergency medical service Association is an health care provider for "b.S.O." Broward Sheriffs department. Is and at all times mentioned was, a municipal contractor, corporation existing by virtue of the Laws of Florida. E.M.S.A. had responsibilities for the operation of all health care to N.B.D.C. Jail and main Jail. E.M.S.A. is a correctional care-member of INPHYNET. Is sued in its official capacities.

15.) Defendant Kevin J. R.N., is or was medical Administrator for main Jail. He had full responsibilities as medical Administrator and is generally responsible for insuring the provision

of medical care to detainees and specifically for scheduling medical appointments outside the Jail when a detainee needs specialized treatment or evaluation. He is sued in his individual and official capacities;

16.) Defendant DR. W.C. Davis, M.D. is charge physician over all medical care and staff at N.B.D.C. Jail. His duties are to insure all staffing under his supervision and care as to following policies and regulations set forth by law and insure all detainees recieve adequate medical care. He is sued in his individual and official capacities;

17.) Defendant DR. ucker, M.D. is employee of E.M.S.A. and works at main Jail at nights. During the day he has a private practice. Duties are to treat all detainees medical cares and insure all proper rules and procedures are followed by self and all employee's under his care and supervision. He is sued in his individual and official capacities;

18) Defendants DR. cline, DDS, DR. G. pearson, DDS and DR. pearson, DDS, are dentists employed by E.M.S.A. to provide dental care to all detainees at both Jails. Also to insure all rules and the procedures are followed as to detainees rights and laws. They are sued in their individual and official capacities;

19.) Defendant DR. Trevor Weathars, DDS, oral surgeon is the only oral surgeon to provide that type of dental care to all detainees at both Jails. Also to insure all rules and procedures are followed as well all under his supervision as to state laws. He is sued in his individual and official capacities;

20.) Defendant Sylvia potter of District #2 on Broward county board of commissioners from 1985-present. Duties are to insure sheriff department is run to law and all procedures

are followed to law. she is sued in her individual and official capacities,

21.) Defendant commissioner parish is in charge of insuring all county, State, Federal Laws and detainees rights are not violated. she's sued in her individual and official capacities,

22.) Defendant commissioner pete corwin is in charge of insuring all county, State, Federal Laws and detainees rights are not violated. he's sued in his individual and official capacities.

23.) All the defendants have acted, and continued to act, under color of state law at all times relevant to this complaint.

## FACTS

24.) On april 7, 1996, roughly 9:00am plaintiff was assaulted by known violent detainee norman Beech at North Broward Detention center jail.

25. Plaintiff was escorted with roughly 30 or more detainees by deputies John Doe #1 and John Doe #2.

26.) plaintiff layed out on cement in recreation yard far as possible from others. SEE Exhibit 4B of recreation yard. plaintiff had shorts on and placed his tee shirt over eyes to block the sun.

27.) For no appearent readyness of his actions, he assaulted plaintiff. Plaintiff was continuously hit with fists to head, facial and upper body.

28.) As plaintiff was hit and tried to escape assault, there were no sheriff deputies, John Doe #1 or John Doe #2 present in recreation yard. Both deputies were in recreation office

Located in hallway of building with no view of recreation yard.

29.) Upon plaintiff reaching exterior door to exterior Hallway he was still being assaulted. John Doe #1 and John Doe #2 came out of office and ordered detainee Norman Beach to stop.

30.) John Doe #1 and John Doe #2 done little to stop assault and as John Doe #1 held plaintiff as a human shield to avoid self being hit. Plaintiff took full force of assault in a locked in hallway with no way of escape.

31.) John Doe #2 tried to call back up on radio, only he had but his radio battery was dead so he could not make contact with Security for help.

32.) Upon plaintiff reaching interior hallway of building a sheriff deputy walked by and assisted.

33.) As plaintiff was inside of building he saw a black female nurse "John Doe" in nurses room closet. Nurse saw plaintiffs facial cut with blood gushing from it under right eye.

34.) Female nurse "John Doe" was preparing medication shots for detainee Norman Beech, which she stated. "I hope these aren't for Norman beech whom I'm late giving medication to.

35.) nurse "John Doe" cleaned up blood from facial and taped cut and cleaned blood from body and floor. Then plaintiff was escorted to medical.

36.) Upon arrival to medical DR. W.C. Davis, M.D. and a male xray technician "John Doe" were waiting. By attitude of DR. W.C. Davis, M.D. he had no intentions of providing medical treatment.

37.) DR. Davis denied plaintiffs requests for xrays to be taken, stated no need as he sutured facial cut under right eye. DR. Davis took five xrays of head after plaintiffs continued demands.

38.) All xrays were developed on site within five minutes and DR. Davis told plaintiff he had recieved no fractures or serious injurys. Also denied plaintiff to see xrays. Also denied adequate pain medications.

39.) Plaintiff was escorted to 12-1-H-3 confinement with swollen facial, blood in right eye, bruised body and hands.

40.) On April 8, 1996 am hours, unit manager Robinson and ombudsman Stanley Holmes came into confinement which plaintiff was sitting at table. Both walked around and stood laughing at plaintiff do to the greatness of bruises showing. At no time were any words or questions stating if I need medical.

41.) On April 8, 1996 plaintiff was told by family that jail and DR. W.C. Davis, M.D. told them and plaintiffs criminal attorneys that he recieved no fractures or serious injurys.

42.) On April 10, 1996, plaintiff was shipped to main jail into open population. Plaintiff was still denied medical care.

## STATEMENT OF CLAIM

43.) Count I: Defendant Ken Jenne, Sheriff assumed all responsibilities of Sheriff when now deceased Sheriff, Ron Cochran died. Defendant owed plaintiff a reasonable amount of protection and adequate medical care. Even as defendant took over all responsibilities, plaintiffs rights were continuously violated by denial of grievance procedure, written letters

of complaints and denied adequate medical care. All under his authority violated all court orders for medical care and attorneys phone calls and Letters as well familys phone calls. Plaintiffs constitutional rights to safe housing, falsified displinary reports, displinary hearings, insuring plaintiff recieved prompt adequate medical care and denying all recommendations mandating medical treatment. Also by housing a known violent detainee Norman Beech with displinary reports in his file for assaults on deputys and detainees. Defendants continued response to send Susan McCampbell, director of B.S.O. to resolve issues, violated detainees rights after continuously writing grievances and no action taken by defendant to resolve issues at both Jails. Defendant took over position as sheriff from Susan McCampbell as she was acting sheriff and had not complied with any complaints by plaintiff, courts, attorneys or his family. Plaintiffs due process rights were violated by denying him right to file assault charges on detainee and deputy predo as well other deputys. kept plaintiff in segregation for over half a year till injurys and fractures healed.

44.)    count 2: Defendant Susan McCampbell "Director of B.S.O". Since 2-6-96 plaintiff reached out to defendant by requests, grievances and written Letters of complaints regarding assaults, notable to file charges, denial of adequate medical care, denial of mandating physicians orders to do surgeries, denial of all court orders for medical care along with attorneys phone calls and Letters, Familys phone calls. Also denied appeals for falsified displinary reports and confinements. Defendants responses were always the same, "I'll look into the matter or I forward your complaints to Stanley Holmes 'ombudsman". Even when defendant was acting sheriff when Ron cochran died, she still denied plaintiffs rights and covered up all actions more to secure

a position as sheriff. Defendant continued to violate plaintiffs constitutional rights and due process to Law.

45.) Count 3: Defendant Barbra Law is superintendent of N.B.D.C. Jail. Defendants responsibility is to insuring all rules and policys of broward sheriffs department were followed. Since 4-7-96 day of assault defendant knew of all medical fractures and injurys and wrongful actions by John Doe #1 and John Doe #2 deputys that violated security and safety of detainees by Leaving recreation yard unattended as well knowingly allowed a known violent detainee Norman Beech to be classified to remain after his file had displinary Reports of assaults on deputys and detainees as well not allowing plaintiff his due right to file assault charges. Plaintiff sent many requests, grievances and hand written complaints for medical but was fully denied. defendant continuously sent unit managers Bechord and Robinson as well Stanley Holmes who were totally knowledgeable of all actions that violated Plaintiffs constitutional rights and due process. Defendant and unitmanager Bechard came to 122-H-1 confinement with stack of unanswered grievances way beyond policy rules to respond. Both replied to them on spot and gave copy to plaintiff.

46) Count 4: Defendant unitmanage Bechard of N.B.D.C. Jail was second incharge under superintendent to inforce all procedures and policies. Since 4-7-96 of assault on plaintiff defendant knew of DR. W.C. Davis, M.D. actions and violation of security by Both recreation deputys. plaintiffs requests, grievances and hand written complaints were directed to defendant but were denied. At no time had he inforced Broward sheriffs office policies and reprimand all under his authority. Defendant continued to deny medical, constitutional rights and due rights to proper displinary Hearings and Appeals.

47.) count 5: Defendant unit manager Robin son of programs at both jails. Defendant and Stanley Holmes both come to 12-1-H-3 confinement on April 8, 1996 as plaintiff sat at table as both did not speak but walked around and stood laughing at all serious injurys of plaintiff from assault on 4-7-96. Defendant denied all requests, grievances and written complaints. At no time had defendant attempted to stop false Displinary Reports or Hearings, harassment, safe housing, wrongful confinements and to recieve adequate medical care. Defendant continued to violate plaintiffs constitutional rights and due process.

48.) count 6: Defendant Sgt Locket works for B.S.O. at N.B.D.C. Jail and was fully aware of assault by detainee and by deputy predo under her command. Defendant denied all requests, grievance, denial of medical care, falsified Displinary reports, wrongful confinements and safe housing. Defendant written couple of false Displinary Reports herself. She used her rank as sergeant to intimidate all detainees from not testifying at displinary hearings as well her peers. plaintiff done over half a year in confinement. Defendant is in a position to teach and train proper procedures and not how to violate plaintiffs constitutional rights. Defendant and sergeant watson both took same sides on same shift to violate all detainees rights. Defendant was present when plaintiff had first visit with Internal Affairs as plaintiff was in 12-1-H-3 confinement. plaintiff told of all assaults, denial of medical care, falsified displinary hearings, wrongful confinements, no responses from grievances and safe housing. As she took him into hallway privately and spoke, he left and nothing came of it. Defendant has violated plaintiffs constitutional rights and due process.

49.) count 7: Defendant Sgt garrison works for B.S.O. at N.B.D.C. Jail at time of assault. Defendant had personal knowledge of assault by detainee and deputy predo as well denial of

of adequate medical care, denial of grievance procedure, false displinary reports and hearings and over a half a year confinement. Defendant refused safe housing, written grievances for appeals on displinary charges and all denied. Also denied plaintiff right to file assault charges. Defendant came to main jail to take tape statement on assault by deputy predo which plaintiff never heared of again. Plaintiff in year 1998 was confronted by then Lt. Garrison on 7th floor and threatend to file charges on me for lies which were all proven facts. Defendant violated plaintiffs constitutional rights and due process.

50.) Count 8: Defendant Sgt Watson of B.S.O. at N.B.D.C. jail worked day shift with sergeant Locket and had full knowledge of plaintiffs issues of denied adequate medical care, assaults, falsified displinary reports and hearings, over half a year confinement, grievances written, denial of rights to file assault charges. Defendant also used rank to intimidate detainees or deputys to testify at displinary hearings. Defendant willfully violated plaintiffs constitutional rights and due process.

51.) Count 9: Defendants John Doe #1 and John Doe #2 are deputys at N.B.D.C. jail and were on duty at time of assault in recreation yard. On April 7, 1996 roughly 9:00 AM defendants were in control of security movement to and from recreation yard. When plaintiff was assaulted, both defendants were in recreation office in hallway of building with no view of recreation yard or to insure security. As plaintiff was assaulted till he reached hallway door and inside the hallway plaintiff was still assaulted. Both defendants ordered detainee to stop but he did not, and John Doe #1 held plaintiff as a human shield which plaintiff took full force of assault in a locked hallway with no escaping

assault. As John Doe #2 tried to use radio for back up, but it would not work since battery was dead. shift starts at 7:00 am and time of assault roughly 9:00 am shows a violation of procedures and security. At no time was plaintiff safe from deputys or detainee. In year 1996 plaintiff filed a 1983 42 u.s.c. action for medical and John Doe #1 was served and threatened plaintiff he better have a good criminal attorney and physical harm. Both violated plaintiffs constitutional rights and due process.

52.)  COUNT 10: Defendant Barbara Hanson-Evans is medical dictator of medical care to detainees. she had personal knowledge from day one of assault. plaintiff filed many grievances, requests to her for denial of adequate medical care, falsified medical charts, falsified displinary reports and hearings and denial of proper procedure appeals. Defendant continuously chose to send Stanley holmes which she knew plaintiff saw him already and sent many grievance prior. SEE exhibit HG of grievance by defendant showing she knew as well did B.S.O. and E.M.S.A. of all fractures to plaintiff. Defendant kept denying plaintiffs medical condition to cover up. Defendant many of times stated she would personally handle but never complied. All plaintiffs requests for medical and appeals were denial. Defendant violated plaintiffs constitutional rights and due process.

53.)  COUNT 11: Defendant Stanley Holmes is ombudsman for B.S.O. at both jails. Defendant had personal knowledge of assault by detainee and fractures, injurys, falsified displinary reports and hearings, confinement over half a year, denial of adequate medical care, safe housing and safety from assaults by B.S.O deputys. plaintiff was in confinement at 12-1-4-3 when defendant and unit manager Robinson came in. both walked

around and stood Laughing all all injurys from assoult. no words of can I help or do you need medical ever said. As plaintiff written many grievances, requests and hand written complaints to defendant which all were denied. Also plaintiff requested to file assault charges and was denied. Since defendants wife works as a case worker at main jail he had to cover for for her actions as well, visa-versa. Since defendant was in charge of all displinary Appeals he had control to deny. defendant continued to violate plaintiffs constitutional rights and due process.

54.) count 12: Defendant, caseworker miss schwartz works for B.S.O. at W. B. D.C. Jail and duties are to insure detainees Legal issues, personal issues and serve on displinary hearings. This defendant done more for B.S.O. and E.M.S.A. employees than detainees by bringing in birthday cakes for anyone and catering to them as well flaunting actions. Defendant decided to partake B.S.O. and E.M.S.A. side rather than all detainees. At no time had she been impartial on displinary reports or hearings and never stood up for plaintiffs rights to call witnesses, speak or provide facts. Each time plaintiff had received 30 days confinement within 3 minutes. Defendant denied plaintiffs grievances and requests for adequate medical care or rights to Appeals. Defendant violated plaintiffs constitutional rights and due process.

55.) count 13: Defendant willie Roberts, superintendent of main jail. On April 10, 1996 plaintiff was shipped to main jail and defendant was fully aware of assault by detainee, denial of adequate medical care, right to file assault charges, deputys violation of security and grievances and requests denied. Plaintiff written many grievances and requests to defendant on medical care, safe housing, denial of court orders for medical care and all attorneys phone calls, letters as well familys. Plaintiff

Plaintiff provided facts and had physical injurys in form of swollen facial, blood in right eye and bruises. Defendant sent sgt wimberly under his command to take a list of all issues and he would resolve them. Plaintiff told of all and never a response nor to any grievances. Defendant knew of threats by staff, detainees pulling shanks and stanley holmes and his wifes actions but chose to cover them up as well all retaliation by deputys. Deputys would remove medical ordered pillow, mattresses and soft diet which was never right. Plaintiff was placed in confinement for refusing to be at 8TH floor recreation which assaults happened daily. At no time had plaintiff recieved adequate medical care or any proper help or responses. Defendant violated plaintiffs constitutional rights and due process.

56.) Count 14: Defendant wimberly is a sergeant at main jail under authority of willie Roberts. His duties are to follow all procedures and inforce under his care. Plaintiff written grievances and requests and he was sent by willie Roberts which plaintiff told of all serious issues of denial of adequate medical care, safe housing, displinary reports, assault by detainee and denied right to file assault charges and retaliation by staff. Defendant done nothing to correct issues and denied plaintiffs grievances. All plaintiffs constitutional rights and due process were always violated.

57.) Count 15: Defendant "E.M.S.A." Emergency medical service association is an health care provider, is and at all times mentioned was, a municipal contractor, corporation existing by virtue of the laws of florida. At all times mentioned, the defendant E.M.S.A., had responsibility for the operation of all health care provided at Broward county sheriffs jails. Defendant EmsA. was negligent in regards to not

providing medical care to plaintiff, not supervising its employee's, sub contractors and denying plaintiffs rights to grievance procedures. which such negligence was proximate cause of plaintiffs pain and suffering as well now Life long injurys. Defendant violated state and federal laws by denying adequate medical care, falsifying medical documents, and to cover up for B.S.O. and it's own employee's. Defendant continued to violate plaintiffs constitutional rights and due process by not resolving medical issues. E.m.s.A. had continued cover up to avoid Loosing contract with county Jails. Defendant continued to deny all court orders for adequate medical care, Attorneys Letters and phone calls and familys. Not once did EMSA comply with any mandated physicians orders to do Surgerys. when plaintiff filed a 1983 u.s.c. 42 in year 1996 EMSA still would not comply. Still today no adequate medical care and violated plaintiffs constitutional rights and due process.

58.) Count 16: Defendant Kevin J., medical director over main Jail. Defendant was full Administrater of medical incharge of all medical procedures. Defendant knew of assault by detainee, grievances, requests, denial of adequate medical care, confinements, court orders for medical, Attorneys and familys phone calls and Letters. knew of all actions by all medical Doctors and dentists and Staff. Denied mandated physician orders for treatment. Defendant threatened plaintiffs mother to recieve back full sets of xrays she paid for by check. All described above defendant denied plaintiffs constitutional rights and due process.

59.) Count 17: Defendant W.c. Davis, M.D. is charge physician of medical at N.B.D.c. Jail. Defendant was treating physician at time of assault by detainee on April 7, 1996. As he sutured facial cut and took five xrays he refused xrays at first but then

took five xroys and developed on site in five minutes. then defendant told plaintiff he recieved no fractures or serious injurys. Plaintiff was denied adequate pain medication and esscorted to 12-1-H-3 confinement. on April 8, 1996 on phone plaintiff was told by family DR. Davis told them and attorneys that plaintiff recieved no fractures or serious injurys. Defendants continued cover load to dental department then throughout EMSA and B.S.O. plaintiff saw defendant many times which he never told plaintiff the truth of injurys and one day plaintiff refused to be treated by defendant he took a ruler to measure opening of mouth by trying to pry it apart. Defendant assaulted plaintiff in a Irate State and B.S.O. deputy had to stop him. But plaintiff recieved Falsified Displinary Report and given 30 days confinement. Defendant knew of all grievances but denied them as well adequate medical care. Defendant violated plaintiffs constitutional rights and due process. As well all mandating physicians orders to do surgeries. Denied Attorneys phone calls, Letters and familys also.

60.) Count 18: Defendant DR. ucker, M.D. is employee at main jail for EMSA. He holds private practice during the day and works evening shifts. Plaintiff was the physician who mandated orders to do open mouth surgery but order was never done. Defendant knew of all fractures, grievances, medical charts and denial of adequate medical care. Defendant prescribed on many occasions pain medications and plaintiff had not known for years who he was or that his name had appeared in medical charts. SEE Exhibit 4C of grievance by B.S.O. Defendant applied pressure on facial below right eye at place of sutures and told plaintiff it was still fractured two years Later. Plaintiff Never knew of it till then. Defendant got Irate when confronted when plaintiff

found out who he was. Defendant stated plaintiff should be greatful right eye is not falling out since facial bone fell when fractured. Continued to cover up for EMSA and B.S.O. which he violated plaintiffs constitutional rights and due process.

61.) Count 19: Defendant DR. Trevor Weathors, DDS, oral, surgeon, is only oral surgeon for both jails. Defendant knew of assault by detainee, denial of adequate medical care, grievances, confinements, safe housing, threats and all cover ups. Defendant never told plaintiff of fractured jaw but took xray of right temple fracture and he and DR. Cline, DDS made decision not to follow physicians mandated orders to wire skull closed. These two are not even licensed to perform procedure nor make professional call on not to wire closed. Defendant and DR. Cline, DDS switched xrays to show plaintiff had no fractures when his xrays indeed had fractures. Defendant told plaintiff his protruding facial jaw bone would go down in about 1-3 years and to visit him at private practice after release. Now year 1999 and still the same but worse. DR. Cline, DDS told truth of jaw and how to fix, but when plaintiff told the defendant of conversation, he got irate yelling he would never say that. Roughly nine months later plaintiff was taken outside of jail to private oral facial maxial which was ready to wire jaw closed but was shocked to find no medical treatment was ever provided. Said plaintiff would never open mouth more than 1¼ inches wide for life and to solve problem there would be 99% chance plaintiff would be harmed. Stated Doctors were negligent in duties. Defendant violated medical care, grievances, diet for jaw, own profession laws, patient Doctor honesty and to cover up for all BSO and EMSA. All at plaintiffs cost. Defendant violated plaintiffs constitutional rights and due process.

**62.)** Count 20: Defendant DR. cline, DDS, was fully aware of plaintiffs denial of adequate medical and dental care. AS well grievance procedures, safe housing, falsified medical charts, switching of xrays to show no fractures which all were denied. Defendant worked side by side with DR. trevor weathers, in making decisions not to do mandated physicians orders to wire right temple closed and wire fractured jaw. Both not even Licensed physicians and defendant was not even a Licensed oral surgeon. Defendant knew of all fractures to head and facial and did not tell plaintiff nor insure adequate medical care. Defendant had continued to act on his own to violate plaintiffs constitutional rights and due process.

**63.)** Count 21: Defendant DR. G. pearson, DDS, works at N.B.D.C. Jail and provides dental care to all detainees and knew of all plaintiffs grievances, denial of adequate medical care, wrong soft food diet, all actions of medical doctors and dentists. knew of physicians mandating orders for treatment, and of plaintiffs daily suffering and just kept quiet and allowed B.S.O. and EMSA to deny all plaintiffs constitutional rights as well due process. Also of confinements and did not once contact authoritys for years to end cover up.

**64.)** Count 22: Defendant DR. pearson, DDS, works at main jail and provides basic dental care to detainees. Defendant is married to DR. G. pearson, DDS, which makes her well known of all cover ups of adequate medical care to plaintiff, grievances, confinements, assaults, soft Food diet. Plaintiff had visits with her and asked her for honest opinion which she got scared and denied any talk. AS she's an employee of EMSA and works for BSO She knew of actions which violated plaintiffs constitutional rights and due care process. Not once had defendant told authorities of issues and violated medical Laws.

65.) Count 23: Defendant Sylvia Poitier of district #2 on broward county board of commissioners from 1985-present. Duties are to insure county and jails are ran to laws and insure all policies are inforced. Last contact was on April 28, 1998 by latter advising plaintiff she was sending his complaints to detention division to check for the misuse and abuse of plaintiffs suffering and tell her if plaintiff recieved help. On 6-5-98 plaintiff called mother and on 3/way called broward county commissioners office. Time was 3:05pm but not available so switched over to commissioner pete corwin, but not available so we spoke to secratary miss alice at 9-54-357-7358. Plaintiff and his mother told of no medical care, assaults, abuse and false confinements as well no response from Internal Affairs. Plaintiff asked miss alice to give message to Sylvio poitier and the rest of commissions. Time end 3:15pm. Plaintiff never recieved help but they continued to cover up for all actions of sheriffs office, employee's and EMSA. Defendant is sued in her individual and official capacities since she allowed plaintiffs constitutional rights and due process to be violated.

66.) Count 24: Defendant commissioner parish is on Board of Broward countys commissioners and Duties to insure all county rules and regulations are inforced as to law. As defendant knew of all denied medical care, grievances, abuse, retaliation and confinements on all actions of BSO and E.M.S.A. Plaintiff sent many packages of complete facts and complaints that were sent to government agencies. Also defendant boasted in news paper articles that she's for all human rights but stood by and allowed all detainees rights to be violated. At no time was she wanting to comply and she ran for sheriff and still done wrong and continued to cover up all actions. Defendant is sued in her individual and official capacities since allowed all to continue.

67.) Count 25: Defendant Pete Corwin is an broward county commissioner and duties to insure all rules and regulations are inforced as to law. Defendant knew of all in complaint since plaintiff spoken to his secratary miss alice on 6-5-98, time 3:05pm and left a complete complaint verbally with miss alice. Defendant had not done his job or duties as county commissioner but to partake in all cover ups for BSO and EMSA. defendant is sued in his official and individual capacities ad denial of due rights. All commissioners violated plaintiffs constitutinal rights.

## Relief Requested.

WHEREFORE, plaintiff requests that the court grant the following rellef:

A.) Issue an injunction ordering department of corrections at tomoka correctional Institution, 3950 tiger bay Road, Daytona Beach, Florida 32124 to:

1. Immediately arrange for the plaintiff to be taken to a outside hospital to be examined, by qualified physicians,

2. Immediately arrange for the plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration of functioning of fractured Jaw, right temple, facial and back, Eye and neck,

3. Plaintiff has exstreme headaches daily since day of assault April 7, 1996 till now of complaint. He passes out from black spells and see's dots in eyes at times from pain. At no time can plaintiff recieve appropriate relief or pain.

4. Plaintiff has tried several times for medical care in prison but never recieved. can't even have xrays shown, or told of results and had been assaulted sexually by head female dentist of E.M.S.A. at South Florida Reception center and still can't and feel a cover up is ongoing. Plaintiff needs impartial medical physicians to attend to his medical needs,

5. Carry out without delay the treatment directed by such medical practitioners.

B.) Award Compensatory Damages in the following amounts against sheriffs office and employee's and E.M.S.A. and employee's:

1. Sheriffs office as a whole, 12 million dollars,

2. E.M.S.A. as a whole, 12 million dollars.

C.) Award of Punitive Damages to be assessed at a Later time, and

D.) Grant such other relief as it may appear that plaintiff is entitled.

Plaintiff full Name and address:

William M Hicks    Doc # 664670

Tomoka correctional Institution
3950 tiger bay road
Daytona Beach, Florida 32124

William m Hicks

_____
_____
_____
_____
_____
_____
_____

Signed this _NOV_ day of _30_, 19 _99_

_____

_William m W_
**(Signature of plaintiff
or plaintiffs)**

<u>**VERIFICATION**</u>

State of _FLORIDA_                    )

County of _VOLUSIA_                   )

_HRRIS, WILLIAM DC# 664670_____, being first
duly sworn, under oath, says: that he is the plaintiff in this
action and knows the content of the above complaint; that it is
true of his own knowledge, except as to those matters that are
stated in it on his information and belief, and as to those
matters he believes to be true.

_William m W_
**(Signature of affiant-plaintiff)**

Subscribed and sworn to before me

this _30th_ day of _November_,

19 _99_.

_C. E. Dugger_



R. E. Dugger
MY COMMISSION # CC778095 EXPIRES
December 29, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

Structure of the head

LAY OUT OF all Fractures at N.B.D.C.

Exhibit
4 (A)



VERTe Skull
FronTal bone
Parietal bone
Temporal bone
sphenoid Bone
occipital bone
zygomatic arch
mandible



FronTal bone
NaSal Bone
(5) Lens scratched Blurry vision TO BOTH EYES
(1) Skull Fractured
(2) INFlamed & Fracture Jaw
Fracture Behind JAW
(3)
(4) Stiches and Fracture sphenoid Bone
maxilla
mandible

(5) righT eye is Bury and is scatched From punchaches as well FlyeD with Blood.

(6) Severe Neck problems couse, phy oss. it

(1) righT Temple Fracture has caused Severe Nerve damage as well not wiring Skull Shut.

(2) InFlamed Fractured Jaw has caused Severe problems" can't open more than one & half Fingers wide.

(3) Behind Jaw Fracture is a problem

(4) Fracture sphenoid Bone causes great

# Exhibit 4 (B)

OUT SIDE

OUT SIDE

OUT SIDE

Razor wire

Block wall

Block wall

Door

OUT SIDE

Razor wire

Building

Building

PICNIC TABLE
6' x 32"

I Lyed Down
* X

WATER Jug

Basketball

Building

Weight Track

Reck office

Posting

held as a
human
shield  XX

Hall Way

main Hallway To Building

Fence wire

# LAY OUT OF N. B. D. C. Reck yarD #
on 2-9-96

1) 28 or more inmates out side on 2-9-96.

2) yard holds 15 people safely.

3) To much equipment on yard to hold room for peoples.

4) poor design of reck yard

5) inadequate security office as well vision.

*Exhibit 4(c)*

**RON COCHRAN**
**SHERIFF**
**BROWARD COUNTY**
**POST OFFICE BOX 9507**
**FORT LAUDERDALE, FLORIDA 33310-5907**

**DATE:    July 2, 1996**

**TO:    William Hicks, BS9514533**

**FROM:    Barbara Hanson-Evans, HSA, BSO**

**SUBJECT:  Grievance**

I reviewed your chart thoroughly as promised.

| | |
|---|---|
| 2/21/96 | X-ray showed fracture of (L) mandible and zygomatic arch. |
| 3/15/96 | Minimal depression of the arch. |
| 4/22/96 | Uecker suggested OMF surgery. |
| 5/3/96 | Old healed fracture of the arch. |
| 5/8/96 | Dr. Cline, Todd Schwartz, and Dr. Weathers explained that surgery was not planned for the arch. The problem with eating was addressed. Soft diet ordered. |

I did notice you are now taking your medication. I have given Mr. Holmes the copies of DR's for review.

The x-rays do not show any remarkable problem and the bones are intact. I am assuming that you will be experiencing pain which is now being managed appropriately.

As I suggested I would review the chart to see if there were documentation to substantiate what you alleged the physicians told you. I have seen nothing about clean break etc. I only rely on the x-ray reports which cannot be tampered with.

I was informed that you were scheduled to see Dr. Pearson/Dr. Cline on 6/28/96.

*Last Request Sent to this memo 7-3-96*

*Recieved 7-3-96*
*Bill H*

*Exhibit G*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 96-6496-CIV-UNGARO-BENAGES

WILLIAM M. HICKS,
    Plaintiff,

vs.

RON COCHRAN, et al.,
    Defendants.



## ORDER OF DISMISSAL

    THIS CAUSE came before the Court upon the plaintiff's Notice of Dismissal without Prejudice, filed November 19, 1996.

    THE COURT has considered the Notice, the pertinent portions of the record, and is otherwise fully advised in the premises. It is hereby

    ORDERED AND ADJUDGED that this Cause is hereby DISMISSED without prejudice.

    DONE AND ORDERED in Chambers at the United States District Courthouse in Miami, Florida, this _20_ day of November, 1996.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:
Magistrate Judge Sorrentino
Counsel of Record
William M. Hicks

LAW OFFICES

# BUNNELL, WOULFE, KIRSCHBAUM
## KELLER, COHEN & McINTYRE

### PROFESSIONAL ASSOCIATION

DANIEL ALTER
KATHERINE O. BIRNBAUM
GEORGE E. BUNNELL
JOHN A. CAMPBELL
JAY COHEN
MARK A. GLASSMAN
HAILEY A. GOLDMAN
NANCY W. GREGOIRE
D. DAVID KELLER
JOEL L. KIRSCHBAUM
MATTHEW D. KLEIN
BRUCE S. LIEBMAN
W. EDWARD McINTYRE
MICHAEL J. ROTUNDO
DARLENE STOSIK
GREGG A. TOOMEY
SCOTT J. WEISELBERG
RICHARD T. WOULFE

888 EAST LAS OLAS BOULEVARD
SUITE 400
FORT LAUDERDALE, FLORIDA 33301

TELEPHONE (954) 761-8600
FACSIMILE (954) 525-2134

REPLY TO:
POST OFFICE DRAWER 030340
FORT LAUDERDALE, FLORIDA 33303

BRADENTON / SARASOTA OFFICE
BY APPOINTMENT ONLY
1680 FRUITVILLE ROAD, SUITE 102
SARASOTA, FLORIDA 34236
(941) 748-4341

October 6, 1999

William M. Hicks
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, FL 32124

    RE:    Hicks v. EMSA
           Our File No.: I25/99468

Dear Mr. Hicks:

    This letter pertains to your July 8, 1999 correspondence to EMSA alleging medical negligence and deliberate indifference claims against numerous health care providers under the employ of EMSA. Your letter indicates that it was intended to serve as a Notice of Intent to initiate litigation pursuant to Chapter 766 and 768, Florida Statutes. Notwithstanding same, you failed to include a corroborating affidavit in support of your Notice of Intent executed by a licensed physician as required under Chapter 766.

    In addition to your failure to comply with the applicable presuit requirements enumerated under Chapter 766, you have also failed to bring this alleged medical malpractice action within the two (2) year Statute of Limitations, also provided under Florida Law. Due to your failure to comply with the presuit requirements pursuant to Chapter 766 as well as your failure to bring this action within the permissible time frame allowed under Florida Law, your claim is considered rejected.

    Should you decide to pursue a medical malpractice action despite your non-compliance with the above-referenced requirements, we will move to dismiss the action for failure to state a claim and/or comply with the conditions precedent to bringing said action.

                                Very truly yours,

                                SCOTT J. WEISELBERG

SJW/bhc
cc:    Robert Blasio
       Bruce Kleeman
       Julian Holloway

I Hicks, Recieved @ Tomoka prison 10-11-99

TO: Emergency medical service association INC, DR. W.C. Davis, m.D, DR. ucker, m.D., DR trevor weathors, DDS., DR. Cline, DDS., DR. pearson, DDS., DR. G. pearson, DDS.

1200 South Pine Island Road.

Plantation, Florida

Regarding notice of intent to initiate Litigation Pursuant to Chapters § 766., 766.203, 766.204, 768. Florida Statues, claims of medical Negligence, Deliberate indifference, Negligence.

"Be advised claimant represents Self, ProSe, IN said cause."

William m Hicks, claimant, who resides at tomoka correctional INSTITUTION. 3950 tiger Bay Road. Daytona Beach, Florida 32124. Notifies you, pursuant to Florida Statues § 766., 766.203, 766.204, and 768., of Emergency medical service association INC., DR. W.C. Davis, m.D., DR. ucker, m.D., DR. trevor weathors, DDS. oral. Surgeon., DR. Cline, DDS., DR. pearson, DDS., DR. G pearson, DDS., intent to initiate Litigation against you For medical negligence, Deliberate indifference and Negligence. The claim is based on facts and circumstances in complaint:

## PARTIES

⟨1.⟩ PlaintiFF is, and at all times mentioned was a resident of Broward County, Florida. IN custody of Broward sheriFFs Department.

⟨2.⟩ DeFendant's, Count 1 E.M.S.A., Count 2 DR. W.C. Davis, m.D., Count 3 DR. ucker, m.D., Count 4 DR. trevor weathors, DDS, Count 5 DR. Cline, DDS., Count 6 DR. pearson, DDS, Count 7 DR. G. pearson, DDS., are all members of "E.M.S.A." Emergency medical Services Association INC. which is a correctional care-member of INPhyNet, 1200 South Pine Island Road, Plantation, Florida        Phone (954)-475-1300

# Claim

Plaintiff was a detainee in Broward county main Jail as well North Broward Detention Center Jail, from 8,-7, 1995-98.

Roughly 9:30 Am on 4-7-96 Plaintiff was assaulted by a known violent inmate, "Norman Beech" at North Broward Detention center Jail. "N.B.D.C." SEE Exhibit 4B of recreation yard, inmate Norman Beech had been in and out of confinement for assaults on inmates and officers. Plaintiff Layed out on cement away from others as possible. Plaintiff had tee shirt over eyes to block sun which then was assaulted by Norman beech for no apparent reason. Plaintiff was hit approximately 80 times to head, neck, Back, Facial, hands as plaintiff tried to escape assault, at no time was a Broward Sheriffs Officer present in recreation yard.

Upon plaintiff reaching interior hallway, Plaintiff Sought help from female nurse "Name John Doe" who saw blood gushing from facial cut as well blood on body, nurse was startled and was preparing medication shots, which she held in her hand for Norman Beech. Nurse Stated, "I was just about to give medication shots to Norman Beech since I was late giving at 8.00am. Nurse toped cut and cleaned up blood and had plaintiff escorted to medical.

Upon arrival to medical, DR. W.C. Davis, M.D. and Xray tech were awaiting. DR. Davis, had no intentions of providing medical attention. DR. Davis Sutured cut under right eye. SEE Exhibit 4A of Skull. DR. Davis refused plaintiffs requests for Xrays to be performed. DR. Davis took five Xrays of Skull, but only after plaintiffs continuous demands. Xrays were developed on site, in medical.

Plaintiff, was told on spot by DR. Davis, Plaintiff had Sustained NO fractures or Serious injuries. SEE Exhibit 4C of B.S.O. grievance. DR. Davis,

Denied plaintiff any pain medications and insisted Plaintiff needed none.

* Plaintiff, was escorted to confinement at 12-1-H-3 with all his severe injuries and Fractures. Plaintiff had blood in right eye, bruised hand's and swollen Facial.

* On 4-8-96 Plaintiff, was told by Family that DR. Davis, M.D. told them as well attorneys that plaintiff recieved no severe injuries or Fractures.

* From 4-7-96 till now of Filing action, plaintiff never recieved proper medical, nor did Federal civil suit Filed in 1996 or court orders as well attorneys ever scare EMSA, and employee's into providing medical care.

* On 4-10-96 plaintiff gone to broward county main jail and still never recieved any proper medical care. Till this day Plaintiff has same issues but worse after no medical attention and all Fractures healed wrong.

THE Claims For medical Negligence as well Deliberate indifference and Negligence is based on actions of all Defendant's as Follows;

Count 1: Defendant, E.M.S.A health care provider is and at all times mentioned was, a municipal contractor, corporation existing by virtue of the Laws of Florida. At all times mentioned, defendant EMSA, had responsibility For the operation of all health care provided at jails For broward county sheriffs office. Defendant E.M.S.A. was Negligent in regards to not providing medical care, not supervising its employee's, contractors. which such Negligence was proximate cause of plaintiffs pain and suffering as well Now Life Long injuries, in the Following respects;

(A.) Failure to perform an adequate background check on the qualifications of its staffing and doctors;

(B.) Negligence in the selection of its staffing and doctors to provide medical care to plaintiff;

(C.) Negligence in the training of its staffing and doctors to provide medical care;

(D.) Negligence in the supervision of its staffing, and doctors;

(E.) Failure and denial to provide plaintiff with appropriate medical care to serious, life threatening injuries;

(F.) Failure to provide its staffing and doctors with training to meet medical profession and regulations as well state and Federal laws in regard to proper care, rules, detainees rights to medical, and not avoiding treatment nor to cover up for one anothers actions. Also to detainees rights to proper grievance procedures;

(G.) Failure to act upon plaintiffs attorneys phone calls, letters, as well all court orders and plaintiff and his family's pleas;

(H.) Failure of E.M.S.A.'s. supervisors, regarding their duties and all dangers presented by plaintiff seeking medical care;

(I.) Failure to act promptly or investigate the situation of its employee's and complaints by plaintiff, attorneys, courts, family;

(J.) Failure to notify authorities of situation as to denial of medical care at time of assault, and throughout plaintiffs battle for help;

(K.) Negligence by continuing to employ defendant's, as they all conspired, or knew of all actions of wrong doing. All knew of violations of medical profession as well state and Federal laws.


**(2.)** Defendant, E.M.S.A. and each of its employee's, acted oppressively and maliciously, engaging in dispicable conduct with willful and conscious disregard of the rights and care of plaintiff. In addition, defendant and employee's, engaged in dispicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard to plaintiffs life and rights, as well denial

OF medical care.

‹3.› Defendant, E.m.s.A. and employee's are and at all times mentioned in this complaint, and in committing the acts alleged were acting within the scope and course of their agency and employment. Plaintiff is informed and believes, and on that basis alleges, that all of the wrongful acts of defendant's referred to in this complaint were authorized by and committed under the instructions and express or implied approval of E.m.S.A. and staff.

‹4.› "If defendants, "Employee's had administered medications to known violent inmate Norman Beech, plaintiff believes that the assault would not have occurred nor would doctors had chance to deny medical care nor would cover up happened, nor would all actions have lead to plaintiffs trial and nor would plaintiff have life long injuries now."

‹5.› To provide evidence to support defendents poor judgment and lack of proper procedures, plaintiff provides as Exhibit **E** of Dr. martin, m.D. a psychiatrist who worked for E.m.A. "Defendant as head psychiatrist at N.B.D.C. Jail. Exhibit shows Dr. martin resigned, do to improper actions.

‹6.› A) Defendant, E.m.s.A. a medical contractor to supply medical attention to all detainee's, has violated all laws and rules. As to plaintiff in need of serious medical care, was **"serious"** and had been diagnosed by a m.D. physician as "mandating treatment"... Johnson v. Busbee, 953 F.2d 349, 351 (8th cir. 1991); Gaudreault v. municipality of Salem, mass.) 923 F.2d 203, 208 (1st cir. 1990); monmouth county correctional institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d cir. 1987), cert. denied, 486 U.S. 1066 (1988); Ramos v. Lamm, 639 F.2d 559, 575 (10th cir. 1980), cert. denied, 450 U.S. 1041 (1981) and cases cited.

a systemic deficiency in staffing. Several courts have squarely held that permitting persons without medical training to decide whether prisoners recieve medical attention states a deliberate indifference claim. Kelly v. McGinnis, 899, F.2d 612, 616 (7th Cir. 1990); Mitchell v. Aluisi, 872 F.2d 577, 581 (4th Cir. 1989); Boswell v. Sherburne county, 849 F.2d 1117, 1123 (10th Cir. 1988), cert. denied, 488 U.S. 1010 (1989).

## Count 2:

Defendant, Dr. W.C. Davis, M.D. is employed by E.M.S.A. as chief of medical at North Broward detention center Jail. Defendants acts that are alleged as follows;

**A)** Defendant, was negligent to denial of treatment and care of plaintiff and such negligence was the proximate continued denial of medical care to serious, life threatening injuries. From 4-7-96 till now of complaint;

**B.)** Failure to perform as a licensed medical doctor and duties of Floridas' laws as well rights of detainee to proper medical care;

**C.)** Negligence in his own training as well proper procedural training of his staff under his care or supervision;

**D.)** Negligence in the supervision of his duties to his employer to insure all health care is done appropriately and by procedures.

**E.)** Failure to act on procedures to detainees rights to grievance procedures;

**F.)** Failure to promptly investigate the situation or at any time tell appropriate authorities of all improper proceedings;

**G.)** Negligent in soliciating other professions, professionals to help continue cover up for his own negligent acts;

**H.)** Failure to properly render medical assistance to plaintiff on 4-7-96 at time of assault;

**I.)** Failure and negligence to disobey court orders, Attorneys, as well out side doctors and Dr. ucker, M.D. to provide medical care to plaintiff.

(2.) plaintiffs, continued suffering and life threatening injuries were caused by negligence of defendant, Dr. Davis, as well all who conspired with him to avoid, conceal and falsify records.

(3.) Defendant, Dr. Davis acted oppressively and maliciously, engaging in despicable conduct with a willful and conscious disregard of the rights and care of plaintiff. In addition, defendant engaged in despicable conduct that subjected plaintiff to cruel and unjust hard ship in conscious disregard of plaintiffs life and health as well rights of detainee.

(4.) A.) As a direct and proximate result of defendants conduct, plaintiff suffered fright, shock and extreme mental and physical anguish. Also plaintiffs, fight for medical has caused retaliation, confinement, no proper medical care and conspiracy to corrupt plaintiffs trial as well abuse.

  B.) plaintiff, has been highly nervous state since occurrences as well heart condition has been aggravated and suffers from severe pain to head, temples, facial, jaw, neck, back, eyes, hands as well breathing problem, loss of daily enjoyment to life and lack of sleep do to severe pain and trauma to this day.

<u>Count 3</u>: Defendant, Dr. Ucker, M.D. is employed by E.M.S.A. to provide medical care to Broward county sheriffs office. Defendants acts that are alleged as follows;

A.) Defendant, is Licensed by Florida and holds private practice as well. Defendant, made opinion to treat plaintiffs fractures as well knew of all fractures. SEE Exhibit 4C of grievance;

B.) Failure to perform as a Licensed medical doctor as to duties of Licensing and rules and regulations of Laws and rights of detainee to proper medical care;

C.) Negligence in selection of handling problems and not performing

to Laws and regulations of self and other professionals;

(D.) negligent with regard to the care of plaintiffs health, and medical care and such negligence was the proximate continued denial of proper medical care to serious, life threatening injuries.

(E.) Negligence in his own medical training as well proper procedural training of staff under his care;

(F.) Failure to act on warnings given by plaintiff as well all grievances written on needing medical care. As well to promptly investigate the situation or act in any manner to tell appropriate authorities;

(G.) negligent in soliciating other professionals or non professionals to help or continue in cover up for E.M.S.A. and all employee's;

(H.) Failure to insure proper medical was rendered to plaintiff at time of assault or at knowledge of fractures.

⟨2.⟩ Plaintiffs, continued suffering and life threatening injuries were part caused by defendant, as well now plaintiff will have continued medical issues for life.

⟨3.⟩ Defendant, acted oppressively and maliciously, engaging in despicable conduct with a willful and conscious disregard to the rights and care of plaintiff. In addition, defendant engaged in despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiffs rights. As defendant, continued to cover up or not act as plaintiff fought for medical for pain and suffering of fractures and trauma. Defendant stood by and allowed all to corrupt plaintiffs criminal trial.

⟨4.⟩ Defendant, had made unruely remarks to his actions and role in complaint. At main jail, defendant, saw plaintiff with nurse present "name John Doe" and shown xrays to plaintiff, told plaintiff that facial fracture that is a N. shape do to

Facial Fallen and will be permenent unless Fixed. Plaintiff Should also be greatful "right EYE is NOT Falling out." when plaintiff Confronted DR. ucker on his name in all records, he became different and I Rate behavior.

⟨5.⟩ As a direct and proximate result of defendants conduct, plaintiff Suffered continued Fright, shock and extreme mental and physical anguish.

(A.) Plaintiff, has been highly nervous state Since occurences as well heart conditions has been aggravated and suffers From Severe pain to head, temples, Facial, Jaw, neck, Back, EYES, hands. Plaintiff also suffers Lack of sleep and daily enjoyment of Life and breathing do to Severe trauma and pain daily.

**Count 4:** Defendant, DR. trevor weathers, DDS. oral. Surgeon is employed by E.M.S.A. to provide dental to Broward county Sheriffs office. Defendant is Licensed by Florida and holds private practice as well. Acts that are alleged as Follows;

(A.) on or about 4-21-96, plaintiff saw defendant at main jail and Shown Fracture To right temple. Only showed plaintiff one xray of Five taken;

(B.) Defendant, Shown DR. cline, DDS xrays of Fractures which both are not Licensed or qualified medical doctors. Which both decided Not to wire shut right temple as a qualified m.D. instructed E.M.S.A. to Do;

(C.) Defendant, disregarded medical orders to wire Fractured Jaw which Defendant, is Licensed and qualified to do;

(D.) Defendant, told plaintiff that Facial Joint on right Side of Jaw would heal and go back in place, 1-2 years and Suggested plaintiff come to his practice to be treated after released From county Jail.

(E.) Defendant, was confronted by plaintiff on issue of DR. cline, DDS

told him that to repair jaw properly, need to rebrake and restart again. Also Facial jaw joint would never go down. Defendant, yelled and called plaintiff a lier as saying DR. Cline would never say that.

(2.) Defendant, was negligent with regard to care of plaintiff, and such negligence was the proximate continued denial of medical to serious, life threatening injuries in the following respects;

(A.) Failure to perform, as a specialist and duties of profession as well laws and rights of detainee to proper medical care;

(B.) negligence in selection of staffing to perform duties as to laws and professional regulations;

(C.) Negligent in his own training as well proper procedural training of staff under his care or supervision;

(D.) negligent in his outrageous actions of a professional and teaching this negligence to other professionals or non professionals;

(E.) Negligence in supervision of fellow employers, employee's and actions of performing procedures not of his profession nor licensed by Florida or has training.

(F.) Failure to act on grievances and promptly investigate the situation. As well at any time tell appropriate authorities.

(G.) Negligent in soliciting other professions under non professionals to help continue cover up of E.M.S.A. and employee's.

(H.) Failure to promptly render medical care to plaintiff as well disregarded court orders, Attorneys orders, and plaintiffs and Familys pleas for medical.

(3.) Plaintiffs, continued suffering and life threatening injuries were caused by the negligence of defendant and all involved under his care or profession. Defendants actions to switch xrays and shown a persons skull with no fractures were a complete and unjust violation of law.

**⟨4.⟩** Defendant, acted oppressively and maliciously, engaging in despicable conduct with a willful and conscious disregard of the rights and safety of plaintiff. In addition, defendant engaged in despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiffs health and rights.

**⟨5.⟩** As a direct and proximate result of defendants conduct, plaintiff suffered fright, shock and extreme mental and physical anguish. All actions caused severe life long scars to plaintiff.

**(A.)** plaintiff, has been highly nervous state since occurence as well heart condition has been aggravated and suffers from severe pain to head, temples, facial, jaw, neck, back, eyes, hands. plaintiff also suffers from breathing and lack of sleep, as well enjoyment of daily life do to severe pain and trauma to this day.

**Count 5:** Defendant, DR. Cline, DDS. is employed by E.M.S.A. to provide dental care to Broward county sheriffs office. Also licensed by Florida. Acts that are alleged as follows;

**(A.)** On or about months of April 1996 through year 1998, plaintiff saw defendant for dental services;

**(B.)** On or about 4-21-96 defendant, and DR. Weathors met and reviewed five sets of xrays taken, only allowed plaintiff to see one of five which was fracture to right temple;

**(C.)** Defendant, and DR. Weathors, both reviewed xrays which neither were licensed medical doctors to provide expert opinion, nor advise nor to treat. Both decided not to wire fracture to temple shut as it was ordered by a m.d. to do so;

**(D.)** Defendant, also denied plaintiff to have fractured jaw wired as well facial fracture;

**(E.)** Defendant, told plaintiff of jaw which only way to fix properly

Would be to re brake and re set.

(2.) Defendant, was negligent in regards to care of plaintiff and such negligence was the aproximate continued denial of medical to serious, Life threatening injuries, in the Following respects;

(A.) Failure to perform as a Licensed dentist and duties of laws as well Rights of detainee to medical care;

(B.) Negligence in Selection of Staffing to perform duties as well his own training and proper procedural training of staff under his supervison or profession.

(C.) Negligent in his outrageous actions of a professional and teaching this to other professionals and or non professionals.

(D.) Negligence in actions of performing procedures not of his profession nor training and not providing actions to grievances from plaintiff.

(E.) Failure to promptly investigate or at anytime tell appropriate authorities;

(F.) Negligent in Soliciting other professionals and or non professionals to continue cover up for his own actions as well E.M.S.A. and employee's;

(G.) Failure to provide or render medical care upon knowledge of Fractures and continued denial of court orders, Attorneys orders, and plaintiff and Familys pleas for medical;

(H.) Negligent in outrageous actions of switching xrays, hiding xrays, Falsifying documents.

(3.) Plaintiffs, continued suffering and Life threatening injuries were caused by defendants negligence and all under or in his care of profession or non profession. His actions to allow corruption to Lead to criminal trial to cover up for actions of E.M.S.A. and employee's.

(4.) Defendant, DR. cline acted oppressively and maliciously, engaging in despicable conduct with a willful and conscious disregard of the rights and care of plaintiff. In addition, defendant engaged

In despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiffs rights.

**(5.)** As a direct proximate result of defendants conduct, Plaintiff suffered fright, shock and extreme mental and physical anguish. Physical pain as well mental will continue for life.

**(A.)** Plaintiff, has been aggravated and suffers from severe pain to head, temples, facial, jaw, neck, back, eyes, hands. Plaintiff also suffers from breathing and lack of sleep as well loss of daily enjoyment of life do to severe pain and trauma to this day.

**Count 6:** Defendant, Dr. Pearson, DDS. is employed by E.M.S.A. and provides Dental Services to Broward County main jail for Broward County Sheriffs Office. Es Licensed by Florida. Acts that are alleged are as follows;

**(A.)** As a Licensed dentist, She's negligent in her acts of known knowledge of all criminal neglect and willful and wanton actions of all employee's of E.M.S.A. and Sheriffs Office;

**(B.)** Defendant, was negligent with regard to care of plaintiff and such negligence was the proximate continued denial of proper medical to serious life threatening injuries;

**(C.)** Failure to perform as a Licensed dentist and Duties of Licensing as well detainees rights to proper medical;

**(D.)** Negligence in her own training as well proper procedural training of staff under her care;

**(E.)** Negligent in **her** outrageous actions of a professional and teaching this negligence to others by keeping quiet;

**(F.)** Failure to report occurrences and tell appropriate authorities;

**(G)** Negligent in covering up for other professionals and or non professionals in regards to abuse and denial of proper medical care.

(H.) Failure to render proper care to plaintiff at times of visits;
(I.) Failure to act on all court orders, Attorneys orders as well plaintiffs and Familys pleas for help.

(2) plaintiffs, continued suffering and life threatening injuries were inport caused by defendants negligence which she acted oppressively and maliciously, engaging in despicable conduct with willful and conscious disregard of the rights and care of plaintiff. In addition, defendant engaged in despicable conduct that subjected plaintiff to cruel and unjust hard ship in conscious disregard of plaintiffs health and rights.

(3.) As a direct and proximate result of defendants conduct, plaintiff suffered fright, shock and extreme mental and physical anguish. All mental and physical suffered will be life long.
(A.) plaintiff, has been highly nervous state since the occurences as well heart condition has been aggravated and suffers from severe pain to head, temples, facial, jaw, neck, back, eyes, hands. Plaintiff also suffers from breathing and lack of lifes daily enjoyment and sleep do to severe pain and trauma to this day.

**Count I:** Defendant, DR. G. pearson, DDS. is employed by E.m.S.A as a Dentist for N. B. D. C. Jail for Breward county sheriffs office. Is Licensed by state of Florida. As a Licensed Dentist, Defendant, is negligent in his acts of knowledgement of all criminal negligence and willful and wonton actions. Acts alloged as follows;

(A.) negligence in his own training as well proper procedural training of his staff under his care and rights of detainee to proper medical care;

**(B.)** Negligent in his own outrageous actions of a professional and teaching this negligence to other professionals and professions;

**(C.)** Failure to promptly investigate all grievances and tell proper authorities;

**(D.)** Negligent in covering up for other professionals and non professionals in regards to denial of proper medical care and interfering with plaintiffs trial.

**(E.)** Failure to render proper dental care at time of knowledgement of fractures;

**(F.)** Failure to obey all court orders, attorneys orders and plaintiffs and familys pleas for proper medical care.

**〈2.〉** Defendant, Dr. G. Pearson, DDS acted oppressively and maliciously, engaging in despicable conduct with a willful and conscious disregard of the rights and care of plaintiff. In addition, defendant engaged in despicable conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiffs rights and health.

**〈3.〉** As a direct and proximate result of defendants conduct, plaintiff suffered fright, shock and extreme mental and physical anguish which will last a life time.

**(A.)** Plaintiff, has been highly nervous state since the occurrences as well heart condition has been aggravated and suffers from severe pain to head, temples, facial, jaw, neck, back, eyes, hands. Plaintiff also suffers from breathing and lack of sleep as well daily enjoyment of life do to severe pain and trauma to this day.

* As a direct result of all Defendants negligence and malfeasance, they have caused irreparable harm to plaintiffs health, Lively hood, daily enjoyment of Life, Family and Liberty as well all conspired to set plaintiff up in trial to cover for all illegal actions and practices of medical professions as well non professions.

* Plaintiff, has waited untill after criminal trial to refile action do to all corruption in jail and medical as well mental and physical abuse. Plaintiff, was placed in confinement for over half a year during first complaint filed. Also advised not to continue as plaintiffs life was at risk. SEE Exhibit G of courts order of Dismissal, case No# 96-6496-civ-Ungaro-Benages.

* As outlined in complaint, all defendants actions caused irreparable harm to claimant and family. All actions show cause for claim of medical Negligence, Deliberate indifference, as well pure Negligence. This is an example of complete failure of a system to provide medical care do to detainee's at Broward county jail as well not to violate or trample on rights of a detainee. As described by Department of Business and Professional regulations, as well pure common sense of any Lay man, all actions are not only unusual, but irresponsible which were purely Negligence in all procedures and practices of medical care and non professionals.

* Plaintiff shows expert opinon to corroborate claim, as to Florida Statue $ 766.102 (2)(a). SEE Exhibit 4C.

* Plaintiff provides as corroborating evidence against E.M.S.A. on Negligence. SEE Exhibits, pages of Sun-Sentinel Local Section Dated 1996. marked 1-4 of pages.

"ALL RULES AND PROCEDURES OF Civil Complaint ARE Applicable Here IN, (ie) Rules OF ARBITration AND MEDIATioN APPly: Fla R. Civ. PRO. Rule 1.700."

As To Florida Statues, plaintiff will NOT State amount as of yet, Plaintiff, will be seeking punitive Damages in tHis complaint as to Law.

1.) Compensation in tHe amount OF: <u>counts 1-7 are above</u>
$10,000.00 dollars.

2) Special Damages in tHe amount OF: <u>counts 1-7 are above</u>
$10,000.00 damages.

3.) Punitive Damages in tHe amount oF: counts <u>1-7 are above</u>
$_____

4.) any oTHer compensation owed to plaintiFF: <u>counts 1-7 are</u>
above $_____.

I hereby certify copies mailed to:

1.) Department oF Business and professional regulations, certified, return receipt:

2.) Emergency medical Services Ass, Inc, and et al, certified, return receipt:

3.) File oF plaintiFF:

4.) clerk oF court, Broward county court house:   OaTH

William m Hicks proSE
DOC# 664670 Dorm D
Temoka correctional INSTiTution
3950 Tiger Bay road
Daytona Beach, FL 32124

State oF Fla
County oF Volusia
DOC# I.D.

BeFore me tHe undersigned AuTHority, tHis day personally appeared, William m Hicks, sworn to and subscribed beFore me on tHis ____8tH____ Day oF ___JULY___, 1999

V. L. Arvinger
MY COMMISSION # CC771421 EXPIRES
December 29, 2002
BONDED THRU TROY FAIN INSURANCE, INC.

X William m Hicks
DOC# 664670   DaTed 7/8/99
Tomoka Corr. INST.

V.L. Arvinger V.L. Arvinger,
Notary oF public - STate oF Florida

STATUES cited

F.S. § 7.66.
F.S. 766.203
F.S. 766.204
F.S. 768.

F.S. § 466.001
F.S. 466.003 (2) (13)
F.S. 466.0135 (1) (A)
F.S. 466.016
F.S. 466.018 (3) (4) (5)
F.S. 466.019 (1) (2) (A)
(B) (C) (D) (E) (F) (H)
(ID. at 1979).
(ID. at 1980-81).
F.ST. 466.021
F.S 466.22
F.S 466.26 (1) (A) (C)
(2) (A) (D)
F.S 466.028 (1) (F) (9)
(I) (J) (L) (m) (T)
(X) (Y) (Z) (hh)
F.S. 466.0282 (1) (A) (B)
(C) (D) (2)

CASES cited

Adams v. James, 784 F. 2d 1077 (11th Cir. 1986).

Aswegan v. Bruhl, 965 F. 2d 676 – 78 (8th Cir. 1992).

Beauchamp v. Yazoo Valley oil and milling Co, 403 So. 2d 554

Bell v. Wolfish, 441 U.S. 520, 536-37, 60 L. Ed. 2d 447, 99 S. CT. 1861 (1978).

Boring v. Kozakiewicz, (1987, CA 3 Pa) 833 F. 2d 468, cert. den. (1988) 485 U.S. 991, 99 L. Ed 2d, 508, 108 S. CT. 1298.

Boone v. Elrod, 706 F. Supp. at 638.

Boswell v. Sherburne county, 849 F2d 1117, 1123 (10th Cir. 1988). cert. den. 488 US. 1010 (1989).

Brownlee v. Conine, 957 F. 2d 353, 354 (7th. Cir. 1992).

Carraway v. Revell, Fla) 116 So. 2d. 400, conformed to (Fla App D1) 123 So 2d. 400.

City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S. CT. 2979, 77 L. Ed. 605 (1983).

Dean v. Coughlin, 623 F. Supp. at 404

Estelle v. Gamble, 42 U.S. 97, 97 S. CT. 285, 50 L. Ed. 2d 251 (1976). 429 U.S. at 105.

Fambro v. Fulton county, Ga. 713 F. Supp. 1426, 1429-31 (N.D. Ga. 1989).

Farmer v. Brennan, 114 S. ct. 1981-82).

Farinaro v. Coughlin, 642 F. Supp. 276, 279 (S.N.Y. 1986).

Fields v. Gander, 734 F. 2d 1313, 1315 (8th Cir. 1984).

Gaudreault v. municipality of Salem, mass, 923 F.2d 203, 208 (1st cir. 1990).

Goka v. Bobbitt, 862 F.2d 646, 651 (7th cir. 1988).

Hampton v. Holmesburg prison officials, (1976, CA3 Pa.) 546 F.2d 1077.

H.C. v. Jarrard (1986, CA11 Fla) 786 F.2d 1080.

Helling v. McKinney, — U.S. —, 113 S.Ct. 2481 (1983).

Hill v. marshall, 962 F.2d 1209, 1213 (6th cir 1992).

Higgs v. Florida Dept. of corrections, 647 So.2d 692 (Fla. 1st DCA 1994).

Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L. Ed 2d 156 (1992) quoting Estelle, 429 U.S. at 103, 97 S.Ct. at 290).

Inmates of Occoquan v. Barry, 717 F. Supp. 854, 868 (D.D.C. 1989).

Inmates v. Lanzaro, 834 F.2d at 347.

Inmates of Allegheny county Jail v. pierce, 612 F.2d 754, 762-63 (3d cir 1979).

Johnson v. Lucaus, 786 F.2d 1254, 1260 (5th cir. 1986).

Jordan v. Gardner, 986 F.2d 1521 1530 (9th cir. 1993).

Johnson v. Busbee, 953 F.2d 349, 351 (8th cir. 1991).

Kelly v. McGinnis, 899 F.2d 612, 616 (7th cir. 1990).

Lamarca v. Turner, 995 F.2d at 1537-38., 995 F.2d 1526, 1536-37 (11th cir. 1993). 114 S.Ct. 1189 (1994).

Lock v. Jenkins (1978, ND Ind) 464 F. Supp. 541, affd in part and revd in part on other grounds (1981, CA7 Ind) 641 F.2d 488.

mandel v. Doe, 888 F.2d 783, 789 (11th cir. 1989).

mitchell v. Aluisi, 872 F.2d 577, 581 (4th cir. 1989).

monmouth county correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d cir. 1987) cert. den. 486 U.S. 1066 (1988).

McGuckin v. Smith, 974 F.2d 1050, 1060 (9th cir. 1992).

Popham v. Kennesaw, 820 F.2d 1570, 1573 (11TH cir. 1987).

Ramos v. Lamm, 639 F.2d 559, 575 (10TH cir. 1980) cert. den. 450 U.S. 1041 (1981) and cases cited.

Riley v. Jeffers, 777 F.2d 143, 147 (3d cir. 1985).

Shrader v. White, 761 F.2d 975 (4TH cir. 1985).

Rhodes v. Chapman, 452 U.S. 337, 101 S.CT. 2392, 69 L. Ed 2d 59 (1981).

Sharpe v. City OF Lewisburg, Tenn. 672 F. Supp. 1362, 1368 (M.D. Tenn. 1988).

Ten Ass. v. Brunson, (1986, Fla App D3) 492 So.2d. 1149 and Fla Law wkly 1768.

Tillery v. owens, 719 F. Supp. at 1309

Todaro v. Ward, 565 F.2d 48, 52 (2d cir. 1977).

Watts v. Laurent, 774 F.2d 168 (7TH cir 1985).

Whitley v. Albers, 475 U.S. 312, 106 S.CT. 1078, 89 L. Ed. 2d 251 (1986).

Wilson v. Seiter, 501 U.S. 294, 296-98, 111 S.CT. 2321, 115 L. Ed 2d 271 (1991). 501 U.S. aT 300, 111 S.CT. aT 2325.

Williams v. O'Leary, 805 F. Supp. 634, 638 (N.D.Ill. 1992).

Pelican Island property v. James Murphy, 554 So2d 1179.

Potock v. Samuel L. Turek, M.D., 227 So2d. 724.

Robert J. Singleton v. West Volusia hospital, 442 So2d 235.

kemmler, 136 U.S. 436, 447, 10 S.CT. 930, 933, 34 L. Ed 519.

Gregg v. Georgia, 173, 96 S.CT. at 2924-25.

George mandel v. John Doe, 888 F.2d 783.

Carswell v. Bay County, 854 F.2d 454, 457.

Fielder v. Bosshard, 590 F.2d 105, 108.

Ancata v. Prison Health Services INC, 769 F.2d 700, 704.

West v. keve, 571 F.2d 162

# Structure of The Skull

Lay out of all Fractures at N.B.D.C.

**Exhibit 4 (A)**



Verte Skull
Frontal bone
Parietal bone
Temporal bone
sphenoid Bone
occipital bone
zygomatic arch
mandible



Frontal bone
Nasal Bone

(1) Skull Fractured

(5) Lens scratched blurry vision to both eyes.

(2) Inflamed Fractured Jaw

Fracture Behind Jaw
(3)

(4) stiches and Fracture sphenoid Bone

maxilla
mandible

(5) right eye is blury and is scatched from punchachus as well Flyed with Blood.

(6) severe neck problems caused by assault.

(1) right Temple Fracture has caused severe nerve damage as well not wiring skull shut.

(2) Inflamed Fractured Jaw has caused severe problems can't open more than one ½ half Fingers wide.

(3) Behind Jaw Fracture is a problem.

(4) Fracture sphenoid Bone causes great problems Breathing.



# Exhibit 4 (B)

**# LAY OUT OF N.B.D.C. RECK YARD ON 2-9-96 #**

1) 280 or more inmates outside on 2-9-96.

2) yard holds 15 people safely.

3) to much equipment on yard to hold room for people.

4) poor design of reck yard.

5) inadequate security, offices as well vision.

outside
Razor wire
Door
outside
Razor wire
Block wall
Razor wire

Picnic Table 6'x 32"

Building
I Door 2'x

fence wire

Basket Ball

Block wall
outside

Wall Hallway to Building

Building

Hall way

Held as a human Shield 3'x

Railing

Reck office

weight rack

Female Unit

*Exhibit
4 (c)*

RON COCHRAN
SHERIFF
BROWARD COUNTY
POST OFFICE BOX 9507
FORT LAUDERDALE, FLORIDA 33310-5907

DATE:    July 2, 1996

TO:    William Hicks, BS9514533

FROM:    Barbara Hanson-Evans, HSA, BSO

SUBJECT:  Grievance

I reviewed your chart thoroughly as promised.

2/21/96    X-ray showed fracture of (L) mandible
           and zygomatic arch.
3/15/96    Minimal depression of the arch.
4/22/96    Uecker suggested OMF surgery.
5/3/96     Old healed fracture of the arch.
5/8/96     Dr. Cline, Todd Schwartz, and Dr. Weathers
           explained that surgery was not planned for the
           arch.  The problem with eating was addressed.
           Soft diet ordered.

I did notice you are now  taking your medication.  I have given
Mr. Holmes the copies of DR's for review.

The x-rays do not show any remarkable problem and the bones are
intact.  I am assuming that you will be experiencing pain which
is now being managed appropriately.

As I suggested I would review the chart to see if there were
documentation to substantiate what you alleged the physicians
told you.  I have seen nothing about clean break etc.  I only
rely on the x-ray reports which cannot be tampered with.

I was informed that you were scheduled to see Dr. Pearson/
Dr. Cline on 6/28/96.

*Last Request
Sent to this memo 7-3-96*

*Recieved
7-3-96
Bill H*

# Transference

## THE NEWSLETTER OF THE FLORIDA PSYCHIATRIC SOCIETY

*1 Front page of Book 1*



June 1998
Vol. 19, Number 2

### Inside This Issue

**Get Wired Now!**
see President's Message on page 2

**Reports from Marga and Jan**
see Staff Reports beginning on page 4

**Urgent Notice on Medicare Codes**
see notice on page 3

**Speakers Enlighten**
see Reports on page 8

**Back to the Future**
see President elect's message on page 9

**Parity Bill Unheard**
see Legislative Report on page 10

**Euthanasia and Assisted Suicide**
see Book Review on page 17

## FPS Plans for the Future at Spring Meeting

Sarasota proved once again to be a great setting for the FPS Spring Meeting. If you missed it you missed a great opportunity for education and fellowship. The speakers on the scientific program provided new and insightful information on psycho-pharmacology, valuable to the practice of psychiatry.

There were many opportunities for involvement in planning for the future of FPS as well, with special interest forums, Council meetings, and committee meetings on the schedule. Following are the committee reports from the meeting:

**Articles & Bylaws** Pending revisions were approved with only minor changes. The revisions included: Chapter Ten(S), deletion of "the Ethics Committee may request participation of other appropriate committees and of individual members in the evaluation and investigation." This clearly belongs in the Operations Manual. Article 8, page 3 required leaving in the word "two", which had been deleted. Several minor changes were made to streamline the membership process as well. The Commit-

tee will ask council to rescind recognition of local chapters that are not compliant regarding their bylaws being in line with what is required. The Committee also would like to request the committee chairs scrutinize the Operations Manual and help to keep it current by recommending additions, deletions, etc. The Committee is seeking new members. Anyone interested in serving on the Articles & Bylaws Committee should contact the FPS office.

**Budget** The Committee proposed a dues phase-in to recruit new members; ... also for a 10% reduction in dues. They ..... also be looking into the cost to the association of the 48 inactive members and what can and should be done in regard to that. In studying the FPS investment policy, the Committee would like to seek increased return on liquid reserves, keeping those reserves separate from investment funds, and being more aggressive with investments as well.

**Chapter Presidents** The group will focus on the importance of community-based image building. The chapters are encour-

*Continued on page...*

*Exhibit G*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

Case No. 96-6496-CIV-UNGARO-BENAGES

WILLIAM M. HICKS,
    Plaintiff,

vs.

RON COCHRAN, et al.,
    Defendants.

_____/



### ORDER OF DISMISSAL

THIS CAUSE came before the Court upon the plaintiff's Notice of Dismissal without

Prejudice, filed November 19, 1996.

THE COURT has considered the Notice, the pertinent portions of the record, and is otherwise

fully advised in the premises. It is hereby

ORDERED AND ADJUDGED that this Cause is hereby DISMISSED without prejudice.

DONE AND ORDERED in Chambers at the United States District Courthouse in Miami,

Florida, this _20_ day of November, 1996.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:
Magistrate Judge Sorrentino
Counsel of Record
William M. Hicks

EMSA Civil Suite

PS Form **3800**, March 1993

**Receipt for**
**Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

Z 168 456 337

SENDER:
• Complete items 1 and/or 2 for additional services.
• Complete items 3, 4a, and 4b.
• Print your name and address on the reverse of this form so that we can return this card to you.

1. ☐ Addressee's Address
   extra fee:

I also wish to receive the
following services (for an
extra fee):

Thank you for using Return Receipt Service.

William M Hicks

---

EMSA Civil Suit

PS Form **3800**, March 1993

**Receipt for**
**Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

Z 168 456 336

SENDER:
• Complete items 1 and/or 2 for additional services.
• Complete items 3, 4a, and 4b.

I also wish to receive the
following services (for an

Thank you for using Return Rec

William M Hicks

---

Z 168 456 336

SENDER: Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.

Put your address in the "RETURN TO" Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.

1. ☐ Show to whom delivered, date, and addressee's address.   2. ☐ Restricted Delivery
   (Extra charge)                                                  (Extra charge)

4. Article Number
   P383 017 335

Type of Service:
☐ Registered        ☐ Insured
☑ Certified         ☐ COD
☐ Express Mail      ☐ Return Receipt for Merchandise

Always obtain signature of addressee or agent and DATE DELIVERED.

8. Addressee's Address (ONLY if requested and fee paid)

DOMESTIC RETURN RECEIPT

PS Form 3811, Apr. 1989   *U.S.G.P.O. 1989-238-815

3. Article Addressed to:

5. Signature (Addressee)
   X

6. Signature (Agent)
   X

7. Date of Delivery
   MAR 2 9 1999

# LOCAL

Sun-Sentinel, Saturday, August 24, 1996    Section B

# Death spurs drug investigation

## Authorities won't confirm that inmate was given tranquilizer

**By LARRY KELLER**
Staff Writer

Sheriff's detectives are investigating whether an unruly inmate in the North Broward Detention Center died as a result of being injected with a tranquilizer to quiet her.

Valerie Young, 22, of Deerfield Beach, a theft suspect who had been exhibiting bizarre behavior, was found unconscious in her cell by a detention deputy making rounds with a nurse at the jail.

Young was taken to Broward General Medical Center, where she was declared dead at 10 a.m. Wednesday.

Howard Finkelstein, chief assistant public defender, said he was told by jail personnel and sheriff's detectives that a nurse had given Young a shot of Thorazine on Tuesday night to keep her from shouting, singing and being generally disruptive.

Neither the Broward Sheriff's Office, which runs the jail, nor medical officials would confirm that Young received Thorazine.

Thorazine is a powerful drug used to reduce symptoms of psychotic disorders such as schizophrenia and for the short-term treatment of severe behavioral disorders in children. It can cause involuntary muscle spasms and facial twitches.

Finkelstein said Young's death is an example of the failure to place mentally ill people in proper settings.

"This case epitomizes why mentally ill, nonviolent people should not be in jail," Finkelstein said.

"She became a management problem because she was disruptive. People in the jail are not equipped . . . to handle the troublesome nature of mental illness."

Sheriff's spokesman Ott Cefkin said that so far, investigators "haven't found any evidence of any wrongdoing." Homicide detectives routinely in-

PLEASE SEE **JAIL**/7B

JAIL

FROM PAGE 1B

# Drug injection investigated in inmate's death



vestigate deaths in the jail that don't occur in the infirmary, Cefkin said.

The Sheriff's Office has a contract with Emergency Medical Services Association in Plantation to provide medical care to jail inmates. The Young company is owned by the wife of Florida Attorney General Bob Butterworth. EMSA officials said they are conducting their own investigation

and cooperating with the Sheriff's Office inquiry.

"We believe appropriate care was given," said Margaret Pearson, director of public relations for EMSA. "[But] I don't know the details of the investigations."

Young was obese — 5 feet, 4 inches and 240 pounds — and used a wheelchair. Her behavior started becoming strange two months ago after a bout of spinal meningitis, Finkelstein said.

Young was arrested at a T.J. Maxx store in Deerfield Beach in June and charged with taking $403 worth of clothing, then leaving the store without paying.

Police said she told them she took the items because she had no job and could not afford to pay for them.

Young was released from jail a day after that arrest. In July, she was cited three times for trespassing at a Deerfield Beach hotel and was returned to jail for violating

terms of her pre-trial release on the theft charge.

While in jail, Young often took off her clothes. She got into a fracas with jailers and was charged with several counts of battery on a corrections officer and resisting arrest with violence.

Young initially was in the general jail population, then moved to an individual cell because of her behavior.

Inmates with mental problems are sometimes placed in a special unit, but only if they may hurt themselves or others, said Susan McCampbell, the Sheriff's Office official who oversees the jails. Young was not in such a unit.

Young's death is the latest in a string of controversies over the jailing of mentally ill people.

In the past, it has been estimated that 8 percent of the 3,500 or so inmates in Broward's three jails are taking mood-altering medications.

LY
ionville
88/67
Daytona
Rich.
80/72
ENTRY
121B/pc
65/53/pc
73/54/pc
66/53/pc
73/57/pc
88/59/pc

# LOCAL

Sun-Sentinel, Wednesday, September 18, 1996   Section B

③

# Ill inmate poorly monitored

## Woman's reaction to Thorazine led to death, official says

by the Broward Medical report, Chief Medical Examiner, Dr. Joshua Perper said ligation into the Aug. 21 death of Valerie Young, 22, points to the rendition of medical "inmates" at the Pompano detention center, which included the lack of psychiatric testing and inadequate care.

He cautioned, however, that he cannot tell by Young's case alone whether the problems were specific to her handling or whether they are widespread in the jail system.

"I'm not going to say that one bird brings the spring," Perper said.

He ruled Young's death an accident.

Perper said he will meet with county jail administrators next week to discuss his recommendations for medical procedures.

Susan McCampbell, director of corrections for Broward County, said that no inmate is denied medical, psychiatric or dental care at the jail. She also stressed that the jail, which contracts its health care from Emergency Medical Services Association in Plantation, is accredited by two groups.

She said she could not comment on the circumstances surrounding Young's death because of pending investigations by homicide detectives and the Sheriff's 11-member Professional Standards Committee.

Young was jailed on July 17 on a minor charge of trespassing for swimming in a hotel pool and for not showing up at a court hearing. She was often unruly and deemed anti-social, but not mentally incompetent, by jail workers.

Perper said Young suffered an adverse reaction to the Thorazine that was prescribed and administered on Aug. 20.

Later that night, jail workers

PLEASE SEE **INMATE** /4B

# INMATE

FROM PAGE 1B

## Woman's condition was not monitored properly, report says

found Young lethargic, vomiting, drooling fluids from her nose and mouth and suffering from low blood pressure. A nurse called the psychiatrist who ordered the Thorazine to ask what she should do.

The psychiatrist, who is identified only by the initials J.M. in the report, told the nurse to "keep an eye" on Young.

The nurse put Young in a bed in her cell, and corrections officers looked in on her from the cell door every half hour, Perper said, jotting notes in her records that she was "lying" or "resting in her bed."

The psychiatrist later said he thought the nurse understood that by "keep an eye on her, he meant that Young should be put in bed with her legs up and her blood pressure and vital signs monitored every half-hour, Perper said.

That psychiatrist's statement, Perper said, is not "reasonably convincing."

Young's vital signs were not checked again until she was found

on the floor of her cell during a routine medical check at 9:25 a.m. the next day.

Contrary to the notes made by jail staff that she was alive and resting, Perper said Young had probably been dead for hours.

Rescue workers who arrived minutes after Young was found qualified to deal with the nonviolent mentally ill. He said Perper's report vindicates him.

Young had been evaluated by the jail's psychiatric staff on several occasions and found mentally competent, Perper said. The detention center psychiatrist prescribed 100 milligrams of Thorazine at 11:30 a.m. the day before her death, saying it should be administered as needed if Young became agitated.

Young was cooperative, not agitated when she was given the drug, Perper said.

The nurse who administered it later told Perper she gave Young the shot because she noticed on the file that Young had been violent earlier in the day.

Perper said that Young's antisocial behavior and run-ins with the law this year — minor arrests that include shoplifting and trespassing — probably date back to a bout of encephalitis in 1995.

He said Young's extreme adverse reaction to Thorazine could also be attributed to the encephalitis.

Before that, he said, she was a "normal person."

minutes after Young was found told Perper she was already "ice cold." She was pronounced dead an hour later at the North Broward Medical Center.

Perper said that the Thorazine triggered or aggravated bronchopneumonia, which eventually killed her.

Jail worker notes cited in Perper's report paint a picture of an obese, anti-social woman who regularly screamed and banged on the door of her cell during her monthlong detainment. She also flooded her cell with water from her toilet and displayed other bizarre behavior. A bout of spinal meningitis years ago limited her ability to walk, so Young usually used a wheelchair.

One jail worker described her as "a management problem, not a psychiatric problem."

After an altercation in the doorway of her cell on July 22, Young was charged with six felonies, including battery on a law enforcement officer and resisting arrest with violence. Two depu-

ties were hurt when they attempted to break her fall from her wheelchair.

Chief Broward Assistant Public Defender Howard Finkelstein brought public attention to Young's death last month, calling it an example of how jails are un-

Finkelstein said Young's case should become a blueprint of how not to treat inmates.

"What I think is significant and dramatic in its impact is that everybody knew she was having a severe adverse reaction to Thorazine. Everybody saw that she was almost comatose, eyes closed, bodily fluids coming out of her nose, yet she was never taken to the hospital. She was never taken to the infirmary," Finkelstein said.

"Although I can say that this was not done with a bad heart or an evil intent, tell that to Valerie's mother," he said.

Betty Young, Valerie Young's mother, has sued the county, charging wrongful death and seeking a damage award, Finkelstein said.

Finkelstein said Young should never have been given Thorazine, a strong drug used to treat psychotic disorders.

Perper said he spoke to several psychiatrists at jails across the country, and some said the drug could be used to control violence in non-psychiatric patients. Other professionals were less than enthusiastic about it.

Sun-Sentinel, Tuesday, July 23, 1996     3B     c

## LOCAL EXTRA

# Nurse sues sheriff over jail treatment

## Woman said she got no clothes, medicine for her mental illness

**By LARRY KELLER**
Staff Writer

An Alabama nurse has sued Sheriff Ron Cochran and a company that provided medical care for jail inmates, claiming her mental illness went untreated after her arrest and she was left naked most of the time in a spartan cell.

"Nobody should be treated like that," said Dee Hinton-Terry, the nurse who filed the lawsuit. "It was like I had gone back to the 1700s."

The lawsuit, filed Friday in U.S. District Court, also names Prison Health Services and Dr. Charles Lopiccolo as defendants.

Lopiccolo could not be located. The other defendants had no comment on Hinton-Terry's claims, saying they had not yet seen the lawsuit.

Hinton-Terry had been visiting a friend in Fort Lauderdale in August 1993 when she got lost while driving in an early morning storm.

A Fort Lauderdale police officer said later that when he followed Hinton-Terry, who was speeding, she ran red lights and stop signs and tried ramming his car and the car of another police officer.

"I panicked," Hinton-Terry said Monday from her home near Birmingham.

Hinton-Terry, 41, who said she has been diagnosed as manic-depressive, has served on various mental health boards and councils in Alabama.

After Hinton-Terry was charged with fleeing a police officer, aggravated assault and other charges, she eventually was taken to the "forensics unit" at the North Broward Detention Center in Pompano Beach, which is run by the Sheriff's Office. That unit is where people arrested with mental problems initially are placed.

Hinton-Terry says she stayed there for nearly a month. She spent 24 hours a day in a cell with only a mattress, a sink with cold water and a toilet with no toilet paper. She was naked much of the time, given no toothbrush or drinking cup and made to eat meals with her hands, her lawsuit contends.

"It was horrible," Hinton-Terry said. "I wasn't allowed a shower but once or twice, and clothes only when I went to court."

Hinton-Terry's friends advised the jail staff of her mental illness and what medications she needed, her lawsuit states. So did Hinton-Terry. Hinton-Terry's needs were ignored until she finally was released to a private psychiatric center, she says. Given the proper medication, her condition stabilized there in five days.

"I think they should have made efforts to get her in a psychiatric hospital" immediately, said Hinton-Terry's attorney, Frederick A. Goldstein.

Goldstein said he doesn't have evidence that mistreatment of mental health patients at the jail is widespread, only that Hinton-Terry didn't get the care she required.

Prison Health Services was in the final weeks of a contract with the Sheriff's Office to provide medical care to Broward jail inmates at the time of Hinton-Terry's arrest. Another company now has that contract.

Hinton-Terry is seeking damages from the company, the doctor who saw her in the jail and Cochran, claiming deliberate indifference and negligence by all three.

B.) A medical condition may be serious if it "significantly affects an individual's daily activities." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992). which plaintiffs injuries were life threatening. ("chronic and substantial pain" indicates that a medical need is serious); Boretti v. wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991).

(needless pain is actionable even if there is no permanent injury); Dean v. Coughlin, 623 F.2d void " 623 F. Supp. 392, 404 (S.D.N.Y. 1985) ("conditions that cause pain, discomfort, or threat to good health " are serious). This is true because a chief purpose of the cruel and unusual punishments clause is to prevent the "unnecessary and wanton infliction of pain". Estell v. Gamble, 429 U.S. at 104 (citation omitted).

[I]ntentionally interfering with treatment once prescribed "is one of the forms of deliberate indifference cited by the Supreme court. Estell v. Gamble, 429 U.S. at 105, many decisions have held that failing or refusing to provide prescribed orders by physicians, constitutes deliberate indifference. As Wegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992); Hill v. marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992); Johnson v. hay, 931 F.2d 456, 461-62 (8th Cir. 1991); Boretti v. wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991); Johnson v. Hardin county, Ky.) 908 F.2d 1280, 1284 (6th Cir. 1990); Ellis v. Butler, 890 F.2d 1001, 1003-04 (8th Cir. 1989).

C.) The second circuit has recongnized that " systemic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable," constitute deliberate indifference to prisoners medical needs. Todaro v. ward, 565 F.2d 48, 52 (2d Cir. 1977).

The use of untrained personnel to make medical decisions is