UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6087-Civ-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

WILLIAM M. HICKS,                    :

    Plaintiff,                   :

v.                                   :           REPORT OF
                                                 MAGISTRATE JUDGE
SHERIFF KENNETH JENNE, et al.,:

    Defendants.                  :

FILED by _____ D.C.
MAG. SEC.

AUG - 9 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## I. Introduction

In this se civil rights action pursuant to 42 U.S.C. §1983,
the plaintiff William M. Hicks, who is now a state prisoner, filed
a pro se amended complaint about events that took place commencing
April 7, 1996, at the North Broward Detention Center ("NBDC") and
the Broward County Main Jail ("BCMJ") where he was previously con-
fined. Hicks raises the following claims in the Amended Complaint:

1. **Endangerment:**

   Jail officials failed to protect him
   from risk of harm at the hands of
   another inmate, named Norman Beech, who
   allegedly attacked and injured Hicks at
   the NBDC on April 7, 1996.[1]

2. **Denial of, and Delay in Access to Medical Care:**

   a. While Hicks was confined at the NBDC
      between April 7 and April 10, 1996, he
      was denied care for his medical needs,
      including care for the injuries which
      he sustained in the April 7, 1996
      attack;

   b. Upon his transfer to the BCMJ from the
      NBDC on April 10, 1996, Hicks
      immediately informed corrections
      officials at the BCMJ that he had
      serious medical needs and they refused
      to take him to the medical department;

---

[1]   Hicks also raises a claim that jail officials failed to have inmate
Beech prosecuted for assaulting him. That claim is frivolous, for reasons
discussed in Section III.B.3. of this Report, *infra*.

    c.   While Hicks was confined at the BCMJ from April 10, 1996 until June of 1996 (the month in which he alleges that he was transferred back to the NBDC), he was denied care for his medical needs, including injuries which he sustained in the April 7, 1996 attack, as a result of acts and omissions by both corrections and medical personnel; and

    d.   After Hicks was transferred back to the NBDC in June of 1996, medical and corrections officials continued to ignore his medical complaints, causing his defense attorney and the Circuit Judge in Hicks' state criminal proceedings to intervene on his behalf; and even then Hicks was afforded only medical consultations (which resulted in a recommendation that he be provided surgery), but he was given no actual care or treatment for his conditions and injuries because treatment/surgery would be costly.[2]

**3.**   **Denial of Due Process:**

The plaintiff alleges that he was denied due process when in June of 1996 he was suddenly transferred back to the NBDC and was placed in confinement under fraudulent disciplinary charges.

**4.**   **Denial of Access to the Courts:**

The plaintiff, without more, alleges simply that he was denied access to the Courts.

The defendants named in the amended complaint are: 1) Ken Jenne, Sheriff of Broward County; 2) Susan McCampbell, Director of the Broward Sheriff's Office ("BSO"); 3) Barbara Hanson-Evans, Medical Administrator at the NBDC; 4) Defendant John Doe #1, who

---

[2]   Plaintiff Hicks alleges in the amended complaint that Dr. Cline (who is named as a defendant in this case) allegedly admitted to him during his final medical consultation at the NBDC with Dr. Cline, that the defendants' collective decision "to deny plaintiff the needed medical treatment was unanimous based on the extreme cost said treatment would require," The plaintiff alleges that this is "a clear showing of the existence of a policy to deny costly medical treatment" on the part of EMSA, the corporate entity which is contracted to provide medical care to inmates at the BCMJ and NBDC.

was present at the time of the April 7, 1996 attack on the plaintiff at NBDC; 5) Defendant John Doe # 2, who was present at the time of the April 7, 1996 attack on the plaintiff at NBDC; 6) Defendant Stanley Holmes, Ombudsman for the BSO; 7) Dr. W.C. Davis, Chief Physician at the NBDC; 8) Dr. Uecker [sic] (Ucker), Night Shift Physician, at the BCMJ; 9) Emergency Medical Service Association ("EMSA"), the corporate entity contracted to provide medical care to inmates at the NBDC and BCMJ; 10) Dr. Cline, a dental physician employed by EMSA at the BCMJ; 11) Dr. G. Pearson, a dental physician employed by EMSA at the BCMJ; 12) Dr. Pearson, a dental physician employed by EMSA at the BCMJ; and 13) Dr. Trevor Weathors [sic] (Weathers), an Oral Surgeon at the BCMJ.

This Cause is before the Court upon four motions, filed by nine of the designated defendants:[3]

1.    A motion (DE# 49) to dismiss the action for lack of prosecution, filed jointly by EMSA Limited Partnership, Inphynet, Dr. Winthrop, Dr. Davis, Dr. Ucker, Dr. Trevor Weathers, Dr. Cline, and Dr. Pearson, based on their belief that the plaintiff filed to timely file his amended complaint;

2.    A motion (DE# 63), filed jointly by the defendants EMSA, Inphynet, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson, for dismissal of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), on grounds that:

    (a) the facts alleged fail to show deliberate indifference by the defendants to the plaintiff's constitutional rights;

---

[3]    By separate Order entered this date, the Marshal has been instructed to obtain personal service of the amended complaint upon the defendants Jenne and McCampbell, who did not waive service, and on whose behalf no appearances or responses to the amended complaint have been filed.

    No steps could be taken to obtain waivers of service of summons or personal service for the other two defendants in the case, who are identified in the amended complaint only as John Doe #1, and John Doe #2.

     (b) the amended complaint is barred by the statute of limitations;

     (c) the plaintiff has not complied with state statutory requirements which must be satisfied before bringing suit for medical negligence; and

     (d) the defendants are entitled to qualified immunity.

3.    A motion (DE# 71) incorporating two separate motions, a motion to dismiss (DE# 71-1), and a motion to strike (DE# 71-2), filed jointly by the defendants Hanson-Evans and Holmes, arguing that:

     (a) as to them, the amended complaint fails to state a claim upon which relief can be granted;

     (b) they are entitled to qualified immunity, to the extent that they are being sued in their individual capacities;

     (c) to the extent that they are being sued in their official capacities the complaint against them should be dismissed as being redundant, since such claims are in essence identical to official capacity claims against the Broward County Sheriff who is also named as a defendant in the lawsuit; and

     (d) to the extent that they are being sued in their official capacities for punitive damages, such claims for damages should be stricken, as punitive damages are not recoverable from the defendants in their official capacities.

The plaintiff Hicks filed a Response (DE# 68) in opposition to the motion to dismiss DE# 63; the defendants filed a reply (DE# 69) to Hicks' response; and Hicks subsequently filed a supplemental response captioned "Plaintiff's Supplemental Supporting Evidence to be Added to His Response to Defendant(s) Motion to Dismiss" (DE# 73) attached to which is the plaintiff's supplemental evidence: a copy of a rambling complaint from Hicks to the BSO Internal Affairs Department, which Hicks signed under penalty of perjury on May 18, 2001, complaining about his dissatisfaction with the acts and/or omissions of no less than 60 persons with whom he came in contact

while he was incarcerated at the NBDC and the BCMJ.[4]

Hicks has also filed a Response (DE# 74) in opposition to the motions to dismiss and to strike his requests for punitive damages DE#s 71-1 and 71-2.

## II. The Standard of Review

An action brought under Title 42 U.S.C. §1983 requires the deprivation of a federally protected right by a person acting under color of state law. See: 42 U.S.C. §1983; Golden State Transit Corp. v. City of Los Angeles, 493 U.S. (1989); Polk County v. Dodson, 454 U.S. 312 (1981); Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11 Cir. 1985). This Court must hold the allegations of a pro se complaint to a less stringent standard than the formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519 (1972), and such a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines, supra; Conley v. Gibson, 355 U.S. 41 (1957); Cannon v. Macon County, 1 F.3d 1558, 1565 (11 Cir. 1993). Upon consideration of a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), the allegations of the complaint must be construed in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Cannon, supra.

---

[4]    In accordance with the guiding precept that pro se efforts are to be treated with liberality, Haines v. Kerner, supra, a court in the interest of justice may be constrained in some instances to overlook formal rules of procedure. One such situation occurs when a pro se plaintiff includes factual assertions in later pleadings that were not alleged in the complaint. In adjudicating a motion to dismiss under such circumstances, courts will generally construe the complaint to include all of the plaintiff's factual allegations. See: LeGrand v. Evan, 702 F.2d 414, 416 n.3 (2 Cir. 1983)(factual allegations in memorandum of law considered part of pro se complaint); Langert v. Festa, 563 F.Supp. 692, 696 (E.D.N.Y. 1983)(same); Alexander v. Coughlin, No. 90 Civ. 3231, 1991 WL 150674 (E.D.N.Y. July 26, 1991)(same). The Court may therefore consider the additional allegations against the defendants included in the plaintiff*s supplemental response, DE# 73.

It is well settled, however, that bare, conclusory allegations are not enough, and that a complaint which does not state a claim sufficient in context to affirmatively indicate that the plaintiff is entitled to relief cannot withstand a motion to dismiss. Sufficient detail must be given so that the defendant and the Court can obtain a fair idea of what the plaintiff is complaining about, and can see that there may be some legal basis for recovery. Fullman v. Graddick, 739 F.2d 553, 556-57 (11 Cir. 1984). The Eleventh Circuit stated the applicable standard as follows:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. (Citations omitted).

Fullman v. Graddick, supra at 557.

### III. Discussion

Before proceeding to the plaintiff's claims and the defendants' pending motions, it must be stressed that plaintiff Hicks has alleged in the amended complaint that the beating which he received at the hands of inmate Norman Beech took place at the NBDC on April 7, 1996. Exhibits attached to plaintiff Hicks' response (DE# 74) in opposition to the motions by defendants Hanson-Evans and Holmes (DE# 71-1 and 71-2), however, suggest that the incident involving plaintiff Hicks and inmate Norman Beech (which is the starting point for the events giving rise to the claims in this case), may instead have occurred on February 9, 1996. This may or may not call into question the correctness of other dates alleged by the plaintiff in the amended complaint.

The discussions in this report presume that the dates of the events alleged by the plaintiff in the amended complaint are cor-

rect, as allegations in the pro se complaint must be taken as true for purposes of the pending motions to dismiss. Conley v. Gibson, supra; Powell v. Lennon, 914 F.2d 1459, 1463 (11 Cir. 1990) (citing Luckey v. Harris, 860 F.2d 1012, 1016 (11 Cir. 1988).

## A. The Motion to Dismiss for Lack of Prosecution (DE# 49)

The defendants' motion to dismiss for lack of prosecution (DE# 49), on the ground that the amended complaint allegedly was not filed on time, should be denied. By Court Order the amended complaint was due to be filed by November 30, 2000 (Order, DE# 31). The amended pleading, which was dated, signed, and Notarized on November 9, 2000, is deemed to have been timely filed.[5]

## B. The Motions to Dismiss (DE# 63) and (DE# 71-1)

The gravamen of the amended complaint consists of two claims: 1) endangerment (failure to protect the plaintiff William Hicks from attack by Norman Beech); and 2) denial of medical care.

Hicks also alleges denial of due process in conjunction with his placement in confinement, and denial of access to the courts.

Only the unserved defendants (Doe #1, Doe #2, Jenne and McCampbell), and the defendants Hanson-Evans and Holmes who filed the last motion to dismiss (DE# 71-1), are named in relation to the

---

[5]    The principle that the date a pro se prisoner's pleading is file stamped by the clerk of court is not the date of filing is well settled.  In Houston v. Lack, 487 U.S. 266 (1988) the Supreme Court established the principle that a pro se petitioner's notice of appeal is deemed filed on the date that it is delivered to prison authorities for mailing.  More recently, in Garvey v. Vaughn, 993 F.2d 776 (11 Cir. 1993) the Eleventh Circuit extended the Houston v. Lack principle to Federal Tort Claims Act and 42 U.S.C. §1983 pro se prisoner complaints, holding that such complaints are deemed to be filed when they are delivered to prison authorities for mailing.

claims of endangerment, confinement without due process, and denial of access to the courts.

However, defendants who joined in each of the motions to dismiss (DE#s 63 and 71-1) are named in connection with the claim of denial of medical care. Moreover, some defenses raised by defendants in the motion to dismiss DE# 63 are also raised by the defendants in the other motion to dismiss DE# 71-1.

Therefore, rather than structuring the remainder of this Report based on one separate discussion for the motion to dismiss DE# 63, and a separate discussion for the motion to dismiss DE# 71-1, or in the alternative a separate discussion for each defendant, the remainder of this Report will be structured based on the claims raised, and defenses asserted.

Defenses which provide no basis for relief, and claims which are subject to dismissal will be discussed first, leaving discussion of claims that will as to some defendants survive the motions to dismiss for last (i.e., the endangerment and medical claims).

1. The Defense Raised in DE# 63, that the Amended Complaint Should be Dismissed on the Ground that the Four Year Statute of Limitations Had Run Before the Pleading was Filed

The defendants' argument, in DE# 63, that the amended complaint against them is time barred provides no basis for relief. They argue that the events in this case took place "on or before April 10, 1996," and that since the amended complaint was not filed until November 9, 2000, the applicable four statute of limitations had run before it was filed. This argument, however, ignores the facts that: (a) the defendants in the amended complaint were named

in the original pleading which was filed with the Clerk on January 18, 2000, less than four years after the first event alleged (which allegedly occurred on April 7, 1996)[6], and (b) the claims of endangerment and denial of medical care alleged in the amended complaint were previously alleged against the defendants in the original complaint.[7]

### 2. The Allegations of Denial of Due Process in Conjunction with Hunt's Confinement Status, and the Allegations of Denial of Access to the Courts

The plaintiff's claims concerning due process and his confinement status, and concerning access to the courts are raised against defendants Jenne, McCampbell, Hanson-Evans, and Holmes (Amended Complaint, pp. 14 and 16). The allegations relating to those alleged deprivations are insufficient to state a claim upon which relief can be granted, and therefore, as to those claims, for the reasons discussed below, the Motion to Dismiss (DE# 71-1) should be granted as to defendants Hanson-Evans and Holmes; and as to the unserved Defendants (Jenne and McCampbell) those claims should be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for

---

[6] As noted, <u>supra</u>, the April 7, 1996 date, is presumed to be true/correct, however, even if it were to be assumed as suggested in the plaintiff's exhibits that the attack upon him by inmate Beech took place on February 9, 1996, rather than April 7, 1996, the claims would still not be time barred. If the attack took place on February 9, 1996, then the earliest event alleged would have been on that date, which was less than four years prior to the date on which the initial complaint in this case was filed (i.e., less than four years prior to January 18, 2000).

[7] As to the other two claims raised by the plaintiff in the amended complaint (denial of due process in relation to placement of the plaintiff in confinement, and denial of access to the courts), the amended complaint is subject to dismissal on grounds apart from expiration of the four year period of limitations. Therefore no discussion of this time-bar defense raised by the defendants is necessary in conjunction with disposition of those claims (<u>See</u> Section III.B.2. of this report).

failure to state a claim upon which relief may be granted.[8]

### a. Due Process/Confinement

In the amended complaint the plaintiff alleges that he was denied due process in conjunction with his placement in segregation. (DE# 53, p. 16). In relation to this claim the plaintiff contends that defendants Jenne, McCampbell, Hanson-Evans, and Holmes are responsible for this alleged denial of due process, however, there are no specific factual allegations whatsoever against any of those defendants as to this claim (Id.).

Earlier in the amended pleading, the plaintiff alleges, without any factual allegations against any specific defendant, that in June of 1996, upon his sudden transfer to the NBDC from the main jail, he was "placed in confinement under fraudulent disciplinary charges," and remained in confinement for six months (Id. at p. 14).

---

[8]    On April 26, 1996, the Prison Litigation Reform Act of 1995 ("PLRA") was signed into law, modifying the requirements for proceeding *in forma pauperis* in federal courts. Under the April 26, 1996 enactments, 28 U.S.C. §1915 was amended.  It reads in pertinent part, as follows:

    Sec. 1915 Proceedings in Forma Pauperis

                    *    *    *

        (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
                    *    *    *

        (B) the action or appeal --

                    *    *    *

        (i)  is frivolous or malicious;

        (ii) fails to state a claim on which relief may be granted...

The plaintiff's responsive filings (DE#s 68 and 73) contain no factually specific allegations against these defendants to cure this defect in the amended complaint with regard to the due process/confinement claim.[9]

In short, the claim against Jenne, McCampbell, Hanson-Evans, and Holmes, alleging denial of due process in relation to the plaintiff's confinement status, is wholly conclusory, and as such is subject to dismissal. Fullman v. Graddick, supra.

### b. Access to the Courts

At page 16 of the Amended Complaint, the plaintiff further alleges that Jenne, McCampbell, Hanson-Evans, and Holmes are liable to him under §1983 because he "was denied access to the Courts." (DE# 53, p. 16). There are no facts whatsoever against these defendants to support this claim, either in the amended complaint, or the plaintiff's responsive pleadings (DE#s 68 and 73),[10] and as such his conclusory claim of denial of access to the courts should be dismissed. Fullman v. Graddick, supra.

---

[9]    The Response DE# 68 does not address the claim; and the plaintiff's Exhibit attached to DE# 73 (the Internal Affairs Complaint submitted by him to the BSO on May 21, 2001, which is broken into sixty sections - one section for each of 60 persons about whom he complains in that document), contains in conjunction with the due process/confinement claim no allegations against Jenne (DE# 73, Exhibit, §1, pp. 5-6), McCampbell (Id., §2, pp. 6-7), or Hanson-Evans (Id. §50, pp. 44-45), and contains only a conclusory allegation against Holmes (Id. §51, pp. 45-46) that "Mr. Holmes refused to end all false confinement(s) and disciplinary report(s) given as well knew of over ½ year straight confinement."

[10]    The plaintiff's claim in this case is not accompanied by factual allegations which satisfy the requirements for establishing a claim of denial of access to the Courts under the landmark Supreme Court cases of Lewis v. Casey, 518 U.S. 343 (1996) and Bounds, Correction Commissioner v. Smith, 430 U.S. 817 (1977), and other cases, which in pertinent part require that the plaintiff must show prejudice from the alleged constitutional violation. See: Lewis v. Casey, supra; Chandler v. Baird, 926 F.2d 1057, 1062-63 (11 Cir. 1991).

### 3. Endangerment

It is well settled that the failure of prison officials to control or separate prisoners who endanger the physical safety of other prisoners may, under certain conditions, constitute an Eighth Amendment deprivation; however, the constitutional rights of inmates are not violated every time one inmate is injured as a result of another's actions. Smith v. Wade, 461 U.S. 30 (1983); Zatler v. Wainwright, 802 F.2d 397, 400 (11 Cir. 1986); Stokes v. Delcambre, 710 F.2d 1120, 1124, (5 Cir. 1983); Jones v. Diamond, 636 F.2d 1364, 1374 (5 Cir. 1981); Gates v. Collier, 501 F.2d 1291, 1308-10 (5 Cir. 1974). In a Section 1983 suit against prison officials based on a claim of cruel and unusual punishment, a showing of conscious or callous indifference to the prisoner's rights is required. There must be deliberate indifference to state a claim under §1983, negligence is not enough. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

Similarly, a jail official's conduct in failing to provide for the personal security of an inmate/pretrial detainee under his care can rise to the level of a constitutional deprivation. In this case the plaintiff was a pretrial detainee at the time of the alleged failure to protect him. In the context of a detainee's claim of endangerment, the standard is the same. See: Bell v. Wolfish, 411 U.S. 520, 535 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11 Cir. 1985); Redman v. County of San Diego, 896 F.2d 362, 364-66 (9 Cir. 1990). See also Preval v. Reno, 57 F.Supp.2d 307 (E.D.Va. 1999) (holding that claims concerning conditions of confinement raised by an INS detainee, who was not serving a sentence, fell under the Fourteenth Amendment's due process clause, not the Eighth Amendments's prohibition of cruel and unusual punishment; and

noting that the plaintiff Preval's rights as a detainee were "more akin to those of a pre-trial detainee than a prisoner").

For officials to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1 (1992). Thus, for a claim based on an alleged failure to prevent harm, an inmate must show that he is incarcerated under conditions that pose a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, (1994). "[T]he protection [an inmate] is afforded against other inmates" is a "condition of confinement" subject to scrutiny under the Eighth Amendment. Wilson, supra, 501 U.S. at 303. Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, supra, 511 U.S. at 834. In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. Wilson v. Seiter, supra, 501 U.S. at 302-03; Estelle v. Gamble, 429 U.S. 97, 106 (1976);

Traditionally, applicable authorities have described "deliber-ate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson, supra; Estelle, supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11 Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety.  Whitley v. Albers, 475 U.S. 312 (1986).

Thus, in order to state a claim of cruel and unusual punishment under §1983, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by institutional officials. Davidson v. Cannon, supra; Brown v.

13

Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988); Williams v. Bennett, supra. Only such a degree of disregard for the inmate's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle v. Gamble, supra, 429 U.S. at 106; Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir. 1986); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11 Cir. 1985); Williams v. Bennett, supra 689 F.2d at 1380.

The Supreme Court has emphasized that Eighth Amendment liability requires a showing that the responsible official was subjectively conscious of risk to the inmate:

> We hold...that a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.

Farmer v. Brennan, supra, 511 U.S. at 837;    see also, LaMarca v. Turner, 995 F.2d 1535, 1536 (11 Cir. 1993).

Thus there must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. See: Zatler v. Wainwright, supra, 802 F.2d at 401. See also: LaMarca v. Turner, supra, 995 F.2d at 1536. "Personal participation ... is only one of several ways to establish the requisite causal connection," Zatler v. Wainwright, supra at 401,

14

and thus, personal participation is not the <u>sine qua non</u> for the defendants to be found personally liable. <u>Swint v. City of Wadley, Ala.</u>, 5 F.3d 1435, 1446 (11 Cir. 1993), <u>opinion modified on other grounds</u>, 11 F.3d 1030 (11 Cir. 1994). The defendant official must, however, ignore a substantial risk of serious harm to the inmate. <u>Wilson v. Seiter</u>, and <u>Estelle v. Gamble</u>, <u>supra</u>.

The plaintiff has alleged that on April 7, 1996, he was locked in a recreation yard with other inmates, including inmate Beech, and that while he was lying on his back on one side of the yard with a towel over his face for protection from the sun, he was suddenly attacked by inmate Beech. The plaintiff names defendants Doe #1, Doe #2, Jenne, McCampbell, Hanson-Evans, and Holmes in conjunction with a claim that jail officials failed to protect him from risk of harm. The only specific factual allegations concerning this claim are that the defendants Doe #1 and #2 locked the plaintiff in the recreation yard with others, and then went inside to a recreational supply room, leaving the inmates in the yard entirely unsupervised. The plaintiff alleges that then, after the attack upon him commenced, the officers Doe did not show up until the violent attack on the plaintiff had continued for 7 to 8 minutes. Once the Officers Doe did respond, they allegedly verbally ordered inmate Beech to stop his attack on plaintiff Hicks, but did not, according to the plaintiff, initially attempt to physically stop Beech's attack. When plaintiff Hicks tried to move behind Officer Doe #1 for protection, Beech then turned his aggression toward both Officers Doe, knocking Offier Doe # 2 to the floor. At that time Officer Doe #1, who was still on his feet, grabbed the plaintiff and used him "as a human shield" to protect himself from inmate Beech's aggression, and allowed the plaintiff to "once again take the full force of Detainee Norman Beech's violent attack." While Officer John Doe #1 was still using the plaintiff Hunt to

15

shield himself from Beech, Officer Doe #2 attempted to radio for help, but his radio "was disfunctional," and he was unable to summon help. Only then did Officer Doe #2 unlock the door and let the plaintiff escape to safety.

The plaintiff further alleges that he went to the nurse's station for medical attention, and an unnamed nurse, who is not designated as a defendant in the lawsuit, started cleaning the blood from the plaintiff and while doing so said to the plaintiff, "I hope this isn't from Norman Beech, he get's [sic] — when I'm late giving him his medication." The Nurse "finished cleaning and taping the plaintiff's facial injuries" and he was then escorted to the NBDC medical department.

The allegations of the amended complaint are sufficient to state claims against the defendants John Doe #1 and John Doe #2 for endangerment. The defendants Jenne, McCampbell, Hanson-Evans, and Holmes are not alleged to have been present during the attack. There also are no allegations that inmate Beech and plaintiff Hicks had any prior history of confrontation, and there is nothing to suggest that Jenne, McCampbell, Hanson-Evans, and Holmes were on notice that inmate Beech specifically posed a risk of harm to Hicks. The plaintiff alleges, however, that there is a causal connection between the defendants Jenne, McCampbell, Hanson-Evans, and Holmes and the alleged attack because they allegedly knew that inmate Beech was a "violently disturbed offender" and he should not have been locked in the recreation yard unsupervised with other detainees. The alleged comment about inmate Beech's behavior when he was not timely medicated, which the plaintiff alleges was made by the nurse who treated his cuts after Beech's attack, suggests, as the plaintiff alleges, that the defendants were on notice that Beech posed a risk of harm to others.

16

As to this claim, it cannot be determined at this juncture whether the defendants are entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz, 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996). The determination as to whether defendants Hanson-Evans and Holmes may be entitled to qualified immunity could be made only after further factual development of the case.

Therefore, as to the endangerment claim, the motion to dismiss by defendants Hanson-Evans and Holmes (DE# 71-1) should be denied.

The plaintiff Hicks has also raised a frivolous claim which is related to the attack upon him by inmate Beech. Hicks contends that his constitutional rights were abridged because corrections officials did not take steps to have Beech prosecuted for assault in relation to his attack on Hicks. This claim, however, is subject to dismissal pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for the following reasons.

Prosecutorial discretion is not a constitutional right of the victim of a crime; and plaintiff Grant, as a private citizen, cannot compel a criminal prosecution. See: Community for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1202 (D.C. Cir. 1986), and cases cited therein.

The power and authority to prosecute, and absolute discretion whether to prosecute, are vested by the Constitution exclusively in the Executive Branch. See In Re Sealed Case, 838 F.2d 476, 488

17

(D.C. Cir. 1988); <u>Community for Creative Non-Violence v. Pierce</u>, 786 F.2d 1199, 1201 (D.C. Cir. 1986). Under Florida's Constitution, the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute. <u>State v. Barrett</u>, 531 So.2d 338, 341-42 (Fla. 1988) (citing Art. II, @ 3, Fla. Const.; State v. Cain, 381 So.2d 1361 (Fla. 1980); and <u>Johnson v. State</u>, 314 So.2d 573 (Fla. 1975)). See <u>Fla. Stat.</u> §27.02 (duties of the State Attorney before the Court include the duty to appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal in which the state is a party, except as provided in <u>Fla. Stat.</u> §39, in cases involving juveniles).

Moreover, when reviewing the exercise of that power, the judicial authority is "at its most limited," <u>Community for Creative Non-Violence v. Pierce</u>, <u>supra</u> at 1201, and is non-existent in cases such as this one in which "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of an-other," <u>Id</u>., (citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973)).

   4. <u>Claims of Deliberate Indifference to the Plaintiff's</u>
      <u>Serious Medical Needs at the NBDC and BCMJ, and</u>
      <u>of Delay in Access to Medical Care at the BCMJ</u>

In the prison context, whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. A Constitutional claim of denied or delayed medical care requires a showing of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs or the

unnecessary and wanton infliction of pain. Estelle v. Gamble, 429
U.S. 97 (1976); Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990).


When, as in this case, the plaintiff was a pretrial detainee
at the time of the events alleged, his claims, which would lie
under the Eighth Amendment prohibition against cruel and unusual
punishment if he had been a convicted prisoner, arise instead from
the Due Process Clause of the Fourteenth Amendment. Bell v.
Wolfish, 441 U.S. 520, 535 (1979); Hamm v. DeKalb County, 774 F.2d
1567, 1571-74 (11 Cir. 1985). In the context of a pretrial detainee
claim of denial of medical care, the standard is the same.   Id.


To prevail on such a claim a plaintiff must show causation, in
addition to proving the infliction of unnecessary pain and
suffering, and deliberate indifference.[11] Negligence is not enough,[12]
and a mere difference of opinion between an inmate and prison
medical staff concerning his diagnosis and course of treatment does

---

[11]   In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court
held that to prevail upon an Eighth Amendment claim for damages in a civil rights
suit, a plaintiff must prove three elements: 1) the infliction of unnecessary
pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) deliberate
indifference on the part of the defendant(s), Wilson v. Seiter, 501 U.S. 594
(1991); and 3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir.
1982).

[12]   For medical claims the standard is met only where egregious conduct
is present, as in instances where the prisoner is subjected to repeated examples
of delayed, denied, or grossly incompetent or inadequate medical care; prison
personnel fail to respond to a known medical problem; or prison doctors take the
easier and less efficacious route in treating an inmate. See, e.g., Waldrop v.
Evans, 871 F.2d 1030, 1033 (11 Cir. 1989) (summary judgment precluded where
cessation of anti-psychotic medication resulted in repeated suicide attempts and
self-mutilation); Rogers v. Evans, 792 F.2d 1052, 1058-59 (11 Cir. 1986) (suicide
following misdiagnosis and mistreatment of psychosis). On the other hand, it is
well settled that a showing of mere negligence, neglect, or medical malpractice
is insufficient to recover on a §1983 claim. A showing of conscious or callous
indifference is required. Estelle v. Gamble, supra, 429 U.S. at 104-06; Daniels
v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11
Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

not rise to the level of a constitutional deprivation.[13]

The standard may be met when prison officials have prevented an inmate from receiving recommended treatment or an inmate is denied access to medical personnel capable of evaluating the need for treatment, Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985), or necessary medical treatment has been delayed for non-medical reasons. See: Ancata, supra, 769 F.2d at 704 (citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983), and Archer v. Dutcher, 733 F.2d 14, 17 (2 Cir. 1984)).

In this case, the plaintiff has alleged that in addition to lacerations that bled, he suffered other serious injuries including bone fractures in his mandible and skull.

He alleges that on the day of the attack (April 7, according to the plaintiff) he arrived at the NBDC Medical Department, and Dr. Davis initially refused to take x-rays, and then after relenting to the plaintiff's demands had an argument with the x-ray technician who viewed the films and insisted that bone fracture was

---

[13]    The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

visible. Davis informed the plaintiff that there were no serious injuries, became belligerent when the plaintiff insisted on talking to the x-ray technician and asked if he could see the x-ray films, and ordered no medications for the plaintiff, who alleges that his injuries caused him great pain.

On the day after the attack (April 8, according to the plaintiff), defendant Holmes encountered the plaintiff in the day room. Holmes stood in front of the plaintiff, and "started laughing at plaintiff's numerous injuries." Holmes then refused the plaintiff's request that he be taken to the medical department for treatment, and laughed at him when he asked for medical attention. The plaintiff Hicks telephoned his family, and he was told that they had already been informed about the attack and were told by Dr. Davis that Hicks had no broken bones and received no serious injuries.

The plaintiff alleges that on the third day after the attack (April 10, according to him), he was transferred to the BCMJ and placed in open population. Every day for several months he requested medical assistance, and his requests were denied and ignored. Then in June of 1996, he was transferred back to NBDC where he continued to file requests for medical care. His requests were directed to defendants McCampbell, Hanson-Evans, Holmes, and Davis. Finally, the plaintiff was forced to seek assistance in obtaining medical care through the attorney representing him in state criminal proceedings. The plaintiff, through counsel, petitioned the state Circuit Court for an Order requiring that medical care be provided, and only then were consultations given to the plaintiff by Drs. Ucker, Weathers, Cline and G. Pearson. These, however, were only consultations resulting in diagnosis. The plaintiff alleges that "no actual care or treatment was ever supplied to plaintiff." He was diagnosed as having suffered, *inter*

*alia*, bone fractures in his jaw and skull. The plaintiff repeatedly asked for treatment including surgery which was recommended by Dr. Ucker, but "the needed medical treatment was denied." The plaintiff alleges that the defendant medical staff (Dr. Davis, Dr. Ucker, Dr. Weathers, Dr. Cline, Dr. Pearson, and Dr. G. Pearson) and defendants Jenne, McCampbell, Hanson-Evans, and Holmes, collectively, made a decision that he would not be provided with the needed treatment and surgery, based on "the extreme cost of said treatment." The plaintiff alleges that Dr. Cline personally told him during his last visit with Cline, that the decision not to provide the plaintiff with the needed medical treatment (surgery) was a unanimous decision on the part of all the defendants being sued for medical indifference [defendants Jenne, McCampbell, Hanson-Evans, Holmes, Davis, Ucker, Weathers, Cline, Pearson, G. Pearson, and EMSA], (see pages 15 and 19 of the amended complaint), and that the reason for denial of the care was the high cost of providing the care, based on a policy that the treatment, although it was recommended by Dr. Ucker, would not be provided because it was costly (see pages 15, 17 of the amended complaint).

These allegations, taken as true, are sufficient to state a claims for delay and providing access to medical care, and denial of care for serious medical needs, which are cognizable under 42 U.S.C. §1983, and for such claims to survive the defendants' motions to dismiss.

The defendants EMSA, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson argue in their motion to dismiss (DE# 63), as do the defendants Hanson-Evans and Holmes in their motion to dismiss (DE# 71-1), that they are entitled to qualified immunity. The determination whether one or more of these defendants may be entitled to qualified immunity on the claims of denial of access to

medical care, and denial of care, could be made only after further development of the case.

The defendants EMSA, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson argue in their motion (DE# 63) that the plaintiff has failed to comply with certain requirements under Florida law before bringing suit. This argument fails because this is an action with federal claims pursuant to 42 U.S.C. §1983, alleging denial of medical care, not a state tort action for medical negligence.

Therefore, as to the plaintiff's medical claims, the motion to dismiss (DE# 63) should be denied as to the defendants EMSA, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson, and the motion to dismiss (DE# 71-1) should be denied as to Hanson-Evans, and Holmes.

C. The Motion to Strike Punitive Damages (DE# 71-2)

The defendants Hanson-Evans and Holmes have filed a motion (DE# 71-2) in which they argue that to the extent that they are being sued in their official capacities, the plaintiff's requests for punitive damages must be stricken.

A claim against a governmental official in his official capacity is a claim against the governmental entity by which he is employed. Kentucky v. Graham, 473 U.S. 159, 165 (1985).

The defendants in this case correctly argue that as local governmental employees, they are immune from punitive damages when sued in their official capacities under §1983. Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Colvin v. McDougall, 62 F.3d 1316 (11 Cir. 1995); Morris v. Crow, 295 F.Supp. 295, 299 (M.D. Fla. 1993). The motion to strike (DE# 71-2) should be granted.

## IV. <u>Conclusion</u>

It is therefore recommended that: 1) as to the claims of confinement without due process, and denial of access to the Courts, the amended complaint be dismissed as to the defendants Jenne and McCampbell, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted; 2) the claim that corrections officials failed to have inmate Beech prosecuted under state criminal law for the attack upon inmate/plaintiff Hicks be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii); 3) the motion to dismiss for lack of prosecution (DE# 49) be denied; 4) the motion to dismiss by the defendants EMSA, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson (DE# 63), be denied; 5) the motion to dismiss by the defendants Hanson-Evans and Holmes (DE# 71-1) be granted as to both defendants on the claims of confinement without due process, and denial of access to the Courts, and otherwise be denied; 6) the motion by the defendants Hanson-Evans and Holmes to strike the requests against them for punitive damages, to the extent that they are being sued in their official capacities (DE# 71-2) be granted as to both defendants; 7) the case remain pending solely on the plaintiff's medical claims, as to the defendants EMSA, Davis, Ucker, Weathers, Cline, Pearson, and G. Pearson, Jenne, McCampbell, Hanson-Evans, and Holmes; and on the plaintiff's claim of endangerment, as to the defendants John Doe #1, John Doe #2, Jenne, McCampbell, Hanson-Evans, and Holmes; and 8) defendants Bechard, Robinson, Locket, Garrison, Watson, Schwartz, Roberts, Wimberly,

Inphynet, Kevin J. RN, Poitier, Corwin, and Parish, who were named in the initial complaint, but not in the amended complaint, be dismissed from the case.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: August 9, 2001

_____
UNITED STATES MAGISTRATE JUDGE

cc:  William M. Hicks, Pro Se
     DC# 664670
     Everglades Correctional Institution
     1601 S.W. 187th Avenue
     P. O. Box 949000
     Miami, FL 33194-9000

     Summer Marie Barranco, Esquire
     Purdy, Jolly, & Giuffreda, P.A.
     1322 S.E. Third Avenue
     Ft. Lauderdale, FL 33316

     Joel L. Schulman, Esquire
     David R. Cassety, Esquire
     O'Connor, Chimpoulis, Restanti,
       Marrero & McCallister, P.A.
     2801 Ponce de Leon Blvd., 9th Floor
     Coral Gables, FL 33134

     E. Bruce Johnson, Esquire
     Johnson, Anselmo, Murdoch,
       Burke & George, P.A.
     790 East Broward Blvd., Suite #400
     P. O. Box 030220
     Fort Lauderdale, FL 33303-0220