# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

WILLIAM M. HICKS,

        Plaintiff,

vs.

KEN JENNE, SUSAN McCAMPBELL,
BARBARA HANSON-EVANS, STANLEY
HOLMES, JOHN DOE'S #1 and #2,
DR. W.C. DAVIS, DR. UCKER,
DR. TREVOR WEATHORS, DR. CLINE,
DR. PEARSON, DR. G. PEARSON,
EMERGENCY MEDICAL SERVICES ASSOC.,

        Defendants.

_____/

Case No. 00-6087-CIV-Dimitrouleas



FILED by ___ D.C.

**DEC - 3 2001**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## DEFENDANTS SHERIFF, HANSON-EVANS AND HOLME'S MOTION FOR SUMMARY JUDGMENT (AND MEMORANDUM OF LAW)

     The Defendants, KEN JENNE, Sheriff of Broward County, BARBARA HANSON-EVANS and STANLEY HOLMES, through their undersigned attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this their Motion for Final Summary Judgment in their favor, and as grounds therefore would show as follows:

     1.     This is an action brought by Plaintiff, an incarcerated pro se individual, pursuant to Title 42 U.S.C. §1983, against these Defendants.[1]  The Amended Complaint alleges that while Plaintiff was an inmate in the North Broward Detention Center, he was attacked by a fellow inmate

---

     [1]The Plaintiff also names Broward County Sheriff's Office Director Susan McCampbell, John Doe #1, John Doe #2, Emergency Medical Services Assoc. (EMSA) as well as several doctors and dentists as defendants.  As these individuals/entities have either not been served in this action or have separate counsel, this motion is not being filed on their behalf.

1



and sustained serious injury.  He further alleges that thereafter he received inadequate medical care for his injuries.[2]

2.      To the extent the Defendants are named in their individual capacities[3], they are entitled to qualified immunity from suit.  The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Defendants Answer/Defenses dated September 4, 2001 raises the defense of qualified immunity.

3.      To the extent the Defendants are named in their official capacities, which in essence is a claim brought against the governmental entity of the Sheriff of Broward County, there is no evidence that the Plaintiff's constitutional rights were violated or that a custom, policy, practice or procedure of the Sheriff caused the Plaintiff's constitutional rights to be violated.

4.      The evidence in the record and the exhibits attached hereto establish that there is no genuine issue as to any material fact to be tried regarding Plaintiff's causes of action as alleged.

WHEREFORE, the Defendants Sheriff Jenne, Hanson-Evans and Holmes respectfully request entry of final summary judgment in their favor.

_____

[2]The Amended Complaint also contained allegations that the Plaintiff was denied his 5th and 14th Amendment right to due process, that he was subjected to cruel and unusual punishment in contravention of the 8th Amendment and that he was denied access to the courts. These claims were dismissed by Order of the Court dated August 24, 2001.

[3]The Defendant Sheriff Jenne is named in his official capacity only. See Amended Compl. at page 5/¶2; Plaintiff's depo. Part 1/ pg. 109/lines 18-21.

Further, and in support of this Motion for Summary Judgment, these Defendants would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

### FACTS[4]

On August 7, 1995 Plaintiff was arrested for several crimes including first degree murder and was subsequently booked into the Broward County jail facility. (See Amended Compl. at pg. 7/¶1; Plaintiff's depo. Part 1/pg. 6/line 1; pg. 24/line 6). At some point thereafter, he was transferred to the North Broward Detention Center (NBDC). Plaintiff had a long history of mental illness (see e.g. Plaintiff's depo. Part 1/pg. 16/line 10), was taking psychiatric medication at that time (see plaintiff's jail medical records attached to Plaintiff's depo.) and was housed in the NBDC's psychiatric building. (see Plaintiff's depo. Part 1/pg. 29/line 18).

On February 9, 1996 at approximately 1:30 p.m., while in the recreation yard at NBDC, Plaintiff Hicks was involved in an altercation with another inmate, Norman Beech. During the incident, he was repeatedly hit by inmate Beech. (See plaintiff's jail medical records attached to Plaintiff's depo. and Plaintiff's depo. Part 1/pg. 29, et. seq.). Plaintiff had not had any previous problems with inmate Beech (see Plaintiff's depo. Part 1/ pg. 19/lines 16-25) and prior to the incident, he had no reason to know that he was going to be struck by inmate Beech. (Plaintiff's depo. Part 1/ pg. 34/lines 7-21). During the altercation, Plaintiff Hicks sustained injury and was seen at

---

[4]It is undersigned counsel's understanding that the Plaintiff's deposition transcript (two parts) and Plaintiff's jail medical records which are a Composite Exhibit thereto have been filed by co-defendants' counsel. To avoid overburdening the Court file as these documents are voluminous, these defendants will simply provide references to them herein, in lieu of annexing additional copies hereto.

approximately 1: 40 p.m. by a nurse who cleaned and taped his facial cut. Approximately ten minutes later, he was escorted to the facility's medical department by a Broward County Sheriff's office corrections officer for medical evaluation and treatment. (See plaintiff's jail medical records attached to Plaintiff's depo. and Plaintiff's depo. Part 1/p. 47/lines 16-23). That same day, Plaintiff was seen by Dr. Winthrop C. Davis, the staff physician at NBDC who sutured his facial injury closed and had several x-rays taken of his facial area. (See plaintiff's jail medical records attached to Plaintiff's depo. and Plaintiff's depo. Part 1/p. 47 et seq.). Thereafter, Plaintiff received follow-up medical care for his complaints by several dentists, nurses and doctors, including an oral surgeon who examined him, prescribed him numerous medications, including pain medications, ordered x-rays and a soft diet. (See plaintiff's jail medical records attached to Plaintiff's depo. and Exhibit "A"). Neither Defendant Hanson-Evans nor Holmes had any involvement with the altercation and had no knowledge of the incident until sometime after it occurred. (See Exhibits "A" & "B").

The Plaintiff names as defendants, among others, Barbara Hanson-Evans and Stanley Holmes in both their individual and official capacities. (See Amended Complaint at pages 5/¶4; 6/¶6). The Plaintiff also names the Defendant Sheriff in his official capacity only. (See Amended Compl. at page 5/¶2; Plaintiff's depo. trans. 1/ page 109/lines 18-21). Barbara Hanson-Evans, who is the Health Services Administrator for the Broward Sheriff's Office acts as a liaison between the jail medical care provider (EMSA) and the Broward Sheriff's Office. (See Exhibit "A"). Stanley Holmes, was the Ombudsperson for the Broward County Sheriff's Office, whose duties included addressing the inmates' quality of life issues. (See Exhibit "B"). Ms. Hanson-Evans and Mr. Holmes were not involved in inmate classification or security. (See Exhibits "A" & "B".) Further, they did not provide medical care or treatment to the inmates and were not licensed medical care providers. Rather in

4

doing their jobs as stated above, they relied on the medical expertise of the doctors and nurses that

actually examined and treated the inmates, including Plaintiff Hicks. (See Exhibits "A" & "B" ).

## ARGUMENT

## STANDARD OF REVIEW

The standard of review which must be applied by the Court is contained in Rule 56(c) of the

Federal Rules of Civil Procedure which reads, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue
> as to any material facts and that the moving party is entitled to
> judgment as a matter of law.

In Clemons v. Dougherty County, Georgia, 684 F.2d 1365, 1368-69 (11th Cir. 1982) in

applying the standard indicated the following:

> The party seeking summary judgment bears the exacting burden of
> demonstrating that there is no genuine dispute as to any material fact
> in the case. In assessing whether the movant has met this burden, the
> courts should view the evidence and all factual inferences therefrom
> in the light most favorable to the party opposing the motion.  All
> reasonable doubts about the facts should be resolved in favor of the
> non-movant.

Pro se litigants also "do[] not escape the essential burden under summary judgment standards of

establishing that there is a genuine issue as to a fact material to his case in order to avert summary

judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990), cert. denied, 500 U.S. 933

(1991).

Furthermore, the United States Supreme Court while addressing the standard which trial

courts should apply in ruling on a motion for summary judgment stated:

> [the] standard mirrors the standard for a directed verdict under
> Federal Rule of Civil Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the governing law, there can be but one
> reasonable conclusion as to the verdict. <u>Brady v. Southern R. Co.</u>,
> 320 U.S. 476, 479-480 (1943).

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

## <u>THERE WAS NO DELIBERATE INDIFFERENCE<br>TO PLAINTIFF'S SERIOUS MEDICAL NEEDS</u>

In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)[5], the United States Supreme Court established that the law requires a finding of a "deliberate indifference to serious medical needs" in order for a prison inmate to maintain a cause of action pursuant to 42 U.S.C. §1983 based upon a violation of the Eighth Amendment for the lack of, or inadequacy of, medical treatment or care. <u>See also</u> <u>Carswell v. Bay County</u> 854 F.2d 454 (11th Cir. 1988). There is no cause of action pursuant to the Eighth Amendment for an inadvertent failure to provide medical care or mere negligence in diagnosing or treating a medical condition. <u>See Estelle</u>, <u>supra</u>; <u>see also</u> <u>Hurst v. Phelps</u>, 579 F.2d 940 (5th Cir. 1978)[6]. Medical treatment violates the Eighth Amendment only if it involves something "more than a medical judgment call, an accident, or an inadvertent failure." <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.4 (5th Cir. 1980). Furthermore, the mere disagreement between an inmate and a physician as to the diagnosis or treatment of an inmate's condition does not give rise to a constitutional violation. <u>See</u> <u>Ferranti v. Moran</u>, 618 F.2d 888 (1st Cir. 1980); <u>McCracken v. Jones</u>, 562 F.2d 22 (10th Cir. 1977), <u>cert. denied</u>, 435 U.S. 917 (1978); <u>Watson v. Caton</u>, 984 F.2d 537 (1st Cir. 1993). In fact,

---

[5]<u>See also</u> <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1096 (1986).

[6]Pursuant to <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981), this case is binding precedent in the 11th Circuit.

where the undisputed evidence shows that an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986).

The United States Supreme Court has explained the deliberate indifference standard in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2nd 811 (1994). Although the facts are different[7], the case is controlling as it relates to a medical care treatment claim brought by the Plaintiff in the present case. See Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996) and Hare v. City of Corinth, Miss., 74 F.3d 633 (5th Cir. 1996). In analyzing what the legal phrase "deliberate indifference" [to serious medical needs] really meant, the United States Supreme Court in Farmer, supra, rejected an objective test stating:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id at 1979 (emphasis supplied).

"...There is no liability for an official's failure to alleviate a significant risk that he should have perceived but did not ..." (internal quotes and citations omitted). Cottrell, supra at 1491 quoting in part Farmer, supra[8].

---

[7]The Plaintiff in Farmer was a pre-operative transsexual who projected feminine characteristics. He alleged that federal prison officials were deliberately indifferent to his safety in violation of the Eighth Amendment when they transferred him from a correctional institutional to a penitentiary -- which is typically a higher security facility with more troublesome inmates. The Plaintiff alleged that he had been beaten and raped by another inmate subsequent to his transfer to the penitentiary.

[8]See also Hare, supra.

Therefore, it is clear that negligence or even "gross negligence is not part of the standard for judging custody mistreatment claims under the due process clause." Cottrell, supra at 1490. The deliberate indifference concept as it applies in this case is clearly different from a pure objective deliberate indifference standard such as is presented by City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Applying the standard set forth in Farmer, supra to the present case, Plaintiff must show not only that there was an excessive risk of harm to the Plaintiff's health, but also that the persons involved in his care and treatment knew of the excessive risk of harm and consciously disregarded that risk of harm. Plaintiff cannot satisfy this burden with proof of negligence or even gross negligence. A review of the Record Exhibits in the present case reveals that the Plaintiff was seen by a nurse and a doctor within minutes of the subject incident. Medical attention and treatment was rendered including sutures and x-rays. Thereafter, Plaintiff received follow-up medical care for his complaints by several dentists, nurses and doctors, including an oral surgeon who examined him, prescribed him numerous medications, including pain medications, ordered x-rays and a soft diet. (See plaintiff's jail medical records attached to Plaintiff's depo. and Exhibit "A"). Neither Defendants Hanson-Evans or Holmes provided medical care or treatment to the inmates and were not licensed medical care providers. Rather in doing their jobs as stated above, they relied on the medical expertise of the doctors and nurses that actually examined and treated the inmates, including Plaintiff Hicks. The record here also demonstrates that the Plaintiff was seen on numerous occasions by medical personnel throughout his stay at the Broward County jail facilities and that he received prompt and appropriate medical care given his symptoms and complaints. (See Plaintiff's jail medical records attached to Plaintiff's depo. & Exhibits "A" & "B".) Consequently, there is no showing that the

Defendants or any Broward Sheriff's Office personnel were in any way deliberately indifferent to Plaintiff's serious medical needs.[9]

## THERE WAS NO DELIBERATE INDIFFERENCE TO PLAINTIFF'S SAFETY AND WELFARE

To the extent Plaintiff brings a claim pursuant to 42 U.S.C. §1983 for the February 9, 1996 attack by his fellow inmate, Plaintiff must establish that a named defendant was involved in procuring, causing, or being deliberately indifferent to the possibility of such an attack under color of state law. In the present case, there is no evidence to support such a claim against the Defendants Health Services Administrator Barbara Hanson-Evans or Ombudsperson Stanley Holmes where the appropriate constitutional standard requires the showing of a deliberate indifference and the total unconcern for an inmate's welfare in the face of a serious risk. See King v. Fairman, 997 F.2d 259, 262-63 (7th Cir. 1993); Knight v. Gill, 999 F.2d 1020 (6th Cir. 1993). In this regard, as previously stated, the constitutional standard of deliberate indifference is evaluated through a subjective analysis and requires that the prison official actually knew of and disregarded an excessive risk to an inmate's health or safety. See Farmer, supra.

Therefore, applying the standard set forth in Farmer, supra on this claim in the present case, Plaintiff must show not only that there was an excessive risk to the Plaintiff's safety, but also that the

---

[9]Plaintiff also alleges in the Amended Complaint that the Defendant Holmes saw him the day after the subject incident and laughed at him. Even if such an allegation were true, such would not rise to the level of a constitutional violation. Verbal abuse and threats alone are not actionable as a matter of law. Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992) (Racial slur); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (Vulgar language); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (Racial slur); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998 (1983) (Threatening language and gestures); Gilson v. Cox, 711 F.Supp. 354, 355 (E.D. Mich. 1989) (Cursing and verbal abuse).

Defendants Hanson-Evans or Holmes knew of an excessive risk of serious harm and consciously disregarded that risk of harm. The record in the case at bar does not support such a showing.[10]

### QUALIFIED IMMUNITY[11]

The qualified immunity defense protects governmental officials from suit in their individual capacities for acts based on the use of their discretion. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Qualified immunity affords broad protection to "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990); Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989).

The Supreme Court of the United States has indicated that:

> Such officials as police officers or prison wardens, to say nothing of higher level officials who enjoy only qualified immunity routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to the plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively.... In these circumstances, officials should not err always on the side of caution.

Davis v. Scherer, 468 U.S. 183, 196 (1986).

_____

[10]Plaintiff testified in deposition that he had not had any previous problems with inmate Beech (see Plaintiff's depo. Part 1/ pg. 19/lines 16-25) and prior to the incident even he had no reason to know that he was going to be struck by inmate Beech. (see id/ pg. 34/lines 7-21).

[11]It is the Defendants Hanson-Evans and Holmes' position that the record in this case does not support a cause of action against them in their individual capacity as there is no evidence that these Defendants were personally involved in or directed the attack on Plaintiff by inmate Beech or that they were deliberately indifferent to Plaintiff's serious medical needs, safety or welfare. Consequently, where there is a failure to allege an individual capacity constitutional violation claim, there is no need to engage in a complete qualified immunity analysis. See GJR Investments v. County of Escambia, Florida, 132 F.3d 1359, 1366-67 (11th Cir. 1998). However, to the extent the Court were to disagree with the Defendants' contention, the defense of qualified immunity is being asserted on behalf of the Defendants Hanson-Evans and Holmes in an abundance of caution.

In Harlow, supra, the United States Supreme Court applied an objective test regarding government officials performing discretionary duties, and specifically noted:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

This objective test clearly gives trial courts greater flexibility in disposing of claims on summary judgment. See Harlow, supra at 818.

In the context of the factual setting alleged here, the Defendants Hanson-Evans and Holmes' application for final summary judgment can be defeated by Plaintiff only where he can demonstrate that they are not entitled to qualified immunity, as a matter of law, because of the existence of an issue of material fact upon which resolution of the claim must turn. See Celotex Corp. v. Catrett, 477 U.S. 317 (1987); Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988). Here, in terms of the qualified immunity issue, any contact the Defendants Hanson-Evans and Holmes would have had with the Plaintiff would have been related solely to the performance of their discretionary functions as employees of the Sheriff of Broward County and were otherwise made in good faith, pursuant to Broward Sheriff's Office policy and procedure. See Exhibits "A" and "B".

The doctrine of qualified immunity and its availability means that the defendants are immune from suit rather than being immune merely from liability from damages. See Mohammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir. 1987) citing Mitchell v. Forsythe, 472 U.S. 511 (1985). In order to defeat a claim of qualified immunity, the Plaintiff must "prove the existence of a clear, factually defined, well-recognized right of which a reasonable [government official] should have knowledge" in that a reasonable official would have understood that his/her actions would have

11

violated that right. See Barts v. Joyner, 865 F.2d 1187 (5th Cir. 1989). Plaintiff, in order to defeat

the Defendants' claim of qualified immunity must prove that the Defendants' conduct actually violated

the law. See Rich, supra at 1563.

Qualified immunity presents a question of law for the court regardless of which stage of the

procedure, if a determination must be made. See Dartland v. Metropolitan Dade County, 866 F.2d

1321 (11th Cir. 1989). The burden of proof on the defense of qualified immunity is allocated as

follows:

First, it is the obligation of the defendant who claims that his or her action is qualifiedly

immune to demonstrate that his or her actions were taken within the scope of his or her discretionary

authority. Here there is no dispute that the Defendants were acting as employees of the Sheriff in any

decisions regarding the Plaintiff. See Exhibits "A" & "B". Therefore the Defendants were performing

discretionary functions.

When the initial burden of the defendant public official has been met, it is then incumbent upon

the plaintiff to demonstrate that the defendant public official acted in bad faith, i.e. "violated clearly

established constitutional law." See Rich, supra at 1563-64; Ziegler v. Jackson, 716 F.2d 847 (11th

Cir. 1987). The Plaintiff here has not demonstrated that the Defendants' behavior "violated clearly

established constitutional law." Furthermore, it is undisputed from the record that the Defendants,

at all times, acted in good faith pursuant to Sheriff's Office policy and procedure. The Defendants

are therefore entitled to qualified immunity.

## DEFENDANTS IN THEIR OFFICIAL CAPACITIES

To the extent Plaintiff has brought a claim against the Defendants Sheriff, Hanson-Evans or Holmes in their official capacities, Plaintiff has failed to meet his burden of proof to establish such a claim.

> In contrast to individual capacity suits, when an officer is sued under §1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.' Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.

Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)(quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985) citing Monell v. Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978))(other internal citations omitted). Therefore, it is actually duplicitous to name the Defendants Hanson-Evans and Holmes in their official capacities to the extent the Defendant Jenne is also named in his official capacity as the Sheriff of Broward County.

Plaintiff's claim against the Defendants Sheriff, Hanson-Evans and Holmes in their official capacities must fail, where the evidence in the record does not support a finding that the alleged unconstitutional acts were caused by a custom, policy, practice or procedure of the Sheriff of Broward County. Pursuant to the teachings of Monell, supra, Plaintiff must demonstrate the existence of a custom, policy, practice or procedure of the Sheriff which actually caused the Plaintiff's constitutional rights to be violated.

To establish the existence of such a custom or practice, it is generally necessary to show a persistent and wide-spread practice of the alleged unconstitutional behavior that is argued to amount to the practice or custom of the governmental entity. Moreover, knowledge of such customs must be attributable to the Sheriff in his official capacity as a policy level-making official. Normally, random acts or isolated incidents are insufficient to establish a custom or practice. See Depew v. City

13

of St. Mary, 787 F.2d 1496, 1499 (11th Cir. 1986); see also Brook v. Scheib, 813 F.2d 1191 (11th

Cir. 1987); and Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991).

The United States Supreme Court has stated that:

> ...our first inquiry in any case alleging municipal liability under §1983
> is the question of whether there is a direct causal link between the
> municipal policy or custom and the alleged constitutional deprivation.

City of Canton v. Harris, 489 U.S. 378 (1989). Plaintiff's failure to plead facts or produce evidence

that the unconstitutional acts were caused by such a custom or policy is fatal where it is well settled

that the Sheriff is not liable for the actions of his employees pursuant to a vicarious liability theory.

See Monell, supra; Fundiller v. City of Cooper City, 7777 F.2d 1436 (11th Cir. 1985); Jasinski v.

Adams, 781 F.2d 843 (11th Cir. 1986); Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987).

Upon a review of the pleadings and the exhibits attached hereto, it is clear that the Sheriff also

had no custom or policy that authorized the showing of a deliberate indifference toward the welfare,

safety or serious medical needs of inmates within the Broward County jail facilities. (See Exhibit "A"

and Composite Exhibit "2" thereto & Exhibit "B".) The evidence in this case does not support a

finding of an "intentional deliberate indifference" toward Plaintiff's welfare, safety or serious medical

needs warranting the maintenance of a §1983 claim upon the alleged violation of the United States

Constitution. Furthermore, even if evidence of such a showing existed, these Defendants would not

be liable in their official capacities where there is no evidence of a custom or policy that caused the

showing of a deliberate indifference.

Additionally, the issue of whether there is a custom, policy, practice or procedure of the

Broward County Sheriff which is the moving force behind the constitutional violation actually

becomes moot, where, as here, there is no showing of a constitutional violation. See City of Los

Angeles v. Heller, 475 U.S. 796 (1986). Hence, these Defendants are entitled to final summary judgment in their official capacities as well.

The motion should be granted.

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by U.S. Mail to **WILLIAM M. HICKS, Plaintiff, DC#664670**, c/o Everglades Correctional Institution, P.O. Box 949000, Miami, Florida 33194-9000 and **JOEL SHULMAN, ESQUIRE,** 2801 Ponce de Leon Blvd., 9th Floor, Coral Gables, Florida 33134 this _3rd_ day of December, 2001.

PURDY, JOLLY & GIUFFREDA, P.A.
Attorneys for Defendants SHERIFF,
HANSON-EVANS & HOLMES
1322 S.E. Third Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 462-3200
Facsimile: (954) 462-3861

BY: _____
SUMMER M. BARRANCO
Florida Bar No. 984663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WILLIAM M. HICKS,                                    Case No. 00-6087-CIV-Dimitrouleas

        Plaintiff,

vs.

KEN JENNE, SUSAN McCAMPBELL,                **AFFIDAVIT IN SUPPORT OF**
BARBARA HANSON-EVANS, STANLEY              **MOTION FOR**
HOLMES, JOHN DOE'S #1 and #2,               **SUMMARY JUDGMENT**
DR. W.C. DAVIS, DR. UCKER,
DR. TREVOR WEATHORS, DR. CLINE,
DR. PEARSON, DR. G. PEARSON,
EMERGENCY MEDICAL SERVICES ASSOC.,

        Defendants.
_____/

       **BEFORE ME** this day personally appeared BARBARA HANSON-EVANS who, upon

oath, deposes and states as follows:

       1.  My name is BARBARA HANSON-EVANS.  I am the Health Services Administrator

for the Broward Sheriff's Office and have been since 1993. I act as a liaison between the Broward

jail facilities medical care provider (which at all times pertinent to this lawsuit was EMSA) and the

Broward Sheriff's Office. My duties include investigating inmate complaints concerning their

medical care.

       2. I have a Bachelor of Science degree majoring in Health Care Administration as well as a

Masters Degree in Urban Planning and Public Administration. I have worked in a medical care

environment for approximately thirty (30) years. I am not a licensed medical care provider and do

not provide medical treatment to inmates. I rely on the medical expertise and judgment of the

1


EXHIBIT
"A"

licensed doctors and nurses that examine and treat the inmates in the Broward County jail
facilities to determine whether or not an inmate is receiving timely and appropriate medical care.

3. Any contact I had with the Plaintiff William M. Hicks would have been in my capacity
as the Health Services Administrator for the Broward Sheriff's Office.

4. I am not responsible for inmate classification or security and had no contact with either
Plaintiff Hicks or inmate Norman Beech at anytime on the day of the subject incident, February 9,
1996.

5. I had no involvement in the February 9, 1996 incident that occurred between the
Plaintiff and inmate Beech and had no knowledge of the altercation until sometime after the
incident had already taken place.

6. According to Plaintiff Hicks' jail medical records, Plaintiff was seen by medical
personnel shortly after the subject incident. He received medical evaluation and treatment
including facial x-rays. Thereafter, Plaintiff received follow-up medical care for his complaints by
several dentists, nurses and doctors, including an oral surgeon who examined him, prescribed
numerous medications, including pain medications, ordered x-rays and a soft diet.

7. According to my review of Plaintiff Hicks' medical records, an x-ray which was taken
on February 21, 1996 showed that he had a fracture of the left mandible and zygomatic arch.
Thereafter, an x-ray which was taken on March 15, 1996 showed a minimal depression of the
arch. On April 22, 1996 Dr. Uecker suggested OMF (Open Mouth Fracture) surgery. Then on
May 3, 1996 an x-ray showed an old healed fracture of the arch. Thereafter, on May 8, 1996, Dr.
Cline, D.D.S., Todd Schwartz, and oral surgeon Dr. Weathers explained to Mr. Hicks that
surgery was not planned for the arch. I relayed this information to Plaintiff Hicks. See

2

Composite Exhibit "1".

8. I looked into the complaints Plaintiff had regarding his medical care which were brought to my attention by contacting appropriate jail medical providers to discuss with them whether or not Plaintiff Hick's medical care and treatment was appropriate. At no time did I believe that Plaintiff Hicks' medical care was inappropriate or inadequate.   See Composite Exhibit "1".

9. It was my belief that Plaintiff received prompt and appropriate medical care given his symptoms and complaints while in the Broward County jail facilities and no deliberate indifference was shown toward any serious medical needs.

10. Attached hereto as Composite Exhibit "2" are relevant Broward County Sheriff's Office policies and procedures concerning medical care of inmates housed within the Broward County jail facilities for the pertinent time frame. I do not believe that the Broward County Sheriff's Office would permit an employee of either the Broward Sheriff's office or EMSA to be deliberately indifferent to inmates' serious medical needs, safety or welfare.


**FURTHER AFFIANT SAYETH NAUGHT.**

BARBARA HANSON-EVANS



STATE OF FLORIDA          )
                                          :SS
COUNTY OF BROWARD    )

**BEFORE ME,** this ___30th___ day of November, 2001, personally appeared BARBARA

3

HANSON-EVANS, who is to me well known, or who presented  B.S.O. I.D. card as identification, and who acknowledged through oath that she did execute this Affidavit and that all the facts contained herein are true and correct to the best of her knowledge and belief.

Jennifer H Morgan
Notary Public

My Commission expires:

OFFICIAL NOTARY SEAL
JENNIFER H MORGAN
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NUMBER
CC923631
MY COMMISSION EXPIRES
APR. 20,2004

4



**RON COCHRAN**
**SHERIFF**
**BROWARD COUNTY**
**POST OFFICE BOX 9507**
**FORT LAUDERDALE, FLORIDA 33310-5907**

**DATE:**    July 2, 1996

**TO:**    William Hicks, BS9514533

**FROM:**    Barbara Hanson-Evans, HSA, BSO

**SUBJECT:** Grievance

I reviewed your chart thoroughly as promised.

2/21/96    X-ray showed fracture of (L) mandible
           and zygomatic arch.
3/15/96    Minimal depression of the arch.
4/22/96    Uecker suggested OMF surgery.
5/3/96     Old healed fracture of the arch.
5/8/96     Dr. Cline, Todd Schwartz, and Dr. Weathers
           explained that surgery was not planned for the
           arch.  The problem with eating was addressed.
           Soft diet ordered.

I did notice you are now  taking your medication.  I have given
Mr. Holmes the copies of DR's for review.

The x-rays do not show any remarkable problem and the bones are
intact.  I am assuming that you will be experiencing pain which
is now being managed appropriately.

As I suggested I would review the chart to see if there were
documentation to substantiate what you alleged the physicians
told you.  I have seen nothing about clean break etc.  I only
rely on the x-ray reports which cannot be tampered with.

I was informed that you were scheduled to see Dr. Pearson/
Dr. Cline on 6/28/96.



EXHIBIT
Composite
1

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

DATED 5-7-96

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

## TO BE COMPLETED BY INMATE

Date of Request: **5-7-96**     Inmate's Name: **William M Hicks**
(Alias, if used)

Arrest #: **BSS5-14533**     Location: **7-D-2**     DOB: **9-10-63**

To: **BARbara Hk #7552**

Program Specialist ☐     Mailroom ☐     Commissary ☐
Classification ☐     Food Service ☐     Other ☑

Nature of Request: 5-7-96  I Release INFO From MADN JAIL to Elisa Wilmerthe
I would like to speak to you
THank you For you time.
"ABout medical"
please Respond Fast - mam, thanks.
"I need A visit mam"

**William M Hicks**     **5-7-96**
Inmate's Signature     Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Completed By: _____ CCN _____ Date: _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information          ☐ Personal Interview

Grievances will be responded to, in writing, by the Office of Information and Review.

J#24 (Rev. 4/93)

*To Macbook rev.*

*BARBRA*
*EVANS*

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE'S REQUEST FORM**

If you haven't asked the housing unit deputy to solve this problem, do so before completing
this request.                                          21 JUN 96 ⁓⁓   59

## TO BE COMPLETED BY INMATE

Date of Request: **6-20-96**                   Inmate's Name: **William m Hicks**
                                                        (Alias, if used)

Arrest #: **BS95-14533**              Location: **12-1-H-3**    DOB: **9-10-63**

To: **BARBRA EVANS medical**

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | ~~Other~~ | |

Nature of Request: **I need to speak to you about
medical questions, so I would like
to meet in person, Ive tried all
other options and now I call apon
you.  THankyou For your time**

_____          _____
**William m Hicks**                        **6-20-96**
Inmate's Signature                         Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

### DO NOT WRITE BELOW THIS LINE:
### ACTION TAKEN/RESPONSE

_____

_____

_____

_____

_____

_____

Completed By:_____ CCN_____ Date:_____ Time:_____

All requests will be handled by the responding deputy in one of the following ways:

☐  Written Information                    ☐  Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

RON COCHRAN
SHERIFF
BROWARD COUNTY
POST OFFICE BOX 9507
FORT LAUDERDALE, FLORIDA 33310-5907


DATE:     July 25, 1996

TO:       William Hicks, BS9514533

FROM:     Barbara Hanson-Evans, HSA, BSO *BHE*

SUBJECT:  Grievance


As stated to you in your interview with me, I only report what was documented in your medical records.

I spoke with Dr. Pearson who saw you the next day in order to hear your concerns and explain/clear up any misunderstanding.


BHE/tlr

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

N.B.D.C. medical          hast statement my Lawyers will call

If you haven't asked the housing unit deputy to solve this problem, do so before completing
this request.                                    10 JUL 96 23  59

## TO BE COMPLETED BY INMATE

Date of Request: 7-3-96                    Inmate's Name: William n Hicks
                                                        (Alias, if used)

Arrest #: BS95-14533                    Location: 12-1-H3          DOB: 9-10-63

To: Medical / miss Evans

Program Specialist      ☐      Mailroom        ☐      Commissary      ☐
Classification          ☐      Food Service    ☐      Other          ☐

Nature of Request: mam, you sent me back a request from 5-2-96 its now 7-3-96,
As I've Gone through the pain and abuse and Emotional grief you tell me
that my Bones weren't broken, you stated that I'm Fine, you state that I'll
Have a little difficulty with pain, I'll have pain the rest of my Life, DR pline
stated my jaw has to be rebroken, so you tell me just what everybody else does,
at least TODD Schwartz said he knows their Lying but their the doctors,
you BaRBaRa EvAns, I Hold you to your statement on medical. I

Inmate's Signature _____        Date Signed _____

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

### DO NOT WRITE BELOW THIS LINE:
### ACTION TAKEN/RESPONSE

William n Hicks Hold you fully responsible For the cover
up of all medical and doctors Lies, DR DAvis Lied,
DR Weathers DDS oral surgeon Lied, DR Pearson Lied. you
mam Have Sent me a contract stating Im Fine, well
YOU ARE the one I Hold fully responsible, and you will be
the one who will Be called to Answer for all your personal.

Completed By: At N.B.D.C          CCN _____        Date: THAnk you For your time.
                                                          Time:

All requests will be handled by the responding deputy in one of the following ways:

☐  Written Information                    ☐  Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

*T* *(handwritten top left)*
*B. EVANS*
*MEDICAL*

*A. Scott* *(handwritten top right)*
*To please*

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.                    26 FEB 98        59

### TO BE COMPLETED BY INMATE

Date of Request: 2-25-98                    Inmate's Name: William m Hicks
                                                (Alias, if used)

Arrest #: BS97-17076                    Location: 12-2-H-3⁴    DOB: 9/10/63

To: Barbra EVANS. MEDical

| Program Specialist ☐ | Mailroom ☐ | Commissary ☐ |
| Classification ☐ | Food Service ☐ | ~~Other~~ ☐ |

Nature of Request: MA'AM, I Need your help, my time
is short!
    Please I wrote request To SEE A M.D. Doctor
and could you please Help me to SEE Foster
as to place me on List! Regarday meds! Pluss to
SEE Dentist "now 2 months I have wFected gum" please
    William m Hicks                    2-25-98    Thanks
Inmate's Signature                    Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST
BOX LOCATED IN EACH POD.

-------------------------------------------------------------
DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Mr. Hicks since your request of 2/25/98 you were seen
by the psychiatrist on 2/27/98. You were evaluated and
treatment plan designed to address your concerns/medical
needs. you asked to see a doctor & trust the psychiatrist
is who you meant. If you mean a medical doctor please
advise.

Completed By: Abe E    CCN 7552    Date: 3/2/98·    Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐    Written Information            ☐    Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

```
                    A R R E S T    I N Q U I R Y
ARREST NBR BS9717076    OBTS NBR 0000000000    ARR AGY BS   OFF NBR
NAME: HICKS          WILLIAM                          BCCN NBR 0088664
REAL NAME: HICKS              WILLIAM        MICHAEL       DOB 091063 R/ W S/ M
ALIAS NAME:                                          ALIAS DOB
ARREST LOCATION: CHATTAHOOCHEE
DATE 072297 TIME 1849   OFFICER CALHOUN       J ID  3081
BKG DATE 072297 TIME 2058   AGY BS LOCATION BS
OFFICER BLANTON          W  ID BS4030                PROP BIN NBR 2414
   REMARKS: 29/54 4549, WC 8234
             DETAINEE TO BE HOUSE IN UNIT 12
   ADD CHG
   REMARKS:
DETAINEE'S LOCATION:      DATE 022798   TIME 1049   UNIT 12
CELL ID 1HE43        PLACEMENT REASON: FORENSIC UNIT PER MEDICS
       MAG                              REL
DATE   CODE  COMMENTS            CHARGES        RSN  WRT/CAP NBR      BOND
072297 XF9 J/COHN       MURDER 1              C95013759CF10A    NB
072297 XF9 J/COHN       BURGLARY STRUCT/CONV AS    C95013759CF10A    NB
    *  TO VIEW ADDITIONAL CHARGE SCREEN HIT ENTER      MORE CHARGES YES
             A D D I T I O N A L    C H A R G E S
ARREST NBR BS9717076    BCCN NBR 0088664
   NAME: LN HICKS        FN WILLIAM        MN           DOB 091063
       MAG                              REL
DATE   CODE COMMENTS           CHARGES         RSN  WRT/CAP NBR      BOND
072297 XF9 J/COHN       MURDER 1              C95013759CF10A    NB
072297 XF9 J/COHN       BURGLARY STRUCT/CONV AS    C95013759CF10A    NB
072297 XF9 J/COHN       ROBBERY               C95013759CF10A    NB
ADD CHRG
REMARKS
OFFICER LN              FI   ID
       **NO MORE CHARGES TO VIEW  'PA2' TO EXIT TO MENU**
```

*PROPERTY*
*OF*

**BROWARD SHERIFF'S OFFICE**
DEPARTEMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

NIB,DC MISS EVANS

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.    12 DEC 96    59

## TO BE COMPLETED BY INMATE

Date of Request: 12-11-96    Inmate's Name: William m Hicks
(Alias, if used)

Arrest #: BS95-14533    Location: 12-1-H-3    DOB: 9/10/63

To: MEDical Barbra EVANS

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☒ |

Nature of Request:

I request to have copys of the scan of my head done at hospital. THank you.

_William m Hicks_
Inmate's Signature

_12-11-96_
Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

Ms Marie Ervin Please address this issue    Bf Evans 12/17/96

Completed By:_____ CCN_____ Date:_____ Time:_____

All requests will be handled by the responding deputy in one of the following ways:

☐   Written Information        ☐   Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

*Director*

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request. -2 JAN 97    59

## TO BE COMPLETED BY INMATE

Date of Request: *1-1-97*    Inmate's Name: *William M Hicks*
(Alias, if used)

Arrest #: *BS95-14533*    Location: *12-1-H-3*    DOB: *97063*

To: *MEDICAL*    *"Barbra Evans" "Director"*

| Program Specialist | ☐ | Mailroom | ☐ | Commissary | ☐ |
| Classification | ☐ | Food Service | ☐ | Other | ☒ |

Nature of Request: _____

*Mam I wis to speak once again per*
*medication due to we spoke and I was*
*under the impression you would take care of it*

*Thanks for your time*

Inmate's Signature: *William M Hicks*    Date Signed: *1-1-97*

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

*Mr Hicks you need to be more specific in order for me*
*to followup or review the situation or compliant*

Completed By: *Barbara He S*    CCN *7552*    Date: *1/8/97*    Time: *11-15am*

All requests will be handled by the responding deputy in one of the following ways:

☐ Written Information    ☐ Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

*MISS B. EVAS*

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

*MEDical Please ForwARD,*

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

20 DEC 96   —   59

## TO BE COMPLETED BY INMATE

Date of Request: *12-19-96*          Inmate's Name: *William M Hicks*
                                     (Alias, if used)

Arrest #: *BS95-14533*               Location: *12-1-H-3*     DOB: *9-10-63*

To: *Miss B. Evans - Director per medical" NIB, D.C*

| | | |
|---|---|---|
| Program Specialist ☐ | Mailroom ☐ | ~~Commissary~~ ☐ |
| Classification ☐ | Food Service ☐ | ~~Other~~ ☐ |

Nature of Request: *Mam, I wish you to look into placing I into 12-2-6-2 cell due to it's quiet mom, I can't handle cell 12-1-H-3 worse," it's Like being in population, mam, please note I Have Had a court order to remain in Drug cell since 2-5-96 and I seem to get all "hiden seek" please take note, I need to Be in a quiet situation and powerFul pain meds, thankyou MAM.*

Inmate's Signature: *William M Hicks*        Date Signed: *12-19-96*

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

*Mr Hicks cell placement is not in my jurisdiction I will forward your request to Mr Novotny Classification Supervisor for review*

Completed By: *Barbara Ge* CCN *7552*  Date: *1/8/96*  Time: *11.10 am*

All requests will be handled by the responding deputy in one of the following ways:

☐   Written Information          ☐   Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

*Barbra*
*EVANS*

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE'S REQUEST FORM

*MEDICAL   "MAM" "TAKE NOTE PLEASE URGENT"*

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request.

17 DEC 96   59

TO BE COMPLETED BY INMATE

Date of Request: *12-16-96*        Inmate's Name: *William M Hicks*
                                                (Alias, if used)

Arrest #: *BS95-14533*        Location: *12-1-H-3*   DOB: *970083*

To: *Miss Barbra EVANS of N.B.D.C.*

Program Specialist ☐   Mailroom ☐        Commissary ☐
Classification ☐       Food Service ☐    ~~Other~~ ☐

Nature of Request: *MAM, I William Hicks have asked staff several times for appropriat pain meds, If you look it's over ten monthes now and I Hicks still have outrageous head aches and Facial problems as I eat and chew," If you note mam the test PER hospital it shows Broken bones and more still, "Hum" Im to See Doctor on outside still, mam two tHings I want you to Do (One) better pain medicati (two) Place me on a Diet of 3000 cal Food and Snack Bag per Bones Broky Thanks.only*

Inmate's Signature *William M Hicks*        Date Signed *12-16-96* Stomache
                                                              massadup

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD.

--------------------------------------------------------

DO NOT WRITE BELOW THIS LINE:
ACTION TAKEN/RESPONSE

*Spoke with the Dentist request his advise on how do handle this eating problem. Might be able to request/order 3,000 calorie. I/M scheduled to be seen in dental clinic*

Completed By: _____ CCN _____ Date: _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐   Written Information        ☐   Personal Interview

All grievances will be responded to, in writing, by the Office of Information and Review.

BSO DJ#24 (Rev. 4/93)

**KEN JENNE**
**SHERIFF OF BROWARD COUNTY**
**P.O. BOX 9507**
**FORT LAUDERDALE, FLORIDA 33310**

98-51

**DATE:**    March 12, 1998

**TO:**    William Hicks, BS9717076

**FROM:**    Barbara Hanson-Evans, HSA, BSO

**SUBJECT:**    Grievance dated 3/2/98

I have nothing to do with your charges or your guilt. As you are aware I have had you seen by almost all medical professionals in each facility. I cannot tell them what to say about your condition. Each time you are seen the medical personnel addresses your concerns. It might not be what you want to hear, but they have all assured me that your treatment has been good & appropriate as it relates to your medical and mental health condition.

Your last request to be seen by Dr. Cody was granted. I have looked into your complaint about not receiving your prescribed medication, it is documented that you have been receiving your medication.

If this is not correct, please record the date, time and medication you have not received and forward to my attention.

BHE/tlr

A' FOR ARREST DISPLAY          'N' FOR SUBJECT DISPLAY
                    A R R E S T    I N Q U I R Y
ARREST NBR BS9717076    OBTS NBR 0000000000   ARR AGY BS   OFF NBR
NAME: HICKS          WILLIAM                        BCCN NBR 0088664
REAL NAME: HICKS          WILLIAM        MICHAEL     DOB 091063 R/ W S/ M
ALIAS NAME:                                         ALIAS DOB
ARREST LOCATION: CHATTAHOOCHEE
DATE 072297 TIME 1849  OFFICER CALHOUN        J ID  3081
BKG DATE 072297 TIME 2058  AGY BS LOCATION BS
OFFICER BLANTON          W  ID BS4030            PROP BIN NBR 2414
  REMARKS: 29/54 4549, WC 8234
           DETAINEE TO BE HOUSE IN UNIT 12
  ADD CHG
  REMARKS:
DETAINEE'S LOCATION:       DATE 022798  TIME 1049   UNIT 12
CELL ID 1HE43      PLACEMENT REASON: FORENSIC UNIT PER MEDICS
        MAG                                 REL
DATE    CODE   COMMENTS        CHARGES      RSN  WRT/CAP NBR      BOND
072297 XF9 J/COHN      MURDER 1             C95013759CF10A   NB
072297 XF9 J/COHN      BURGLARY STRUCT/CONV AS    C95013759CF10A   NB
    *  TO VIEW ADDITIONAL CHARGE SCREEN HIT ENTER        MORE CHARGES YES

B. EVANS
EMSA

-3, MAR 98    FEB

RE: Seeking For Medical He 18 FEB
TO B. EVANS,    cant order By Judge Cohn Feb 9, 98.

MISS EVANS, you run medical here at N.B.D.C. and
Since I WAS assaulted in THIS Jail on 4-7-96, By a known
violent inmate & held by a Broward Sheriffs Deputy as a
human Sheild and recieved many Fractures to THE head and
Face place Fractured Jaw. out of all my pleas For HeIP I
Never recieved helP but ½ year confinement. never
recieved medical & no pain meds. You MA'AM WAS & am Fully
aware oF a MR Holmes "our ombudsman" who's desk is next
to yours, and his attempts To cover all wrong doing & work with
my Prosecutor to set me up in trial, all do to I WAS assaulted
and you and STAFF Lied", How can you lie when I have trays
& Still a Fractured Jaw & others wrong.

Since Feb 9, 98 I WAS Found in competent TO Stand trial "THIS makes
it THE Second time do to B.S.O. & EMSA neglect. cant ordered I to
N.B.D.C. TO BE Found competent with in 30 days. Since here
I Fight For medical and I Fight Fr pain medication which
I had gotten at main Jail. I Suffer 24 hours a day &
your aware of it.

You allowed all to conspire to set me up For electric
chair not guilty of & your apart of the conspiracy° you
MA'AM Face Life Sentence and I'll see to it & lawyers you get it
William M Hicks
BS97-17076

Case 0:00-cv-06087-WPD Document 176 Entered on FLSD Docket 07/09/2001 Page 34 of 69

RE: BSO & EMSA STAFF

**TO BE COMPLETED BY INMATE**

OLD BS95-14533

William M Hicks — BS97-17076 12-1-4-4 — NBOC — 3-8-99

Inmate's Name — Arrest# 10 HM198 Facility — Date

## PART A – INMATE'S GRIEVANCE

MISS EVANS "you MA'AM are aware of my medical condition wich you and I & media know if you done your JoB I would not still suffer 24 hours a day. 4½ days ago I saw Female Doctor M.D. which she Reordered pain medication which 4½ days plus all the days before still don't have' is it deliberate I don't know' I ASK you in a plea for help now Second in 2 weeks" please take this as a major plea to help relieve my pain as I'm court ordered here to face a trial & not your medical

William M Hicks — 3-8-99

Inmate's Signature — Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

---

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B – RESPONSE**

_____

_____

_____

_____

Reviewing Deputy's Signature/CCN _____ Date _____

Supervisor's Signature/CCN _____ Date _____

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**

I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

---

**DIRECTOR'S RESPONSE TO APPEAL**

_____

_____

_____

Director's Signature _____ Date _____
BSO DJ#51 (Revised 4/93)

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

## 4.5.1 - HEALTH CARE SERVICES

**PURPOSE:** To establish the Department of Corrections and Rehabilitation (DCR) policy regarding comprehensive health care services by qualified personnel.

**POLICY:** A The delivery of health care services, including medical, dental and mental health services, shall be under the control of a designated health authority. There shall be an agreement with a facility physician licensed in the State of Florida. Arrangements shall be made with health care specialists in advance of need.

**B.** The DCR shall have an agreement with one or more health care provider to provide emergency services at the facility or at a location designated by the health care provider.

**C.** All medical, psychiatric and dental matters involving medical judgment shall be the sole province of the responsible physician and dentist, respectively.

**D.** The health authority shall meet with the Facility Administrators at least quarterly and submit annual statistical summaries. The health authority shall also provide for annual statistical summaries and quarterly reports on the health care delivery system and health environment.

**E. Health Care Operational Procedure's:**

1. There shall be a Operational Procedure's for the medical section of DCR. Each policy procedure, and program in the health care delivery system shall be reviewed and updated annually by the facility physician. Each document shall bear the date of the most recent review or revision and signature of the reviewer.

2. The health care Operational Procedure's shall cover, but not necessarily be limited to:
   a. Receiving medical screening.
   b. Health appraisal.
   c. Physical examination
   d. Necessary medical, dental and mental health services.
   e. Emergency medical and dental services.
   f. Notification of next of kin in cases of serious illness, injury, or death.
   g. Delousing procedures to be implemented as designated by the facility physician.
   h. Detoxification procedures under medical supervision.
   i. Control of pharmaceuticals consistent with Chapter 893, F.S.S.
   j. A procedure by the facility physician prescribing standards for review of health appraisals and identification of problems to be reviewed by a physician.

**AUTHORITY:** 33-0.007(1)(2)(a-j), 33-8.007(6), 33-8.007(19), N.C.C.H.C., ACA 4E-01, 4E-02, 4E-03 and 4E-04

**APPLICABILITY:** This policy applies to all DCR personnel.

**DEFINITION:**

EXHIBIT
Composite
2

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

9.    A Health Records Specialist Supervisor will be responsible for the maintenance and confidentiality of inmate health records.

**C.  Outside Facilities/Personnel:**

1.    Broward County Health Department will provide consultation and treatment services in the prevention and control of communicable diseases and prenatal care of pregnant inmates.

2.    As determined by the Medical Director private physicians/specialists may be utilized to provide outside consultation.

**D.  Administration:**

1.    Mental, dental and medical health matters involving clinical judgements are the sole responsibility of the physician, dentist, or psychiatrist respectively. However, the security regulations applicable to facility personnel also apply to health care personnel.

2.    The Health Services Administrator will meet with the Facility Administrator or designee on a monthly basis to review the effectiveness of the medical services program.

**E.  Reports:**

1.    Monthly report and a monthly summary of the medical unit's activities and quality management minutes will be submitted by the Health Services Administrator to the Facility Administrator or designee.

2.    Quarterly reports will include the medical unit's review of their goals and objectives.

3.    Yearly reports will consist of statistical data outlining the scope of health care services.

**AUDITS:**  Shall be conducted at least quarterly in accordance with the internal audit schedule.

## 4.5.2 - GENERAL POLICIES - HEALTH CARE

**PURPOSE:**  To outline the Department of Corrections and Rehabilitation (DCR) general policies regarding health care services.

**POLICY:**

**A.  Continuity of Care:**  DCR shall require continuity of care from admission to discharge, including referral to community care when indicated.

**B.  Unimpeded Access to Health Care:**  A medical request procedure shall be established and maintained so that inmates may request medical assistance which may or may not require a formal clinic visit. All inmates shall be provided medical request forms upon notification to staff. All written medical requests shall be screened on a daily basis by medically trained personnel and

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

2Such staff shall have completed first aid training as required by Chapter 943, Florida State Statutes. The facility physician or designee shall be responsible for monthly inspections of the first aid supplies.

4.    Emergency evacuation of the inmate from the facility.

5.    Use of an emergency medical vehicle.

6.    Security procedures providing for the immediate transfer of inmates when appropriate.

**AUTHORITY:** 33-8.007 (7) (8) (19), NCCHC J-26; ACA 4E-07, 4E-08 and 4E-25

**APPLICABILITY:** This policy applies to all DCR personnel.

**PROCEDURE:**

**A.** Examination and treatment rooms for medical, dental and mental health care, are large enough to accommodate the necessary equipment, fixtures and to permit privacy for the inmate patients.

**B.** Pharmaceutical, medical supplies and mobile emergency equipment (e.g., defibrillator, oxygen, resuscitator) are available.

**C.** There is adequate office space with administrative files, secure storage of health records and writing desks.

**D.** Private interviewing space, desk(s), chair(s) and lockable file space are available for the provision of mental health service.

**E.** If laboratory, radiological, inpatient or specialty services are provided on-site, the area(s) devoted to any of these services is appropriately constructed and sufficiently large to hold equipment and records and for the provision of the services themselves.

**F.** There is a waiting area with seats, drinking water and access to toilets for inmate-patients during sick call.

**G.** Inventories are conducted each shift to account for any items subject to abuse (e.g., syringes, needles, scissors and sharp instruments).

**H.** Equipment is checked and tested periodically and secured from inmate access.

**I.** All health care providers are trained in responding to all emergencies, first aid and crisis intervention.

**J.** On-site emergency first aid kits are inspected and maintained in intake areas, control rooms and other areas designated by the facility physician or designee.

**RON COCHRAN**
**SHERIFF**
**BROWARD COUNTY**
**P.O. BOX 9507**
**FORT LAUDERDALE, FLORIDA   33310**

**SPECIAL ORDER 96-21**

**Date:**       July 22, 1996

**To:**         **ALL PERSONNEL**
               **DEPARTMENT OF CORRECTIONS AND REHABILITATION**

**From:**       Susan W. McCampbell, Director
               Department of Corrections and Rehabilitation

**Subject:**    **INMATE REFUSAL OF MEDICAL CARE 4.5.32 (NEW)**

**The following SOP will become effective immediately.**

**POLICY:**

It shall be the policy of the Department of Corrections and Rehabilitation to implement
procedures whereby an inmate can refuse health care and treatment., and such refusal is
documented.

**AUTHORITY:**   NCCHC J-65, ACA 4E-46

**PROCEDURE:**

**A.  Inmates Refusing Medical Treatment:**

   1.  Inmates who refuse medical treatment will be required to sign a refusal form.  This
       includes inmates who refuse the following but not limited to:
       a.  Clinic Appointments
       b.  Dental Appointments
       c.  X-Rays
       d.  Blood Work

   2.  Inmates who refuse medical treatment will be promptly escorted to the Medical Unit in
       order to sign a refusal form in the presence of a medical staff member.  The medical staff
       member will advise the inmate of the consequences of refusing treatment.

   3.  Inmates who refuse to be escorted to the Medical Unit in order to sign a refusal form will
       be subject to a Disciplinary Report for failing to obey a direct order (Code of
       Conduct A-4).

   4.  A signed refusal form does not waive the inmate's right to subsequent health care.

1 of 2

5. The signed refusal form will be filed in the inmate's medical record by Medical Staff..

**B. Inmates Refusing Prescribed Medication And Other Treatment During Medication Rounds:**

1. The medical staff present with the inmate will allow inmates to sign refusal forms for the following treatment without being escorted to the Medical Unit:
   a. Blood Pressure Checks
   b. Taking prescribed medication.
   c. Receiving prescribed first aid for minor existing injuries.

2. If an inmate does not sign the refusal form, the medical staff administering the medication or providing the treatment, will sign the form indicating the refusal and the escorting deputy will sign as a witness to the inmate's refusal.

**C.** Medical Staff will determine when an inmate needs to be escorted to the Medical Unit to sign a refusal form.

**AUDITS:** Audits shall be conducted in accordance with existing schedules.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

**E.** All newly hired employees are required to review and sign their job descriptions and applicable policy and procedures, which will be specific to the facility and the position held.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.5 - ADMINISTRATION OF TREATMENT - HEALTH CARE

**PURPOSE:** To establish policy regarding the administration of treatment by health care personnel within the Department of Corrections and Rehabilitation (DCR).

**POLICY:** Written procedure, and practice shall provide that all treatment by health care personnel other than a physician, dentist, psychologist, optometrist, podiatrist, or other independent provider is performed pursuant to written standing or direct orders by personnel authorized by law to give such orders. Nurse practitioners and physician's assistants may practice within the limits of applicable laws and regulations.

**AUTHORITY:** F.S.S. 458.347, 464.012 and ACA 4E-10

**APPLICABILITY:** This policy applies to all DCR personnel.

**DEFINITIONS:**
**PA** - Physician Assistant
**ARNP** - Advanced Registered Nurse Practitioner

**PROCEDURE:**

**A.** Nursing protocols approved by the facility physician will be used for treating minor ailments.

**B.** The PA notes and orders will be signed off by the supervising physician or alternate on record with the Department of Professional Regulations.

**C.** ARNP protocol will be on file at the facility and/or authorized to provide treatment under those protocols.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.6 - MENTAL HEALTH SERVICES

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

## 4.5.7 - MEDICAL STUDENTS AND INTERNS (HEALTH CARE)

**PURPOSE:** To establish policy regarding the use of medical students and interns for the delivery of health care within the Department of Corrections and Rehabilitation (DCR).

**POLICY:** Any medical students or interns delivering health care within DCR shall work under direct health care staff supervision commensurate with their level of training.

**AUTHORITY:** ACA 4E-15, 16

**APPLICABILITY:** This policy applies to all DCR personnel and staff assigned to health care services.

**PROCEDURE:**

**A.** Medical students and interns selected to work with inmates in any BSO facility are required to successfully complete a background investigation.

**B.** Supervision will be provided by contracted health care staff relevant to the discipline and requirements of the program.

**AUDITS:** Shall be conducted on annually in accordance with the Internal Audit Schedule.

## 4.5.8 - PHARMACEUTICAL - HEALTH CARE

**PURPOSE:** To establish policy for the storage and handling of pharmaceutical within the Department of Corrections and Rehabilitation (DCR).

**POLICY:** Written policy shall provide for the management of pharmaceutical in the following manner:

**A. Storage and Handling of Individual Prescriptions:**

1.    A formulary shall be specifically developed for each facility.

2.    Prescription drugs shall not be ordered or stocked in bulk quantities.

3.    All individual prescriptions from local pharmacies shall be properly labeled. Proper labeling consists of:
    a.    Name and address of the pharmacy
    b.    Date of dispensing
    c.    Name prescribing practitioner
    d.    Name of patient
    e.    Directions for use
    f.    Warning statements if necessary

**RON COCHRAN**
**SHERIFF**
**BROWARD COUNTY**
**P.O. BOX 9507**
**FORT LAUDERDALE, FLORIDA 33310**

**DATE:**   October 23, 1995

**TO:**   **ALL PERSONNEL**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**

**FROM:**   Susan W. McCampbell, Director
Department of Corrections and Rehabilitation

**SUBJECT:**   **STANDARD OPERATIONAL POLICY 4.5.6; MENTAL HEALTH**
**SERVICES**

**EFFECTIVE DATE:**  October 24, 1995

**PURPOSE:**

To establish the policy regarding the provision of mental health services for inmates.

**POLICY:**

Written procedure, and practice shall specify the provision of mental health services for inmates. These services shall include, but are not limited to, those provided by qualified mental health professionals who meet the educational and license/certification criteria specified by their respective professional disciplines; e.g., psychiatric nursing, psychiatry, psychology, and social work. **[A.C.A.4E-11]**

Written procedure, and practice, approved by the appropriate mental health authority, shall provide for all activities carried out by mental health service personnel. **[A.C.A.4E-12]**

**AUTHORITY:**

A.C.A. 4E-11, 4E-12

**APPLICABILITY:**

This policy applies to all Department of Corrections and Rehabilitation personnel.

1 of 5

**PROCEDURE:**

A.    Booking:

    1.    If the arrested subject appears to be unable to comprehend or assist in answering questions by staff person and it is not a language barrier, medical services should be notified.

    2.    If the subject seems confused, agitated or withdrawn, the Deputy should document their observations and refer the inmate to the medical personnel/Intake Nurse immediately.

    3.    Inmates who fit the above categories will be placed in the Infirmary or sent to NBB Unit 12 for evaluation after screening by the Intake Screening Nurse.

B.    Intake:

    1.    The Intake Screening Nurse, upon notification, will conduct a medical screening which will include mental health assessment to determine appropriate referral by observing or inquiring into:

        a.    Signs of disorientation or agitation;
        b.    Behavior/physical appearance suggesting risk of suicide;
        c.    Current medication being taken for psychiatric disorder, hospitatlization or treatment by a psychiatrist for any mental illness;
        d.    Prior treatment for mental disorder;
        e.    Serious substance abuse.

    2.    If during the screening, the inmate presents a danger to self or others, the psychiatrist/psychologist will be notified immediately, the inmate will be placed in the Infirmary or Forensic Unit. A pre-screen will be done by the psychiartrist/psychologist to determine if the individual is indeed a danger to self or others or has a psychiatric disorder diagnosed. If so, Baker Act procedure will be initiated as follows:

        a.    The pre-screen will be completed and forwarded to the Medical Director/designee for medical clearance.

        b.    The medical clearance, along with a copy of the completed Baker Act Form, is forwarded to Confinement Status.

        c.    The original Baker Act Form will be sent to the Crisis Stabilization Unit together with the transfer discharge and medical clearance. Transportation Unit will be notified to transport the inmate to the designated C.S.U.

C.    Intervention:

    1.    Inmates will be interviewed by Pretrial personnel to determine eligibility for Pretrial Release under the following conditions:

        a.    Notice to Appear;

        b.    Community Control;

    2.    The Public Defender can also be notified for appropriate intervention.

D.    Classification:

    1.    Classification will recommend appropriate housing based on medical assessment and the mental capacity of the individual. Placement will be based on behavior that is observed, assessed or documented history.

    2.    Reclassification will be done when there is a change due to medical reasons; e.g., stability or deterioration.

E.    Facility Care:

    1.    Any inmate housed on the 2nd Floor, Main Jail who demonstrates signs of medical illness must be brought to the attention of the medical staff; e.g., Intake Nurse or Charge Nurse for immediate evaluation.

    2.    Inmates who are identified as mentally ill/developmentally disabled will be placed in Unit 12 NBB to be treated and managed by the Medical Provider's Mental Health Staff. An individual treatment plan will be developed to prevent deterioration or exploitation.

3. Each inmate will be treated with the goal of returning them to general population and maintain their stability through medication and programs which include counseling, group therapy, education and art. All psychological counseling, services and evaluations will be performed by the Medical Providers licensed Mental Health professionals. Access to programs is allowed if there is no threat to the health and safety of others.

4. An inmate housed in general population can receive Mental Health services by a referral from a Deputy or nurse or by way of inmate medical request. If it is an emergency, the inmate will be seen immdiately by the Facility Mental Health staff. If not, they will be seen at sick call and, if appropriate, referred to the psychiatrist or designee for mental health care and or placement.

5. Each Monday, a list of inmates receiving mental health treatment is sent to Henderson Mental Health Clinic. Past and present clients are identified from that list and will be seen by a staff member from Henderson Clinic within a week. Henderson Forensic Team will assist in offering linkage to community mental health treatment, provide needed support and services in the areas of housing, educational/technical training, vocation and socialization before and after release.

6. A mental health assessment will be completed on all inmates at the time of the history and physical examination and no later than fourteen (14) days of incarceration in order to identify mentally ill inmates that were not identified at Booking or Intake who are in general population. This assessment will be:

   a. Review of intake screening;

   b. Collection of additional data from diagnostic interviews, tests and coping abilities;

4 of 5

c.   Documentation of mental health history.


**AUDITS:**

Internal Audits shall be conducted at least annually in accordance with the Internal Audit Schedule.

_____
Legal Counsel Review

_____
Susan W. McCampbell, Director

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

possible. Small amounts of drugs may be flushed into the sewer system, unless prohibited by local ordinance. An officer or appropriate health care staff member shall destroy the medication in an approved manner. A second officer or medical staff member shall witness this destruction and both persons shall sign and date the unused drug list attesting to the destruction of the medication and listing the method of destruction.

e.  Unused controlled medication shall be disposed of in the proper manner in keeping with the Florida Board of Pharmacy Rule 21S-19.005 F.A.C., Methods of Destruction.

**C. Continuity of Prescribed Medication:** In order to maintain continuity of prescribed medication whenever an inmate is transferred to another facility, the inmate's Medication Log and three days dosage of the medication shall accompany the inmate's medical records to the receiving facility unless otherwise directed by the appropriate medical authority.

**D. Inmates Released From Custody:** Inmates who are taking prescription medication and are released from custody shall be given no more than 3 days dosage of the remainder of their medication to take with them, unless otherwise directed by the facility physician, so that they may continue the physician's prescribed treatment. If the inmate refuses the medication, the words "Refused" shall be written in the Amount Issued column on the Medication Log. The Officer shall then initial the Medication Log and the medication shall be treated as unused medication and shall be handled in accordance with Subsection (6) above.

**E. Prescription Practices:** Prescription practices shall include the following requirements:
a.  Psychotropic medications are prescribed only when clinically indicated as one facet of a program of therapy.
b.  **"Stop Order"** time periods shall be required for all medications.
c.  The prescribing provider shall reevaluate a prescription prior to its renewal.

**F. Administration and Accountability of Medication:**

1.  The administration of medication shall be in accordance with the facility health care plan and accomplished by licensed medical personnel or by qualified and trained facility staff members according to the directions of the facility's designated physician.

2.  The accountability for administering or distributing medications shall be accomplished in a timely manner and according to physician orders.

**G. Psychotropic Drugs:**

1.  Psychotropic drugs, such as antipsychotic, antidepressants and drugs requiring parenteral administration shall be prescribed only by a physician or authorized health provider. This shall be accomplished by an agreement with the physician and then only following a physical examination of the inmate by the health provider. Such drugs shall be administered by the responsible physician qualified health personnel or health trained personnel under the direction of the health authority.

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**STANDARD OPERATING PROCEDURES**

**8/01/97**                                                                                           **4.5.8**

## 4.5.8 - PHARMACEUTICAL - HEALTH CARE (REVISION)

**The following revision will become effective immediately:**

**K.** Over the counter (OTC) drugs can be purchased without prescription. These are available to inmates upon request. If any OTC drug is abused, the Pharmacy and Therapeutics Committee has the option of processing such drug as a controlled substance. Inmates will only posses a one week supply (14 packs) of the OTC drugs Sudodrin and Chlorphen. Inmates are encouraged to seek professional medical attention for symptoms that persist for longer than one week.

**The rest of the Standard Operating Procedure remains the same.**

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

verbal order or orders from a referring physician. All such orders will be written on a Doctors Order Sheet, transcribed and signed by the staff physician or when appropriate, by an Advanced Registered Nurse Practitioner, within 24-72 hours.

**M.** Medication will be administered by licensed nurses from containers that are labeled by a registered pharmacist. They will be administered as directed on the label and will be recorded on the Medication Administration Record (MAR).

**N.** Medication will not be returned to the original container after it has been removed.

**O.** Newly ordered medications and treatments will be administered by a licensed nurse within 48 hours on weekends.

**P.** Needles, syringes and sensitive items are counted every shift for correct inventory. All discrepancies will require a completed Incident Report and immediate notification to Head Nurse, Charge Nurse and Housing Deputy.

**Q.** Psychotropic medications will be administered only when clinically indicated as one facet of a therapeutic program.

**R.** Needles, syringes and sensitive items will be signed out by the nurse or designee, when needed, in the appropriate log.

**NOTE:** All medication orders will be written for no more than 30 days with only 2 refills. Renewal of the medication can only be effected after the physician revaluates the inmates condition to verify continued need.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.9 - HEALTH SCREENING AND EXAMINATIONS - HEALTH CARE

**PURPOSE:** To establish policy regarding inmate health screening and examinations within the Department of Corrections and Rehabilitation (DCR).

**POLICY:**

**A. Health Screening**

1.    DCR shall have a receiving medical screening procedure which shall be performed during the admission process. The screening shall, at a minimum, consist of filling out the medical screening form and visual observation by licensed health care personnel. The screening shall include inquiry into and recording of:
   a.    Current illnesses and health problems including venereal diseases and other infectious diseases.
   b.    Medications taken and special health requirements.
   c.    Behavioral observation, including state of consciousness and mental status.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

1.  Review of intake screening by qualified health personnel as designated by the facility physician.

2.  Collection of additional data to complete the medical, dental, psychiatric and immunization histories.

3.  Diagnostic tests necessary to detect communicable disease, including venereal diseases and tuberculosis.

4.  Recording of height, weight, pulse, blood pressure and temperature.

5.  Other tests and examinations as appropriate

6.  Medical examination with comments about mental and dental status. Examination of females shall include a gynecological appraisal.

7.  Review of the results of the medical examination, tests and identification of problems by a physician.

8.  The form used for the health appraisal shall be approved by the facility physician.

9.  The facility policy and procedure requiring a health appraisal shall be contained in the standard operating procedure for the medical section.

10. Initiation of therapy when appropriate

11. Development and implementation of treatment plan, including recommendations concerning housing, job assignment and program participation.

**D.  Collection and recording of health appraisal data:**

1.  Health records shall be maintained on each inmate who is admitted to DCR.

2.  A copy of each inmate's health records shall be kept by DCR for a period of not less than 4 years following the release, transfer or death of the inmate.

3.  Written procedure and practice for the collection and recording of the health appraisal shall require the following:
    a.  The process is completed in a uniform manner as determined by the health authority.
    b.  Health history and vital signs are collected and documented by licensed health personnel.
    c.  Collection of all other health appraisal data is performed only by licensed health personnel.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

## 4.5.10 - DENTAL SCREENING AND EXAMINATION - HEALTH CARE

**PURPOSE:** To establish policy regarding dental care for inmates housed within DCR.

**POLICY:** The Department of Corrections and Rehabilitation (DCR) shall have an agreement or understanding with a licensed dentist to provide emergency dental care.

Written procedure shall require that dental care be provided to each inmate under the direction and supervision of a dentist, licensed in the state, as follows:

**A.** Dental screening within 14 days of admission.

**B.** Dental hygiene services within 14 days of admission.

**C.** Dental examinations within three months of admission.

**D.** Dental treatment, not limited to extractions, within three months of admission when the health of the inmate would be adversely affected.

**AUTHORITY:** F.A.C. 33-8.007(12), N.C.C.H.C.J-37 and ACA 4E-23

**APPLICABILITY:** This policy applies to all DCR personnel.

**PROCEDURE:**

**A.** All dental treatment will be done by professionals licensed and qualified to perform such treatment.

**B.** Preliminary dental assessment will be performed by the health care staff. Any abnormalities found will be referred to a licensed dentist for treatment.

**C.** At the time of admission, all inmates will be questioned as to dental problems. If a problem exists, the inmate will be referred to the dental clinic.

**D.** Within fourteen (14) days of admissions, all inmates will receive an additional dental screening during their health appraisal. This screening will include:

1. Any dental injuries or painful conditions.

2. Presence or absence of dental prosthesis.

3. A brief exam of the oral cavity.

4. Instructions in the proper methods of maintaining good oral hygiene.

**E.** If a problem exists, the patient will be referred to the dental clinic.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

1.    If the patient can be treated appropriately in the facility, the medical staff will document clinical findings and course of action and communicate this to the oncoming shift for follow-up observation and/or treatment.
    a.    A history will be obtained on the patient. The medical staff will assess the patients condition and report the status to the in-house physician/MD.
    b.    Vital signs will be monitored and documented. If the patients condition becomes unstable, EMS will be activated.

2.    If treatment at an intermediate or acute care facility is required, the medical staff will:
    a.    Determine the mode of transportation required; department vehicle or ambulance.
    b.    Notify the on-duty Medical and DCR Shift Supervisor.
    c.    Complete the Referral Form.
    d.    Notify the referral facility's emergency room of transfer.

3.    Completion of necessary documentation of medical treatment performed and findings will be done by health care staff. Copies of documentation will be prepared and sent to the receiving facility. The medical doctor and Health Service Administrator or designee will be notified.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.12 - SICK CALL - HEALTH CARE

**PURPOSE:** To establish policy regarding the daily sick call process for inmates to access the health care system within the Department of Corrections and Rehabilitation (DCR).

**POLICY:**

**A.** Written procedure and practice require that sick call is conducted daily by a physician and/or other qualified personnel and is available. A medical request procedure shall be established and maintained so that inmates may request medical assistance which may or may not require a formal clinic visit.

**B. Sick Call:**

1.    A sick call procedure shall be established and maintained so that an inmate reports for and receives appropriate medical services for non-emergency illness and injury.

2.    Each facility shall provide each inmate the opportunity for daily sick call supervised by the facility physician or designee.

3.    Treatment shall be initiated when appropriate and shall occur within the time period as provided by the facility physician.

4.    If an inmate's custody status precludes attendance at sick call, arrangements are made to provide sick call services in the place of the inmate's detention.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

## 4.5.13 - USE OF HEALTH CARE SPECIALISTS - HEALTH CARE

**PURPOSE:**  To establish policy regarding the use of medical specialists for inmate health care within the Department of Corrections and Rehabilitation (DCR).

**POLICY:**  Written procedure shall require that arrangements are made for the provision of special medical programs, including chronic care, convalescent care and medical preventive maintenance for the inmates.

**AUTHORITY:**  N.C.C.H.C. J-50,53 and ACA 4E-28

**APPLICABILITY:**  This policy applies to all DCR personnel.

**PROCEDURE:**

**A.**  All inmates must sign the following authorization forms prior to receiving medical treatment.

1.     Consent to health care services

2.     Informed consent for medical

3.     Release of responsibility

**B.**  Any invasive procedure such as suturing of lacerations or incisions and other minor procedures that can be performed safely at the facility will require written consent.

**NOTE: In the case of juveniles, the consent of parent, guardian or legal custodian must be obtained unless the juvenile has been adjudicated an adult. The Director, as legal custodian, may give consent for treatment of juveniles in emergencies or if their parent, guardian cannot be reached.**

**C.**  The staff physician or designee will notify the Shift Supervisor who will make arrangements for notification to next of kin. In the event of serious illness, before any surgical or major treatment is administered, the staff physician or designee will be notified.

**D.**  If an inmate refuses treatment but refuses to sign the Refusal Form, two staff members will witness the incident and sign the form and placed in the inmate's permanent medical record.

**E.**  Upon arrival, all inmates are assessed to determine if they meet the criteria of special needs; e.g., chronic illness clinic, specialists and convalescent care.

**F.**  A follow-up evaluation will be made by the physician and a treatment plan developed by physician and mental health staff specifically for the patient.

**G.**  Each patient placed in chronic illness clinic will be reviewed on a regular basis. Assessment will be performed at a minimum of every ninety days to determine continued need.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

transferred under appropriate security provisions to a facility where such care is available.

Written procedure and practice provide that prior to transfer to another facility or other substantial travel, either the inmates or their records are evaluated by health care personnel to assess suitability for travel.

**AUTHORITY:**  N.C.C.H.C.J.-29,34,62 and ACA 4E-30,4E-31

**APPLICABILITY:**  This policy applies to all DCR personnel.

**PROCEDURE:**

**A.**  Deputies or staff who observe a medical emergency will immediately notify the nearest Control Room to announce a medical emergency (Signal 67).

**B.**  Staff trained in First Aid and/or C.P.R. will render immediate medical assistance until relieved by medical staff.

**C.**  The on-duty health care staff will immediately respond to all calls regarding a medical emergency with inmates (Signal 67).

**D.**  They will assess the inmate's condition and determine the following:

1.   When treatment at an intermediate or acute care facility is required, the medical staff will:
     a.   Determine the mode of transportation required; department vehicle or ambulance
     b.   Notify the on-duty Supervisor
     c.   Complete the Referral Form
     d.   Notify the referral facility

**E.**  When ambulance transport is required, Master Control will be contacted by medical personnel to have an ambulance respond to the appropriate area. Master Control will document all information in the Master Control Daily Activity Log Book.

**F.**  The on-duty Transportation Unit Supervisor will designate a deputy to escort ambulance personnel to the area where the emergency is located and designate a deputy to escort the inmate to the off-site treatment facility.

**G.**  When an inmate is admitted to an outside treatment facility, the on-duty Infirmary charge nurse will document the admitting diagnosis, the physician and name of hospital on the health record.

**H.**  Inmates returning from a referring facility will be placed in the infirmary until cleared by the physician.

**I.**  Once an inmate has been admitted to a treatment facility, Transportation Unit will provide a deputy for hospital detail until the inmate is medically cleared, returned to the facility or disposition of the charges releases the inmate from the custody of the Sheriff's Office.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

3.    Dental hygiene;

4.    Nutrition;

5.    Venereal disease;

6.    Tuberculosis and other communicable diseases;

7.    Effects of smoking;

8.    Self-examination for breast cancer;

9.    Substance abuse;

10.   Dangers of self-medication;

11.   Hypertension detection;

12.   Family planning, including appropriate services and referrals;

13.   Physical fitness;

14.   Self care for chronic diseases and/or disabilities.

**AUTHORITY:** N.C.C.H.C. J-45,50 and ACA 4E-33

**APPLICABILITY:** This policy applies to all DCR personnel.

**PROCEDURE:**

**A.** Each inmate will be evaluated and treated on an individual basis.

**B.** Inmates with chronic illnesses such as seizure disorder, diabetes, asthma, psychosis, potential suicide, chemical dependency, chronic obstructive lung disease and any other condition that requires close supervision will be housed in the Infirmary (if hospital care is not required) during acute phase and in designated housing areas during non-acute phases.

**C.** The staff physician will outline and implement a plan of care for all chronic illnesses.

**D.** Pre-natal care will be provided for inmates who are pregnant as determined by the physician.

**E.** Communication with the Broward County Health Department will be on-going in an effort to prevent endemic and epidemic diseases from affecting the inmates and employees.

**F.** Other preventive medical programs may include:

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

4.    After returning from court;

5.    After receipt of bad news regarding self or loved ones;

6.    After suffering humiliation or rejection.

**B. Signs of depression include:**

1.    Loss of interest in daily activities;

2.    Social withdrawal;

3.    Guilt;

4.    Pre-occupation with suicide and/or thoughts of death;

5.    Expressed thoughts of self-destruction;

6.    Hopelessness;

7.    Lack of energy;

8.    Frequent crying;

9.    Pacing;

10.   Wringing of hands;

11.   Psychosomatic complaints;

12.   Inability to focus thoughts.

**C.** If signs of depression are observed, the observer will:

1.    Immediately notify medical personnel of observations and/or the inmates verbalizations. Upon notification, medical personnel will assess the patient and report significant data to the physician for appropriate orders.

2.    Place inmate under constant observation until they are seen by medical personnel.

**D.** Health care personnel will interview the inmate and initiate immediate precautionary measures as deemed necessary.

**E.** If an inmate attempts an act of self-destruction (cut wrists, attempts hanging) or is in imminent danger of injuring self, they will be secluded. An assessment of risk will be made by a psychiatrist, psychologist or registered nurse specialist. If unavailable, on duty medical staff will take precautions

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

Test results shall be confidential, except that they may be shared with employees or officers of the Sheriff who are responsible for the custody and care of the affected inmate and have a need to know such information. No person to whom the results of a test have been disclosed may disclose the test results to another person not authorized under this section.

The person receiving the test results may divulge the results to the Sheriff but such information is exempt from the public records provisions of F.S.S 119.01 and 119.07.

The results of any test on an inmate shall become a part of that inmate's permanent medical file. Upon transfer of the inmate to any other correctional facility, the results of such testing shall be transferred to the receiving facility in an envelope marked **"Confidential Medical Information."**

There shall be written procedures that specify approved actions to be taken by employees concerning inmates who have been diagnosed as H.I.V. positive. These procedures shall include, at a minimum, the following:

1. When and where inmates are to be tested

2. Appropriate safeguards for staff and inmates

3. Who shall conduct the tests

4. When and under what conditions inmates are to be separated from the general population.

5. Medical referrals required

6. Staff and inmate training procedures

7. Issues of confidentiality

**AUTHORITY:** F.S.S. 119.01,119.07, BSO P&P Manual Chapter 11, F.A.C. 33-8.007 (21)(22)(23)(24), N.C.C.H.C. J-13,16,45,50 and ACA 4E-35, 4E-36

**APPLICABILITY:** This policy applies to all DCR personnel

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

and/or alcohol abuse.

**B.** Inmates booked into the facility who appear to be under the influence of unknown substance are to be segregated from general population.

**C.** The nurse on duty will place an inmate who is experiencing alcohol withdrawal symptoms to the appropriate area for observation and for physician or Physician Assistant (PA) evaluation. During working hours, the physician (PA) or Advanced Registered Nurse Practitioner (ARNP) should be notified if patient has mild symptoms such as tremors, mild increases in respiratory rate (16-24 breathes/min) or feelings of anxiety without panic attacks.

**D.** The nurse on duty will be notified if any inmate presents any of the following symptoms during their time of incarceration:

1.    Suicidal or withdrawal tendencies

2.    Delusions and hallucinations

3.    Communication difficulties

4.    Difficulty in speech or posture

5.    Impaired level of consciousness

6.    Disorganization of thought

7.    Memory defects

8.    Depression or evidence of self-mutilation

**E.** The nurse will notify the staff physician of all inmates who may be experiencing substance withdrawal. Symptoms of substance withdrawal include:

1.    Abdominal rigidity

2.    Nausea

3.    Stomach cramps

4.    Tense neck and back muscles

5.    Cold sweats

**More severe symptoms include:**

6.    Drop in blood pressure

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

for on-going therapy.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.22 - INMATE PARTICIPATION IN RESEARCH - HEALTH CARE

**PURPOSE:** To establish policy for the Department of Corrections and Rehabilitation (DCR) regarding inmate participation in research while incarcerated in any BSO/DCR Jail facility.

**POLICY:** DCR shall **prohibit** the use of inmates for medical, pharmaceutical or cosmetic experiments. This policy shall not preclude individual treatment of an inmate based on their need for a specific medical procedure that is not generally available.

**AUTHORITY:** N.C.C.H.C. J-68 and ACA 4E-43

**APPLICABILITY:** This policy applies to all DCR personnel.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.23 - NOTIFICATION OF DESIGNATED INDIVIDUALS FOR INMATES HEALTH CARE

**PURPOSE:** To identify the policy governing the notification of designated individuals identified by the inmate in the event of serious illness or injury of an inmate.

**POLICY:** Written policy and procedure shall specify and govern the process by which the individuals designated by the inmate are notified in case of serious illness or injury. If possible, permission for notification shall be obtained from the inmate prior to the notification itself being accomplished.

**AUTHORITY:** N.C.C.H.C. J-08,09 and ACA 4E-44

**APPLICABILITY:** This policy applies to all DCR personnel.

**PROCEDURE:**

**A.** Identification of the inmates' next of kin will be obtained from the inmate at the time of admission and maintained in the inmates' Classification File.

**B.** Notification will be made as soon as possible after an emergency situation or if there is imminent danger of death due to serious injury or illness.

**C.** The inmate's next of kin will be notified by the Chaplain as to the nature of the emergency.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

**RON COCHRAN**
**SHERIFF**
**BROWARD COUNTY**
**P.O. BOX 9507**
**FORT LAUDERDALE, FLORIDA   33310**

**SPECIAL ORDER 96-01**

Date:       January 31, 1996

To:         **ALL PERSONNEL**
            **DEPARTMENT OF CORRECTIONS AND REHABILITATION**

From:       Susan W. McCampbell, Director
            Department of Corrections and Rehabilitation

Subject:    **REVISES STANDARD OPERATIONAL POLICY 4.5.24**
            **INMATE DEATH**

The following revision is effective immediately:

PROCEDURE:

A.    Notifications:

      3.    The Shift Lieutenant will ensure that the
            next of kin is notified prior to the end of
            the tour of duty.

      4.    The Sheriff and Office of Legal Counsel will
            be provided a complete report within twenty-
            four (24) hours of the incident.

The rest of the procedure remains the same.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

Confidentiality of the inmate's health record requires that the record be maintained separate from the confinement record. Access to the inmate health record shall be controlled by the health authority. The health authority shall share with the Facility Administrator or designee information regarding an inmate's medical, management, security and ability to participate in programs on a need to know basis.

**AUTHORITY:**  F.A.C. 33-8.007, N.C.C.H.C. J-59-63 and ACA 4E-46,47,48

**APPLICABILITY:**  This policy applies to all DCR personnel.

**PROCEDURE:**

**A.**  The health care provider will ensure a health file is created and maintained for each inmate to accurately document all health care services provided throughout confinement.

**B.**  Only qualified institutional health care personnel will collect and record health history, vital signs and other health appraisal data onto the approved health record forms. Inmates will not be allowed access to or file information in any health file.

**C.**  Only employees with a legitimate need may have access to inmate health records. Any dispute regarding accessibility to these files will be resolved by the Director of DCR or designee. Facility Administrators, Commander of Special Operations Bureau or designee will be provided with health information required for security and program participation. The Broward Sheriff's Office Health Service Coordinator will have unconditional authority for access to inmate health records.

**D.  File Initiation:**

1.  The inmate health record will be initiated when an offender is first committed to DCR. This will be accomplished with the use of the Intake Health Screening Form approved by the health care provider.

2.  The Screening Form will document the following information, at a minimum:
    a.  Current illness and health problems as described by the inmate or health service employee
    b.  Dental problems
    c.  Mental health problems or history and mental status
    d.  History of substance abuse
    e.  History of suicide attempt
    f.  Possibility of pregnancy
    g.  Observation of behavior, body deformities, ease of movement, injuries, etc.
    h.  Skin condition, trauma, scars, tattoos, vermin, etc.
    i.  Other apparent medical or mental health problems
    j.  Disposition of the case, whether to general population, general population with referral for medical follow-up, special housing or emergency treatment

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

3.    A non-jail physician treating an inmate will receive copies of inmate health care records **only** with signed authorization from the inmate. Access to health care records will only be through court order or statutory guidelines.

4.    Copies of health care records to legal representatives or other persons authorized by the inmate will be forwarded under the following guidelines:
      a.    Signed authorization from the inmate;
      b.    A fee of one dollar ($1.00) per page up to the first ten (10) pages and twenty-five cents ($0.25) each page thereafter (subject to change).

5.    Inactive health care records will be maintained in a designated area of the Health Care Records Department for a period of four (4) years.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

## 4.5.26 - ASTHMATIC INHALERS HEALTH CARE

**PURPOSE:** To establish policy for the Department of Corrections and Rehabilitation (DCR) concerning the use of asthmatic inhalers.

**POLICY:** Inmates who have been diagnosed by the staff physician as requiring an asthmatic inhaler are furnished an inhaler by health care provider. Inmates retain their inhalers for use as instructed.

**AUTHORITY:** Broward County Sheriff's Office, Department of Corrections and Rehabilitation.

**APPLICABILITY:** This policy applies to all DCR personnel.

**PROCEDURE:**

**A.** The necessity for an inmate to have an asthmatic inhaler is determined by health care personnel. Upon the staff physician's approval, an inhaler is provided to the inmate with instructions on its proper use. The inmate's name and prescription information is listed on the inhaler. Health care provider will notify the housing unit deputy upon the issuance of an inhaler to an inmate.

**B.** The health care provider is responsible for the issuance of and the accountability of the inhalers.

**Note: Prior to the issuance of a new inhaler, the inmate must turn in the used one to the medical staff.**

**C.** The inmate may have the inhaler on their person or in their living area at all times.

**D.** Any abuse of the inhaler will result in disciplinary action against the inmate.

**AUDITS:** Shall be conducted at least quarterly in accordance with the Internal Audit Schedule.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

At no time shall any inmate be denied access to health care services because of the inmate's inability to pay.

All inmates shall receive the same level of medical, dental and mental health care regardless of their ability to pay. If the inmate has sufficient funds to cover the co-payment, it shall be deducted from their individual escrow account. If the inmate does not have the funds to cover the co-payment, funds shall be debited as money is placed into the inmate's individual escrow account. Having a balance of one ($1.00) dollar shall qualify the inmate as indigent.

**AUTHORITY:** F.S.S. 901.35, 951.032 and F.A.C. 33-8.007

**APPLICABILITY:** This policy applies to all DCR inmates.

**FORMS:**
Health Service Receipt Form - **BSO DJ#14**

**DEFINITIONS:**
**Inmate Escrow Account:** Individual banking account held in trust for inmates incarcerated in DCR.

**Indigent Inmate:** An inmate with a balance $1.00 or less.

**Over The Counter Medication (O.T.C.):** Non-prescription medication.

**PROCEDURE:**

**A.** Inmates will be advised of the fee schedule and policy during the orientation process and copies of both fee schedule and policy will be posted in each housing unit as well as included in the Inmate Handbook.

**B. Sick Call:**

1.   When examined or treated by a doctor/dentist/nurse/dental assistant during sick call, a fee will be debited against the inmate's individual escrow account. Inmates refusing to sign for payment of their treatment will have their account debited according to the Medical Fee Schedule.

2.   If examined at nurse/dental assistant during Sick Call and referred at that visit to physician/dentist Sick Call, no fee will be assessed for nurse/dental assistant Sick Call.

3.   A fee will not be assessed for a follow-up examination of an existing condition if scheduled by provider within sixty (60) days of initial visit.

**C. Medications:**

1.   No fee will be assessed for psychotropic medications.

Broward County Sheriff's Office
Department of Corrections and Rehabilitation
Standard Operational Policy Manual

**F. Medical/Dental Billing Procedures:**

1.    The Health Service Receipt Form **(BSO DJ#14)** will be used when services are provided. A medical/dental staff member will denote the charge(s) on the billing form and distribute as follows:
    a.    Original (White):  Delivered to Inmate Banking/Commissary located at the Main Jail Bureau on the same day that services are provided;
    b.    Yellow Copy:  Filed in inmate's health care record;
    c.    Pink Copy:  Given to inmate.

2.    Inmates Banking/Commissary will deduct the amount indicated on the billing form from the inmate's account. If the inmate's account shows less than one dollar ($1.00) balance, the amount shown on the billing form will be debited against the account and the fee(s) will be deducted as monies are deposited into the account to satisfy the indebtedness.

**G. NOTE:**

1.    O.T.C. medications will be delivered with regularly scheduled weekly deliveries of Commissary. O.T.C. orders will be accepted up to forty-eight (48) hours prior to the scheduled delivery date.

2.    Health care personnel will continue the current practice of delivering O.T.C. medication when indicated which will be included in the sick call fee.

3.    List of available items, prices and packaging will be given to all incoming inmates with additional copies posted in the Units.

4.    Quantities of O.T.C. medication will be limited to that quantity determined to be appropriate by the health care provider.

**AUDITS:**  Shall be conducted at least annually in accordance with the Internal Audit Schedule.

## 4.5.29 - INMATE HEALTH CARE CONSENT

**PURPOSE:**  To establish policy for the Department of Corrections and Rehabilitation (DCR) to obtain inmate consent for health care.

**POLICY:**  It is the policy of DCR to obtain inmate consent, in writing, before providing health care in order to establish a mechanism for recording an inmate's consent or refusal for health treatment. All refusals of health care shall be documented and placed in the inmate's permanent health records.

**AUTHORITY:**  BSO DCR Administration

**APPLICABILITY:**  This policy applies to all DCR personnel.

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**STANDARD OPERATING PROCEDURES**

01/13/96                                                                                    4.5.32

## INMATE REFUSAL OF MEDICAL CARE 4.5.32 (REVISED)

**The following revised SOP will become effective immediately.**

## POLICY:

It shall be the policy of the Department of Corrections and Rehabilitation to implement procedures whereby an inmate can refuse health care and treatment, and such refusal is documented.

**AUTHORITY:**    NCCHC J-65, ACA 4E-46

## PROCEDURE:

### A. Inmates Refusing Medical Treatment:

1. Inmates who refuse medical treatment will be required to sign a refusal form. This includes inmates who refuse the following but not limited to:
   a. Clinic Appointments
   b. Dental Appointments
   c. X-rays
   d. Blood Work

2. Inmates who refuse medical treatment will be promptly escorted to the Medical Unit in order to sign a refusal form in the presence of a medical staff member. The medical staff member will advise the inmate of the consequences of refusing treatment.

3. Inmates who refuse to be escorted to the Medical Unit in order to sign a refusal form will be subject to a Disciplinary Report for failing to obey a direct order (Code of Conduct A-4).

4. A signed refusal form does not waive the inmate's right to subsequent health care.

5. The signed refusal form will be filed in the inmate's medical record by Medical Staff.

6. Inmates judged too violent to escort to medical by the Movement Deputy or Housing Deputy will be reported at the time of the scheduled visit to the responsible Clinic Nurse.

### B. Inmates Refusing Prescribed Medication and Other Treatment During Medication Rounds:

1. The medical staff member present with the inmate will allow inmates to sign refusal forms for the following treatment without being escorted to the Medical Unit:

   a. Blood Pressure Checks
   b. Taking prescribed medication.
   c. Receiving prescribed first aid for minor existing injuries.

2. If an inmate does not sign the refusal form, the medical staff member administering the medication or providing the treatment, will sign the form indicating the refusal and the escorting deputy will sign as a witness to the inmate's refusal. The signed refusal form will be filed in the inmate's medical record.

3. The medical staff member will advise the inmate of the consequences of refusing medication/treatment.

**AUDITS:** Audits shall be conducted in accordance with existing schedules.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

WILLIAM M. HICKS,                                    Case No. 00-6087-CIV-Dimitrouleas

       Plaintiff,

vs.

KEN JENNE, SUSAN McCAMPBELL,              **AFFIDAVIT IN SUPPORT OF**
BARBARA HANSON-EVANS, STANLEY             **MOTION FOR**
HOLMES, JOHN DOE'S #1 and #2,             **SUMMARY JUDGMENT**
DR. W.C. DAVIS, DR. UCKER,
DR. TREVOR WEATHORS, DR. CLINE,
DR. PEARSON, DR. G. PEARSON,
EMERGENCY MEDICAL SERVICES ASSOC.,

       Defendants.
_____/

     **BEFORE ME** this day personally appeared STANLEY HOLMES who, upon oath,

deposes and states as follows:

     1.  My name is STANLEY HOLMES.  At all times pertinent to this lawsuit, I was the

Ombudsperson for the Broward Sheriff's Office. As such my duties included addressing all quality

of life issues as it relates to the inmates housed in the Broward County jail facilities.

     2. I am not a licensed medical care provider and rely on the medical expertise of the

doctors and nurses that examine and treat the inmates in the Broward County jail facilities.

     3.  Any contact I had with the Plaintiff William M. Hicks would have been in my capacity

as Ombudsperson for the Broward Sheriff's Office.

     4.  I am not responsible for inmate classification or security and had no contact with either

Plaintiff Hicks or inmate Norman Beech at anytime on the day of the subject incident, February 9,

1



1996.

5. I had no involvement in the February 9, 1996 incident and had no knowledge concerning the altercation that occurred between the Plaintiff and inmate Beech until after the incident had already taken place.

6. Any complaints Plaintiff had regarding his medical care which were brought to my attention I dealt with by either contacting appropriate jail medical providers to discuss with them Plaintiff Hick's medical care and treatment or by contacting Health Services Administrator Barbara Hanson-Evans to more specifically handle these issues. At no time did I have reason to believe that the medical care Plaintiff Hicks was receiving was inappropriate or inadequate.

7. It was and is my belief that Plaintiff received prompt and appropriate medical care given his symptoms and complaints while in the Broward County jail facilities and no deliberate indifference was shown toward his serious medical needs.

8. I do not believe that the Broward County Sheriff's Office would permit an employee of either the Broward Sheriff's office or EMSA to be deliberately indifferent to inmates' serious medical needs, safety or welfare.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
STANLEY HOLMES

STATE OF FLORIDA        )
                        :SS
COUNTY OF BROWARD       )

**BEFORE ME**, this ___30th___ day of November, 2001, personally appeared STANLEY HOLMES, who is to me well known, or who presented Drivers License as identification, and who

2

acknowledged through oath that he did execute this Affidavit and that all the facts contained herein are true and correct to the best of his knowledge and belief.

Notary Public

My Commission expires:

OFFICIAL NOTARY SEAL
JENNIFER H MORGAN
COMMISSION NUMBER
CC923931
MY COMMISSION EXPIRES
APR. 20,2004

3