UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE SORRENTINO

CASE NO. 00-6087-Civ-Dimitrouleas

WILLIAM M. HICKS,            )
                             )
            Plaintiff,       )
                             )
v.                           )
                             )
KEN JENNE, SUSAN McCAMPBELL, )
BARBARA HANSON-EVANS,        )
STANLEY HOLMES, JOHN DOES    )
#1 AND #2, DR. W.C. DAVIS, DR. )
UECKER, DR. TREVOR WEATHERS, )
DR. CLINE, DR. PEARSON, DR. G. )
PEARSON, EMERGENCY MEDICAL   )
SERVICES ASSOCIATION,        )
                             )
            Defendants.      )
_____)

**NIGHT BOX
FILED**

DEC - 3 2001

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

**DEFENDANTS, EMERGENCY MEDICAL SERVICE ASSOCIATION,
DR. W.C. DAVIS, DR. UECKER, DR. TREVOR WEATHERS,
DR. CLINE, DR. PEARSON AND DR. G. PEARSON'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, EMERGENCY MEDICAL SERVICE ASSOCIATION ("EMSA"), DR. W.C. DAVIS ("DAVIS"), DR. UECKER ("UECKER"), DR. TREVOR WEATHERS ("WEATHERS"), DR. CLINE ("CLINE"), DR. PEARSON ("PEARSON"), and DR. G. PEARSON ("G. PEARSON"), by and through their undersigned attorney, pursuant to Fed.R.Civ.P. 56 and Local Rule 7.5, move for entry of final summary judgment against



Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

Plaintiff and as grounds therefor, would show the Court that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.

## INTRODUCTION

The Plaintiff, William Hicks ("HICKS"), brought suit against EMSA and the above-named individual Defendants, individually and in their official capacities, alleging a violation of 42 U.S.C. § 1983. Plaintiff specifically alleged that the Defendants were deliberately indifferent towards his medical needs. At the time Plaintiff's alleged injuries occurred, he was a pretrial detainee. As such, Plaintiff's claims arise from the Due Process Clause of the Fourteenth Amendment; however, in the context of a pretrial detainee's claim of denial of medical care, the standard is scrutinized under the Eighth Amendment prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571-74 (11th Cir.1985).

In the Magistrate's Report and Recommendation, adopted by this Honorable Court, the Defendants' Motion to Dismiss was denied with the exception of Defendant INPHYNET.

## A CONCISE STATEMENT OF FACTS PURSUANT TO LOCAL RULE 7.5

William M. Hicks is presently an inmate at the Everglades Correctional Institution. See William Hicks Deposition at 5. Mr. Hicks was arrested in 1995 and charged with first degree murder, robbery and assault and battery. Id. at 6. He was convicted of these crimes and is

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

serving a life sentence without parole, a life sentence with parole and fifteen years. Id. at 6, 297-98.

Prior to entering the Broward County Jail system, Mr. Hicks was addicted to drugs and alcohol. Id. at 153-53. In addition, Mr. Hicks has been mentally ill for most of his adult life. Id. at 17-19.[1] From the time he entered the Broward County Jail system through the present day, Mr. Hicks has been administered a variety of psychotropic medications. He has been made aware of the medications' side effects which include, but are not limited to: memory loss, loss of sleep, loss of appetite, anxiety, blurred vision, sleepiness, acts of violence and headaches. Id. at 225-26.

Mr. Hicks was detained at the North Broward Detention Center from 1995 through 1998. Id. at 6. While at this facility, Mr. Hicks visited with the individual Defendants on numerous occasions where he complained of a variety of medical problems which arose from an altercation with another inmate on February 9, 1996. Id. at 28-29.[2] Chief among Mr. Hicks' complaints were jaw pain, pain on the right and left sides of his face, neck pain, headaches, nausea, dizziness and problems with his right eye. Id. at 61-3, 185-87.

Mr. Hicks' Visits With Dr. Davis, M.D.

---

[1] Specifically, Mr. Hicks suffers from depression and borderline personality. Id. at 19.

[2] Mr. Hicks testified that he was lying down in the recreation yard when another inmate, Norman Beech, struck him on the right side of his face. Id. at 32-33, 43.

-3-

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

Mr. Hicks saw Dr. Davis, M.D. approximately twenty minutes after the altercation. Id. at 173-74. Dr. Davis examined and treated a cut on Mr. Hicks' right eye. Id. at 254-55. Because Mr. Hicks complained of jaw pain and insisted that he be x-rayed, Dr. Davis obliged him and requested x-ray technician, Wayne Evans, to take x-rays of Mr. Hicks' mouth. Id. at 50-53. At that time, Dr. Davis did not find any fractures and noted that Mr. Hicks had a traumatic laceration. See Hicks Deposition, Composite Exhibit. Dr. Davis provided Mr. Hicks with Motrin. Id. In subsequent visits, Dr. Davis continued to inform Mr. Hicks that he did not have a fracture in his jaw. See Hicks Deposition at 258.

Mr. Hicks' Visits With Dr. Uecker, M.D.

Dr. Uecker worked at the main jail in Broward County and saw Mr. Hicks on several occasions. Dr. Uecker examined Mr. Hicks' face and took x-rays of Mr. Hicks and concluded that Mr. Hicks had a fracture under his right eye. Id. at 261. Dr. Uecker suggested OMF surgery for Mr. Hicks; however, this suggestion was made prior to Mr. Hicks seeing Dr. Uecker. Id. at 288. Dr. Uecker also provided Mr. Hicks with pain medication and ordered extra pillows for Mr. Hicks. Id. at 70.

Mr. Hicks' Visits With Dr. Weathers

Mr. Hicks saw Dr. Weathers, an oral surgeon, on at least ten occasions. Dr. Weathers performed a facial examination of Mr. Hicks and took x-rays. Id. at 272-74. Dr. Weathers determined that Mr. Hicks had a fracture and ordered pain medication. Id. at 275. Dr. Weathers

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

also ordered a special diet bag for Mr. Hicks which included food with calcium that would strengthen Mr. Hicks' jaw bones. Id. at 201. Dr. Weathers also ultimately determined that Mr. Hicks did not need to have his jaw wired shut and did not need the OMF surgery. See Amended Complaint, Exhibit A; See Hicks Deposition at 283-84.

Mr. Hicks' Visits With Dr. Cline, D.D.S.

Dr. Cline also worked at the Broward County Main Jail, primarily with Dr. Weathers. Id. at 274-75. Dr. Cline informed Mr. Hicks that he had a jaw fracture, but did not make the decision concerning not wiring Mr. Hicks' jaw shut. Id. at 285-86. Like Dr. Weathers, Dr. Cline ordered Mr. Hicks a special diet bag. Id. at 201.

Mr. Hicks' Visits With Dr. Pearson, D.D.S.[3]

Mr. Hicks saw Dr. Pearson less than five times. Dr. Pearson performed basic dental exams on Mr. Hicks and Mr. Hicks told her about difficulties with his jaw. Id. at 248-49. Dr. Pearson prescribed pain medications for Mr. Hicks. Id.

Mr. Hicks' Visits With Dr. G. Pearson, D.D.S.

---

[3] Mr. Hicks testified during his deposition that Dr. Pearson should not be a part of this suit. He is suing her, however, because he said she was aware of his jaw difficulties and did not reach out to other authorities to get him the help he claims to need. Mr. Hicks, though, does not have any personal knowledge whether or not Dr. Pearson contacted other authorities. See Hicks Deposition at 248-50.

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

Dr. G. Pearson practiced general denistry at the North Broward Detention Center Jail and saw Mr. Hicks on several occasions for dental checkups. Id. at 289, 292. Dr. G. Pearson always ordered pain medication and soft food diets for Mr. Hicks. Id. at 294-95.

Mr. Hicks' Subsequent Visits With Medical Personnel

Mr. Hicks had an MRI in the year 2000 which showed no fractures to his jaw or anywhere else on his face. Id. at 60. In recent visits with physicians and dentists, Mr. Hicks has been told that he has no fractures and that everything is normal. Id. at 122-24, 221. Mr. Hicks himself admits that his fractures may have healed. Id. at 221, 271.

## MEMORANDUM OF LAW

HICKS' suit is based on the Defendants' purported failure to provide him with proper medical care while he was a detainee at the North Broward Detention Center. HICKS alleges that each of the Defendants' acts and/or omissions rose to the level of deliberate indifference. See Amended Complaint at p. 19. The Defendants are entitled to summary judgment because HICKS has failed to adduce evidence that the Defendants were deliberately indifferent.

**I.    Claims Against Defendant EMSA**

Eleventh Circuit precedent establishes that when a private corporation, such as EMSA, contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, that corporation should

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

be treated as a government entity and as a person acting under color of state law within the meaning of § 1983. See Howell v. Evans, 922 F.2d 712, 724 (11th Cir. 1991), vacated 931 F.2d 711 (11th Cir. 1991), reinstated by unpublished order (June 24, 1991); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997).

EMSA is the legal equivalent of a municipality when evaluating whether it is liable under § 1983. The Eleventh Circuit applies Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978) to determine whether a private corporation performing traditional public functions is liable under § 1983. See Palermo v. Correctional Medical Services, Inc., 133 F.Supp.2d 1348, 1363 (S.D. Fla. 2001) (citation omitted). Monell held that when the execution of a policy or custom made by a municipality's lawmakers or by those who edicts or acts may be said to represent official policy inflicts any injury, the municipality can be held responsible. Monell at 692.

To hold Defendant EMSA liable under § 1983:

> The plaintiff must establish a widespread practice that, "although not authorized by written law or express . . . policy, is so permanent and well settled as to constitute a custom or usage with force of law."

Nelson v. Prison Health Services, Inc., 991 F.Supp. 1452, 1464 (M.D. Fla. 1997), quoting Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991). "The plaintiff would need to show either that the company was involved in the alleged violation or that a policy or custom of

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

the corporation led to the violation." Howell v. Evans at 724, quoting Ort v. Pitchback, 786 F.2d 1105, 1107 (11th Cir. 1986)].

The Plaintiff in the instant case has not established that EMSA had a longstanding policy or custom of failing to provide inmates with adequate medical care based on excessive costs of treatments. In fact, Plaintiff has never seen a policy and bases his allegations on personal belief. See Hicks Deposition at 296-97. Plaintiff fails to establish that EMSA instituted a systematic policy of denying adequate medical care to him and other similarly situated inmates or even that the care provided to him was representative of the type of care provided by the Defendants. See, e.g., Mauldin v. Burnette, 89 F.Supp.2d 1371, 1380 (M.D. Ga. 2000) (noting that even if plaintiff proved his case, it would constitute an isolated incident, not a custom, policy, or practice of unconstitutional treatment of prisoners.)

Furthermore, the alleged custom or policy of the medical defendants must be more than flawed or inadequate; it must have caused the constitutional violation. See Thornton v. City of Montgomery, Ala., 78 F.Supp.2d 1218, 1231 (M.D. Ala. 1999). The policy must represent a "deliberate choice to follow a course of action" and must "amount to deliberate indifference to the rights" of the inmates with whom the employees of the medical defendants come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 391, 109 S.Ct. 1997, 1205 (1989). Plaintiff has failed to show any custom or policy of EMSA which caused the alleged constitutional violations

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

and has not shown with any specificity how the actions of each of the medical defendants constituted deliberate indifference.

## II.   **Individual Defendants**

HICKS has failed to provide any facts sufficient to state a cause of action for an Eighth Amendment claim. Instead, his allegations are based purely on conjecture and assumptions. His claim is, at most, a claim of negligence that is not cognizable under the Eighth Amendment. See Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir.1999).

It is well settled that the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97 (1976), quoting, Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id. See also Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991) (citations omitted) ("Medical treatment

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.")

In Estelle, the Supreme Court established the "deliberate indifference" standard which was further clarified in Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Accordingly, under Estelle and Farmer, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. Therefore, "summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge as follows: 'since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.'" Campbell, 169 F.3d at 1364, quoting, Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir.1996). In addition to the subjective awareness of the relevant risk, Estelle, requires that a plaintiff show more than mere negligence

-10-

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

A defendant "must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir.1994). Implicit in the Estelle deliberate indifference standard is the requirement of knowledge of the plaintiff's particular medical condition to establish intent or "a sufficiently culpable state of mind." Id. Deliberate indifference also requires the defendant's conduct to be egregious and evidence "obduracy and wantonness." Brown v. Thompson, 868 F.Supp. 326, 331 (S.D. Ga. 1994), quoting, Whitley v. Albers, 475 U.S. 312, 319 (1986).

In Estelle, the Court found that the medical defendants' failure to order an X-ray or like measures did not represent cruel and unusual punishment, but at most, was a claim for medical malpractice. Id. at 107. Similarly, here, Plaintiff's claims against the individual medical Defendants are, at most, claims of medical malpractice. Plaintiff merely disagreed with the Defendants' scope and course of their treatment of him. See Hicks Deposition at 294, 138.[4]

---

[4] Plaintiff is not a doctor or a dentist and has no medical training. Plaintiff testified that he sometimes uses a medical dictionary to look up medical terms. Despite his lack of medical training, Plaintiff also testified that he himself was able to determine that he had fractures. Id. at 138.

-11-

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

### A.   **Defendant DAVIS**

DAVIS' care and treatment of HICKS does not rise to the level of deliberate indifference. DAVIS sutured HICKS' injury after HICKS' altercation with another prisoner and DAVIS reported that there was good closure of the injury. See Hicks Deposition at 262. Aside from a radiology report which suggested a fracture on the left mandibular ramus, DAVIS never concluded that HICKS did in fact have a fracture. Id. at 257-58. Although other physicians may have told HICKS that he had a fracture, the fact that DAVIS believed that he did not have a fracture clearly does not amount to deliberate indifference. See Estelle v. Gamble, supra. Rather, DAVIS' conclusion was a mere difference of opinion from some of the other physicians.

Plaintiff has not established that DAVIS purposefully ignored or did not respond to his pain or possible medical needs. See Hill, 40 F.3d at 1191. Certainly, DAVIS' taking X-rays and providing HICKS with pain medication but not diagnosing him with a fracture (See Hicks Deposition at 50-53), does not amount to egregious conduct. DAVIS is therefore entitled to judgment as a matter of law.

### B.   **Defendant UECKER**

UECKER was aware of HICKS' medical condition and originally suggested OMF surgery for him. UECKER also provided him with pain medications and an extra pillow. See Hicks Deposition at 268-271. HICKS wanted UECKER follow through with the suggested OMF surgery and to place an order to have him evaluated by an outside hospital. However

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

HICKS offered no evidence whether UECKER ever did or did not follow through with the surgery suggestion or place an order for another evaluation. Id.

Simply because HICKS disagreed with what he perceived was UECKER's failure to follow through with the suggested surgery or the failure to place an order for HICKS to be evaluated by an outside hospital does not amount to the egregious conduct necessary to maintain an Eighth Amendment claim. UECKER is therefore entitled to judgment as a matter of law.

C.  **Defendant WEATHERS**

WEATHERS is an oral surgeon who decided that it was not necessary to wire HICKS' jaw shut or to proceed with OMF surgery. He was aware of HICKS' medical condition and provided him with pain medications and a special diet bag.

HICKS' contention that WEATHERS should have wired his jaw shut and proceed with the OMF surgery (See Hicks Deposition at 288) is a mere difference of opinion between HICKS and WEATHERS and does not rise to the level of deliberate indifference delineated by Estelle and Farmer. WEATHERS is therefore entitled to judgment as a matter of law.

D.  **Defendant CLINE**

CLINE was also aware of HICKS' medical condition and provided him with pain medications and a special diet bag. HICKS believed that CLINE should have recommended certain treatments, such as having his jaw wired shut. See Hicks Deposition at 285. HICKS offered no evidence that CLINE never recommended that his jaw not be wired shut. Clearly,

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

CLINE's conduct is not egregious as to rise to the level of deliberate indifference. CLINE's scope and course of treatment of HICKS was not so grossly incompetent or inadequate as to violate the Eighth Amendment. CLINE is therefore entitled to judgment as a matter of law.

**E.     Defendant PEARSON**

HICKS testified that PEARSON should not be part of this lawsuit. He contends that PEARSON was fully aware of his jaw pain and that she failed to reach out to other authorities to provide him with assistance he claimed to have needed. However, HICKS failed to offer any evidence as to whether or not PEARSON contacted other authorities. Moreover, HICKS failed to establish that PEARSON was even aware that his jaw may have been fractured. See Hicks Deposition at 248-50.

Because PEARSON's conduct clearly does not rise to the level of deliberate indifference, PEARSON is entitled to judgment as a matter of law.

**F.     Defendant G. PEARSON**

HICKS believed that G. PEARSON was made fully aware of his condition and should have passed along his complaints to DAVIS. See Hicks Deposition at 292-94. HICKS offers no evidence to establish 1) that G. PEARSON was made aware of his condition and 2) that G. PEARSON did not pass along his complaints to either DAVIS or another physician. G. PEARSON examined HICKS and provided him with a special diet bag. See Hicks Deposition

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

at 201. Because HICKS has failed to provide evidence of G. PEARSON's alleged deliberate indifference, G. PEARSON is entitled to judgment as a matter of law.

**G.    Qualified Immunity**

The individual Defendants should be entitled to qualified immunity. But see Hinson v. Edmond, 192 F.3d 1342 (11th Cir.1999).

**III.    The Individual Defendants Cannot Be Sued in Their Official Capacities**

To the extent that Plaintiff sues Defendants in their official capacities, these claims must be dismissed because the proper party to this claim should be the Department of Corrections. When an officer is sued under § 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir.1991), citing, Kentucky v. Graham, 473 U.S. 159, 165 (1985). Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents. See Id. Because the suit against the Defendants sued in their official capacities and a direct suit against the Department of Corrections are functionally equivalent, there no longer exists a need to bring official capacity actions against the Defendants, because the local government entity, the Department of Corrections, can be sued directly. See Id. See also Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD • 9TH FLOOR • P.O. BOX 14-9022 • CORAL GABLES, FLORIDA 33114 • (305) 445-4090

## CONCLUSION

Based on the foregoing, Defendants, EMERGENCY MEDICAL SERVICE ASSOCIATION, DR. W.C. DAVIS, DR. UECKER, DR. TREVOR WEATHERS, DR. CLINE, DR. PEARSON and DR. G. PEARSON, respectfully request an entry of judgment as a matter of law, together with such other relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this **3rd** day of December, 2001 to all counsel and parties of record on the attached service list.

> O'CONNOR, CHIMPOULIS, RESTANI,
> MARRERO & McALLISTER, P.A.
> Attorneys for Defendants, EMSA Limited
>     Partnership, Dr. Davis, Dr. Uecker,
>     Dr. Trevor Weathers, Dr. Cline,
>     Dr. Pearson, and Dr. G. Pearson
> 2801 Ponce de Leon Boulevard
> Ninth Floor
> Coral Gables, FL 33134
> (305) 445-4090
>
> By: _____
> JOEL L. SHULMAN
> Florida Bar No. 389242

F:\WORD\FILES\97-6939\pleading\m-summaryjudgment.jls

Hicks v. Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

## SERVICE LIST

William M. Hicks v. Ken Jenne, et al.
U.S. District Case No. 00-6087-Civ-Dimitrouleas

WILLIAM M. HICKS, *pro se*
#664670
Everglades Correctional Institution
P.O. Box 949000
Miami, FL  33194-9000

SUMMER BARRANCO, Esquire
Purdy, Jolly & Giuffreda
1322 S.E. Third Avenue
Fort Lauderdale, FL   33316

O'CONNOR, CHIMPOULIS, RESTANI, MARRERO & McALLISTER, P.A.
2801 PONCE DE LEON BOULEVARD · 9TH FLOOR · P.O. BOX 14-9022 · CORAL GABLES, FLORIDA 33114 · (305) 445-4090