UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6087-CIV-Dimitrouleas

MAGISTRATE JUDGE SORRENTINO

William M. Hicks,

    Plaintiff,

vs.

KEN JENNE, et al,

    Defendant(s).



## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, William M. Hicks, prose, Plaintiff, ( herein and after referred to as Plaintiff or Hicks ) moves this Honorable court in above styled cause pursuant to Fed.R.Civ.P. Rule 56(c), local rules 7.1, 7.5 and magistrate Judge Rules, Rule 1(c) and in support therefore submits the following:

## STATEMENT OF FACTS

1.) On November 9, 2000, plaintiff filed with this Honorable court pursuant to 42 U.S.C. §1983 complaint for injuries he recieved within the Broward County Jail, (N.B.D.C.) North Broward Detention center on or about April 7, 1996. By a known psychologically disturbed detainee by the name of "Norman Beech", who has a documented history and propensity for violence.[1] "Foot note on following page".

The incident occurred when Plaintiff and approximately thirty (30) detainees were escorted to a small enclosed area in N.B.D.C., where detainees are permitted recreational time. This area is to be supervised at all times. Plaintiff and several other detainees were locked in the security area, however they were left unsupervised by defendant's John Doe #1, now known as Elaudio Lattanzi and John Doe #2 Gary Hensley, which resulted in a voltile situation where in plaintiff was viciously assaulted and battered by a psychotic and derranged detainee causing severe trauma, severe brusing around the face and right eye, severe neck and back injuries, severe bone fractures to right jaw, right temple, under right eye and to the left side of face. The assault and battery was unprovoked. Defendant's John Doe #1 and #2 did not stop the unprovoked attack because they were not in assigned areas, therefore endangering the plaintiff's life. further that after arriving and witnessing the on going attack, defendant's John Doe #1 used the plaintiff as a human shield to ward off the psychotic detainee, Norman Beech, who proceeded to advance on him, again resulting in plaintiff recieving further injuries. Defendant's John Doe #1 and #2, who were acting under the color of the law are the proximate cause of the permanent injuries that plaintiff suffers, by placing him in a area where his life would be in danger and failing to comply with their obligations and duties to supervise and over see the security area where plaintiff was assaulted and battered. Summary judgment is appropriate when there is no issue of material fact in dispute.

1* note:
North Broward Detention Center is used to house and/or detain psychologically disturbed detainee's most of which have self distructive propensity r violent propensity towards others.

2.

Both defendant's, John Doe #1 and #2 have not made any denials, or are their any pleadings made by the county attorney that refute Plaintiff's allegations. Hence, as a matter of law Summary judgment is appropriate pursuant to Fed. R. Civ. P., Rule 56(e). The plaintiff has submitted police affidavits, of incident reports outlining the assault and battery made upon the plaintiff by Norman Beech while detained at N.B.D.C. on April 7, 1996, which also demonstrates that Norman Beech was formally charged with criminal offenses arising from his assault and battery on defendant's John Doe #1 and #2 which places them on and at the proximate location of the injuries so aforementioned by plaintiff. (DE#83)

2.) Summary judgment is appropriate and should be entered against the defendant, DR. W.C. Davis, M.D., for his deliberate indifference to plaintiff's serious medical needs. Shortly after the incident in the N.B.D.C. recreational area where plaintiff was viciously beaten, he obtained temporary medical attention by an attending R.N. Nurse Calista Chukwu who applied small tape like butterfly stitch after cleaning the open wound on his face. This taking place in a small clinical type area on April 7, 1996 at approximately 1:30pm. Following the temporary treatment by R.N. Chukwu, the Plaintiff was escorted to see defendant DR. W.C. Davis, M.D., who after several demands by plaintiff to take x-rays of his jaw and face, because Plaintiff felt excruciating pain and could not open his mouth, believed his jaw to be fractured or broken, took x-rays, (5) sets by x-ray tech Wayne Evans. Defendant W.C. Davis refused to show Plaintiff the results of the x-rays and in fact advised Plaintiff that he had no serious injuries nor had he sustained any fractures. That in fact he had reviewed the x-rays and there was nothing wrong with him that his injuries were minor. Even though plaintiff voiced his disagreement through his obvious complaints of pain and suffering. Defendant DR. Davis refused any further

medical treatment. Approximately (10) days later at the main jail the plaintiff was called down to the medical department and seen by defendant's DR. trevor weathors, oral surgeon, and DR. cline, DDS who again ordered x-rays and determined that the jaw was fractured and right temple was fractured. Plaintiff was shown these x-rays. Hence it is clear and on the record that plaintiff needed further medical attention and defendant DR. W.C. Davis, M.D. had personal knowledge of that fact, but refused to provide any further medical treatment. The law was clearly established at the time that the incidents arise of which the plaintiff complains of, that delay in provisions of medical care will give rise to a claim of deliberate indifference therefore summary judgment is appropriate as to this claim. The plaintiff has submitted affidavits, documents to support this claim and defendant DR. W.C. Davis, M.D. has not filed any pleadings supporting his denial. see (DE#83)

3.) Summary judgment should be entered against defendant's DR. trevor weathors, oral surgeon and DR. cline, DDS for their deliberate indifference to plaintiff's serious medical needs. Both of these dentist and/or oral surgeon had personal knowledge that plaintiff's jaw and right temple was broken. Even though DR. uecker, M.D. suggested (o.m.f.) open mouth fracture surgery, both DR. weathors and DR. cline made the final decission not to due needed surgery or wire jaw closed. Both DR. weathors and DR. cline knew right temple was broken and medical authorities ordered plaintiff's temple to be wired closed but both defendant's made the final decission not to wire temple closed even though Both DR. weathors and DR. cline are not medical doctors. Both defendant's took x-rays of plaintiff's jaw and temple which plaintiff was shown these x-rays and indeed shown he had broken bones. X-ray tech wayne Evans was present taking all x-rays of plaintiff. It is clear that both defendant's refused

4.

to follow proper medical procedures and ignored plaintiff's repeated inmate requests and grievance's, as well his voiced plea's to fix his jaw and right temple because of the excruciating pain and suffering. Plaintiff has submitted in court's record of radiologist's reports clearly stating fractures being reported. These reports are dated monthly showing the defendant's were fully aware of all fractures for approx. 11 months apart. Therefore summary judgment is appropriate as a matter of clearly established law.

4.) Summary judgment should be entered against defendant DR. ucker, M.D. Defendant DR. ucker had personal knowledge of plaintiff's assault in year 1996 due to he reviewed plaintiff's x-rays taken on April 7, 1996 and made a medical opinion to due (O.M.F.) open mouth fracture surgery. Plaintiff seen DR. ucker through years 1996 till 1998 at main jail voicing his pain and suffering and need to fix his jaw as well suffering from broken temple, which no actual treatment or surgery was ever given. DR. ucker done a facial exam by touching plaintiff's face several months later after assault and advised plaintiff he had a broken facial bone below right eye. DR. ucker ordered x-rays which revealed the bone was still broken months later and done nothing to treat plaintiff's broken bones. Even after numerous inmate request's, grievance's and voiced plea's of complaints, DR. ucker made no effort to provide further medical attention or treatment to help or treat the very visible injuries he knew were present. Plaintiff continued to voice he could not open his mouth properly and the headaches were so unbearable that pain medication would not even control the constant daily pain and suffering. As a Licensed medical doctor and qualified to make appropriate decissions and follow through to ensure plaintiff recieved proper medical care, DR. ucker violated clearly established policies and established laws by not conducting himself as a professional

5.

medical doctor which gives rise to a claim of deliberate indifference therefore summary judgment is appropriate as to this claim.

5.) Summary judgment should be entered against (E.M.S.A.) Emergency medical service Association based upon their hiring practices and policies of their doctors and treatments for pre-trial detainees, and for their deliberate indifference in not providing immediate and serious medical attention to plaintiff's clearly documented medical needs. E.M.S.A. was alerted as well advised and ordered by the 17th judicial circuit court by the Honorable James I. Cohn, circuit court judge, of plaintiff's serious medical needs and requests for medical attention. "THREE" court orders were issued to E.M.S.A and B.S.O. jail, to provide clearly needed medical attention to the plaintiff. However even though the E.M.S.A. provided for the doctors to see the plaintiff, they did not provide any medical treatment for visible and painful injuries that was well documented to be existing. Therefore E.M.S.A. failed to provide immediate medical attention and had knowledge of serious medical injuries, but made no effort to provide serious medical attention and treatment to plaintiff's serious medical needs. Plaintiff filed numerous inmate requests and grievances to all E.M.S.A. medical directors as well ombudsman and still after making all of E.M.S.A.'s directors aware no actual medical treatment was given. Plaintiff mailed complaints to E.M.S.A. main office and made them fully aware of all actions and denial of medical and still no medical attention. Plaintiff filed a §1983 civil suit against E.M.S.A. in 1996 to provide medical care, but to no avail. Still denied plaintiff medical. Even though sheriff of B.S.O. and Director of B.S.O./D.O.C. was in contact with E.M.S.A., no medical care ever came. Therefore summary judgment is appropriate as a matter of clearly established law.

6.) Summary judgment should be entered against defendant's Stanley Holmes, (ombudsman) and Barbara Hanson-Evans, (medical administrator at N.B.D.C.) for their deliberate indifference to plaintiff's serious medical needs. Both defendant's had personal knowledge of his broken jaw and temple as well the assault and battery of the plaintiff, but failed to insure that plaintiff was given serious medical treatment even though, plaintiff continuously through inmate request's and grievances advised them of his on going plight with obtaining any serious and appropriate medical treatment by doctors and/or medical personal under their employ or supervision. They were continuously advised from years 1996-1998 and no action was taken concerning an ongoing medical condition. Therefore summary judgment is appropriate as to these claims against the defendant's.

7.) Summary judgment should be entered against defendant(s) Ken Jenne, (sheriff) and Susan McCampbell for their deliberate indifference to plaintiff's constitutional right(s) under the Fourteenth Amendment to the united states constitution by reckless endangerment in placing him in an area of confinement where psychologically and mentally disturbed detainees are housed who have documented history and propensity for violence and for their own culpable action or inaction in training, supervision, or control of their subordinates who failed to screen and place in proper housing non violent, non psychotic detainees and who were not properly trained in security and monitoring of psychologically disturbed detainees who have documented history and propensity for violence. Such failure to do so constituting a breech of duty owed by the defendant(s). Summary judgment is also appropriate against defendant(s) Ken Jenne (sheriff), and Susan McCampbell because of their actual or constructive notice of unconstitutional practices in failing to act when such defendant(s) had personal knowledge of continued physical attacks on non violent inmate(s), detainees, at N.B.D.C.,

7.

by psychologically disturbed detainees with propensity for violence but failed to take any remedial measures to investigate the failure of their subordinates to intervene in such actions. Because of these actions or inactions by the defendant(s) Ken Jenne who was acting under the color of the law as acting (sheriff), N.B.D.C. and Susan McCampbell, head director of department of corrections at N.B.D.C., The plaintiff's U.S. constitutional right under the Fourteenth Amendment were violated and he suffered permanent physical and severe psychological injuries. The law was clearly established that in failing to adequately train and supervise subordinates constitutes deliberate indifference when such conduct is casually related to the constitutional infringement by his subordinates. There is no issue of disputed fact that defendant Ken Jenne (sheriff) had a duty to train and supervise his subordinates which he failed to do which resulted in the injuries discribed by plaintiff and defendant(s) conduct was casually related to the constitutional infringment by his subordinates. There is no issue of material fact in dispute that Susan McCampbell acting director of N.B.D.C., department of corrections had a duty to train and supervise her subordinates which she failed to do which resulted in the injuries described by plaintiff and defendant's conduct was casually related to constitutional infringement by her subordinates. Summary judgment is as a matter of law appropriate when there is no issue of material fact for a trier of fact to determine as in the instant case before this court.

## MEMORANDUM OF LAW

Qualified immunity insulates governmental officials from personal liability for actions taken pursuant to their discretionary authority, <u>Flores v. Satz</u>, 137 F.3d 1275 (11th cir. 1998). The test for courts to use in

8.

determining whether an official can claim qualified immunity is whether or not their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. see: Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Long before the incidents which are alleged by the plaintiff William M. Hicks in this law suit, the law was clearly established that under certain circumstances, delay in the provision(s) of medical care will give rise to a claim under §1983, but for such claim, a showing of conscious or callous indifference to the prisoner's rights is required. see: Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988).

The standard may be met when prison officials have prevented an inmate from recieving recommended treatment or an inmate is denied access to medical personnel capable of evaluating the need for treatment. Ancata v. Prison Health Services, Inc, 769 F.2d at 704 (citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983) and Archer v. Dutcher, 733 F.2d 14, 17 (2 Cir. 1984).

In the instant case plaintiff has made a claim that he suffered lacerations that bled, he suffered other serious injuries including bone fractures in his jaw (mandible) and skull. That several defendants, doctors, oral surgeons, and dentists, had personal knowledge of the aforementioned injuries, but provided no, or refused to provide, the proper medical attention to his serious medical needs.

The law was also clearly established that a supervisor can be held liable without a determination of municipal liability. Supervisory liability runs against the individual, is based on his or her personal responsibility for constitutional violation and dose not require proof of official policy or custom as the moving force. see: City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) "[W]hen supervisory liability is imposed, it is imposed against the supervisory official

in his individual capacity for his own culpable action or inaction in training, supervision, or control of his subordinates. <u>Clay v. Conlee</u>, 815 F.2d 1164, 1170 (8th Cir 1987). In <u>Greason v. Kemp</u>, 891 F.2d 829 (11th Cir. 1990), the court found the supreme court's analysis in <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), provided a helpful analogy in determining whether a supervisory official was deliberately indifferent. The court held that a three-prong test must be applied in determining a supervisor's liability (1) whether, in failing adequately to train and supervise subordinates, he was deliberately indifferent to an inmates mental health care needs; (2) whether reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether his conduct was casually related to the constitutional infringement by his subordinate." 871 F.2d at 836-37.

In the instant case defendant(s) Ken Jenne and Susan McCampbell both had personal knowledge that there had been several attacks by psychologically disturbed detainees with propensity for violence on other detainees at the N.B.D.C., that many of the attacks occured in the recreation area which on most occassions was left unsupervised or monitored by officer(s) who where to be trained in proper security and protective measures. Further that after many of the attacks or violent encounters occured resulting in detainees being severely or seriously injured, took no action. Thus Plaintiff on April 7, 1996 being placed in an unsupervised and dangerous area because of the deliberate indifference of defendant(s) Ken Jenne and Susan McCampbell and recieving severe physical and psychological injuries.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Celotex Corp v. Catrett*, 477 U.S. 317 (1986), the court held that summary judgment should be entered against:

[A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof. (citation omitted).

Thus, pursuant to *Celotex* and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of genuine issue of material fact. This demonstration need not be accompanied by affidavits, *Hoffman v. Allied Corp*, 912 F.2d 1379, 1382 (11th Cir 1990).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of genuine issue of material fact, the burden then shifts to the non-moving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.ct. 913 (1992). It is a non-moving party's burden to come forward with evidence on each essential element his claim sufficient to sustain a jury verdict. *Earley v. Champion International Corp*, 907 F.2d 1077, 1080 (11th Cir. 1990).

The non-moving party cannot rely solely on other pleadings to contest a matter, motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. *Coleman v. Smith*, 828 F.2d 714

11.

(11th cir. 1987); Fed. R. civ. P. 56(c).

If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Baldwin county, Alabama v. Purcell corp</u>, 971 F.2d 1558 (11th cir. 1992).

The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment, <u>St. Paul Guardin Ins. co v. U.S.</u>, 117 F. Supp. 2d 1349 (S.D. Fla. 2000)

The Plaintiff has established that he was assaulted and battered severely at N.B.D.C., by a known psychologically disturbed detainee with a documented history for violence, that defendant(s) John Doe #1 and #2 were not in the security area where they were assigned to be, that because they were not, the plaintiff was savagely beaten by a derranged detainee for no provoked reason. That he was denied any serious and meaningful medical attention concerning his injuries from Defendant Dr. W.C. Davis, M.D., that defendant's Dr. Uecker and Dr. Trevor Weathors were deliberately indifferent by failing to provide any serious medical attention to plaintiff's serious medical needs. That Dr. Cline and Dr. Pearson were also deliberately indifferent to Plaintiff's medical needs when they had knowledge that he needed further medical attention concerning a broken jaw bone and temple, but took no action to help him. That E.M.S.A. has an ongoing custom conduct, and pattern of hiring unqualified doctor(s), that E.M.S.A. has not corrected their hiring practices and continues to cover up actions or inactions and omissions of doctors who are under their employment but fail to provide adequate and proper medical attention. That defendant Barbara Hanson-Evans of E.M.S.A. failed to supervise and train subordinates and had personal knowledge that subordinates refused to treat plaintiff's serious medical needs, even after a court order was issued to do so. Then only having plaintiff checked without more, when it was documented that his jaw was broken and temple.

That defendant's Ken Jenne (sheriff) and Susan McCampbell (director of the Broward Sheriff's office) (B.S.O.) both had personal knowledge and failed to correct or take action in having non psychotic detainees screened before housing them in N.B.D.C., with psychologically disturbed detainees. That defendants Ken Jenne and Susan McCampbell failed to supervise their subordinates and discipline them for failure to do their duty, thus resulting in injuries aforementioned to the plaintiff, that defendant(s) Ken Jenne and Susan McCampbell endangered the plaintiff's life by their deliberate indifference resulting in permanent physical and psychological injuries. There is no dispute as to the actions or inactions taken by any of the defendant's who were acting and working under the color of the law. Therefore summary judgment is appropriate as a matter of law on all of Plaintiff's claims.

Wherefore, based on the aforementioned facts and statements of law, the Plaintiff respectfully request that this Honorable court enter summary judgment appropriately against the defendant(s).

Respectfully submitted
William M. Hicks #664670
William M. Hicks, prose

Everglades Corr Inst
PO Box 949000
Miami, Fla 33194-9000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing summary judgment motion has been handed over to prison officials to mail by U.S. mail this 30 day of November, 2001 and mailed to:

Summer M. Barranco, esq, 1322 S.E. 3rd Avenue, Ft. Laud, Fla 33316.

and

Joel Shulman, esq, 2801 Ponce de Leon Blvd, 9th fl, Coral Gables, Fla 33134.

William M. Hicks #664620
William M. Hicks, prose
Everglades Corr Inst
PO Box 949000
Miami, Fla 33194-9000

# NOTARIZED OATH

**STATE OF FLORIDA** )

**COUNTY OF** _DADE_ )

Before Me, the undersigned authority, this day personally appeared _William M. Hicks_, who first being duly sworn, says that he is the _Plaintiff, pro se_ in the above-styled cause, that he has read the foregoing _Summary Judgement motion_ and has personal knowledge of the facts and matters therein set forth and alleged; and that each and all of these facts and matters are true and correct.

_William M Hicks #664670_
(Your Signature)

**SWORN AND SUBSCRIBED TO** before me

this _30_ day of _November_, 200_1_.

Motion for Summary Judgment

WILLIAM G. BERNARD
MY COMMISSION # CC 735666
EXPIRES: 04/21/2002
1-800-3-NOTARY  Fla. Notary Services & Bonding Co.

_W.G. Bernard_
Notary Public, or other person authorized
to administer oath. (Print, type, or stamp
commissioner name or notary public.)

Personally known ____
Produced Identification ✓
Type of Identification Produced _inmate I.D._