UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6087-Civ-DIMITROULEAS
MAGISTRATE JUDGE SORRENTINO

WILLIAM M. HICKS,                          :

      Plaintiff,                          :

v.                                         :          REPORT OF
                                               MAGISTRATE JUDGE
SHERIFF KENNETH JENNE, et al.,:

      Defendants.                          :
_____

FILED by ___ D.C.
MAG. SEC.

APR - 4 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.. OF FLA    MIAMI

## INTRODUCTION

In this se civil rights action pursuant to 42 U.S.C. §1983,
the initial complaint was filed in January 2000. Plaintiff William
M. Hicks, who is now a state prisoner, filed a pro se amended
complaint (dated November 9, 2000, and filed in the record at DE#
53) about events that took place commencing in 1996 at two
institutions where he was previously confined: the North Broward
Detention Center ("NBDC"), and the Broward County Main Jail
("BCMJ"). Some defendants and claims were earlier dismissed.

The defendants remaining in the case who were designated by
name in the amended complaint are: 1) Ken Jenne, Sheriff of Broward
County; 2) Susan McCampbell, Director of the Broward Sheriff's
Office ("BSO"); 3) Barbara Hanson-Evans, Medical Administrator at
the NBDC; 4) Defendant Stanley Holmes, Ombudsman for the BSO; 5)
Dr. W.C. Davis, Chief Physician at the NBDC; 6) Dr. Uecker [sic]
(Ucker), Night Shift Physician, at the BCMJ; 7) Emergency Medical
Service Association ("EMSA"), the corporate entity contracted to
provide medical care to inmates at the NBDC and BCMJ; 8) Dr. Cline,
a dental physician employed by EMSA at the BCMJ; 9) Dr. G. Pearson,
a dental physician employed by EMSA at the BCMJ; 10) Dr. Pearson,

a dental physician employed by EMSA at the BCMJ; and 11) Dr. Trevor Weathors [sic] (Weathers), an Oral Surgeon at the BCMJ.

The case is pending on two claims: 1) endangerment (failure of jail officials to protect plaintiff Hicks from risk of harm by another inmate), as to four defendants [Jenne, McCampbell, Hanson-Evans, and Holmes]; and 2) medical indifference, as to all eleven of the remaining defendants [EMSA, Davis, Ucker, Weathers, Cline, Pearson, G. Pearson, Jenne, McCampbell, Hanson-Evans, and Holmes].

These two claims are based on allegations that: 1) the plaintiff was attacked and injured by inmate Norman Beech at the NBDC in 1996 [it is alleged in the amended complaint that the attack by Beech took place on April 7, 1996, however, documents subsequently submitted by both the plaintiff and defendants indicate that the attack actually took place on February 9, 1996]; 2) between the date of the attack by inmate Beech and the plaintiff's transfer from NBDC to the BCMJ on or about April 10, 1996, the plaintiff was denied care at the NBDC for his medical needs, including care for the injuries sustained during the incident involving inmate Beech; 3) between his April 1996 transfer to the BCMJ and June of 1996 [the date on which the plaintiff alleges he was transferred back to the NBDC], the plaintiff was denied care at the BCMJ for his medical needs, due to acts and/or omissions of both corrections and medical staff; and 4) following his transfer back to the NBDC in June of 1996, corrections and medical staff continued to deny him medical care.

Two defendants named in the amended complaint in conjunction with the plaintiff's claim of endangerment, defendants Doe #1 and

2

Doe #2, were previously dismissed from the lawsuit on grounds that the claims against them were time barred. (See DE#s ).[1]

The case has reached the summary judgment stage, and is before the Court upon motions for summary judgment by the plaintiff and by all defendants remaining in the case, with exception of defendant Barbara McCampbell, a former Broward Sheriff's Office employee who has not been served with process in this case, and as to whom a pending report (DE# 130) was entered recommending her dismissal pursuant to Fed.R.Civ.P. 4(m).

Specifically, this Cause is before the Court upon: 1) a motion for summary judgment by the plaintiff, dated November 30, 2001, and filed by the Clerk on December 5, 2001 (DE# 119); 2) a motion for summary judgment filed jointly by defendants Jenne, Hanson-Evans, and Holmes (DE# 116, dated and filed December 3, 2001); and 3) a motion for summary judgment filed jointly by the defendants EMSA, Davis, Uecker, Weathers, Cline, Pearson, and G. Pearson (DE# 117).

The plaintiff's motion was signed (and presumably given to prison officials for mailing) on November 30, 2001, and is considered to have been filed on that date.[2] Three days later, on

---

[1]    On September 25, 2001, the plaintiff signed and mailed a motion for leave to amend (DE# 100), seeking to further amend his amended pleading (DE# 53), by inserting the names of Deputy Elaudio Lattanzi and Deputy Gary Hensley in the body of the amended complaint (DE# 53) where the two men were previously named, respectively, as defendants John Doe #1 and John Doe #2. An Order (DE# 114) was entered denying the motion (DE# 100) because the plaintiff's claims against Lattanzi and Hensley were time barred (see: DE# 115 [Report recommending dismissal of claims against Lattanzi and Hensley], and DE# 128 [Order of Partial Dismissal as to Lattanzi and Hensley]).

[2]    The principle that the date a pro se prisoner's pleading is file stamped by the clerk of court is not the date of filing is well settled.  In Houston v. Lack, 487 U.S. 266 (1988) the Supreme Court established the principle that a pro se petitioner's notice of appeal is deemed filed on the

December 3, 2001, the defendants' motions were signed and filed. It is apparent that the plaintiff's and the defendants' motions for summary judgment crossed in the mail.

<u>THE LAW OF SUMMARY JUDGMENT, AND NOTICE TO THE PLAINTIFF</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of

---

date that it is delivered to prison authorities for mailing. More recently, in <u>Garvey v. Vaughn</u>, 993 F.2d 776 (11 Cir. 1993) the Eleventh Circuit extended the <u>Houston v. Lack</u> principle to Federal Tort Claims Act and 42 U.S.C. §1983 <u>pro se</u> prisoner complaints, holding that such complaints are deemed to be filed when they are delivered to prison authorities for mailing.

the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir. 1990). The non-moving party, even a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992).

Because the incarcerated plaintiff is unskilled in the law and proceeding pro se in this case, Orders of Instruction were entered on December 7, 2001, informing him of his right to respond to the

defendants' motions for summary judgment, and instructing him regarding the requirements under Fed.R.Civ.P. 56 for a response to a motion for summary judgment (see: DE#s 121 and 122).

The plaintiff sought and was granted an extension of time to respond to the defendants' motions for summary judgment. (DE# 125, motion; DE# 132, Order). The defendants filed two responses to the plaintiff's motion for summary judgment (DE# 124, Response by EMSA, Davis, Uecker, Weathers, Cline, and Pearson;[3] and DE# 126, Response by Jenne, Hanson-Evans, and Holmes).[4] The plaintiff, in a single document (DE# 133), submitted his response to both of the defendants' motions for summary judgment, and his reply to the defendants' responses to his motion for summary judgment. The defendants submitted two replies to the plaintiff's response (see: Reply, DE# 134, filed by EMSA, Davis, Uecker, Weathers, Cline, Pearson, and G. Pearson; see: Reply, DE# 136, filed by Jenne, Hanson-Evans and Holmes).

## ENDANGERMENT

In the amended complaint the plaintiff alleges in the "Statement of the Case and Facts," that an unnamed/unidentified nurse attended to him shortly after he was attacked by inmate Holmes, and while she was cleaning blood from his wound(s) stated "I hope this is'nt [sic] from Norman Beech, he gets — — — when I'm

---

[3]    In DE# 124, the movants/defendants state that "because Plaintiff did not move for summary judgment against Dr. G. Pearson, Dr. G. Pearson does not respond to Plaintiff's motion."

[4]    In DE# 126, the movants/defendants state, in part, that the defendants McCampbell, Doe #1, and Doe# 2 did not join in the response because they were not served with process.

late giving him his medication." (DE# 53, p.10, ¶18). In the "Statement of Claim" the plaintiff states that defendants Jenne, McCampbell, Hanson-Evans, Holmes, and Does #1 and #2 "are responsible for providing safety for prisoners" and further states that:

> the above listed defendants are directly responsible for the failure to protect plaintiff from a known violently disturbed offender. The total reckless disregard of the above listed defendants by allowing a known violent mentally disturbed offender detainee to be placed in the direct presence of other detainees is a clear showing of deliberate indifference to the safety of plaintiff and other (N.B.D.C.) Detainees.

(DE# 53, p. 17).

The plaintiff Hicks' claims, which would lie under the Eighth Amendment prohibition against cruel and unusual punishment if he were a convicted prisoner at the time of the events alleged, arise instead from the Due Process Clause of the Fourteenth Amendment because of his status as a pretrial detainee at the time of the events which are alleged. In the context of a pretrial detainee claim alleged failure to protect the inmate from risk of harm at the hands of other inmates, the standard is the same as for an Eighth Amendment claim. See Bell v. Wolfish, 411 U.S. 520 (1979); Hamm v. DeKalb County, 774 F.2d 1567 (11 Cir. 1985).

It is well settled that the failure of prison officials to control or separate prisoners who endanger the physical safety of other prisoners may, under certain conditions, constitute an Eighth Amendment deprivation; however, the constitutional rights of inmates are not violated every time one inmate is injured as a result of another's actions. Smith v. Wade, 461 U.S. 30 (1983);

Zatler v. Wainwright, 802 F.2d 397, 400 (11 Cir. 1986); Stokes v.
Delcambre, 710 F.2d 1120, 1124, (5 Cir. 1983); Jones v. Diamond,
636 F.2d 1364, 1374 (5 Cir. 1981); Gates v. Collier, 501 F.2d 1291,
1308-10 (5 Cir. 1974). In a Section 1983 suit against prison
officials based on a claim of cruel and unusual punishment, a
showing of conscious or callous indifference to the prisoner's
rights is required. There must be deliberate indifference to state
a claim under §1983, negligence is not enough. Estelle v. Gamble,
429 U.S. 97, 104-06 (1976); Brown v. Hughes, 894 F.2d 1533, 1537-38
(11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir.
1988).

    Similarly, a jail official's conduct in failing to provide for
the personal security of an inmate/pretrial detainee under his care
can rise to the level of a constitutional deprivation. In the
context of a detainee's claim of endangerment, the standards are
the same. See: Bell v. Wolfish, 411 U.S. 520, 535 (1979); Hamm v.
DeKalb County, 774 F.2d 1567, 1574 (11 Cir. 1985); Redman v. County
of San Diego, 896 F.2d 362, 364-66 (9 Cir. 1990). See also Preval
v. Reno, 57 F.Supp.2d 307 (E.D.Va. 1999) (holding that claims
concerning conditions of confinement raised by an INS detainee, who
was not serving a sentence, fell under the Fourteenth Amendment's
due process clause, not the Eighth Amendment's prohibition of cruel
and unusual punishment; and noting that the plaintiff Preval's
rights as a detainee were "more akin to those of a pre-trial
detainee than a prisoner").

    For officials to be constitutionally liable for failure to
protect the safety of an inmate, two requirements must be met.

8

First, the deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1 (1992). Thus, for a claim based on an alleged failure to prevent harm, an inmate must show that he is incarcerated under conditions that pose a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, (1994). "[T]he protection [an inmate] is afforded against other inmates" is a "condition of confinement" subject to scrutiny under the Eighth Amendment. Wilson, supra, 501 U.S. at 303. Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, supra, 511 U.S. at 834. In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. Wilson v. Seiter, supra, 501 U.S. at 302-03; Estelle v. Gamble, 429 U.S. 97, 106 (1976);

Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson, supra; Estelle, supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11 Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety. Whitley v. Albers, 475 U.S. 312 (1986).

Thus, in order to state a claim of cruel and unusual punishment under §1983, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by institutional officials. Davidson v. Cannon, supra; Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988); Williams v. Bennett,

supra.  Only such a degree of disregard for the inmate's rights,
which offends evolving contemporary standards of decency and is
repugnant to the conscience of mankind, separates official conduct
that is actionable under Section 1983 from simple negligence which
is not.  When the plaintiff fails to allege and show proof of such
an abuse, what may be an ordinary tort does not rise to the level
of a constitutional violation actionable under Section 1983.
Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle v. Gamble,
supra, 429 U.S. at 106; Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir.
1986); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11 Cir. 1985);
Williams v. Bennett, supra 689 F.2d at 1380.

The Supreme Court has emphasized that Eighth Amendment
liability requires a showing that the responsible official was
subjectively conscious of risk to the inmate:

> We hold...that a prison official cannot be liable
> under the Eighth Amendment for denying an inmate
> humane conditions of confinement unless the
> official knows of and disregards an excessive risk
> to an inmate's health or safety; the official must
> both be aware of the facts from which the inference
> could be drawn that a substantial risk of harm
> exists, and he must also draw the inference.

Farmer v. Brennan, supra, 511 U.S. at 837.  See also, LaMarca v.
Turner, 995 F.2d 1535, 1536 (11 Cir. 1993).

Thus there must be an affirmative causal connection between
the official's acts or omissions and the alleged constitutional
deprivation. See: Zatler v. Wainwright, supra, 802 F.2d at 401.
See also: LaMarca v. Turner, supra, 995 F.2d at 1536. "Personal
participation ... is only one of several ways to establish the

10

requisite causal connection," <u>Zatler v. Wainwright</u>, <u>supra</u> at 401, and thus, personal participation is not the <u>sine</u> <u>qua</u> <u>non</u> for the defendants to be found personally liable. <u>Swint v. City of Wadley, Ala.</u>, 5 F.3d 1435, 1446 (11 Cir. 1993), <u>opinion modified on other grounds</u>, 11 F.3d 1030 (11 Cir. 1994). The defendant official must, however, ignore a substantial risk of serious harm to the inmate. <u>Wilson v. Seiter</u>, and <u>Estelle v. Gamble</u>, <u>supra</u>.

In this case, the plaintiff Hicks has alleged that while he and about 30 other inmates were in an enclosed recreation area at the NBDC, he was suddenly attacked by inmate Beech. Hicks alleges that defendants Doe #1 and #2, officers at NBDC who were responsible for the inmates in the recreation area, had locked them in the yard, and retired to a supply area out of sight of the yard. Hicks alleges that when Beech suddenly attacked him there were no officers within sight or hearing to see the attack or hear his screams for help, there was no escape since the door to the yard was locked, and therefore the attack continued for approximately 7-8 minutes until finally the officers, whom the plaintiff alleges abandoned their post, reappeared. When they did reappear Does #1 and #2 verbally ordered Beech to stop his attack, but neither officer acted to physically intervene. Then, when Hicks tried to move around Officer Doe #1 to escape the attack, Beech turned his attack on Does #1 and #2, knocking Doe #2 to the floor. Officer Doe #1 then grabbed the plaintiff and used him "as a human shield," allowing the plaintiff to "take the full force of detainee Norman Beech's violent attack." While Doe #1 was holding Hicks between himself and Beech, as protection from Beech's continued attack, Doe #2 tried to call for backup, but his radio wouldn't work. Finally,

when he realized that his radio wasn't working, Doe #2 unlocked the
door leading to the exterior hallway, and to escape the continuing
attack by Beech the plaintiff broke away from the grasp of Doe #1
and escaped to the exterior hallway, following which he went to the
nurse's room for medical attention.

In their motion for summary judgment (DE# 116) defendants
Hanson-Evans and Holmes argue that as to them the plaintiff has
fails to establish that they were "involved in procuring, causing,
or being deliberately indifferent to the possibility of such an
attack under color of state law." In their respective affidavits,
the defendants Hanson-Evans and Holmes both state that they had no
contact with either plaintiff Hicks or his attacker Beech on the
date of the attack, February 9, 1996, had no involvement in or
knowledge of the attack until after the incident, and moreover,
that they were not responsible for inmate classification or
security at the NBDC. (DE# 116, Ex. A, Hanson-Evans' affidavit at
¶¶ 4 and 5; DE# 116, Ex. B, Holmes' affidavit at ¶¶ 4 and 5).

The defendants Jenne, Hanson-Evans, and Holmes note in their
motion for summary judgment (DE# 116, at p. 10, footnote 10) that
the plaintiff states in the transcript of his deposition (which was
submitted by other defendants in the case), that prior to the
attack upon him by Beech he had not had any previous problems with
Beech, and that prior to the incident he had no reason to know that
he was going to be struck by Beech.

As noted, supra, there are no specific factual allegations in
the amended complaint against Jenne, McCampbell, Hanson-Evans,

12

Holmes in relation to the endangerment claim.  The only allegations against them are the plaintiff's general, conclusory, and unsupported statements, quoted above, that they "are responsible for providing safety for prisoners," and that they are "directly responsible" since (according to the plaintiff) inmate Beech was a "known violently disturbed offender."

The sole factual allegation by the plaintiff directed to Beech's supposed violent character, however, is his statement that a nurse who saw plaintiff Hicks' injuries shortly after the attack said that she hoped Beech was not the cause of the injuries because he "gets — — — when I'm late giving him his medication." This allegation suggests that a nurse did not timely medicate Beech. There are, however, no specific factual allegations in the amended complaint, nor is there evidence in the records submitted by the parties at summary judgment, to establish that Beech was known generally to be a risk of harm to other inmates so that he should not have been allowed to co-mingle with others, or to establish a causal connection between the defendants Jenne, McCampbell, Hanson-Evans, or Holmes and the alleged attack by Beech upon Hicks. There is nothing, apart from plaintiff Hicks' unsupported allegation that Beech was a "known violently disturbed offender," to show that Jenne, McCampbell, Hanson-Evans, or Holmes may have had knowledge prior to the February 9, 1996 attack by Beech upon Hicks, indicating to them that Beech posed a risk of harm to Hicks. In the absence of evidence to show that Jenne, McCampbell, Hanson-Evans, or Holmes had a sufficiently culpable state of mind with regard to Hicks' right to be free from risk of harm at the hands of other inmates, which is necessary to establish a claim of deliberate

indifference by them to Hicks' health or safety, <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 834. <u>Wilson v. Seiter</u>, <u>supra</u>, 501 U.S. at 302-03; <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), the plaintiff is not entitled to summary judgment.

As to the Jenne, Hanson-Evans, and Holmes, their motion for summary judgment (DE# 116) should be granted with respect to the plaintiff Hicks' claim of endangerment.

Defendants Doe #1 and #2, who were earlier dismissed from the case on the ground that the complaint against them was time barred, are the sole individuals alleged to have been personally involved in the events surrounding the attack upon Hicks by inmate Beech.

The only other defendant being sued on the claim of endangerment is Susan McCampbell. Although a recommendation has been made that the complaint against McCampbell be dismissed pursuant to Rule 4(m), she has not been dismissed from the lawsuit. As discussed <u>supra</u>, review of the record, upon consideration of the parties' motions and exhibits on summary judgment, shows nothing to indicate that McCampbell was aware of facts relating to inmates Beech and Hicks, which if ignored by her, would render her liable under §1983 on a claim of endangerment.

As to McCampbell, who, because she has not been served with process, has not joined the other defendants in their motions for summary judgment, it is apparent that the claim of endangerment against her should be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief

14

can be granted.[5]

## ALLEGED MEDICAL INDIFFERENCE

Review of the record reveals that summary disposition of the plaintiff's complaint for deliberate indifference to his serious medical needs is not appropriate, as there remain genuine issues as to material fact regarding this claim. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The defendants Jenne, Hanson-Evans, and Holmes in their motion for summary judgment (DE# 116), and defendants EMSA, Davis, Uecker, Weathers, Cline, Pearson, and G. Pearson in their motion for summary judgment (DE# 117) argue that based on documentation of record in this case, which was obtained from the plaintiff's medical files, it is clear that they were not deliberately

---

[5] On April 26, 1996, the Prison Litigation Reform Act of 1995 ("PLRA") was signed into law, modifying the requirements for proceeding *in forma pauperis* in federal courts. Under the April 26, 1996 enactments, 28 U.S.C. §1915 was amended. As amended, it reads in pertinent part, as follows:

Sec. 1915 Proceedings in Forma Pauperis

\*   \*   \*

(e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --

\*   \*   \*

(B) the action or appeal --

\*   \*   \*

(i)  is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted...

indifferent to the plaintiff's serious medical needs, because the plaintiff received medical care immediately following the attack, including the application of sutures and bandages to his face, and that subsequently in the days and months that followed he received further diagnosis and treatment, including numerous visits with nurses and doctors who examined him, the taking of x-rays, the prescription of pain medication, and the provision of a soft diet to accommodate the plaintiff's pain when eating and two pillows to ease pain while sleeping.

The essence of the defendants' arguments is that the plaintiff was provided adequate medical care, and that the complaint, as amended, simply amounts to a difference of opinion between the plaintiff and jail medical staff regarding what was the proper diagnosis and course of treatment for his medical needs.

In the prison context, whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. An Eighth Amendment claim of denied or delayed medical care requires a showing of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs or the unnecessary and wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97 (1976); Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990). When, as in this case, the plaintiff was a pretrial detainee at the time of the events alleged, his claims, which would lie under the Eighth Amendment prohibition against cruel and unusual punishment if he had been a convicted prisoner, arise instead from the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571-74

16

(11 Cir. 1985). In the context of a pretrial detainee claim of denial of medical care, the standard is the same. Id.

To prevail on such a claim a plaintiff must show causation, in addition to proving the infliction of unnecessary pain and suffering, and deliberate indifference.[6] It is true that negligence is not enough,[7] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[8]

---

[6] In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail upon an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) the infliction of unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) deliberate indifference on the part of the defendant(s), Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982).

[7] It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle v. Gamble, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[8] The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

17

On the other hand, the standard may be met where a plaintiff establishes that there is intentional, unexplained delay in providing treatment for serious painful injuries, Brown v. Hughes, supra, and cases cited therein; repeated warnings about an inmate's health problems were ignored, Carswell v. Bay County, 854 F.2d 454, 457 (11 Cir. 1988); or where prison personnel fail to respond to a known medical problem, or prison doctors take the easier and less efficacious route in treating an inmate, Brown v. Hughes, supra, Waldrop v. Evans, 871 F.2d 1030, 1033 (11 Cir. 1989), and Rogers v. Evans, 792 F.2d 1052, 1058-59 (11 Cir. 1986).

Moreover, the standard may also be met when prison officials have prevented an inmate from receiving recommended treatment or an inmate is denied access to medical personnel capable of evaluating the need for treatment, Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985), or necessary medical treatment has been denied or delayed for non-medical reasons. See: Ancata, supra, 769 F.2d at 704 (citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983), and Archer v. Dutcher, 733 F.2d 14, 17 (2 Cir. 1984)).

The record is replete with documentation indicating that the plaintiff was provided with examination, diagnosis, and treatment for his injuries and/or symptoms. The plaintiff, however, has alleged that his injuries were serious, including broken/fractured bones in his jaw and face, and has stated both in his amended complaint and response that although he was told that an initial examination did not disclose broken bone, it was subsequently determined that he had suffered fractures, and that one defendant (Dr. Uecker) told him that he needed OMF surgery (open mouth

18

fracture surgery), and that he was told his mouth would have to be wired shut to properly treat his injury.

Subsequently, however, other medical personnel (including defendants Cline and Weathers, and Todd Schwartz who is not named in the amended complaint) decided not to provide the surgery. The plaintiff repeatedly demanded in communications with jail staff and medical personnel that he be provided the surgery, and it was nonetheless refused.

The defendants argue that the plaintiff's insistence on the surgery which defendants Cline and Weathers refused to recommend, despite Dr. Uecker's opinion to the contrary, falls within the realm of "difference of opinion" between the inmate/plaintiff and jail medical staff, so that failure to provide the surgery does not rise to the level of a constitutional deprivation under Estelle and its progeny.

The plaintiff, on the other hand, alleges/asserts that Dr. Cline admitted to him that the decision to deny the surgery recommended by Dr. Uecker was based on the fact that the surgery would be extremely expensive.

The medical documents of record, and in particular those submitted by the defendants, merely indicate that a decision was made not to provide surgery after Dr. Uecker's recommendation for surgery. The documents, however, do not reflect any reasoned medical decision providing a basis for denying the surgery that had been recommended by Dr. Uecker. The record contains documents

19

indicating that the plaintiff experienced pain, difficulty opening his mouth, and difficulty eating, in association with his injuries, over an extended period of time. The record simply indicates that surgery was not provided, and that instead, despite the plaintiff's complaints and grievances both with jail and medical staff, EMSA medical and dental staff, over a an extended period of time (at least months) took steps to manage his symptoms through less aggressive and less costly treatment, *inter alia*, prescription of pain medication, and provision of a soft food diet and an extra pillow. The defendants have submitted nothing to refute the plaintiff's assertions that the surgery was denied by jail and/or EMSA medical staff for non-medical reasons, i.e., that to provide the surgery was extremely expensive, and that Dr. Cline's statement to him that the surgery was denied due to the expense which would be involved "is a clear showing of the existence of a policy to deny costly medical treatment."

EMSA in its response (DE# 124) argues, *inter alia*, that it is entitled to summary judgment because plaintiff failed to allege in his amended complaint that the claimed constitutional deprivation (alleged medical indifference/denial of recommended surgery) was due to and EMSA cost-saving policy. As noted, <u>supra</u>, however, the plaintiff did allege in the amended complaint that the recommended surgery was denied due to its high cost, and that the decision was driven by a policy to not provide expensive care.

The affidavits of defendants Hanson-Evans and Holmes state that they are not licensed medical care providers, but they do not establish that they had no role in the decision not to provide

surgery, or power or authority to cause the recommended surgery to be provided (if indeed it was the proper course of treatment as the plaintiff asserts -- based on a recommendation by Dr. Uecker) when the plaintiff informed them orally or in written grievances that he was experiencing medical difficulties and the recommended course of treatment was not followed.[9]

No affidavits or other evidence has been submitted on behalf of the other defendants in support of their motions for summary judgment [Sheriff Jenne, and Doctors Davis, Uecker, Weathers, Cline, Pearson, and G. Pearson] based on which it can be determined that they either had no knowledge of the plaintiff's injuries, his alleged associated medical problems, and his claim that he was being denied recommended medical treatment (surgery), or that due to the nature of their positions and duties they had no power or authority intervene in the alleged indifferent course of treatment.

---

[9]    Hanson-Evans states her affidavit that she does not provide medical care to inmates; that she relies on expertise of the medical staff; that her job as Health Services Administrator for the Broward Sheriff's Office was to act as the liaison between Broward jail facilities and the medical care provider, EMSA; that based on her review of the plaintiff's records, it is her belief that the plaintiff received prompt and appropriate medical care, that there was no deliberate indifference, and that she does not believe that the Broward Sheriff's Office or EMSA would be deliberately indifferent to inmates' serious medical needs, safety, or welfare.

Holmes states in his affidavit that he does not provide medical care to inmates; that he relies on expertise of the medical staff; that in his job as Ombudsman for the Broward Sheriff's Office his duties included addressing all quality of life issues as it relates to inmates housed in the Broward County jail facilities;  that any complaints plaintiff had regarding his medical care which were brought to his attention he dealt with by either contacting appropriate jail medical providers to discuss them, or by contacting Health Services Administrator Barbara Hanson-Evans to more specifically handle the issues; that it is his belief that the plaintiff received prompt and appropriate medical care, that there was no deliberate indifference, and that she does not believe that the Broward Sheriff's Office or EMSA would be deliberately indifferent to inmates' serious medical needs, safety, or welfare.

The record contains communications from the Office of the Broward County Sheriff regarding the plaintiff's medical issues and his dissatisfaction with the course of medical care; and the plaintiff alleges that all of the named doctors/dentists examined him and were aware of his injuries and symptoms, but did nothing to intervene on his behalf.

In short, there remain genuine issues of material fact relating to the nature and severity of the plaintiff's injuries, the proper course of treatment, the basis for the decision(s) to deny recommended surgery and pursue an alternative course to manage the plaintiff's injuries and symptoms, and the nature of the defendants' knowledge of the plaintiff's condition and medical needs as well as the nature of their power/authority/duties to affect the plaintiff's course of treatment.

In light of the existence of issues as to material fact, there can be no summary disposition of the plaintiff's medical indifference claims either in favor of the plaintiff or defendants, Celotex, supra, and therefore, as to the plaintiff's medical claims, the plaintiff's motion for summary judgment (DE# 199) and the defendants' motions for summary judgment (DE#s 116 and 117) should be denied.

## CONCLUSION

It is therefore recommended that: 1) as to the defendant McCampbell, the plaintiff's claim of endangerment be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), and McCampbell, who also is named in conjunction with the plaintiff's medical claims, be

dismissed from the case pursuant to <u>Fed.R.Civ.P.</u> 4(m); 2) the plaintiff's motion for summary judgment (DE# 119) be denied; 3) the defendants' motion for summary judgment (DE# 116) be granted as to endangerment, and denied as to medical indifference; 4) the defendants' motion for summary judgment (DE# 117) be denied; and 5) the case remain pending as to the defendants Jenne, Hanson-Evans, Holmes, EMSA, Davis, Uecker, Weathers, Cline, Pearson, and G. Pearson, as to the plaintiff's claim of medical indifference.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: _April 4, 2002_            _Charles H Santino_
                                  _____
                                  UNITED STATES MAGISTRATE JUDGE


cc: William M. Hicks, <u>Pro Se</u>
    DC# 664670
    Everglades Correctional Institution
    1601 S.W. 187th Avenue
    P. O. Box 65-9001
    Miami, FL 33265-9001

    Summer Marie Barranco, Esquire
    Purdy, Jolly, & Giuffreda, P.A.
    1322 S.E. Third Avenue
    Ft. Lauderdale, FL 33316

    Joel L. Schulman, Esquire
    O'Connor, Chimpoulis, Restanti,
      Marrero & McCallister, P.A.
    2801 Ponce de Leon Blvd., 9th Floor
    Coral Gables, FL 33134