```
FILED by _____ D.C.
AUG 1 9 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.
```

Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301

August 15, 2003

RE: 02-14055-CC    William M. Hicks v. Ken Jenne
DC DKT NO.: 00-06087 CV-WPD

TO:   Clarence Maddox

CC:   William M. Hicks (#664670)

CC:   Summer M. Barranco

CC:   David Robert Cassetty

CC:   Administrative File



# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

In Replying Give Number
Of Case And Names of Parties

August 15, 2003



Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301

RE: 02-14055-CC   William M. Hicks v. Ken Jenne
DC DKT NO.: 00-06087 CV-WPD

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
   Original Exhibits, consisting of: one volume, one folder suppplemental, one deposition
   Original record on appeal or review, consisting of: four volumes, one volume supplemental

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1 decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (8-2002)

# United States Court of Appeals
For the Eleventh Circuit

No. 02-14055

District Court Docket No.
00-06087-CV-WPD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Jun 5, 2003
THOMAS K. KAHN
CLERK

WILLIAM M. HICKS,

    Plaintiff-Appellant,

versus

KEN JENNE, Broward County Sheriff,
BARBARA HANSON-EVANS,
et al.,

    Defendants-Appellees,

SUSAN MCCAMPBELL, et al.,

    Defendants.



Appeal from the United States District Court
for the Southern District of Florida

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.



Entered: June 5, 2003
For the Court: Thomas K. Kahn, Clerk
By: Meoli, Anthony

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



No. 02-14055
Non-Argument Calendar

D.C. Docket No. 00-06087-CV-WPD

WILLIAM M. HICKS,

             Plaintiff-Appellant,

versus

KEN JENNE, Broward County Sheriff,
BARBARA HANSON-EVANS, et al.

             Defendants-Appellees,

SUSAN MCCAMPBELL, et al.,

             Defendants.

Appeal from the United States District Court for the
Southern District of Florida

(June 5, 2003)

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

William M. Hicks appeals pro se from the district court's entry of summary judgment in favor of all defendants in his civil rights action, brought under 42 U.S.C. § 1983. Hicks alleges that his civil rights were violated while he was being held as a pretrial detainee in the North Broward Detention Center (hereinafter, "the jail") in 1996. Specifically, he alleges that the defendants failed to protect him from an assault by a violent, mentally ill detainee, and then refused to provide him appropriate medical treatment for the injuries suffered in the attack. He brought this action against two groups of defendants: (1) Officials of the Broward County Sheriff's Office, which administers the jail, including Sheriff Ken Jenne, Medical Administrator Barbara Hanson-Evans, and Sheriff's Ombudsman Stanley Holmes ("the Sheriff's Defendants"), and (2) EMSA, L.P., and several of its contract physicians, who provide health care services to Broward County jail inmates ("the Medical Defendants").[1]

The Magistrate Judge found that summary judgment was in order for all defendants as to Hicks' failure-to-protect claim, and for the Sheriff's Defendants as to Hicks' claim of constitutionally inadequate medical care in violation of the Fourteenth Amendment. However, the Magistrate Judge found that issues of

---

[1] All defendants were sued in both their official and individual capacities, with the exception of Sheriff Jenne, who was sued in his official capacity only.

material fact existed regarding the Medical Defendants' liability on the Fourteenth Amendment claim, and recommended that summary judgment be denied. The district court adopted the Magistrate Judge's Report and Recommendation in part and rejected it in part, finding that summary judgment was appropriate as to all claims against all defendants. We agree with the Magistrate Judge's thorough and well-supported opinion. Therefore, we affirm the grant of summary judgment as to Hicks' failure-to-protect claim, and as to the denial of medical care claim against the Sheriff's Defendants. However, we vacate the order of summary judgment as it regards Hicks' claim of inadequate medical care against the Medical Defendants.

I.   STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing the evidence "in the light most favorable to the non-moving party." Schoenfeld v. Babbitt, 168 F.3d 1257, 1264 (11th Cir. 1999). We must insure that the district court has resolved "all reasonable doubts about the facts in favor of the non-movant, and draw[n] all justifiable inferences in his . . . favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotes omitted). "The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly

probative." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Where the non-movant "fail[s] to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there exist no genuine issues of material fact." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (internal quotes omitted).

To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants deprived him of a right secured under the Constitution or under federal law, and that the deprivation occurred under color of state law. Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999); Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 997 (11th Cir. 1990). Because there is no dispute here that the defendants here were acting under color of state law, the only issue is whether Hicks' rights were violated.

II.  DISCUSSION

A.  Count One: Failure to Protect Against Assault

Hicks argues that the Sheriff's Defendants knew or should have known that by placing a "known violently and mentally disturbed offender/detainee" in the presence of other detainees, violent attacks were likely. Hicks contends that prison officials failed in their affirmative duty to protect him from harm, by failing

to properly monitor, control and medicate inmates, and by failing to adopt policies to segregate potentially violent, mentally ill detainees from the general jail population.

A jail official's conduct in failing to provide for the personal security of an inmate/pretrial detainee under his care can rise to the level of a constitutional deprivation. For officials to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation must be objectively "sufficiently serious." Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind." In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 833-34, 114 S.Ct. 1970, 1976-77 (1994).

We agree with the district court that the evidence, viewed in the light most favorable to Hicks, fails to establish that the defendants disregarded a substantial risk of serious harm. Hicks acknowledged that the beating he suffered on February 9, 1996, occurred suddenly and without warning. While he alleges that his assailant, Beech, had a history of violence known to jail officials, he also acknowledges that prior assault complaints against Beech were dismissed as unfounded. His only evidence is his testimony that, immediately after the attack, a

jail nurse told him that she hoped that the attacker was not Beech, because Beech reacts badly when he is not given his medication. Even if this single, ambiguous statement were enough to establish that the nurse knew that Beech was prone to violence, Hicks provides no basis for attributing the nurse's knowledge to any of the defendants. Further, his evidence does not show that any failure to give Beech medication was more than a mere negligent oversight. Because Hicks has failed to create a genuine issue of material fact as to whether the defendants knew either that Beech was likely to assault other detainees, or that they maintained a general policy of failing to control assaultive prisoners, summary judgment was appropriate.[2]

B. Count Two: Deliberate Indifference to Serious Medical Needs

Hicks alleges that he received inadequate medical treatment for a fractured jaw and multiple facial fractures suffered in the February 1996 beating. It is undisputed that, although one of Hicks' treating physicians, Dr. Uecker,

---

[2] In his Reply brief, Hicks also challenges the district court's decision to dismiss his Amended Complaint against two "John Doe" jail guard defendants and against the former Director of the Sheriff's Office, Susan McCampbell, on the basis that they were not timely served. We find no error in the district court's dismissal. We further observe that, in any event, a complaint against those defendants would be fruitless for the same reasons cited infra regarding the other Sheriff's Defendants.

Because we find that Hicks' evidence is insufficient to establish a jury question as to whether a constitutional violation occurred, we need not reach Defendants' alternative argument that they were entitled to qualified immunity in their individual capacities.

recommended shortly after the attack that Hicks' jaw be wired shut, no such surgery was ever performed. Instead, Hicks' injuries were treated with pain-killers, a soft diet, and an extra pillow to help him sleep.

Prison officials violate the Constitution if they withhold appropriate medical care with deliberately indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). For a pretrial detainee to prevail on a claim of denial of his Fourteenth Amendment rights based on withheld medical care, he must establish: (1) an "objectively serious deprivation," defined as a serious medical need accompanied by a substantial risk of serious harm if the need is unattended; (2) a response by public officials beyond mere negligence that is so inadequate as to constitute "an unnecessary and wanton infliction of pain," and (3) an attitude of "deliberate indifference," which requires showing both that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, and that they actually did draw such inference. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2002).

Negligence is not enough to establish an issue of material fact. Estelle, 429 U.S. at 104-06, 97 S.Ct. at 291-92. Nor is it sufficient merely for an inmate to quarrel with the medical staff's professional judgment regarding his diagnosis and course of treatment. Id., 429 U.S. at 107, 97 S.Ct. at 293. Neither, however, is it

7

necessary for a plaintiff to present expert medical testimony that the care he received fell below accepted professional standards. Rather, "deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); see also Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctors's decision to take an easier and less effecacious course of treatment.") (citation omitted).

We agree with the district court that there is no basis upon which to hold the Sheriff's Defendants liable for any deficiencies in Hicks' medical treatment. Liability under Section 1983 cannot be premised on a theory of *respondeat superior*; rather, the supervisor's conduct must have directly caused the complained-of violation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). The only two Sheriff's Defendants named in their individual capacities, Hanson-Evans and Holmes, both testified by affidavit that they had no personal knowledge of, or involvement in, Hicks' course of treatment, and Hicks has presented no contrary evidence, nor has he shown that Sheriff Jenne was involved in, or even aware of, his treatment. Thus, as to the Sheriff's Defendants, summary judgment was proper.

We reach a different result, however, regarding the Medical Defendants. Hicks has presented evidence that he suffers lasting physical symptoms as a result of the beating, including blurred vision, clicking in his jaw, inability to open his mouth wide or chew properly, headaches, nausea, dizziness, and facial pain. Therefore, he has established that his condition constitutes a serious medical need. As to Defendants' deliberate indifference to that need, his evidence shows, in pertinent part, that: (1) nine months after the attack, he was taken to see Dr. Charles Russell, who was prepared to wire his jaw shut because he believed that the fracture was fresh, but – upon learning that the fracture occurred nine months earlier – told Hicks that it would be fruitless; (2) three doctors (Cline, Sevilla and Parriot) told Hicks that his jaw condition would get progressively worse, and Sevilla told him that it would deteriorate to the point where he would have to be fed through a straw; (3) Hicks caught Dr. Cline switching X-rays to show him an X-ray with no fracture, and when confronted, Dr. Cline showed him the real X-ray and admitted that he had a fracture; (4) even after X-rays disclosed the existence of multiple fractures, Dr. Davis continued falsely assuring Hicks throughout his treatment that there were no fractures and that his physical ailments were imaginary; (5) Dr. Cline admitted to him that "due to the extreme costs of surgery that most detainees are denied appropriate medical care because of the cost and

they use the less effective way," and (6) Hicks complained on numerous occasions that he was continuously in pain and unable to chew or open his mouth fully, thus placing jail officials on notice that their chosen course of treatment was not ameliorating his symptoms.

In short, Hicks' evidence demonstrates that two physicians, Uecker and Russell, believed that wiring his jaw shut was the medically appropriate course of treatment for a fractured jaw. In response, Defendants have presented no evidence that the procedure was not the medically proper treatment. The evidence to which they point (which is solely based on Hicks' deposition) establishes only that they decided not to do the surgery, which is perfectly consistent with Hicks' theory – supported by his account of his conversation with Dr. Cline – that Defendants knowingly denied him medically necessary surgery for financial reasons. See Ancata v. Prison Health Serv., Inc., 769 F.2d 700, 704 (11th Cir. 1985) (finding that survivors of detainee stated actionable claim, based on allegations that jail refused to treat detainee's terminal leukemia symptoms because of inability to pay: "if necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out").

Defendants further cite Hicks' testimony that doctors told him that surgery might be futile or produce dangerous complications. However, those

10

conversations all occurred between nine months and five years after the attack, and thus do not undermine Hicks' contention that <u>timely</u> surgical treatment, as recommended by Dr. Uecker, was the proper medical response. See <u>Farrow v. West</u>, 320 F.3d 1235, 1247 (11th Cir. 2003) (holding that prison officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference).

While it is undisputed that Defendants did respond promptly when Hicks was attacked – suturing his wounds and X-raying the affected area – that is not the gravamen of his claim. Rather, his claim is that, once it became apparent from the second round of X-rays, taken shortly after the attack, that Hicks had multiple fractures in his jaw and face, Defendants were obligated to provide what they reasonably believed to be a medically appropriate level of treatment. Given the evidence adduced at summary judgment – that Hicks told jail officials that the treatment he was receiving was ineffective; that the consensus of his doctors was that delayed surgery would be ineffective and that (having received no surgical treatment) his condition would inevitably worsen; and that Defendants attempted to conceal the seriousness of his injuries from him – a reasonable jury could conclude (particularly in light of the complete absence of countervailing evidence) that Defendants knew that giving Hicks soft food and a pillow was not a medically

appropriate response to a broken jaw. See Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (holding that evidence that prison officials treated inmate's fractured leg with muscle relaxants and bed rest despite clear indications that treatment was ineffective could support jury verdict for plaintiff on Eighth Amendment claim, because "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference").[3] Consequently, the district court erred in granting summary judgment in favor of the Medical Defendants as to Hicks' claim of deliberately indifferent medical care in violation of the Fourteenth Amendment.[4]

---

[3] In a case analogous to ours, the Second Circuit in Hathaway v. Coughlin, 37 F.3d 83 (2nd Cir. 1994), found that the inmate plaintiff had created a jury question on his allegation of deliberate indifference in medical care, based on evidence that the prison doctor failed to disclose to the inmate that an X-ray revealed broken pins in his hip or to discuss the option of surgery, despite the inmate's repeated complaints of pain and requests for treatment. Significantly, the plaintiff there did not have expert medical testimony indicating that his doctor's treatment fell below professional standards; the court held that a jury could infer deliberate indifference from the doctor's conduct, including his lengthy delay in honoring the plaintiff's request for referral to a specialist.

[4] Nothing in our decision precludes the district court from entertaining a successive motion for summary judgment, as to some or all of the Medical Defendants, should it choose in its discretion to do so. "If good reason is shown why a prior denial of a motion for summary judgment is no longer applicable or should be departed from, the trial court may, in the exercise of sound discretionary power, consider a renewed motion for summary judgment, particularly when the renewed motion is based on an expanded record." Fernandez v. Bankers Life Nat'l Ins. Co., 906 F.2d 559, 569 (11th Cir. 1990) (quoting Kirby v. P.R. Mallory & Co., 489 F.2d 904, 913 (7th Cir. 1973)).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[5]

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

[5]Appellant's request for oral argument is DENIED.