UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6087-CIV-DIM
MAGISTRATE JUDGE, P.A. WHITE

William M. Hicks,
   Plaintiff, prose,
   -vs-
E.M.S.A., et al,
   Defendant(s).
_____/



Provided to Lake C.I.
BH
28 may 04

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SUMMARY JUDGEMENT

NOTE: SEE ATTACHED PAGE DENIED COPIES AND NEED COURT ORDER:

COMES NOW, William M. Hicks, prose, pursuant to Fed. R. Civ. P. 56, and rule 7.5, local rules of the United States District Court for Southern District of Florida and files his response to Defendant's April 29, 2004 motion for summary judgment. Defendant's motion is not in align with 11th Cir court of appeals case no. 02-14055, page 12, foot note 4, which gave permission for successive motion if based on an expanded record. The response record will show defendant's motion is not based on an expanded record, but just the opposite. Hicks herein will present not all his records but volume [S] of documents and affidavits to support his response and show defendants have failed to meet their burden of demonstrating that there is no dispute as to any material fact, and because the facts set forth in Hicks response of material facts and the attached evidence show defendants violated Hicks clearly established constitutional rights and this court should deny defendant's motion. Hicks when responding to defendant's summary judgment motion will use 'RESPONSE TO PAGE THEN NUMBER'.

RESPONSE TO PAGE TWO: Defendants in alleging background have mistakenly placed DR. Cline, DDS in place of DR. Davis, M.D. Hicks was at NBDC jail twice and at main jail twice during 1996-1998. DR. Davis, M.D. and DR. Glenn Pearson, DDS were

at all times at NBDC jail. DR. Uecker, M.D., DR. T. Weathers, DDS, oral surgeon, DR. J. Cline, DDS and S. Pearson, DDS were at all times located at main jail.

RESPONSE TO PAGE THREE: Hicks entered BSO custody August 7, 1995. Now Defendant's allege Hicks had motor vehicle accident in 1994. This is incorrect as had a motor cycle accident at age 15, approx year 1988. See Hicks Depo page 10, (25). Defendant's allege shoulder pain because of accident. See EX A, #6 8-23-95, 8-24-95 stopped taking psyche meds as unsure if caused pain in right arm and shoulder. ID #6 8-13-95, 8-31-95 was likely from laying around in bed. Hicks was very active prior to arrest. Defendant's refer to Sept 22, 95 which is not found in record. See EX A, #12 listing some known side effects and refusals showing headaches, ect. Defendant's allege Jan 4, 96 head pain relates to right eye and temple. SEE EX A, #6 1-4-96 scar from back of head to front lobe and is not related to right eye or temple. Hicks had scalp reduction surgery for hair transplant prior to arrest in 1995 and had complications. This caused headaches and no need for infirmary. Just aspirin. Defendant's allege right jaw pain. Had toothache. SEE EX B and EX A, #6 11-1-95 ombudsman checking into grievances on not recieving dental, ect. Defendant's allege noncompliance. See ID #6 4-15-96 unable to see sick call do to BSO movement. This happened [a lot].

RESPONSE TO PAGE #4: Defendant's allege urinating problems in Feb 1999. Hicks was in prison in 1998. See EX A, #3 Admissions assessment Aug 8, 1995 showing weight 185 lbs. DR. Martin ID #4 9-5-95 placed Hicks on sinequan which over time shut kidneys down and caused water retention and weight to 237 lbs. This negligence almost killed Hicks. ID #3 1-7-96 reorder sinequan. ID #3 2-6-96 Martin D/c sinequan. ID #3 2-3-96 weight 232½ and strech marks on thighs. ID #6 2-7-96 DR. Davis notes can't eat, gives food away, can't urinate and asserts because of over eating. SEE EX N showing DR. Martin psychiatrist resigning from practice. Hicks family had street doctor's diagnose and tell EMSA doctors what's wrong. Now day after feeling better gone to reck yard and was violently assaulted Feb 9, 1996. Defendant's allege x-ray suggested only a fracture to (L) jaw. Problem is [Five] x-rays were taken of entire head on Feb 9, 1996 day of assault. SEE EX I showing BSO incident report(s), nurses assessment taping facial cut, cleaning up blood. Also x-ray results.

There is no progress notes for Feb 9,96 by Davis. SEE EX A, #4 and EX C 2-9-96 Davis orders xrays to (R) jaw. SEE EX J xray report 2-9-96 fracture (L) mandible. All fractures being reported were known by Davis on Feb 9,96 as five x-rays were taken. See xray report(s) 2-21-96 normal mandible, 2-19-96 (R) orbit fracture of zygomatic arch, 8-21-96 facial bones and mandible don't see definite abnormality, 10-7-97 nasal bones normal, 11-22-96 fracture in nasal, 5-3-96 old healed fracture posterior 3rd of the (R) zygomatic arch, 4-1-96 fracture of posterior of zygomatic arch. There is no xray reports for (R) temple which is shown in records or kneck damage now known by xrays taken 2000 till present. ALSO NO xray reports for 3-15-96, 8-16-96 as two were ordered, 9-26-97 as located in EX A #4. See EX N showing repramands on license twice for radiologist DR. Miguel A. Tome, M.D., case # 91-03298 and 92-1651. Also see same for DR. Davis, M.D. and DR. Jack Cline, DDS. SEE EX E and EX C noting sutures placed and to be taken out 2-16-96. Now Hicks assault was Feb 9,96 and on Feb 11,96 gone to main jail for court ordered drug program and was not under DR. Davis care anymore. Defendant's allege Feb 15, while at main jail DR. Davis ordered xrays and DR. Tome read. See EX A, #4 2-15-96 DR. Chatfeild, P.A. ordered xrays and xrays were taken on 2-19-96 and read on 2-28-96. ID #6 2-20-96 DR. Derizier, M.D. is EMSA staff doctor, not an eye doctor. Hicks never seen a eye doctor or specialist. Doctor also reports fractures. ID #6 2-21-96 weathers reports OMF, (R) temple. See EX D 3-22-96 S. Pearson, DDS records fractures, limited opening of mouth, deveation upon closing, risidual swelling by (R) temple. See ID #6 3-3-98 DR. Cody, M.D. records jaw, (R) temporal, (R) zygomatic arch fractures 4/97, unable to open mouth wide, jaw opens angle ~30°, facial (R) palpated NT. Now EX A, #6 9-22-96 advises Hicks it takes days for xrays to be read by an radiologist. ID #6 4-30-96 DR. Limia, M.D. notes might need to "refix and realign jaw" to stop discomfort.

RESPONSE TO PAGE #5: Defendant's allege DR. Cline ordered xrays on march 15, and were read by DR. Thompson, M.D. same day. See EX E and EX A, #4 Cline did order xrays but shows xrays taken 3-26-96? Now Hicks is still at main jail. Hicks seen DR. Uecker EX F and EX A, #6 3-4-96 and reported fractures and mouth opening ↓. Defendant's are correct Hicks seen S. Pearson on 3-22-96. See EX D reports fractures, limited mouth opening, deveation upon closing, residual swelling

by (R) temple. Defendant's allege on 3-27-96 Hicks mouth opening improved and xrays were unremarkable, see EX D days before. see EX A, #6 3-4-96 Uecker reports fractures and ↓ mouth opening, muscle spasm. ID #6 4-22-96 Uecker notes ↑ ẕ stepping and chewing pains, fractures. ID #6 5-24-96 Uecker reports fractures, TMJ. ID #6 8-18-97 Uecker notes ⊕ for (R) zygo arch deformity, (R) mandible pain/tenderness. ID #6 9-20-96 partially opening mouth. ID #6 Dr. Limia, M.D. might need to refix and realign jaw to stop discomfort. ID #6 10-9-96 can't open mouth fully, (R) TMJ pain. SEE EX L outlining current long standing permanent problems.

RESPONSE TO PAGE 6: Defendant's allege Dr. Uecker, M.D. did not recommend OMF surger on this date. see EX A, #4 4-22-96 Uecker orders OMFS. This is the only exhibit found in defendant's exhibits. see EX F 2-17-97 Uecker orders OMF/ Dr. Elliot ASAP. see EX I Hicks signed two EMSA medical release forms on 2-14-96 and 2-17-97 for Dr. Elliot. Hicks seen Dr. Russol and Elliot on 11-27-96. Assault occurred Feb 9, 96. Dr. Russol's and Elliots exam report conflicts with its self as well documented evidence. SEE EX H Hanson-Evans, HSA reply to grievance July 2, 96 listing 4-22-96 Uecker suggested OMFS. Also grievance reply 9-26-96 "the fractured jaw you recieved in the facility as explained to you the physician is correct when he states 'THE BONE WILL GROW BACK'". see EX A, #6 1-16-97 referal to Dr. Elliot. ID #6 2-21-96 Weathers talks of OMF and EX G. EX A, #6 4-30-96 Dr. Limia need to refix and realign jaw. ID #6 Grievance to EMSA bosses about refused proper medical, reporting fractures monthly by xrays. Now Defendant's allege no broken jaw, this is refuted. Also allege no swelling or acute distress, SEE EX D 3-22-96 limitted mouth opening, fractures, deveation upon closing, residual swelling by right temple. See EX A, #6 3-3-98 Dr. Cody, M.D. Jaw, (R) temporal, (R) zygomatic arch fractures 4/97, jaw opens angle ~30°, facial (R) palpated NT. ID #6 3-29-97 Dr. Smith pain shooting in (R) temple, ⊕ for TMJ click (L) side, ⊕ for carie (L) lower jaw, TMJ syndrome. ID #6 10-9-96 Davis reports TMJ opening to specific location and pain (R) TMJ, may have some problem there. ID #6 3-4-96 Ueck mouth opening ↓. ID #6 9-20-96 Dr. O'conner can't open mouth fully. ID #6 nurse spoke to Hicks mom to get (5) xrays paid for by check back to give to Dr. Elliot 1-16-97. ID #6 8-18-97 Uecker ⊕ for (R) zygo arch deformity, (R) mandible pain/tenderness.

RESPONSE TO PAGE 8: Defendant's raise Hicks stay at Chattahoochee State Hospital. Hicks was found incompetent twice to stand trial. During Hicks second day approx. he was in small room with DR. Glenn Watson, female Doctor and college female student SEE EX K, and DR. Watson in front of all others demanded Hicks confess to his crime or never leave hospital. There was a lot of beatings there as well had to aprise court and attorney's that I was not being given psyche meds to be found competent. DR. Watson gone to competency hearing Broward County and lied on stand. Now Defendant's allege facts and don't support their argument with evidence and claim drug seeking behavior, manipulative behavior, delusions and paranoia. Hicks sough pain medications for reasons and still does. see EX A, #6 10-12-95, 11-9-95, 12-16-95, 1-7-96, 2-6-96, 4-30-96, 8-21-96, 6-17-96, 7-26-96, 11-20-96, 8-27-96, 9-23-96, 10-27-96, 11-20-96, 12-22-96, 1-19-97, 2-11-98, 2-18-98, 2-27-98, 3-6-98, 3-13-98, 3-27-98, 3-28-98, 4-10-98, 4-24-98. This is some and all state opposite. The only contrary documentation recorded is EX A, #6 2-11-98 DR. Porfilio, psyche charts his notes from Chattahoochee authored by DR. Glenn Watson. ID #6 2-17-98 talks to state prosecutors doctors. ID #6 2-20-98 psyche reports Hicks found guilty. ID #6 6-1-98 DR. Limia charts Hicks might get (3) life sentences. ID #6 9-1-97 Hicks confronts DR. Limia about him lying in courtroom competency hearing and falsifying records. Now this DR. Limia stood in courtroom with a BSO attorney for county and prosecutor telling judge send Hicks to Miami state hospital this time as his brain is wired wrong, needs shock treatment and a lot of psychotropic drugs. Judge was scared and ordered Hicks remain at NBDC jail. Now a male bailiff who worked with Gloria female bailiff in Hon. J. Cohns courtroom asked Hicks if he would take a year and a day and sign release papers not to sue BSO or EMSA. Hicks said no because he's innocent of charges. Male bailiff quit BSO and moved out of state? All hell broke loose to even lie in court to give Hicks DEATH PENALTY. This is shown in Hicks-vs-Crosby, Fed habeas corpus $2254 now before Hon. P.A. WHITE. Defendant's allege Hicks did not recieve fractured nose. This is incorrect. SEE EX J xray report 11-27-96 nasal fracture, 10-7-97 report normal nasal bones. SEE EX A, #6 10-6-97 nondisplaced nasal fracture, partial collapse of (L) nasal and (R), ID #6 11-26-97 nasal fractures, deveation to nose, (L) nasal fracture. The record is clear to refute the only affidavit

of Dr. Holmes, ODS presented by Defendant's. Even with all missing radiologist reports for all recorded xrays taken. SEE EX M listings news paper articles on EMSA revealing systematic problems which eventually caused EMSA to lose its contract with BSO.

RESPONSE TO PAGE 10: Defendant's allege Hicks was sentenced, not true as he remained a detainee from 1995-1998.

## THE LAW OF SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper: [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In celotex corp -vs- catrett, 477 U.S. 317 (1986), the court held that summary judgement should be entered against: [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Thus, pursuant to celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman -vs- Allied corp., 912 F.2d 1379, 1382 (11 Cir 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan

-vs- Hull, 932 F.2d 1572, 1577 (11cir), cert. den. 112 S.ct 913 (1992). It is the nonmovings party burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdic. Earley -vs- Champion International corp., 907 F.2d 1077, 1080 (11 cir 1990). The non-moving party, even a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed. R. civ. P. 56(e); Coleman -vs- Smith, 828 F.2d 714 (11cir 1987); Brown -vs- Shinbaum, 828 F.2d 707 (11 cir 1987). If the evidence presented by the non moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson -vs- Liberty Lobby, Inc, 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama -vs- Purcell Corp, 971 F.2d 1558 (11cir 1992). As the court reviews the record submitted by Hicks it will reveal that summary disposition of Hicks complaint for deliberate indifference to his serious medical needs is not appropriate, as there remain genuine issues as to material fact. Celotex corp. -vs- Catrett, 477 U.S. 317 (1986). There remain genuine issues of material fact relating to the nature and severity of Hicks injuries, the proper course of treatment, the basis for the decision(s) to deny recommended surgery and pursue an alternative course to manage Hicks injuries and symptoms, and the nature of the defendant's knowledge of Hicks condition and medical needs as well as the nature of their power/authority/duties to effect Hicks course of treatment. In light of the existence of issues as to material fact, there can be no summary disposition of Hicks medical indifference claims either in favor of Hicks or defendant's, Celotex, supra. The record Hicks placed before the court shows what an expanded record is as he placed sufficient evidence to support summary judgment in his favor. The defendant's put forth less than what is already in courts file as well had not placed any affidavits except DR. Holmes, DDS which his opinion is clearly refuted just by the record alone. Defendant's still tried to conceal fracture to (R) temple as well have not provided all xray reports to align with ordered xrays by defendant's. Wherefore, court should enter judgment in favor of Hicks or deny defendant's summary judgment motion and proceed with scheduled trial.

## THE PRISON LITIGATION REFORM ACT

Hicks has exhausted his available administrative remedies and this court should review whether remedies were available and exhausted. Miller -vs- Tanner, 196 F3d 1190 (11cir 1999). And burden of proving non exhaustion is best placed on prison officials as its easier for prison administrator to prove as well their attorney's. McCoy -vs- Goord, 225 F supp 2d 233, 248 (S.D.NY 2003). SEE EX O showing BSO inmate handbook year 1995, page 6, as book shows a grievance procedure but does not explain medical grievance procedure. All handbook shows on medical is page 7, NO INMATE WILL BE DENIED MEDICAL/DENTAL CARE WHILE IN CUSTODY. This handbook was all recieved in 1995 with no actual orientation process. SEE National commission on correctional Health care page 2, showing orientation which does not explain any grievance procedure. BSO or EMSA policies are not like DEPT. of CORR policy as prisoner's are given precise orientation on DOC and medical grievance procedure at reIvery prison camp. BSO or EMSA grievance policy is not sufficently clear, expeditious, or respected by jail officials to constitute "available administrative remedy" for purpose of pre litigation exhaustion requirement contained in PLRA, Bayside prison litigation, 190 F supp 2d 755 (D.N.J. 2002); Patsy -vs- Board of regents state of Florida, 102 s.ct at 2563-65; McCarthy -vs- Madigan, 112 s.ct at 1089 (1992); Arnold -vs- Goetz, 245 F supp 2d 527 (S.D.NY 2003). The record is clear that Hicks filed request[S] and grievance[S] and once succeeded in obtaining relief requested it makes little sense to require a further formal grievance process as appeals would not have given additional relief. Thus exhaustion requirement is satisfied, Rivera -vs- Goord, 253 F supp 2d 735 (S.D. NY 2003); Booth, 121 s.ct at 1822 n.4; Brady -vs- Attygola, 196 F supp 2d 1016 (C.D.Cal 2002). Since Handbook was vague Hicks filed BSO requests, see 6-18-96 to Assistant warden who advised speak with housing deputy or SGT. Hicks done this numerous times and was never told proper procedure for filing medical grievances. See BSO grievance 6-12-96 signed by SGT and L.T. advising Hicks he could not use BSO grievance to grieve medical and to use medical grievance forms from nurse. Problem was there's no

EMSA grievance form procedure during 1995-1998. See BSO grievance 9-20-97 signed by medical director at main jail advising to use EMSA medical request (sick call request) for all complaints. Also see BSO request 1-4-97 addressed to medical director and signed by EMSA staff advising if have medical problem/complaint to use regular channel e.g. sick call request. The plain language of PLRA requires only "available administrative remedies to exhaust, 42 USC 1997e(a)". If not allowed to file grievances on medical by BSO and EMSA officials, then a question exists whether Hicks had available administrative remedies. Scott-vs-Gardner, 287 F Supp 2d 477, 491 (S.D.N.Y 2003). Hicks may proceed despite nonexhaustion where he had been "led to believe by BSO and EMSA officials" that his alleged incidents were not "grievance matters" thus prevented Hicks from utilizing grievance procedure. Lane-vs-Doan, 287 F Supp 2d 210, 212 (W.D.N.Y 2003). Because BSO and EMSA officials denied grievances and requests it prevented Hicks from pursuing the unclear administrative process, thus lacked an administrative remedy. Brown-vs-Croak, 312 F 3d 109, 113 (3rd cir 2002). As court searches all exhibit[s] submitted it reveals requests, grievances and complaints which some never responded to as a lot of them were turned over to internal Affairs now called professional compliance. See internal Affairs investigations done in 1996 and 1997 while in BSO custody. In 1996 agent seen Hicks while Hicks was handcuffed behind his back in a small closet style room and told Hicks he's receiving better medical than he did on the street. That was then the end of investigation. Hicks filed grievances and complaints that also gone to internal Affairs over BSO deputys stealing mail, grievances, request and legal mail. These Deputys were in charge of picking up all mentioned as well hand out same. There was "NO" grievance box at any jail. Also denied Hicks from getting grievances and requests. See EX.O. long-vs-Lafko, 254 F supp 2d 444 (S.D.N.Y 2003); Brown-vs-Croak, 312 F 3d 109 (3rd cir 2002); Lane-vs-Doan, 287 F supp 2d 210, 212 (W.D.N.Y 2003). Throughout stay in jails Hicks was never advised correct answers on how to file for medical. As well Hicks sustained serious head trauma and injuries from assault coupled with his mental history and never being in jail(s) or prison. SEE EX.P showing BSO Displinary reports

(DR's) Hicks recieved for retaliation for filing requests and grievances to recieve medical care. widberger -vs- Bracknell, 869 F2d 1467, 1468 (11cir 1989). Hicks remained in confinement at NBDC for over 1/2 year straight on invalid DR's as court will notice not filled out properly or given in 24 hours. Also have placed others to show retaliation, labounty -vs- Johnson, 2003 WL 1786545 (W.D.NY 2003); Arnold -vs- Goetz, 245 F supp 2d 527 (S.D.NY 2003). Also see EX H of B. Hanson-Evans, HSA and EX O, pluss entire file. Notice BSO Director miss S. Mccampbell who responded to many requests, grievances, complaints and letters and court will notice she advises Hicks gets the best medical care and told Hicks to file civil suit and provides Federal monitor and an attorney to contact. Mccampbell was highest contact person who referred grievances to superintendent(s) and HSA's to handle all complaints on medical. Now Mccampbell took over as acting sheriff when sheriff Ron Conchran died and still did not help. See response to grievance issue by then sheriff Ron Conchran advising county commissioners Hicks gets the best medical care. Also Patrick Tighe became acting director of BSO. Hattie -vs- Hallock, 8 F supp 2d 685 (N.D. Ohio 1998). Amend. 16 F supp 2d 834. The record is clear and concise showing Hicks exhausted his available remedies that were made known to him at present time when suit came about in 1996. The record reveals that BSO and EMSA did not have a medical grievance procedure that even comes close to what a D.O.C. grievance procedure is. As Hicks looks back he still does not fully understand BSO or EMSA grievance policy. Hicks asked many prisoners from Broward county and most didn't even know they had one nor understand how to use it if they had one. Also everyone states the same. You get arrested, booked and sent to a floor in the jail. Never recieved a inmate handbook upon arrival and most never seen one from BSO. When Hicks filed his civil suit it was in year 2000 and left the jail in 1998. Therefore was not in BSO custody when filed suit. Ligon -vs- Doherty, 208 F supp 2d 384 (E.D.NY 2002); Shook -vs- Board of county com's of El paso, 216 FRD 644 (D. colo 2003). Wherefore, Hicks has established he did exaust his remedies as 99% were granted except surgery or told the real truth of all known injuries.

AFFIDAVIT/OATH AND
CERTIFICATE OF SERVICE
_____

I William M. Hicks, prose, Hereby certify that facts and matters contained herein Response to Defendant's summary judgment is true and correct and a total of 1)set 176 pages have been copied and presented in Exhibits A-P and are attached as (A) MEDICAL FILE, (B) G. pearson, (C) DR. Davis, (D) S. Pearson, (E) J. Cline, (F) DR. Uecker, (G) DR. Weathers, (H) Hanson-Evans, (I) DR. Elliot, (J) assault file to wit, xray reports, police reports, ect, (K) Ledger on BSO, EMSA, DOC, ect staff, (L) Affidavits, (M) news paper articles, (N) medical licensing complaints, (O) exhaustion of remedies, (P) Displinary Reports. A true and correct copy has been given to prison legal mailroom to mail by U.S. mail this 28 day of MAY 2004 and mailed to: MR. Woulfe, esq one Financial Plaza · Suite 900 · 100 SE 3rd Avenue, FT. laud, Fla 33394.

OATH

STATE OF FLORIDA
COUNTY OF LAKE

Sworn and subscribed before me this 28 day of May 2004. MR. William M. Hicks, did take an oath, and produced DEPT. of CORR. I.D. # 664670 as identification.

_Virginia C. Potter_
NOTARY OF PUBLIC

Aug 3-2006
MY COMMISSION EXPIRES

Virginia C. Potter
Commission # DD135904
Expires Aug. 3, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

x _William M Hicks_
William M. Hicks, 664670
Lake Corr Inst
19225 US Hwy 27
Clermont, Fla 34711-9025

11 of 11