```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 00-6087-Civ-DIMITROULEAS
                                    MAGISTRATE JUDGE P.A. WHITE
WILLIAM M. HICKS,               :

     Plaintiff,                 :

v.                              :         REPORT OF
                                          MAGISTRATE JUDGE
SHERIFF KENNETH JENNE, et al.,  :

     Defendants.                :
```

In the amended complaint (DE# 53) in this pro se civil rights action pursuant to 42 U.S.C. §1983, plaintiff Hicks raised claims arising from events during his prior confinement at the Broward County Main Jail (BCMJ) and North Broward Detention Center (NBDC). Various claims and defendants have been dismissed. After earlier motions for summary judgment (Defendants' DE# 117; Plaintiff's DE# 119) and this Court's Judgment of June 25, 2002 in favor of defendants (DE# 154), the plaintiff appealed (USCA 02-14055-CC). Upon remand by the United States Court of Appeals for the Eleventh Circuit (DE# 166; June 5, 2003 Judgment and Opinion, issued as Mandate on August 15, 2003), there remain claims of deliberate indifference to Hicks' serious medical needs, after he was attacked by another inmate at the BCMJ on February 9, 1996, and sustained injuries in the region of his head. The case is set for trial before the Honorable William P. Dimitrouleas, United States District Judge, during the two week period commencing July 12, 2004.

This Cause is before the Court upon a successive motion for summary judgment (DE# 226), filed on April 29, 2004, by the seven "Medical Defendants" remaining in the case: (1) Dr. W.C. Davis, Staff Physician, NBDC; (2) Dr. C. Uecker, Staff Physician, BCMJ; (3) Dr. Trevor Weathers, surgeon, BCMJ; (4) Dr. Cline, at BCMJ; (5) Dr. S. Pearson, dentist, BCMJ; (6) Dr. G. Pearson, dentist, BCMJ; and (7) Emergency Medical Service Association ("EMSA Limited Partnership"), the corporate entity contracted to provide medical care to inmates at the BCMJ and NBDC.

1



In the first summary judgment proceeding the pro se plaintiff was made aware of the standard of review, which also applies to defendants' renewed motion.[1] The plaintiff has been instructed by Court Orders about the law of summary judgment and requirements under Fed.R.Civ.P. 56 for a proper response to such a motion, and was informed of his right to respond. (See DE#s 122 and 227).

---

[1]   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir. 1990). The non-moving party, even a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992).

Despite the liberality with which courts are obliged to interpret pro se complaints, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11 Cir. 1990).

As they argued in their first motion for summary judgment (DE# 117), the defendants/movants argue in their successive motion (DE# 226) that there was no deliberate indifference to Hicks' serious medical needs.

In their first motion for summary judgment (DE# 117) the defendants did not submit plaintiff's voluminous medical record as evidence. Instead, they relied almost exclusively upon statements made by plaintiff Hicks at his own Deposition. They also relied upon a single page from Hicks' medical records -- a July 2, 1996 Memorandum/Grievance Response, written to Hicks, by "Barbara Hanson-Evans, HSA, BSO" (Health Service Administrator, Broward Sheriff's Office), which was "Exhibit A" to the Amended Complaint. The defendants argued that Hicks was provided extensive medical care (including that he was seen numerous times by defendant medical staff, was given physical exams [medical and dental] and multiple x-rays, was prescribed medications including for pain, and was prescribed a soft diet and given extra pillows). The defendants argued that the record, including the sworn amended complaint and other evidence, was insufficient to support a finding of deliberate indifference, and that Hicks' claims in essence amounted to a difference of opinion between the inmate and prison medical staff regarding proper diagnosis and course of treatment, which alone, under Estelle v. Gamble, 429 U.S. 97 (1976) and its progeny, does not rise to the level of a constitutional deprivation.

Now, with their renewed 18-page motion for summary judgment (DE# 226) the defendants have filed in excess of 800 pages of supporting exhibits (DE# 226, pp. 19-852) consisting of: (1) Exhibit A: Hicks' EMSA Medical Records, as authenticated by Affidavit of Barbara Evans (Id., pp. 19-835); (2) Exhibit B: The Affidavit of Dr. Jeffrey Elliot, authenticating 13 attached pages of documents from Hick's medical record at Coral Springs Oral and Maxillofacial Surgery Associates (Id., pp. 836-849); (3) Exhibit C: "Expert Report on Behalf of Defendants" (Id., pp. 850-851); and (4) Exhibit D: "Plaintiff's Response to Defendant's Expert Interrogatories Request," dated April 12, 2004, stating that at the time plaintiff had no expert witness ready to testify (Id., p. 852).

In opposition to the defendants' renewed motion, plaintiff Hicks has filed a Response (DE# 234), and 195 pages of supporting medical records/documents/affidavits (DE# 235, pp. 4-198, labeled Exhibits A, D, H-J, L and N-P) which are apparently only part of his intended exhibits. Those exhibits are attached to "Plaintiff's Motion for Court Order to Have Copies of Exhibits Made..."(DE# 235, pp. 1-3).[2] By separate Order, sent by facsimile on June 9, 2004, the Warden of Lake CI has been instructed to permit additional photocopying if requested, and plaintiff Hicks has been instructed that he may supplement his exhibits for the Court's consideration, during the period for filing objections to this Report.

On June 7, 2004, defendants filed a Reply (DE# 236), and 252 more pages of medical documents (DE# 237).

Discussion: The Renewed Motion for Summary Judgment (DE# 226)

In the "Conclusion" section of their renewed motion (§III, DE# 226 at pp. 17-18) the defendants summarize their motion and argument, stating that Hicks' claim is entirely based on his own allegations, which are "thoroughly contradicted by record evidence," and must be supported "with fact, not fantasy." Defendants argue that Hicks claims he was diagnosed with a broken jaw, but that "the record shows that any claimed fracture was a figment of Hicks' imagination." They also argue that Hicks' psychiatric records "paint him as a disturbed individual who routinely blames others for his lot in life; his constant complaints the result of drug seeking manipulative behavior." Finally, the defendants argue that "Since

---

[2] In his May 27, 2004 motion, (DE# 235, pp. 1-3) plaintiff Hicks seeks a Court Order instructing DOC officials to permit the copying of what appears to be in excess of 900 additional pages from his medical record, for which his request was apparently first approved, and then disallowed. [Hicks states that there was intervention by a DOC attorney, who instructed a prison librarian not to proceed making the copies. Hicks also alleges that copies which had been made were shredded, and that when Hicks spoke with the Assistant Warden, the Assistant Warden told the librarian to make some copies, but that if "Hicks needs more Exhibits he needs [a] Court Order."
It is unclear whether Hicks is referring to the same records which: (1) were filed by the defendants [DE# 226, pp. 19-852] in support of their renewed summary judgment motion, a copy of which was served upon the plaintiff; and (2), and which were filed by the defendants [DE# 237, pp. 3-254] along with their Notice of Filing on June 7, 2004 [DE# 237, pp. 1-2].

4

he is serving a life sentence, Hicks expects this Court to grant him what every inmate wants: a field trip to the court house for trial. He has wasted enough of this Court's time on this frivolous claim, and he should be left to complete his sentence without the hope of even a temporary reprieve." Finally, the defendants conclude that from the record before this Court it is "clear there exists no issue of material fact and that Plaintiff cannot establish a viable claim under 42 U.S.C. §1983 against any of the defendants and that a final summary judgment should be entered in favor of [all of the defendants], and against William M. Hicks."

In its Order of remand (DE# 166) the Court of Appeals summarized the law relating to claims of medical indifference,[3] found that summary judgment was not appropriate, based on the plaintiff's showing he had serious medical needs, plaintiff's evidence of deliberate indifference, and the fact that with regard to a recommended surgical procedure (referred to as Hicks having his mouth wired shut) the defendants [relying only on plaintiff's deposition testimony] had presented no evidence that the procedure was not the medically proper treatment. The defendants have now responded to plaintiff's claims, in a successive motion for summary judgment supported with medical records, and an Expert Report.

---

[3] Jail officials violate a pretrial detainee's Constitutional rights under the Fourteenth Amendment if they withhold appropriate medical care with deliberate indifference to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Negligence is not enough. Estelle, supra, at 104-06. To prevail on such a claim, the detainee must establish: 1) an "objectively serious deprivation," i.e. a serious medical need accompanied by a substantial risk of serious harm if unattended; 2) a response by public officials beyond negligence, i.e., one that is so inadequate as to constitute and "unnecessary and wanton infliction of pain;" and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, and that they actually did draw that inference. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002). The inmate/plaintiff need not establish deliberate indifference through expert testimony. Rather, it may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment. McElligott v. Foley, 182 F.3d 1248, 1255 (11 Cir. 1999); Smith v. Jenkins, 919 F.2d 90, 93 (8 Cir. 1990). Moreover, the standard may also be met by a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, such as cost of the procedure. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). Finally, prison officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference. Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003).

5

Review of the record, including the verified amended complaint, the defendants' renewed motion, the plaintiff's response, the defendants' reply, and the parties' [defendants' and plaintiff's] exhibits, makes clear that there remain genuine issues of material fact which make summary disposition of the amended complaint for medical indifference inappropriate. Celotex, supra.

First, defendants' argument regarding whether plaintiff's psychiatric status has caused him to engage in fantasy [and therefore whether his personal capacity to give evidence, i.e., credibility, should be called into question] is something which requires determination by a trier of fact [judge, or jury]. Although the voluminous medical files of record include some documents pertaining to plaintiff's psychiatric evaluation and care, there are no expert reports or affidavits for the Court's consideration on summary judgment which bear on this question.

Second, the plaintiff's complaint for indifference to serious medical needs following the attack upon him by another inmate on or about February 9, 1996, is not based solely on a claim that he sustained a fracture to his mandible [the lower jaw]. It is also based on claims (and evidence) that the plaintiff had additional injuries, including other fractures associated with bone of the maxilla [upper jaw] and of the zygomatic arch [the arch along the side and front of the skull by the eye], and that immediately following the February 1996 attack, and in the days, weeks, and months that followed, the plaintiff repeatedly complained of and was seen by medical personnel for multiple symptoms.

Plaintiff has presented evidence that he suffers lasting physical symptoms as a result of the beating he sustained. As noted by defendants in their first motion (DE# 117, p. 3), based on Hicks' deposition, chief among his complaints were jaw pain, pain on the right and left sides of his face, neck pain, headaches, nausea, dizziness, and problems with his right eye. In addition to those symptoms, as noted by the Eleventh Circuit, Hicks also has presented evidence of inability to open his mouth wide or chew properly, and clicking in his jaw. This is sufficient to establish

6

that Hicks' medical conditions were sufficient to constitute a serious medical need. Now, in support of his recent Response (DE# 234) Hicks has submitted five Affidavits attesting to his permanent symptoms (DE# 235, Ex. L).

It is undisputed that Hicks was seen many times by the defendant medical/dental staff; was given multiple physical exams [medical and dental]; received multiple x-rays during the six months following the February 9, 1996 attack; and was given prescriptions to ameliorate pain and ease difficulty eating [including prescriptions for pain medication, a soft diet, and extra pillows].

The medical records show that, initially, x-ray examination on or about February 21, 1996 suggested a fracture of the mandible on the left (see DE# 235 at p. 59, EMSA X-ray Report by Radiologist Dr. Tome, reviewed by Staff Physician Dr. Derizier 2/22/96; DE# 235 at p. 47, 7/2/96 Memorandum by HSA Evans); but that within 4 days, based on additional x-rays, medical staff had ruled out a mandibular fracture (DE# 235 at p. 61, EMSA X-ray Report by Dr. Tome, reviewed by Staff Physician Davis 2/26/96). There is, however, evidence of other fractures, to the zygomatic arch, and to bone of the maxilla (see DE# 226, Defendants' Ex. C, "Expert Report on Behalf of Defendants" by Dr. Steven M. Holmes, DDS).[4] Holmes states, in part, "The radiographs and clinical evaluations continually confirmed that Mr. Hicks did not sustain a mandibular fracture, probably sustained a minimally depressed right zygomating arch fracture and a minimally depressed right later maxillary wall fracture." (Id., at p. 850). Dr. Holmes' Report also states that "[e]valuation of Mr. Hicks continually determined that he had no functional or cosmetic problems." (Id., at p. 850).

Dr. Holmes states that "there are no indications for any treatment for a patient presenting with a minimally depressed zygo-

---

[4] Dr. Holmes' Report indicates that his resume, providing his qualifications to provide expert opinions, is attached, along with a statement of the amount of compensation paid for his review of records and his testimony in this case. Review of the record, however, reveals the filing of no attachments to DE# 226, Ex. C.

matic arch, and/or a minimally depressed lateral maxillary wall fracture with documented findings of repeatable occlusion, normal functional movement and normal range of motion of the mandible" (Id.). He opines that only a severely depressed fracture is treated, and then only if it interferes with "mandibular range of motion or presents a cosmetic deformity to the individual." (Id.).

The record shows that on April 22, 1996 [more than two months after EMSA staff's evaluation of follow-up x-rays in February had already ruled out a mandibular fracture] Staff Physician Dr. Uecker recommended OMF surgery, and wrote an order for Hicks to be seen by the OMF [Oral Maxillofacial] surgeon. (See: Memo by HSA Evans, DE# 235 at p. 47; See: 4/22/96 EMSA Progress Notes by Dr. Uecker. DE# 235 at p. 22; See: EMSA Physician's Orders, DE# 235 at p. 8).

The record indicates that on 5/8/96, Drs. Cline, Schwartz, and Weathers explained that surgery was not planned for the zygomatic arch, and that the problem with eating was being addressed by ordering a soft diet. (See: Memo by HSA Evans, DE# 235 at p. 47). That plaintiff was told this is reflected in the medical exhibits.

It is the defendants' position, which they argue is supported by the medical records, that surgery was not provided because it was not necessary, based on plaintiff's symptoms. As noted in the Eleventh Circuit's Order of remand, and as stated by the plaintiff in his amended complaint which is filed under penalty of perjury, plaintiff's evidence includes his testimony that Dr. Cline admitted to him that it was due to its "extreme cost" that the decision was made to deny him the surgery recommended by Dr. Uecker. As also noted in the Eleventh Circuit's Order, plaintiff Hicks' evidence regarding deliberate indifference includes that "Hicks complained on numerous occasions that he was continually in pain and unable to chew or open his mouth fully, thus placing jail officials on notice that their chosen course of treatment was not ameliorating his symptoms."

Although Dr. Uecker recommended OMF surgery on 4/22/96, and entered an order on 4/22 regarding referral to the OMF surgeon,

8

referral records show that it was in excess of six months later, on 11/02/96, that Hicks was seen at the office of Oral and Maxillofacial surgeons Dr. Elliot and Dr. Russo [earlier referred to by Hicks, and in the Appellate Opinion, as Dr. Russell] (see unsigned, undated Report, Ex. B, DE# 226 at p. 846). The EMSA referral form, marked "urgent," with the notation "Right Zygomatic Arch fracture with possible TMJ impingement," is dated 10/21/96 (see: EMSA Consultation Request Form, Defendants' Ex. B, DE# 226 at p. 841). The Report (Id., p. 846) indicates that after the office visit, a C-T exam was performed, which revealed a small break in the right posterior lateral wall of the maxillary sinus. The Report (Id. p. 846) documents that Hicks was examined for paresthesia or abnormal nerve sensations, pain, range of motion and degree of opening of the jaw, clicking or popping in the TMJs [temporal mandibular joints]. In the conclusion ("Impression") of the report, it is noted that "[t]here is no evidence of TMJ pathology at this time. Patient's limited opening and complaint of discomfort may be due to scar tissue from original injury. Non-surgical therapy may help."

Dr. Uecker's Progress Notes for 4/22 and 4/24 both indicate that Hicks was "+" for "TMJ Syndrome" (DE# 235, at pp. 22, 24). Dr. Uecker's Progress Notes for 2/17/97 (within two months after the Russo/Elliot Report which noted "no evidence of TMJ pathology") contains Uecker's notation "+ Symptomatic TMJ 2° to recent blunt facial trauma" (Id. at p. 37); and Dr. Smith's Progress Notes for 3/29/97 indicate "+ TMJ click L side" and "TMJ Syndrome."

Part of plaintiff's evidence noted by the Eleventh Circuit in its opinion (DE# 166, p. 9) is that three doctors (Cline, Sevilla, and Parriot) told Hicks that his jaw condition would get progressively worse, and Sevilla told him that it would deteriorate to the point where he would have to be fed through a straw.

Plaintiff's evidence, submitted with his Response, includes Exhibit L (DE# 235, pp. 68-82) comprised of Hicks' own affidavit, and the affidavits of inmates Jackson, Mock, Epstein, and Taylor. Hicks states under penalty of perjury that he suffers from constant

headaches "stemming from jaw and kneck [sic]," and that his "jaw opens at most two fingers wide and locks." He also states that his jaw "pops and cracks as well opens to the left;" that the jaw is "out of alignment as the jaw bone sticks out;" and that his "R [right] temple erea [sic] is still tender and nerves are touchy." Id. at pp. 80-82. In their Affidavits (Id. at pp. 68-79), inmates Jackson, Mock, Epstein, and Taylor testify to their direct observations regarding Hicks symptoms, which certainly can be made by a lay person. Their affidavits indicate that Hicks' ability to open his jaw is very limited, that when Hicks opens his jaw it shifts to the left, rather than opening normally up and down, and that his right temple area is noticeably indented or caved in, as compared to the left side which looks normal, and that there is an obvious disfigurement of his jaw bone on the right side where it is hinged, near his ear [it sticks out or has a large lump]. In addition, Taylor states that he (Taylor) is "able to feel the joints on both sides pop" when Hicks opens and closes his mouth.

Based on the foregoing, it apparent, as to the individual medical defendants, that there remain genuine issues of material fact relating to the cause(s), nature, extent and severity of the plaintiff's injuries; the proper course of treatment, and the basis for the decision(s) to deny certain more aggressive therapy such as recommended surgery and follow more conservative ameliorative treatment for plaintiff's injuries and symptoms; and whether or to what extent a six month delay in effecting a referral of the plaintiff to the outside OMF specialist may have made what earlier may have been appropriate and necessary aggressive therapy (including recommended OMF surgery) no longer possible or efficacious, or may have exacerbated symptoms and/or permanent injuries suffered by the plaintiff.

The medical care provider, EMSA, argues that it is entitled to summary judgment because plaintiff Hicks fails to demonstrate that the decision to deny recommended surgery was due to EMSA policy. As discussed, supra, there is sworn evidence offered by Hicks that the it was due to it's high cost that the decision was made to deny

Hicks the recommended surgery. This is evidence of policy, which is sufficient to create a genuine issue of material fact.

The existence of these issues of material fact makes summary disposition of Hicks' medical indifference claims inappropriate. Celotex, supra.

## Conclusion

It is therefore recommended that, as to all defendants, the joint, renewed motion for summary judgment (DE# 226) be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: June 17, 2004.

UNITED STATES MAGISTRATE JUDGE

cc:  William M. Hicks, Pro Se
     DC# 664670
     Lake Correctional Institution
     19225 U.S. Hwy. 27
     Clermont, FL 34711-9025


     Gregg A. Toomey, Esquire
     Richard T. Woulfe, Esquire
     BUNNELL, WOULFE, KIRSCHBAUM,
        KELLER, McINTYRE, & GREGOIRE, P.A.
     One Financial Plaza, #900
     100 S.E. 3rd Avenue
     Ft. Lauderdale, FL 33394
     **(By Mail, and facsimile 954/463-6643)**


     Honorable William P. Dimitrouleas
        United States District Judge