UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6087-CIV-Dim
MAGISTRATE JUDGE. P.A. WHITE

FILED by _____ D.C.
INTAKE
AUG 12 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Provided to
South Florida Reception Center
on 8/10/04 for mailing.
I/M Initials BY

WILLIAM M. HICKS,
  PLAINTIFF, PRO SE,
  -VS-
EMSA, et al,
  Defendant(s).
_____/

### PLAINTIFF'S RULE 59 MOTION AND RULE 60 MOTION

COMES NOW William M. Hicks, pro se, pursuant to Fed. R. Civ. P. Rule 59 and Rule 60(b), requesting all relief, new trial, and/or new trial on Defendant(s) court determines and would state summation of facts and reasons as follows:

1.) The plaintiff met conditions of Rule 50 (1) and (2) as his evidence shown jury questions and defendant's did not have overwhelming evidence in their favor, Newmont Mines Ltd -vs- Hanovers, Ins. Co, 748 F2d 127, 132 (2nd cir 1986). Therefore, court erred granting defendant's Rule 50 motion as they failed to make a proper R.50 motion, which specif[ies] the law and the facts on which moving party is entitled to judgment as matter of law, Fed. R. Civ. P. 50(a)(2). Defendant's motion must inform the plaintiff of the deficiencies in its proof by identifying the dispositive fact and court's remaining responsibility will be to

1 of 13

afford Plaintiff "an opportunity to present any available evidence bearing on that fact" before ruling on the motion which in this case was a verbal motion, <u>Waters -vs- Young</u>, 100 F3d 1437, 1441 (9TH cir 1996); see also <u>Francis -vs- Clark Equipment Co</u>, 993 F2d 545, 553-56 (6TH cir 1993).

2.) The court furthered its error by not affording plaintiff a fair trial which required both parties be fully heard, permitted where ever possible, to marshal and present evidence relevant to their positions in litigation, Rule 50, <u>Reeves -vs- Sanderson Plumbing Products Inc</u>, 120 S.Ct 2097 (2000); <u>Sedrati -vs- All State life Insurance Co</u>, 185 FRD 388 (S.D. Ga 1993). The trial transcripts clearly show plaintiff was denied equal opportunity to introduce his relevant medical files and other evidence. On the other hand the court entered Defendant's EMSA medical file and Dept of Corr file based solely on Defense counsel's sworn oath that they were introducing true and complete records. Plaintiff on direct exam of defendant(s) and their Expert Dr. Holmes, DDS allowed them to use their medical files which plaintiff clearly shown their records were not true and complete files. The record is clear defendant's objected to plaintiff placing his proven complete EMSA file into evidence and court sustained their objections then plaintiff when Defendant's placed files in took their word they were complete and did not object as he advised court of his intentions of placing his own files in evidence. Plaintiff objected to their files and advised court he shown counsel's did not provide complete files and court sustained. Thereby leaving NO EMSA medical files in evidence.

3). This court in recieving the evidence, "must draw all reasonable inferences in favor of the nonmoving party, and

[may] not make credibility determinations or weigh the evidence, Lytle -vs- Household mfg, Inc, 110 S.ct 1331 (1990); Anderson -vs- Liberty Lobby Inc, 106 S.ct 2505 (1986); Continental ore co. -vs- Union Carbide & Carbon, Corp, 82 S.ct 1404 (1962). "Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are [jury] functions, not those of a judge, Liberty Lobby, supra, 106 S.ct 2505 (1986); Boeing Co, -vs- Shipman, 411 F2d 365, 374-75 (5th Cir 1969). The court did not follow this as it made determinations on witnesses credibility and testimony to refute plaintiff, which if taken in full context is inaccurate. The court used terminology such as Dr. Ueckers testimony that plaintiff recieved the best care in medical treatment and in same breath said none of OMFS orders were fulfilled for surgery. The court used Ueckers testimony as plaintiff has "mental problems that's why sought medical" to refute plaintiff. Court stated could not show plaintiff had fractured jaw to support Ueckers OMFS orders. This was plain error as plaintiff was highly prejudiced in not being allowed to conduct thorough exam on direct of Uecker using EMSA medical files to show fractured jaw, (R) temple, (L) & (R) facial, nasal and kneck and eye injury. All because Uecker at last minute knowing he's to testify needed to be else where other than trial and court forced plaintiff to finish fast.

4.) The court erred using credibility determinations and weighing evidence with all defendant(s) and their Expert Dr. Holmes who testified he never seen medical records that plaintiff shown him, therefore, not seeing a complete accurate medical file to enable him to give expert opinion on what appropriate medical care was given and what injuries were

really sustained by the assault and battery in Feb 9, 1996. Also the court should give credence to the evidence favoring the nonmovant in R. 50 motion, as well that "evidence favoring the moving party that is [u]ncontradicted and [u]nimpeached, Reeves -vs- Sanderson Plumbing Products, Inc, 120 S.ct 2097, 2110 (2000). As the plaintiff called and presented all defendant's to testify, Dr. G. Pearson, Dr. S. Pearson, Dr. Weathers and Dr. Uecker they was found not truthful and impeached and their testimony was found to be an issue for the jury to decide. Plaintiff called Dr. Cline who candidly stated he never had licensing complaints against him which is found to be false testimony as plaintiff had in possession Clines entire medical license file showing several court action complaints resolved against him. Even expert Dr. Holmes was impeached as well when he seen plaintiff's evidence he never seen such as listing of fracture[s] and jaw fracture or Dr. Elliot, DMD, private street oral surgeon complete file. The credibility should be used by licensed attorney's pleadings such as pretrial statement drafted by Mr. Joel L. Shulman, esq in January 14, 2002, pages 3-4 which clearly point out facts in EMSA record of plaintiff's medical problems, seeing Dr. Davis who said no fractures, Dr. Uecker suggested OMF surgery, Dr Weathers found fractures, gave pain meds, diet with calcium to strengthen jaw bones and Weathers determined not to have jaw wired shut and no need for OMF surgery. Dr. Cline told plaintiff he had fractured jaw, but did not make decision to not wire jaw shut, plaintiff seen S. Pearson less than five times ( she testified only once), ect. Plaintiff used BSO requests, grievances and EMSA medical requests mixed with rest of file to make up for missing reports and dental logs as well shown Dental logs had been altered and progress notes are also. Fed. R. Civ. P. Rule 60(b).

5.) The court continued its error by misinterpreting the 11TH Cir court Appeals reversal. The record is complete with documentation to support Fractured jaw and DR. Ueckers orders Feb 14, 1996 (see defendant's 2004 objections to summary judgment page 10), April 22, 1996 and February 17, 1997 ASAP DR. Elliot. Even medical release forms of EMSA back Feb 14 and Feb 17, 1997 so DR. Elliot could review records for treatment. The EMSA referral to DR. Elliot in 1996 clearly reads "Emergency Fractured Jaw". This is backed by Barbra Hanson-Evans HSA, BSO responses to plaintiff's grievances in year 1996 while she had a complete medical file to review. One grievance clearly outlined fractured jaw and advised physicians are correct when they say the bone will grow back. Hanson-Evans trial testimony supported her grievance responses as she stated she was personally familure with them, Fed. R. Evid 901, 902. She testified she had no medical training or license and personally reviewed plaintiff's EMSA medical files and spoken with Doctors in 1996 to obtain the information. Even Hanson-Evans sworn affidavit dated November 30, 2001 used for BSO summary judgment pleading page two, states, "review of Hicks medical records showed on Feb 21, 1996 fracture of "(L) mandible" and zygomatic arch. Then thereafter, an xray taken March 15, 1996 showed minimal depression of the arch. And on April 22, 1996 DR. Uecker suggested OMF (open mouth Fracture) surgery and on May 8, 1996 Cline, Weathers and Schwartz, HSA explained surgery for the arch was not planned. This clearly shows a fractured mandible. As well recorded in EMSA medical records if plaintiff was permitted without obstruction to bring forth his Expert as planned he would have had Expert testify to all known fractures[s] to include jaw and physical examination of plaintiff's present permenant injuries pluss put forth plaintiff's original (Five) x-rays taken on Feb 9, 1996 by DR. Davis, M.D. to support findings that

were all known on day of assault and battery. This Expert would have supported documented evidence of physical pain and suffering still and permenant injuries to wit: blurred vision from (R) eye injury, kneck damage, clicking in jaw, inability to open mouth fully or chew properly, headaches, nausea, dizziness, facial pain and breathing problems, ect. These syptoms are still being documented in DOC medical files. The expert would have testified to life long pain and suffering caused from injuries and refusal to treat promptly and how it effects plaintiff daily life. Also to (R) jaw bone sticking out just by looking with naked eye and jaw locking 1½ to 2 fingers wide and opens to left instead of up and down since its out of alignment and causing erosion of bone socket(s) and searing of tisue causing jaw to open less and less.

6.) The 11TH cir talks of concealment which is clearly shown in BMSA medical files as fracture[s] being recorded up to 1998 which [all] were known on Feb 9, 1996 when (5) x-rays were taken. Even Dept. of Corr medical clinical findings are reporting lsmitted opening of mouth and kneck injury is getting worse. Plaintiff aprised court of Lake Corr Inst shledding his legal work and some of his only evidence when he tried to make copies. This caused severe prejudice on plaintiff in preparing for trial as he could not obtain any copies even with Hon. P.A. White's court order ......

7.) This court was aware of plaintiff prose status and never done civil trial and this court failed to fulfill its duties under Rule 50, as it was confronted with prose litigant, who was [C]apable of producing evidence necessary to sustain his claim but did not understand the time and manner

in which he must do. This was clearly shown when in trial plaintiff raised concern that he must be able to place evidence in trial at some point, <u>Waters -vs- Young</u>, 100 F3d at 1441 (9cir 1996). This court should have ensured that pro se plaintiff litigant did not unwittingly fall victim to procedural requirements that he may, with some help from court, be able to satisfy, <u>Waters</u> at 1441. Fed. R. Civ. P. Rule 50, 28 USCA. This was further compounded by plaintiff at South Fla. Recpt. Center prison ( taken back and forth to court) being abruptly taken off psychotropic medications at start of trial which caused physical problems, thought and thinking problems, confusion which plaintiff placed on record of problem and asked for appointment of counsel after a week of being told its reordered and causing blood in stool and abdomenal pains so serious he asked court to take recess couple of times because ready to fallout. Plaintiff did recieve meds upon arrival? Also could not obtain his prescribed pain medications? This court had allowed plaintiff's evidence of B. Henson-Evans, HSA, BSO grievance[s] to [disappear] from clerk of courts possession along with other evidence and plaintiff could not cross examine witnesses with these document[s]. The court at calendar call kept plaintiff in leg shackles and handcuffs over objection and request for appointment of counsel. This interfered with his ability to access his files and present issues to court that were never done do to Lake Corr Inst denying copy service.

8.) The court severly prejudiced plaintiff's civil trial by altering scheduled (two) week trial shortening and skipping days which hampered plaintiff's ability as pro se litigant to present witnesses to support his burden of proof during case in chief. This court is fully aware of pro se litigants ability to prepare, locate and

serve subpeana's which is no easy task when limitted to U.S. mail and forcing plaintiff to try and reschedule his entire case and witnesses over night on several occasions because defendant's and counsel's plans as well court's schedule. This caused serious problems in presenting witnesses as they could not keep up with their own obligations twards family and work. When court rescheduled case in middle of trial for week off over objections, it once again caused prejudice to his case and having witnesses testify in chronicle order and denied him to have expert who is in his own private practice and had patients pluss surgeries to preform which stopped him from testifying. Expert was crucial to plaintiff's case as court acknowlegded. The x-rays of plaintiff's and testimony of all documented fractures and fractured jaw and physical examination of plaintiff was a vital piece of plaintiff's entire case to show proof upon all defendant(s) since court would not allow plaintiff to introduce other doctors reports as well DR. Davis, M.D. who fled. Plaintiff tried to over come this by asking court to use a x-ray light box which did not have or use projector screen which would not work based on Defense counsel's word. Plaintiff was willing to introduce x-rays through DR. Uecker based on his testimony of experience in reading x-rays and court denied request unless Uecker used them to formulate his opinion. Uecker did use these as he ordered outside oral surgeon DR. Elliot on Feb 14, 1996, (5) days after assault and battery. See objections by defendant's to summary judgment page 10, dated July 2, 2004. Defense counsel's furthered prejudice by unprofessionally waiting until middle of trial when plaintiff advised them and court he is calling DR. Davis, M.D. That's when they told he fled and whereabouts unknown. DR. Davis was vital to case as defendant's knew this since he was

the doctor to see plaintiff on Feb 9, 1996 day of assault and took (five) x-rays. Davis testimony was integrate piece as records reveal him signing off on all reports at NBDC as well his own progress notes that were inconsistant with his inital findings made on Feb 9, 1996. Also would have explained his notes that were missing from progress notes on Feb 9, 1996 as well his licensing complaints would have shown Davis unfit to practice medicine safely and EMSA aware as he also had settled cases relating to same fractured jaw and delayed treatment starting in 1994 through 1997 at NBDC jail. Also motive as he was found to be under illicit drugs or alcohol and/or prescription medications which could have caused misdiagnoses.

9.) Defense counsel's cross examination of plaintiff trying to mannipulate the court and jury into believing EMSA files (should not have DOC psyche files) documented him having halucinations and delusions pluss mental problems by EMSA psychiatrist which was known to be false misrepresentation of facts. This led Uecker to claiming because plaintiff sought needed medical care he had serious mental issues. This court even used words in its rational to justify R. 50 motion. Defense even brought in plaintiff's criminal trial proceedings as to compentency hearings and being sent to Fla. state chattahoochee because being found incompetent to stand trial. This led plaintiff to defend and place facts of what happened in criminal case and BSO jail(s). Defendant(s) counsel's clearly by DOCUMENTED motions, pleadings to court have purposely misconstrued facts to defeat plaintiff such as objections to Hon. P.A. white summary judgment page 10, stating DR. Uecker M.D. was a Dentist and could not order surgery.

This gone on to use of inaccurate medical files even though using their oath to certify they were true and complete medical files and use of altered medical documents as plaintiff shown this in trial on exam of DR. G. Pearson, DDS.

Defense counsel's were unprofessional in pleadings attacking plaintiffy in wording which led to verbal words in trial mixed with unfounded inconsistent terminology to overcome their position to win Rule 50 motion by going also to Hon. Serrentino report on first summary judgment which counsel's did not even know what they was talking about and court asked them if they wanted to really use her report as it stated all should go to trial.

10.) Court erred at calander call of trial as it kept plaintiff from his legal work by use of handcuff's and leg shackles was the start as the court allowed plaintiff to store his legal work for start of trial which was changed without notice and U.S. marshals would not retrieve his legal work to further prepare for rescheduling that occurred then.

11.) The courts interpretation of inferences and presumptions were in error as Deliberate indifference can be "inferred" or "found" from defendant(s) failure to do his or her job... was so likely to result in the violation of plaintiff's constitutional rights that they were deliberately indifferent.. Hill -vs- Marshall, 962 F2d 1209, 1214 (6th cir 1992) cert. den. 113 Sict 2992 (1993). [A] determination of deliberate indifference does not require proof of intent to harm or a detailed inquiry into "the defendant's state of mind.." [The] facts establish that they was deliberately indifferent to plaintiff's serious medical needs and officials "defendant's" failed to respond reasonably to a known risk, Weeks -vs- Chaboudy,

984 F2d 185, 187 (6TH cir 1993); Farmer -vs- Brennan, 114 s.ct 1982-84 (1994). As well Deliberate indifference encompasses the unnecessary and wanton infliction of pain repugnant to the conscience of mandkind, Harrison -vs- Barkly, 219 F3d 132, 136 (2nd cir 2000); Stewart -vs- Murphy, 174 F3d 530, 533 (5TH cir 1999); Gregg -vs- Georgia, 96 s.ct 2909 (1976).

The plaintiff proved by what little evidence the court did allow him to introduce in case by preponderance of the evidence and shown alleged facts to be more true than not to shift the burden to defendant's, Winship, 90 s.ct 1068 (1970) (preponderance standard "simply requires the trier of fact" to believe that the existence of a fact is more probable than its nonexistence), while "society does not expect that plaintiff will have unqualified access to health care or it to violate contemporary standards of decency, Hudson -vs- McMillian, 112 s.ct 995 (1992). Plaintiff by evidence shown he suffered in Feb 9, 1996 - 1998 in BSO custody till present of continuous "great pain" and inability to chew properly or open mouth fully sufficient to withstand motion to dismiss, Rivera -vs- Goord, 119 Fsupp 2d 327, 337 (S.D. NY 2000). As well shown sufficient claim of deliberate indifference to his 'serious' medical needs against all Defendant(s) and Plaintiff's unconverted documented evidence could be inferred a significant, unexplained delay in providing appropriate diagnoses and prompt treatment. Despite numerous alleged attempts by the plaintiff to obtain medical assistance, ultimately rendering correction of his obvious facial deformity impossible, as well allegations which indicate that plaintiff's injuries and need for diagnoses and prompt treatment were obvious to other physicians month[s], "year[s]" after they

initially occurred, <u>Higgs -vs- Fla. DOC</u>, 647 So2d 962 (Fla 1st DCA 1994) reh'g den. (Jan 26, 1995) and <u>Higgs -vs- Fla DOC</u>, 654 So2d 624 (1st DCA 1995) (citing 11th cir case law). Plaintiff need not prove he was completely denied medical care, <u>Lopez -vs- Smith</u>, 203 F3d 1122, 1133 (9th cir 2000); <u>Ortiz -vs- City of Imperial</u>, 884 F2d 1312, 1314 (9th cir 1989). Rather plaintiff can show deliberate indifference by showing the defendant's intentionally interfered with his medical treatment, <u>Estelle</u>, 97 S.ct 285 (1976).

12.) Court erred not allowing plaintiff to introduce material concerning history of jail medical neglect while EMSA had contract, <u>Evans -vs- Dugger</u>, 908 F2d 801, 809 (11th cir 1992). The news paper articles under Fed. R. Evid 803 (17) (market reports, commercial publications) are not excluded as are generally relied on by public, therefore not excluded as hearsay as court ruled, <u>U.S. -vs- Philip Morris, Inc</u>, 116 F Supp 2d 131, 154 n.34 (D.DC 2000); <u>Beech Aircraft, Corp -vs- Rainey</u>, 109 S.ct 439, remand 868 F2d 1531 (1988); <u>American Greyhound Racing Inc -vs- Hull</u>, 146 F Supp 2d 1012, 1078, vacated 305 F3rd 1015 (D. Ariz 2001). Public reports are not inadmissible merely because they state conclusions or opinions, as long as conclusions are trustworthy, Fed R. Evid 803 (8) 28 USCA; <u>Beech Aircraft -vs- Rainey</u>. This court may presume that public records are trustworthy, and its the challengers burden to show otherwise, <u>Johnson -vs- City of Pleasonton</u>, 982 F2d 350, 352 (9th cir 1992), Fed R. Evid 803, 28 USCA. To exclude evidence which falls under Rule 803 (c), opponent to do it must make an affirmative showing of [un]trustworthiness, beyond the obvious fact that the declarant is not in court to testify, <u>Bradford Trust Co. -vs- Merrill Lynch Pierce, Fenner, and Smith Inc</u>, 805 F2d 49, 54 (2nd cir 1986) (quoting <u>Kehm -vs- Proctor &</u>

<u>Gamble manufacturing co</u>, 724 F2d 613, 618 (8TH cir 1983); <u>Beech Aircraft corp -vs- Rainey</u>, 109 S.ct at 443 (1988); <u>Appollo fuel oil -vs- U.S.</u>, 73 F supp 2d 254, affirmd. 195 F3d 74 (E.D. NY 1999), Fed. R. Evid 803 (8)(c).

### CONCLUSION

Plaintiff has shown in his summation of procedural facts that occurred during trial proceedings showing he was denied a fair opportunity to marshal facts, present evidence and present needed witnesses. The plaintiff with little he had introduced showed a jury question instead of court making determinations on evidence, witnesses, ect. wherefore, plaintiff requests a new trial on all issues and defendant(s) and/or new trial on defendant(s) court deems appropriate.

SO PRAYS

### CERTIFICATE OF SERVICE
### OATH

I Hereby certify matters contained herein are true and correct under pains of perjury and copy given to prison officials to mail by U.S. mail this <u>10TH</u> day of <u>August 2004</u> and mailed to: Mr. Richard Woulfe, esq for EMSA defendants.

<u>William M. Hicks</u>
William M. Hicks
DC # 664670 Dorm I
Room 2109U
South Fla Recpt center
14000 NW 41 street
Miami, Fla 33178