UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 00-6087-CIV-DIMITROULEAS

WILLIAM M. HICKS,

Magistrate Judge White

    Plaintiff,

v.

DR. W.C. DAVIS, DR. UECKER,
DR. TREVOR WEATHERS, DR. CLINE,
DR. PEARSON, DR. G. PEARSON and
EMSA LIMITED PARTNERSHIP,

    Defendants.



## DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 59 and 60 MOTIONS

Defendants DR. W.C. DAVIS, DR. UECKER, DR. TREVOR WEATHERS, DR. CLINE, DR. PEARSON, DR. G. PEARSON and EMSA LIMITED PARTNERSHIP, pursuant to rule 7.1, Local Rules of the United States District Court for the Southern District of Florida, file this Response to Plaintiff's Rule 59 and 60 Motions as follows:

### I.  Background

William Hicks is a state-incarcerated inmate, sentenced to life without parole by Judge Cohn in Broward County. He is serving his sentence in the Lake Correctional Institution. Although this case has taken an unusual course, including an appeal and partial affirmance of a prior grant of summary judgment, the essential allegations may be summarized.

According to the operative Complaint, Hicks was housed in the Broward County Jail as a

pretrial detainee on April 7, 1996[1] when he was attacked by a fellow inmate [Complaint ¶ 8]. Hicks was taken immediately for medical attention, and was treated for his injuries (Complaint ¶¶ 18-24). At that time, Hicks was seen by nursing staff and Defendant Cline, and an x-ray was taken. Cline told Hicks there was no fracture, but, according to Hicks, Cline would not show him the x-ray (Complaint ¶¶ 22-24).

Three days later, Hicks was transferred to another Broward County Jail, and was denied requested medical attention (Complaint ¶ 34). In fact, Hicks claims he was denied medical attention for the remainder of his detention, even though surgery was "suggested" by Defendant Uecker (Complaint ¶¶ 35-42).

A.   **The Medical Records**[2]

The medical records in this case tell a completely different story. Hicks entered the jail in August 1995, and most of his early contacts with medical personnel occurred with respect to mental and addiction problems. He was on suicide watch for most of this month. Hicks self-reported a long history of alcohol and crack addiction, and numerous psychiatric interventions for a number of problems. Over the course of the next seven months, Hicks was seen nearly daily for various health complaints.

On February 9, 1996, Hicks was involved in a fight with another inmate, and Defendant Davis treated Hicks following the altercation. An x-ray was taken and read by Miguel A. Tome, M.D., which suggested a fracture of the left jaw. Dr. Tome suggested that the x-ray finding be confirmed by examination. Dr. Davis noted a laceration to the right zygomatic arch, which is just below the eye,

---

[1] The date is incorrect. According to records, the altercation occurred on February 9, 1996.

and the laceration was sutured closed.

The sutures were removed on February 15, after Hicks was transferred to the Broward Main Jail. Dr. Davis ordered additional x-rays, which Dr. Tome read, finding a non-displaced fracture of the right zygomatic arch with no abnormalities of the left jaw. Hicks was prescribed Tylenol III, four times daily for one week, for pain. Two days later, Hicks complained of nausea, but missed his follow up appointment with the physician on February 19. Dr. Davis referred him to the EMSA optometrist, who examined him on February 20, finding his eyesight 20/20 in both eyes. Hicks was prescribed antibiotics, Darvocet was replaced with Tylenol 3, and he was referred to dental for follow up.

On February 21, Hicks was seen by Defendant Weathers, an oral and maxillofacial surgeon. Dr. Weathers found no swelling, normal eye movement, no deformity of the facial bones, normal pupillary reaction and no double vision. He ordered additional x-rays of the jaw, apparently to confirm or rule out Hicks' complaints. He also ordered Motrin, 600 mg. three times a day for two weeks, a soft diet and a dental follow up. Dr. Tome read the ordered x-rays the same day. Importantly, he found <u>no fracture, dislocation or other bony abnormality of the jaw</u>. The same day, Dr. Davis reviewed the x-rays and Dr. Tome's report. Dr. Davis noted the non-displaced fracture of the right zygomatic arch which was pointed out in the earlier x-ray on February 15, 1996.

Over the course of the next two weeks, Hicks complained of nausea from the Motrin, that he had a broken jaw and required additional pillows, and that three weeks had passed since Dr. Weathers ordered a dental follow up. Each complaint was addressed: he was given extra pillows, Tylenol and Flexeril replaced Motrin, and he was evaluated by Defendant Uecker on March 4.

Because Hicks continued to complain of pain and seek prescription painkillers despite numerous interactions with medical staff, Defendant Cline ordered a repeat facial x-ray on March 15.

3
BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A.   PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340  954·761·8600

The x-rays were taken and read by James R. Thompson, M.D. the same day, and confirmed the abnormality was only the right zygomatic arch fracture. Hicks was seen by dental staff on March 22, and a soft diet was ordered by Defendant Sharon Pearson, D.D.S.

Hicks was seen on March 27 by oral surgeon Weathers, who reviewed the latest x-rays, found them unremarkable, noted an improvement in Hicks' jaw opening, and Hicks' statement that he was under stress and had been clenching his teeth. Flexeril was continued, and Weathers planned a follow up in four weeks.

Over the ensuing month, Hicks wrote several grievances, alleging that the medical staff was unresponsive to his condition and threatening suit. Aside from regular visits with medical staff, he was seen by Defendant Uecker on April 22, Psychiatrist Mel Limia, M.D. on April 30, and Defendant Cline on May 3. Dr. Uecker referred Hicks to Dr. Weathers. Dr Cline ordered another facial x-ray to rule out displacement of the zygomatic arch fracture, which showed no change. Dr. Weathers saw Hicks on May 8, reviewed the x-rays ordered by Dr. Cline, and confirmed the fracture was not displaced. Four sets of x-rays were done to evaluate and monitor Hicks' condition to make sure it was properly healing and remained in proper alignment.

Hicks continued to complain of pain and seek prescription painkillers intermittently throughout May, and was seen by Dr. Uecker on May 24. Dr. Uecker continued Midrin, Flexeril and Motrin, 800 mg, for thirty days. Approximately three weeks later, or as these orders were about to expire, Hicks again began to complain of pain and insisted he had a broken jaw, which is unsupported by the records. He was seen on numerous occasions by medical staff, who found no swelling and no acute distress.

On June 20, he was seen by Dr. Davis on complaints of pain and for renewal of medications. Dr. Davis examined Hicks, found him in no distress, and referred him to the clinic as needed.

BUNNELL WOULFE KIRSCHBAUM KELLER McINTYRE & GREGOIRE P.A. PO DRAWER 030340 FORT LAUDERDALE FL 33303-0340 954-761-8600

He continued to complain of pain and seek narcotic medications throughout July, he was seen by medical staff, and medications were renewed by Dr. Davis on July 22. Although the records do not indicate complaints by Hicks in August, he was seen regularly, and additional x-rays were ordered on August 16, and which were read as negative on August 21.

On November 2, 1996, Hicks was sent to oral and maxillofacial surgeons Charles B. Russo DMD, and Jeffrey Elliot, DMD, whose offices are in Coral Springs. Drs. Russo and Elliot have no affiliation with the Defendants. A CT scan was performed on November 27, with the following findings:

> 33 y/o male presents with CC: persistent pain in his "TMJ." Patient was in his usual state of health when he allegedly was involved in an interpersonal violence on 02/07/96. He was evaluated by "some M.D.'s" and told that he had fractures. These fractures were allegedly not treated.
>
> Examination - Alert and oriented x 3. Cranial nerves II-VII grossly intact. Positive paresthesia right infraorbital nerve. No other facial paresthesia noted. Interincisal opening 38 mm, with slight deviation to the right. No clicking, popping, crepitus noted in either right or left TMJs. Left and right lateral excursions were unrestricted to 10 mm. Protrusive was noted to be 8 mm. <u>The mandible is grossly intact without stepping, segmental mobility or tenderness</u>. No gross entrapment of right coronoid process. No pain on loading TMJs. No pain on palpation of TMJs. Maxilla is non-mobile. Positive stepping with some tenderness right lateral wall of maxilla (maxillary sinus). Stepping noted right zygomatic arch. Infraorbital rims are continuous without tenderness. Patient is partially edentulous without gross dental pathology.
>
> Radiographs: CT exam is remarkable for small break in the right posterolateral wall of the maxillary sinus. There is no fluid accumulation or gross thickening of either the right or left sinus membranes. The condyles appear normal. <u>A panoramic radiograph also suggests no old or new fractures of the mandible</u>.
>
> Impression: 33 y/o male S/P trauma with residual defect maxillary sinus. <u>There is no evidence of TMJ pathology at this time</u>. Patient's limited opening and complaint of discomfort may be due to scar tissue from original injury. Nonsurgical physical therapy may help.
>
> [Emphasis added].

Hicks was not seen again until July 1997, and his records indicate he spent the intervening period in the Florida State Hospital. Over the remaining year of his detention, Hicks' complaints were largely limited to psychiatric problems and continued demands for narcotic medications. Pertinent to this discussion, his diagnoses included drug seeking behavior, manipulative behavior, delusions, and paranoia regarding mistreatment during his earlier Broward detention and his stay at the Florida State Hospital. His only significant medical complaint concerned an alleged broken nose suffered in the February 1996 altercation. This complaint was not confirmed on an October 7, 1997 x-ray.

### C.  Summary Judgment and Trial

These Defendants moved for summary judgment [D.E. 117], arguing that a deliberate indifference claim was not supported by the record. Magistrate Sorrentino recommended that summary judgment be denied on this claim [D.E.141], these Defendants filed objections [D.E. 142], and the Court sustained the objections and granted summary judgment on all claims [D.E. 154]. Hicks appealed, and the eleventh circuit reversed as to these Defendants, finding a question of fact as to the need for surgery [D.E. 166]. A subsequent summary judgment motion was denied by the Court.

The case proceeded to trial. In an unusual turn, the Defendants' case came in with the Plaintiff's, as all defense witnesses were called by the Plaintiff. On the sixth day of trial and after Hicks rested, the Defendants argued that no evidence was presented regarding the primary issue presented in the Complaint: that Hicks suffered a broken jaw that required surgical repair. The Court agreed, and granted directed verdict in open court.

Hicks now files his post trial motions, arguing that the Court denied him a fair trial by refusing to allow his medical file into evidence, instead forcing him to rely on the Defendants'

records; the Court impermissibly made credibility determinations in granting directed verdict; the Court did not allow a thorough examination of Defendant Uecker; the Court disallowed the testimony of Hicks' expert; the Court improperly shortened trial from the two weeks originally planned; the defense attorneys did not inform Hicks that Defendant Davis would not attend trial until trial was half over; and the Court improperly disallowed the introduction of newspaper articles regarding conditions in the Broward County Jail.

For the reasons that follow, the Motions should be denied.

## II.   Argument

Hicks seeks a new trial based on the foregoing alleged errors. However, his memory of the events at trial is faulty. Hicks was not forced to rely on the Defendants medical records, but agreed to their entry into evidence instead of trying to sort through various boxes of loose paper which he brought to trial. Additionally, and contrary to his assertions here, he did not object to the entry of the Defendants' copy of the records. Since he agreed to introduction, he can hardly complain that introduction was improper.

Hicks next claims that the Court improperly made credibility determinations in granting directed verdict. Again, this was not the case. The Court read from the appellate decision, and with each issue which that court found triable, asked Hicks to point to trial evidence supporting his case. In particular, the Court asked what testimony supported his claim of a fractured jaw and the need for surgery. Hicks could point to no trial evidence of this central issue. Fact, not credibility, was the only determination made by the Court.

The claim that Hicks was disallowed from a thorough examination of Dr. Uecker is equally incorrect. Dr. Uecker spent two days at trial, and Hicks was aware that surgical commitments diminished his availability. Hicks did not subpoena Dr. Uecker, and did not call him as a witness

7

when he was sitting in court. In fact, when Hicks did examine Dr. Uecker, he did not bother to ask the seminal question to his case: whether Dr. Uecker ordered surgery for the claimed fractured jaw. Again, Hicks should not complain that he had insufficient time to examine this witness, especially since Hicks seemed almost reluctant to question him.

The Court did not disallow testimony by Hicks' expert. The fact is, Hicks did not disclose an expert before trial, and trial was well underway when he stated his intent to call an expert. Although the Defendants objected to this late notice, the Court did not rule on the issue, but instead chose to defer argument until the expert was called. He never was called. As such, the Court had no hand in Hicks' failure to present this witness, and Hicks' argument must fail.

Hicks claims trial was scheduled to last two weeks, but he confuses the length of trial with the Court's calendar. This case was placed on a two week docket. It was not set as a two week trial. Furthermore, Hicks called all witnesses he had available over the course of six days.

As for Dr. Davis and his unavailability at trial, Hicks knew this Defendant would not appear, not in the middle of trial as Hicks claims, but on the first day of trial, as the statement was made in opening argument. Again, Hicks has the facts wrong.

On one fact, Hicks is correct, the Court did disallow the introduction of newspaper articles. However, newspaper articles are rank hearsay, and inadmissible when introduced to prove the matter asserted. *See* Fed.R.Evid. 801. Since Hicks sought introduction to show the conditions of the Broward County Jail, this evidence was clearly inadmissible.

### III. Conclusion

For the foregoing reasons, the post trial Motions must be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was mailed this 30th day of August, 2004 to Williams M. Hicks, *pro se Plaintiff*, #664670, Lake Correctional Institution, 19225 US Highway 27, Clermont, Florida 34711-9025.

BUNNELL, WOULFE, KIRSCHBAUM,
KELLER, McINTYRE & GREGOIRE, P.A.
Attorneys for Defendants
One Financial Plaza, # 900
100 S.E. 3rd Avenue
Ft. Lauderdale, FL 33394
Tel: 954-761-8600
Fax: 954-463-6643

BY: _____
RICHARD T. WOULFE
Florida Bar No.: 222313
GREGG A. TOOMEY
Florida Bar No.: 159689

Richard T. Woulfe, Esquire/Gregg A. Toomey, Esquire/Attorneys for Defendants EMSA, Uecker, Cline, Davis, Weathers, G. Pearson and S. Pearson/Facsimile: 954-463-6643
William H. Hicks, /pro se Plaintiff/Facsimile not available