UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6087-CIV-Dim
MAGISTRATE JUDGE. P. A. WHITE

William M. HICKS,
        Plaintiff, PROSE,
    —vs—
EMSA, et al, DR. W.C. Davis,
DR. HECKER, DR. Trevor Weathers,
DR. J. Cline, DR. G. Pearson,
DR. S. Pearson,
        DEFENDANT[S]



REC'D ___ D.C.
APPEALS
DEC 9 6 2004

_PLAINTIFF'S MOTION TO PROCEED IN FORMA_
_PAUPERIS FOR APPEAL AND TRANSCRIPT'S_
_OF TRIAL AT GOVERNMENT EXPENSE_
            ATTACHED EXHIBITS 1—42

_COMES NOW, William M. Hicks, prose,_ pursuant to Fed. R. civ. P.
Rule 6, and Federal Rules Appellate procedure (FRAP), Rule
24 (a)(3), 24-2, and 31-1(c), requesting permission to remain
in forma pauperis (IFP), or grant IFP for appeal and
obtain at Governments expense trial transcripts, 28 USCA
§753(F). And would state reasons why should be granted
as follows:

(1.) Plaintiff (HICKS) Filed a timely Rule 59 and 60(b) motion
after court GRANTED defendant's oral SO motion at trial, which
court denied Hicks relief on November 4, 2004, thereby extending

(30) day window inwhich to File, Fed. R. APP. P. Rule 4(a) 4(A), Advanced Estimating System, Inc, -vs- Riney, 77 F3d 1322, 1323 (11 cir 1996).

(2.) In year 2000, Hicks initiated his §1983 civil rights suit which court GRANTED IFP status and is requesting same herein, F.R.A.P. Rule 24(a)(3), Neitzke -vs- williams, 109 Sict 1827, 1831 (1989); Adkins -vs- E.I. Dupont denemours & co, 69 Sict 85 (1948).

(3.) Now in an unusual turn of events where this case has been reversed and remanded inpart once by 11TH cir court's of Appeals, and now Hicks is appealing an adverse ruling dismissing his §1983 complaint that gone before a jury trial. The motion at hand presents an outline of facts taken from trial proceedings showing prejudice and error which is not frivolous to allow an appeal to be dismissed, Desantis -vs- united technologies corp, 15 F supp 2d 1285 (m.D. Fla. 1998); Anders -vs- california, 87 Sict 1396, 1400 (1967); Battle -vs- central state Hospital, 898 F2d 126 (11 cir 1990); 28 usc §1915.

(4.) Hicks is requesting this Honorable court to grant and issue an order for transcripts of trial proceeding[S] as civil case or appeal is NOT frivolous and transcript's are needed to decide the issues presented for appellate review, Fed. R. civ. P., 28 usc §753 (f), and requesting appointment of counsel for all appellate proceedings to be had, §1915 (d), Rowland -vs- california mens colony, 113 Sict 716, 719 (1993). Hicks civil case is not a case inwhich he had counsel during trial, but it did, this court could still grant request, Stanley -vs- Henderson, 590 F2d 752, 753 (8TH cir 1979), Hicks does not seek actual court file, Hansen -vs- us, 956 F2d 245, 248 n.10 (11 cir 1992), nor a situation where Hicks submits an inadequate motion, citing

to factual events, But does show court's denial order[s] and conclusions of its factual findings are in question, <u>Garner -vs-Johnson</u>, 12 Fed APPx 862 (10TH cir 2001). Hicks puts forth and trys to convey to court, actual events that took place during trial in summation format, to allow court to review the merits and show the necesity for trial transcript's so proper appellate review could be had and motion is filed in good faith and is not frivolous, <u>Nolt -vs-Strausser</u>, 761 Fsupp 18, 19, 20, (E.D. PA 1990); <u>Harvey -vs-Andrist</u>, 754 F2d 569 (5TH cir 1985).

(5.) The present motion raises substantial questions for appellate review for purposes of 28 USCA §753 (F), for trial transcript's as the following issue brought out in motion show prejudicial error's, and inconclusive factual findings, justifying copies of trial transcript's at Governments expense, <u>Handley -vs-union carbide corp.</u> 622 Fsupp 1065 (S.D.W.va 1985), and pursuant to 28 USCA §1915, <u>Doe -vs-pryor</u>, 61 Fsupp 2d 1235 (m.D. Ala 1999).


## <u>COURT'S FACTUAL FINDINGS ARE ERROR</u>

(6)
Defendant's oral Rule 50 motion presented in open court did not specify the law and facts on which moving party is entitled to judgment as matter of law, Rule 50 (a)(2). Also oral motion failed to inform, Hicks of deficiencies in its proof by identifying the dispositive fact.

It's clear defendant's attempted to convey to the court, which transcript's would clearly show defense counsel's went out on a tangent, which at one point argued Hon. sorrentino's recommendations [BEFORE APPEAL REVERSAL] which shows defendant's were not prepared or knew what they was

arguing, because court interjected "Are you sure you want to argue sorrentino's report, because she recommended 'ALL' should go to trial". Defendant's continued to over reach their ethical obligations (counsel's) by verbally attacking Hicks to overcome their position, which said attacks had no bearing on subject before court. These same types of attacks were also place before court in their pleadings prior to trial. Defendant's lacked merit in their arguments as well failed to provide case law bearing on their position. It's clearly shown in record, defendant's used boiler plate arguments of misconstrued facts to over come and misled court into believing they had carefully and thoroughly thought out their planned oral R.50 motion.

(7) Even though court knew defendant's lacked merit, the court attempted to further their arguments which is clear error, as well defendant's never put forth an actual motion to refer to. Thus, transcripts are needed.

(8.) The court now is cross-examining Hicks, which at this point he was thoroughly confused because defendant's never presented a motion or present a clear concise argument. court was made fully aware prior to trial Hicks never done a civil trial and being PROSE. Hicks also alerted court during trial he was manifesting serious physical, mental and obvious emotional side effects due to being abruptly taken off his prescribed psychotropic medication at (S.F.R.C.) south Fla. Recept. center (DOC) while housed and transported to and from trial. court was aware also of extreme pain in Hicks abdomen and blood in stool and how it effected his attempted performance, which effected his thoughts and ability to remember as shown while on direct or cross-exam of witnesses while standing at podium, leaning and grunting from pain. This caused serious inability to think as

mind was clouded, or function as well remember appro-
priately to thourghly ask focal point questions or ability
to properly respond.

(9.) This court was asked several times during course of
trial to take recesses which court granted and dismissed
jurors for brief break. Eventually, court denied requests.
Hicks at one point had to request permission to sit at
plaintiff's table in order he may resume questioning of
witnesses, This also effected lower back. All this ocur-
red because Doc abruptly denied and/or stopped psy-
chotropic medications which caused serious side effects
and withdrawl from them. Doc would not even provide
prescribed pain medication's Hicks lives on for his now
permanent, cronic injuries which furthered to cloud up
Hicks Head from already 24 hour headaches.

(10.) court's August 4, 2004, order granting defendant's Rule 50
motion is a blanket order as it does not convey any illus-
strative facts or material issues that clearly and concisely
support defendant's oral motion. Thus, courts order is in
question as to its factual determinations finding Hicks only
incurred "A FRACTURED CHEEK BONE", recieved appropriate
care, no evidence of wanton infliction of pain, no indication
'any' defendant's were aware, no sufficient evidentiary
basis to support claims of deliberate indifference. But
court clearly notes Hicks voluminous medical records, then
states those records weigh against his allegation of delib-
erate indifference. This is quite contrary to all prior proceed-
ings to wit: pleadings, motions for summary judgment with
Exhibits, Hicks Rule 59 and 60(b) motion, ect.

(11.) Defendant's August 30, 2004, Response to R. 59 and 60(b),
provides no defense to support court's rulings and which

is contrary to court's factual findings. See Defendant's response dated Aug 30, 2004, P92, FX (L) jaw, provides pain medications)., pg3, FX (R) zygomatic arch. Testimony in trial shown EmsA did not have optometrist on staff., P93, is in conflict as DR. Tomes, radiologist report on page two showed FX (L) jaw., P93, non-displaced fx of (R) zygomatic arch., P94, abnormality (R) zygomatic arch FX., P95, Defendants added to street oral surgeon report: slight deviation of jaw to the right. ⊕ stepping with tenderness (R) lateral wall of maxilla sinus. stepping noted (R) zygomatic arch. FX in sinus, limited opening of jaw .......... Defendant's in their response try to relitigate summary judgment before trial which Hicks clearly refuted based on fact, record and Exhibits], Hicks travrse reply dated September 16, 2004, supports this.

(12.) court's final appealable order dated November 4, 2004, denying R.59 and 60 (b) motion is once again in question as to court's factual determinations and shown to be in error by Hicks objections dated November 15, 2004.

(13.) The court on August 2, 2004, after hearing oral rule 50 motion, made it seem to "appear" court was being unbiased by interjecting 'I may, or may not, grant R.50 motion' and put off proceedings till next day (8-3-04). Thus, ending proceedings. The prejudicial errors that may have occurred are in question as court moved Hicks from courtroom, taking him to downstairs holding cells, rather than allowing Hicks to remain in courtroom to hear what was said when court recalled juror's back, because it is unknown to Hicks at present time, if court dismissed juror's asking them to hand in their badges to bailiff, or asked them to return next day for further proceedings (?) to be had, since Hicks was PROSE.

Since Hicks was not present and was not allowed' back in the courtroom, and does not know what went on - he 'could not object' to any communications being had by defendants to the court, ect.. Thus may lead to show prejudiciality. The court before any conclusion of R. 50 motion in court did ask if Hicks could afford transcripts, no response.

(14.) After oral R. 50 motion was concluded, court began asking a series of questions apparently attempting to sure up defendant's, inarticulate, disjointed motion, by questioning Hicks, asking him to pinpoint "where in files and evidence can he show fx jaw or injuries, ect", The court was fully aware it had ALL evidence disallowed from record, except EXHIBITS 1-42 in file, when Hicks showed court previously during trial byway of witnesses, Defendant(s) and their expert testimony, that defendant's EMSA and Doc. Files were not true and correct. After court had blindly allowed defendant's unauthenticated said incomplete records into evidence on stipulated agreement that Hicks would allowed to introduce all his "BENDED" EMSA files at the end of case in chief, due to so numerous defendants, at which time tried and defendants objected to placement of files into record. Court GRANTED this, then Hicks subsequently objected to defendant's EMSA and Doc. records, based upon showing defendants files were incomplete. Court sustained objection, stating on record that "Hicks is correct", thus leaving virtually no such evidence in the record [except Hicks Exhibits 1-42] to which Hicks could refer, to enable him to show that which the court was asking Hicks to show. Therefore, leaving Hicks thoroughly confused on how to proceed due to this catch-22 conundrum. ( Hicks reiterates he was suffering severe physical and mental side effects due to withdrawl symptoms incurred

by Dcc's sudden refusal of psychotropic medication).
moreover, Hicks reiterates that Exhibits 1-5 of ms. Barbra
Hanson-Evans, BSc-HSA, who testified and read them into
record reporting fractured jaw, cmF surgery ordered, ect;
Exhibits 9-25 of EMSA and BSo files, ect, all were amongst
the evidence which went mysteriously "'missing"' from
the 'court's clerk's' file during course of trial. Hicks had
discovered in course of direct and re-examination of witness-
es Exhibits 1-5 was missing. This ominous fact was noted
by judge " when he took possession of Exhibits in file and
admitted on record Exhibits 1-5 were in fact missing from
court's file". Exhibits 9-25 were noticed as also missing upon
clerk returning all remaining Exhibits back to Hicks. Herein
is a listing of all exhibits that did remain in court's file
and were not objected to by defendant's : EX6, (6-27-96) BSo
request to medical; EX8, (8-3-96) BSo medical grievance ; EX26,
(9-29-95 thru 9-27-96) Dental record listing DR. cline, DR. s. pearson,
DR.G.pearson, listing Fx's, (R) temple swelling, limitted opening
of mouth, ect; EX27, (1-8-96 thru 3-29-96) physician's orders
showing (R) zmc FX, (R) TMJ syndrome, ordering cmF surgery
DR. wecker, m.D.; EX28, (5-8-96 thru 5-22-96) EmSA progress notes,
weathers refusal of surgery ; EX29, (3-28-96 thru 3-4-96) EmSA
physicians orders, lists soft diet, pain meds, x-rays, (R) facial
Fx's zygomatic ; EX30, (9-29-95) EmSA medication log shows
DR. cline, DDS treating Hicks; EX31, (2-21-96) EmSA soft diet
order form DR weathers; EX32, (5-8-96 thru 5-22-96) EmSA prog-
ress notes DR. weathers ; EX32, (3-19-04) DR. s. pearson response
to admissions; EX33, (A) (3-22-96) s. pearson diet order, (B) (9-29-
95 thru 3-20-96) EmSA dental log, which is a incomplete log, con-
tradicts EX26., (c) (8-21-97) EmSA medication log; EX34, (3-27-
96 thru 4-15-96) EmSA progress notes DR. weathers; EX34, EmSA
orientation for access to medical health care & BSo inmate hand-
books 1995 and 1997; EX35, (3-21-96 thru 3-4-96) EmSA progress
notes by DR. weathers and DR. wecker, reporting Fx's and ↓ mouth

opening; EX 35, (2-9-96) nurses assessment on day of assault and battery Feb 9, 1996, EMSA intrasystem transfer summary suture removal; EX 36, (2-21-96) EMSA progress notes weathers; EX 36, Dr. charlse Russo, oral surgeon (street) file, authorization for release of EMSA records to Russo dated 2-14-96 & 2-17-97, and EMSA/BSO transportation order 11-2-96 with special instructions "EMERGENCY-FRACTURED JAW", consultation form R10 TMJ Disfunction, specialty requested 'oral surgery' (12-9-96), and 10-21-96 (R) zygomatic FX with possible TMJ impingement. court denied entry of entire file of DR. Russo; EX 37, (2/96) EMSA medication log weathers; EX 37, [ENTIRE RADIOLOGIST(S) REPORTS] Ⓐ (2-9-96) FX (L) mandible ramus, Ⓑ (2-19-96) (R) eye injury, FX (R) zygomatic arch, Ⓒ (2-21-96) mandible normal, Ⓓ (3-29-96) FX posterior portion of zygomatic arch; Ⓔ (5-3-96) Healed fx (R) zygomatic arch, Ⓕ (4-12-00) MRI is totally inadequate reading (DOC); Ⓖ (8-21-96) facial bones and mandible study is technically - somewhat limited (redo them), Ⓗ (11-27-96) FX nose, multiple lateral wall maxillary sinus; Ⓘ (10-7-97) nasal bones negative exam, Ⓙ (8-14-98) DOC consultation request, physical findings limited opening of mouth; Ⓚ (10-20-98) Deep bite, TMJ, click Ⓐ mid-opening and pain on loading, myofacial pain (R) & Ⓛ Diagnosis, myo-Facial pain disorder (Ⓜ.Ⓕ.Ⓟ.Ⓓ)}; (L) (12-31-98) x-ray skull (tomoka corr ENST untrue) normal; Ⓜ (10-29-98) skull series; Ⓝ (1-28-99) facial bones, mandible (R) & (L) normal; Ⓞ (3-29-00) DOC consultation request findings limited opening of mouth, deep bite, Dentist notes chronic MFD (non-compliant); Ⓟ (4-12-00) DOC x-ray, facial bones, orbits, mandible normal; Ⓠ (4-12-00) MRI neg exam of (R) tempter joint; Ⓡ (4-12-00) facial bones normal; Ⓢ (10-25-01) facial bones normal; Ⓣ (10-14-03) DOC CT scan, facial TMJ, normal CT scan facial bone; Ⓤ (10-28-03) cevical spine degeneration at C-5-6 and small interior spur, mild C-5-6 spondyolosis; Ⓥ (5-9-03) Temporal andibular joints mild limitation of mobility on open/close;

[W] (8-12-02) cervical spine x-ray, Hypertropich spur formation C5-C6, C-7 not seen, Degenerative changes C-5-C6; EX 38, DR. Davis, M.D. file neatly binded / broken down, showing EMSA requests, BSO grievance's, progress notes, physician orders, medication logs, ect; EX 38, (3-28-96) EMSA medication log DR. Weathers; EX 39, (2-21-96 thru 2-9-96) EMSA physician orders, x-rays, suture removal, medications and mandible; EX 39, (10-18-96) BSO (DR) Displinary Report written By DR. Davis with attachments requests and grievances; EX 40, (12-25-96) EMSA medical request to review x-rays; EX 41, (1-6-97) EMSA medical request to see medical director; EX 42; [A] (7-12-01 thru 7-30-01) DOC health care notes reveeling problems with jaw & TMJ; [B] (7-12-01 thru 7-12-01) DOC health care notes reporting problem with jaw, face, zygomatic arch and sinus, [C] (3-29-00) DOC request nurse pulaski, no FX's found on x-ray, diagnosed with M.F.P.D.; [D] (3-14-98) DOC Dental treatment record, limited opening of mouth. (1) click-mid opening, Deviation, Pain on loading, deep bite, M.P.D.; [E] (11-2-99 thru 11-9-98) DOC outpatient health care diagnesed with M.P.D. by oral Surgeon, seen DR. Houlett. Diet soft & pain medication; [F] (11-2-98) DOC diet passes; [G] (6-20-00) DOC slow eating pass

(15) Furthermore, while court reviewed the few Exhibits that were NOT removed by objection, during oral rule 50 motion, said evidence Exhibits 6, 8, 26-42, showed by convincing evidence plaintiff did sustain FX mandible, fracture's to (L) & (R) side of face, collapsed sinus due to FX, 1c neck injuries, eye injury, ect. Thus, the court's ruling favorably for defendant's Rule 50 motion was prejudicial error, and the transcript's sought would enable proper appellate review.

## PRIOR TO TRIAL AT LAKE CORR INST

(16.) Hon. P. A. WHITE, magistrate issued an order [DE 238] June 9, 2004, upon Lake C.I, (L.C.I.) wardens, Librarian, ect, ordering them not to obstruct anymore coping services as Hicks shown court he tried to make copies of summary judgment motion response with Exhibits consisting of 2,352 pages [ was moving for summary judgment myself ] which were copied, and then next day "' shredded "' all copies made ..... Even with this court's order, all copying services were still denied by regional librarian asserting attorney's don't get copies (Defendant's) which could not provide to wit: objections to defendant's amended motion to be excused from portion of trial/And motion to reset entire trial docket; Plaintiff's motion to present experts prior to trial; plaintiff's supplemental witness and Exhibit lists, ect,. Plaintiff (Hicks) was eventually on the evening before summary judgment deadline on may 27, 2004, make reduced copies of motion = 11 pages and Exhibits = 380, total 408 pages by verbal order of assist. warden mr. Holmes. But not without conflict from then L.C.I. Librarian [ who happened to get fired right after for supposibly having sex with inmate she ordered to shred copies].. But still regional director over Library denied copies and was not able to further prepare for trial or copies for defendants and court. This is shown by court's omnibus order [DE 260] July 8, 2004, referring to magistrate for contempt of court motion [DE 251] (which nothing came about thus far).

(17.) now some of Hicks original) EMSA documents of DR S. pearson, DR. G. pearson, DR. Hecker, ect were shredded...... This left Hicks to try and present all motion(s); pleadings, evidence problems, ect, at calendar call on July 8-2004, at which time

court committed serious prejudicial error by keeping Hicks bound in handcuffs and leg shackles [put on record], thus stopping him and constraining access to legal work and files kept in one of four boxes of evidence which Hicks clearly on face of record, objected, and requested appointment of counsel after Hicks raised his hands showing handcuffed and court denied request and never removed either constraints.

(18.) Also prior to trial still at L.C.I. Hicks 'had' private counsel through miami volunteer project which paid DOC for four volumes of medical records and reviewed case. Hicks on inmate DOC phone, will show an odd turn of events as he spoke to sister who tried helping [she Kathleen Hicks testified to this on 7-19-04 about attorney] and then next day called Hicks father, but told him name of attorney over phone, then now 3rd day Hicks was called to classification for an unknown telephonic hearing with miami project who advised attorney had conflict now? This was the second attorney to do this.........

## PROCEEDINGS HAD AT TRIAL

In early midst of trial Hicks tried to introduce evidence, but was being denied by court, where at such time Hicks voiced his objections, and stated, "The plaintiff must be allowed to place evidence in trial at some point!". [Hicks bowed his head at podium as court dismissed juror's] which at such time court started only to accept documents into evidence. These only coming to be Exhibits 1-42, previously referred to. The court still denied Hicks to put forth but not limited to, actual copies of BSO assault reports filed and prepared

by BSO deputy's present in reck yard, Feb 9, 1996, showing Hicks was not the attacker, but rather, the attacked, which Hicks did read into record some portions. court denied introduction of medical licensing complaint's against DR. DAVIS, DR. CLINE and DR. ROME, M.D. radiologists, which would have shown motive and pattern of past and present behavior as opposed to showing of bad character. SEE summary judgment Exhibits of Hicks response. court denied newspaper articles, showing systematic repeated neglect by EMSA in Broward county jail(s). court denied introduction of Hicks criminal trial judge court orders, ordering BSO and EMSA to provide medical treatment, even though Hicks called his then criminal trial lawyer MR. Jeffrey Harris, esq to testify and authenticate them.

(19.) Now the court in its order(s) granting defendant's oral 50 motion, and in its final order denying Hicks Rule 59 and 60(b) motion has misconstrued the material issues of facts as presented to court. court states Hicks did not "authenticate" his medical, DOC records or box of evidence and court does not have to "BLINDLY" accept them into record. The court is in error as Hicks shown through all defendant(s), their expert and witnesses [ EXCEPT DEF. DR. DAVIS, M.D. who fled ], that his EMSA medical files were in fact true and correct, when at trial he presented his files to each witness showing them their own medical recordings being documented, thus authenticating them asking each person if the documents were in fact EMSA's true and correct files containing their respective original writings, medical stamps, and their own signatures, which each witness answered YES. Hicks furthered his authentication by asking defendant's EXPERT [ who Defendant's presented ] if Hicks medical documents were the same as he had reviewed from EMSA's file, provided to expert from Defense counsel's. All witnesses agreed. Even MS. Barbra Hanson-

Evans, BSO-HSA [current at jail 2004] whom Hicks called and she authenticated records by stating Hicks records were copies from EMSA and BSO files concerning Hicks treatment. [ DEFENDANT'S NEVER CALLED ANYONE TO AUTH-ENTICATE THEIR FILES ] . . . . . . .

(20.) The court denied Hicks his right to a fair trial, as he is prose, which record would clearly reveal the court advising Hicks he must have enough witnesses to last the entire day during course of case in chief, or court may "force him to end his case in chief". But then court on its own accord, without prior notice's to Hicks, took half days off, resched-uled days and extended period of time off over Hicks object-ions, which prejudiced Hicks because he had witnesses scheduled to testify in advance, causing great hardship on witnesses, scheduled to testify and causing an impossible task of last-minute rescheduling of <u>vital</u> witnesses due to Hicks being a prose prisoner. Therefore, logically having no viable means to readily contact his witnesses for re-scheduling. nor could he present his case in chronolog-ical order as the events in BSO custody happened. This was shown by the exclusion of Hicks expert witness who was ready to testify, but couldn't keep up with repeated rescheduling by court, because he had private practice, including surgeries to preform. This expert was paid by fam-ily members and expert even tried by giving an affidavit to support Hicks position, though this document was never allowed to enter record. The court even admitted expert was a vital intricate peice of evidence, because court, knew Hicks was to use expert to present the only known Five x-ray's [according to defendant's] taken of Hicks on Feb 9, 1996, day of assault by DR. Davis, M.D.. Obviously unable to do so because of the above mentioned rescheduling. But Hicks

did prefer to use Def. DR. uecker, m.D. surgeon, since he testified he could read x-rays, had schooling and read them daily in his own private practice. The court denied request stating: "unless he used the x-rays to formulate his own opinion". Hicks shown in trial true facts being DR. uecker did use these x-rays to formulate his opinion, because he himself ordered o.m.f. surgery and Hicks signing EmSA medical release forms to DR. charlse Russo, street oral surgeon on Feb 14, 1996, April 22, 1996 and Feb 17, 1997, based on x-ray findings.

(21.) since Hicks impeached all defendant's [except DR. Davis, m.D, — who Fled] as well impeach their expert, Hicks attempted to reconstruct record that was shown to be incomplete because of omissions, by using all other resources of documentation existing in files. By way of BSO #/mate request(s), grievance(s), EmSA medical requests(s), Dental request(s), mental Health requests(s), physician's order[s], progress notes, and medication log sheets, showing by Doctor, Dentist or EmSA & BSO staff, which diagnoses each pertained to as they seen Hicks and shown dates, but listed documentation were omitted. Hicks also tried, by existing record to show physician orders ordering x-ray[s], but no dental or progress notes or radiologist(s) - reports totaling [Five] shown were missing from files by omission.

(22.) Hicks did show Rule 60(b) violation during course of trial that defendant's had [EmSA] "altered" EmSA dental logs and progress notes, which on one event in trial (8-2-04) Hicks brought to attention of DR.G. person, DDS during direct-exam which one document clearly had defense counsel's law firm fax on it.

court also errered by not allowing Hicks to thoroughly show by documented record evidence, of all his injuries in Files. To include, but not limited to, Fx jaw; Fx (R) temple ; orbital Fx's ; Fx's (L) and (R) side of face; (R) jaw bone sticking out and showing abnormality; nasal Fx's; kneck injuries, back injury, (R) eye injury, ect. By not allowing full exam of DR. uecker, because he needed to be 'else where', other than trial. The record shows DR. uecker became a ""Hostile "" witness and assail Hicks with insults.

(23.) Hicks reiterates that defense counsel's inappropriate actions as officer's of this court, assured Hicks during conversations in open court, tha+ DR. Davis, m.D. would be present to testify at beginning of trial, yet when Hicks arranged with defense counsel's that DR. Davis would be called by Hicks the next day, and when Hicks did call DR. Davis, he was now told in open court " DR. Davis had fled, and did not know if Davis was in state or out of state or his whereabouts," but still assured Hicks that defense still represented him? .............  The court also committed error by personally asking defense counsel MR. R. wouJfe, esq, "If he wanted to argue exhaustion remedy"... This occurred out of the blue while Hicks and MR. wouJfe were sorting through Hicks evidence in his boxes, next to witness stand on table, date 7-22-04. which at such time Hicks 'abruptly replied "NO", it's been defeated already in prior summary judgment before trial!

## CONCLUSION

(24.)
   Hicks summation of trial facts shown he me+ conditions of Rule 50 (1) and (2), as a fair number of facts were not con- tested at trial. And where a conflict exists, the facts

are taken in the light most favorable to Hicks, *Thosteson
-vs-us*, 331 F3d 1294, 1298 (11cir 2003), and the evidence
was not so weighed in favor of defendant's to prevail as a
matter of law, *Thosteson*, 331 F3d at 1298; see also *Bishop
-vs- city of Birmingham police Dept*, 361 F3d 607, 609 (11cir
2004). Hicks Exhibits 1-42, left in court's file, shown jury
questions to string the constitutions bow or unsheath the
sword provided for the redress of such grievances and
shown a substantial conflict in the evidence to submit
case to the jury, since defendants had no evidence in record
at all at this point, *Reeves -vs- city of Jackson*, 532 F2d
491, 494 (5cir 1976); *Abel -vs- Dubberly*, 210 F3d 1334, 1337
(11cir 2000).

(25), Defendant's failed to present proper R 50 motion, which
specifies the [LIaw and Facts] on which their claiming en-
titlement to judgment as matter of law, Fed. R. Civ. P. 50(a)
(2), as they failed to inform Hicks of deficiencies in his
his proof by identifying the dispositive fact and court's
remaining responsibility will be to afford Hicks "an oppor-
tunity to present any available evidence bearing on that
fact" before ruling, which this motion was verbal, *waters
-vs- young*, 100 F3d 1437, 1441 (9th cir 1996); *Francis -vs- clark
Equipment, co*, 993 F2d 545, 553 -56 (6th cir 1993). This was
not completely done as court was aware Hicks prose status
and he was capable of producing evidence necessary to
sustain his claim, but did not unsterstand the time and
place inwhich to do this. Hicks shown this when he advised
court, must be able to introduce evidence in trial, *walters
Id at 1441.

(26.) The court was made aware Hicks was having severe
adverse reactions from denial of psychotropic medication
and withdrawls, pluss never recieving prescribed pain

medication[S] to control 24 hour a day headaches. There-
fore, should have ensured Hicks did not unwittingly fall
victim to procedural requirements that he may, with
some help from court, be able to satisfy, waters Id 1446.
Hicks confusion was apparent by denying introduction
of EMSA file and his exhibits 1-42, gone "missing" from
clerks possession which point to FX's as testified and all
injuries 'known'. This alone was prejudicial error com-
mitted in course of trial, Smith -vs- Transworld Drilling, co,
773 F2d 610, 613 ( 5TH cir 1985). court errered not affording
Hicks a full and complete fair trial which requires both parties
to be fully heard, permitted where ever possible, to marshal
and present evidence relevant to their positions in litigation,
Reeves -vs- Sanderson plumbing products Inc, 120 S.ct 2097
(2000); sedrati -vs- allstate life insurance co, 185 F R D 388
( S.D. Ga, 1993). The court in reviewing evidence," must
draw all reasonable inferences in favor of nonmoving party,
and may not make credibility determinations or weigh
the evidence, cooper -vs- miami-Dade county, 17 Flo L wkly
Fed D906 (11TH cir 2004); Lytle -vs- House hold mfg. Inc, 110
S.ct 1331 (1990); Anderson -vs- liberty lobby Inc, 106 s.ct 2505
(1986); continental ore co, -vs- union carbide & carbon corp,
82 s.ct 1404 (1962). " credibility determinations, the weighing
of the evidence, and drawing of legitimate inferences from
facts are 'jury' functions, not those of judge, liberty lobby,
supra, ; Boeing -vs- shipman, 411 F2d 365, 374-75 ( 5TH cir 1969).


(27.) The court should have given credence to evidence favor-
ing nonmovant, as well "evidence favoring moving party that's
[un] contradicted and [un] impeached, Reeves, 120 s.ct at
2110 (2000). By court denying Hicks complete EMSA file
and excepting defendants, seems to have weighed the
evidence then. Also court's recorded statement, defendant's
should step to plaintiff and settle case, gives credence

to Hicks factual case, even though Hicks was not even done with his case in chief . . . . . .

(28.) Hicks put forth more than a mere scintilla of evidence so that 'reasonable and fair-minded persons in the exercise of impartial judgment, might reach different conclusions, Thosteson, 331 F3d at 1298. As the facts and inferences did not point overwhelmingly in favor of defendant's, to warrant reasonable people to arrive at a contrary verdict, Bishop, 361 F3d at 609; Abel -vs- Dubberly, 210 F3d 1334, 1337 (11 cir 2000).

(29.) The court's interpretation of inferences and presumptions were in error as Deliberate indifference can be "inferred" or "found" from defendant's failure to do his or her job . . . was so likely to result in the violations of Hicks constitutional rights, they were deliberatly indiffent, Hill -vs- Marshall, 962 F2d 1209, 1214 (6TH cir 1992) cert. den. 113 S.ct 2992 (1993). [A] determination of deliberate indifference does not require proof of 'intent' to harm or a detailed inquiry into " the defendant[s] state of mind" . . . [the] facts established they were deliberately indifferent to Hicks serious medical needs which defendant's failed to respond reasonably to known risk, Weeks -vs- Chaboudy, 984 F2d 185, 187 (6TH cir 1993); Farmer -vs- Brennan, 114 S.ct 1982-84 (1994).

(30.) Hicks shown by evidence and defendant's [except DR. DAVIS who-fled] recorded admissions knew, but disregarded prompt treatment at any time between Feb 9, 1996 thru 1988, Taylor -vs- Adams, 221 F3d 1254, 1258 (11TH cir 2000). Hicks did not quarrel with defendant[s], but repeatedly requested needed medical based on Doctor's, grievances, requests admissions pluss radiologist[s] reports, Estelle, 429 us at 107. Hicks gone to great lenghts showing defendant's known of some life threat-

ening injuries, but made personal decision to take an easier but less efficacious course of treatment, <u>mcelligott-v-Foley</u>, 182 F.3d 1248, 1255 (11th cir 1999), as well shown by documented evidence denied from recieving ordered/reccommended surgery(s), treatments, which could be inferred as to 'cost' saving policy on top of DR. cline, DDS statement, denied jaw to be repaired because of costs, <u>Ancata -vs- prison Health service Inc</u>, 769 F2d 700, 704 (11th cir 1985). This is shown by what little evidence Hicks was allowed to enter [Exhibits 1-42] by preponderence of the evidence, and shown alleged facts to be [more] true than not, to shift the burden to defendant's, <u>winship</u>, 90 sct 1068 (1970) (preponderence standard "simply requires the trier of fact" to believe that the existence of a fact is more probable than its non-existence). society does not expect Hicks would have unqualified access to healthcare, as it to violate contemporary standards of decency, <u>Hudson-vs- mcmillian</u>, 112 sct 995 (1992), which Hicks clearly shown he had 'great' bodily injuries from assault and battery on Feb 9, 1896, as well the "' <u>Great Pain Suffered</u> '" from inappropriate medical care, that he <u>still</u> feels till this day from all injuries, thus, sufficient to with stand motion to dismiss, <u>Rivera -vs- board</u>, 119 F supp 327, 337 (S.D, NY 2000). During entire case in chief at trial, Hicks shown all defendant's were aware and participated in some way as well fully aware of obvious facial deformity of (R) jaw bone sticking out, which now making correction impossible. Since all knew from Feb 9, 1996, and month[s] to year[s] after it initially occurred while in BSO custody from 1995-1998, <u>Higgs -vs- DOC</u>, 647 so2d 962 (Fla 1st DCA 1994) reh'g den. (Jan 26, 1995); <u>Higgs -vs- DOC</u>, 654 so2d 624 (1st DCA 1995) (citing 11th cir law). Thus Hicks did not need to prove he was completely denied medical, <u>lopez -vs-smith</u>, 203 F3d 1122, 1133 (9th cir 2000);

Ortiz -vs- city Imperial, 884 F2d 1312, 1314 (9th cir 1989).
Rather show deliberate indifference by defendant's intentionally interfered with treatment, Estelle, Id at 285.

WHEREFORE, based on summation of trial proceedings and events taken in course of litigating this case, Hicks has made a substantial question as to require Appellate review and be granted transcripts at Governments expense and proceed in forma pauperis with appointment of counsel to protect his constitutional rights. ATTACHED IS SIX MONTH DOC. STATEMENT. The one time gift from family is for couple months use to include legal supplies, stamps, copies, Also for use in FED HABEUS corpus.

## CERTIFICATE OF SERVICE

## OATH

## NOTARY

I, William M. Hicks, prose, under penalties of perjury declare that I have read and wrote forgoing motion for transcripts of trial; in forma pauperis status and request of counsel, and facts and matters contained herein are true and correct to best of my ability pursuant to FLA. STAT. 92.525; 18 usc 1621; 26 usc 7206 and 28 usc 1746, copies sent to MR. woulfe, esp, for defendant's by u.s. mail.

{ STATE OF FLORIDA }
{ COUNTY OF LAKE }

Sworn and subscribed before this 30TH day of November 2004, MR. William m. Hicks #664670, did take on oath, produced DOC ID card for identification

L. Easterbrook
Commission #DD342433
Expires: Apr 29, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

_____
NOTARY of PUBLIC

_____
my commission expires

210f21

William m. Hicks 664670
William m. Hicks prose
Lake corr Inst
14225 US Hwy 27
clermont, fla 34711-9025