


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WILLIAM M. HICKS,

    Plaintiff,

CASE NO.: 00-6087-CIV-DIMITROULEAS

Magistrate Judge White

v.

DR. W.C. DAVIS, DR. UECKER,
DR. TREVOR WEATHERS, DR. CLINE,
DR. PEARSON, DR. G. PEARSON and
EMSA LIMITED PARTNERSHIP,

    Defendants.
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTIONS TO PROCEED IN FORMA PAUPERIS FOR APPEAL AND TRANSCRIPT AT GOVERNMENT EXPENSE

Defendants DR. W.C. DAVIS, DR. UECKER, DR. TREVOR WEATHERS, DR. CLINE, DR. PEARSON, DR. G. PEARSON and EMSA LIMITED PARTNERSHIP, pursuant to rule 7.1, Local Rules of the United States District Court for the Southern District of Florida, file this Response to Plaintiff's Motions to Proceed in Forma Pauperis and Transcript at Government's Expense as follows:

I. **Background**

William Hicks is a state-incarcerated inmate, sentenced to life without parole by Judge Cohn in Broward County. He is serving his sentence in the Lake Correctional Institution. Although this case has taken an unusual course, including an appeal and partial affirmance of a prior grant of summary judgment, the essential allegations may be summarized.

According to the operative Complaint, Hicks was housed in the Broward County Jail as a

pretrial detainee on April 7, 1996[1] when he was attacked by a fellow inmate [Complaint ¶ 8]. Hicks was taken immediately for medical attention, and was treated for his injuries (Complaint ¶¶ 18-24). At that time, Hicks was seen by nursing staff and Defendant Cline, and an x-ray was taken. Cline told Hicks there was no fracture, but, according to Hicks, Cline would not show him the x-ray (Complaint ¶¶ 22-24).

Three days later, Hicks was transferred to another Broward County Jail, and was denied requested medical attention (Complaint ¶ 34). In fact, Hicks claims he was denied medical attention for the remainder of his detention, even though surgery was "suggested" by Defendant Uecker (Complaint ¶¶ 35-42).

### A.    The Medical Records[2]

The medical records in this case tell a completely different story. Hicks entered the jail in August 1995, and most of his early contacts with medical personnel occurred with respect to mental and addiction problems. He was on suicide watch for most of this month. Hicks self-reported a long history of alcohol and crack addiction, and numerous psychiatric interventions for a number of problems. Over the course of the next seven months, Hicks was seen nearly daily for various health complaints.

On February 9, 1996, Hicks was involved in a fight with another inmate, and Defendant Davis treated Hicks following the altercation. An x-ray was taken and read by Miguel A. Tome, M.D., which suggested a fracture of the left jaw. Dr. Tome suggested that the x-ray finding be confirmed by examination. Dr. Davis noted a laceration to the right zygomatic arch, which is just below the eye, and the laceration was sutured closed.

---

[1] The date is incorrect. According to records, the altercation occurred on February 9, 1996.

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954•761•8600

The sutures were removed on February 15, after Hicks was transferred to the Broward Main Jail. Dr. Davis ordered additional x-rays, which Dr. Tome read, finding a non-displaced fracture of the right zygomatic arch with no abnormalities of the left jaw. Hicks was prescribed Tylenol III, four times daily for one week, for pain. Two days later, Hicks complained of nausea, but missed his follow up appointment with the physician on February 19. Dr. Davis referred him to the EMSA optometrist, who examined him on February 20, finding his eyesight 20/20 in both eyes. Hicks was prescribed antibiotics, Darvocet was replaced with Tylenol 3, and he was referred to dental for follow up.

On February 21, Hicks was seen by Defendant Weathers, an oral and maxillofacial surgeon. Dr. Weathers found no swelling, normal eye movement, no deformity of the facial bones, normal pupillary reaction and no double vision. He ordered additional x-rays of the jaw, apparently to confirm or rule out Hicks' complaints. He also ordered Motrin, 600 mg. three times a day for two weeks, a soft diet and a dental follow up. Dr. Tome read the ordered x-rays the same day. Importantly, he found <u>no fracture, dislocation or other bony abnormality of the jaw</u>. The same day, Dr. Davis reviewed the x-rays and Dr. Tome's report. Dr. Davis noted the non-displaced fracture of the right zygomatic arch which was pointed out in the earlier x-ray on February 15, 1996.

Over the course of the next two weeks, Hicks complained of nausea from the Motrin, that he had a broken jaw and required additional pillows, and that three weeks had passed since Dr. Weathers ordered a dental follow up. Each complaint was addressed: he was given extra pillows, Tylenol and Flexeril replaced Motrin, and he was evaluated by Defendant Uecker on March 4.

Because Hicks continued to complain of pain and seek prescription painkillers despite numerous interactions with medical staff, Defendant Cline ordered a repeat facial x-ray on March 15. The x-rays were taken and read by James R. Thompson, M.D. the same day, and confirmed the

3

abnormality was only the right zygomatic arch fracture. Hicks was seen by dental staff on March 22, and a soft diet was ordered by Defendant Sharon Pearson, D.D.S.

Hicks was seen on March 27 by oral surgeon Weathers, who reviewed the latest x-rays, found them unremarkable, noted an improvement in Hicks' jaw opening, and Hicks' statement that he was under stress and had been clenching his teeth. Flexeril was continued, and Weathers planned a follow up in four weeks.

Over the ensuing month, Hicks wrote several grievances, alleging that the medical staff was unresponsive to his condition and threatening suit. Aside from regular visits with medical staff, he was seen by Defendant Uecker on April 22, Psychiatrist Mel Limia, M.D. on April 30, and Defendant Cline on May 3. Dr. Uecker referred Hicks to Dr. Weathers. Dr. Cline ordered another facial x-ray to rule out displacement of the zygomatic arch fracture, which showed no change. Dr. Weathers saw Hicks on May 8, reviewed the x-rays ordered by Dr. Cline, and confirmed the fracture was not displaced. Four sets of x-rays were done to evaluate and monitor Hicks' condition to make sure it was properly healing and remained in proper alignment.

Hicks continued to complain of pain and seek prescription painkillers intermittently throughout May, and was seen by Dr. Uecker on May 24. Dr. Uecker continued Midrin, Flexeril and Motrin, 800 mg, for thirty days. Approximately three weeks later, or as these orders were about to expire, Hicks again began to complain of pain and insisted he had a broken jaw, which is unsupported by the records. He was seen on numerous occasions by medical staff, who found no swelling and no acute distress.

On June 20, he was seen by Dr. Davis on complaints of pain and for renewal of medications. Dr. Davis examined Hicks, found him in no distress, and referred him to the clinic as needed.

He continued to complain of pain and seek narcotic medications throughout July, he was seen

4

by medical staff, and medications were renewed by Dr. Davis on July 22. Although the records do not indicate complaints by Hicks in August, he was seen regularly, and additional x-rays were ordered on August 16, and which were read as negative on August 21.

On November 2, 1996, Hicks was sent to oral and maxillofacial surgeons Charles B. Russo DMD, and Jeffrey Elliot, DMD, whose offices are in Coral Springs. Drs. Russo and Elliot have no affiliation with the Defendants. A CT scan was performed on November 27, with the following findings:

> 33 y/o male presents with CC: persistent pain in his "TMJ." Patient was in his usual state of health when he allegedly was involved in an interpersonal violence on 02/07/96. He was evaluated by "some M.D.'s" and told that he had fractures. These fractures were allegedly not treated.
>
> Examination - Alert and oriented x 3. Cranial nerves II-VII grossly intact. Positive paresthesia right infraorbital nerve. No other facial paresthesia noted. Interincisal opening 38 mm, with slight deviation to the right. No clicking, popping, crepitus noted in either right or left TMJs. Left and right lateral excursions were unrestricted to 10 mm. Protrusive was noted to be 8 mm. <u>The mandible is grossly intact without stepping, segmental mobility or tenderness</u>. No gross entrapment of right coronoid process. No pain on loading TMJs. No pain on palpation of TMJs. Maxilla is non-mobile. Positive stepping with some tenderness right lateral wall of maxilla (maxillary sinus). Stepping noted right zygomatic arch. Infraorbital rims are continuous without tenderness. Patient is partially edentulous without gross dental pathology.
>
> Radiographs: CT exam is remarkable for small break in the right posterolateral wall of the maxillary sinus. There is no fluid accumulation or gross thickening of either the right or left sinus membranes. The condyles appear normal. <u>A panoramic radiograph also suggests no old or new fractures of the mandible</u>.
>
> Impression: 33 y/o male S/P trauma with residual defect maxillary sinus. <u>There is no evidence of TMJ pathology at this time</u>. Patient's limited opening and complaint of discomfort may be due to scar tissue from original injury. Nonsurgical physical therapy may help.
>
> [Emphasis added].

Hicks was not seen again until July 1997, and his records indicate he spent the intervening

5

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954-761-8600

5 of 12

period in the Florida State Hospital. Over the remaining year of his detention, Hicks' complaints were largely limited to psychiatric problems and continued demands for narcotic medications. Pertinent to this discussion, his diagnoses included drug seeking behavior, manipulative behavior, delusions, and paranoia regarding mistreatment during his earlier Broward detention and his stay at the Florida State Hospital. His only significant medical complaint concerned an alleged broken nose suffered in the February 1996 altercation. This complaint was not confirmed on an October 7, 1997 x-ray.

### C. Summary Judgment and Trial

These Defendants moved for summary judgment [D.E. 117], arguing that a deliberate indifference claim was not supported by the record. Magistrate Sorrentino recommended that summary judgment be denied on this claim [D.E.141], these Defendants filed objections [D.E. 142], and the Court sustained the objections and granted summary judgment on all claims [D.E. 154]. Hicks appealed, and the eleventh circuit reversed as to these Defendants, finding a question of fact as to the need for surgery [D.E. 166]. A subsequent summary judgment motion was denied by the Court.

The case proceeded to trial. In an unusual turn, the Defendants' case came in with the Plaintiff's, as all defense witnesses were called by the Plaintiff. On the sixth day of trial and after Hicks rested, the Defendants argued that no evidence was presented regarding the primary issue presented in the Complaint: that Hicks suffered a broken jaw that required surgical repair. During argument, the Court, eleventh circuit opinion in hand, asked Hicks to point to trial evidence on each point raised by the appellate court. When Hicks could not comply, the Court granted directed verdict in open court.

Hicks filed his post trial motions [D.E. 276], arguing that the Court denied him a fair trial by

6

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954-761-8600

6 of 12

refusing to allow his medical file into evidence, instead forcing him to rely on the Defendants' records; the Court impermissibly made credibility determinations in granting directed verdict; the Court did not allow a thorough examination of Defendant Uecker; the Court disallowed the testimony of Hicks' expert; the Court improperly shortened trial from the two weeks originally planned; the defense attorneys did not inform Hicks that Defendant Davis would not attend trial until trial was half over; and the Court improperly disallowed the introduction of newspaper articles regarding conditions in the Broward County Jail.

The Court denied Hicks' post trial Motions [D.E. 280]. Again, the Court detailed the deficiencies of Hicks' case: the records he sought to introduce could not be authenticated or were abject hearsay; credibility determinations were not made by the Court, and directed verdict was based solely on Hicks' failure to present any relevant evidence; Hicks had six days to present his case, which was more than enough time, and the Court limited his presentation only to prevent redundant testimony.

Hicks has now filed the present Motion, which seeks to proceed in forma pauperis on appeal and the trial transcript at governmental expense. For the reasons that follow, the Motion should be denied.

## II. Argument

### A. Hicks Motion to Proceed In Forma Pauperis must be denied.

"[P]roceeding in forma pauperis in a civil case is a privilege, not a right--fundamental or otherwise." *White v. Colorado,* 157 F.3d 1226, 1233 (10th Cir.1998), *cert. denied,* 526 U.S. 1008 (1999) (quotation marks, alteration, and citation omitted). To proceed in forma pauperis, a pro se prisoner must comply with the mandates of the Prison Litigation Reform Act, 28 U.S.C § 1915, which states:

7

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954-761-8600

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
>
> (2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.
>
> (3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

According to this section, to properly request in forma pauperis status, Hicks must submit an affidavit of all assets, stating the nature of the action, and must submit a certified copy of his prison trust account. He has done neither. Therefore, he cannot be allowed to proceed without prepayment of costs.

Hicks must also show that his appeal is taken in good faith and provide reasoned, nonfrivolous legal and factual arguments in support of the issues to be raised on appeal. *See* 28 U.S.C. § 1915; Fed. R. App. P. 24. Hicks appealed from an adverse summary judgment ruling and the appellate court provided him an outline of the showing he needed to make at trial by stating the exact factual issues upon which it found determinative. At trial, Hicks ignored this outline. Upon the conclusion of his case, the Defendants moved for directed verdict, pointing out the deficiencies of his presentation in light of the appellate court's ruling. Taking the additional step, the Court quizzed Hicks on the specifics of what the appellate court found dispositive. Hicks had no response. The Court explained its rationale for granting directed verdict in a written Order.

Hicks then filed his post trial motions, arguing that he either presented sufficient evidence,

8

or that evidence was kept from the jury on improper grounds. The Defendants responded, arguing that Hicks' claims had no basis. The Court agreed. Hicks filed objections; the Defendants responded; and the Court denied those objections.

Through all of Hicks' orchestrations, the Defendants have remained steadfast in the position that Hicks failed to present evidence of his central contention: that he suffered an injury for which surgery was necessary. Of all the issues noted by the appellate court, this was the most important–the central point of his claim. However, when it came time to prove this contention, which he based on an alleged statement by Dr. Uecker, he failed to present any evidence. In fact, he never asked Dr. Uecker to confirm this statement, and Dr. Uecker testified that surgery was unnecessary. This testimony was supported by the Defendants' expert, whose testimony went unrebutted.

To bring his appeal in good faith, Hicks must now show that he has a legal and factual basis upon which to support his contentions. Instead, he restates baseless arguments of non-defendants' failure to provide him with medication, his need to introduce newspaper articles into evidence, and the Court's error in failing to allow him to use records which he could not authenticate. Hicks was able to continue this trial for six days, the entirety of which was the presentation of his case, so his mental status during trial is not an issue; newspapers are almost never admissible, and certainly not for the purposes intended by Hicks; and Hicks' records could not be authenticated, while he never challenged the authenticity of the Defendants' copies of those records as authenticated by Barbara Evans. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991); *Howard v. King*, 707 F.2d 215, 219-20 (5th Cir.1983) (holding that the lack of nonfrivolous issue on appeal precludes finding of "good faith" for purposes of 28 U.S.C. § 1915 and Fed. R. App. P. 24).

Most importantly, Hicks does not explain how any of these "errors" altered the outcome of trial. While he finds mistakes, he makes no attempt to show that those mistakes amount to reversible

9

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954-761-8600

error. While claiming "good faith," Hicks mumbles mere verbiage. Nothing of factual substance is claimed; nothing of legal substance is claimed. Instead of making the requisite showing of good faith, Hicks provides the Court with mere conclusions; conclusions without factual basis or legal significance. As such, his appeal is not in good faith, and he should not be allowed to proceed in forma pauperis on appeal.

### B. Hicks should not be given a transcript at government expense.

Hicks also claims a need to the transcript of this six day trial at governmental expense. Appellants proceeding on appeal in forma pauperis are allowed transcripts at government expense only in certain circumstances governed by 28 U.S.C. § 753(f). With regard to civil cases, as opposed to habeas proceedings, that section states that "[f]ees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)."

To succeed on a motion for production of transcripts at government expense, a party must also show why the transcripts are necessary for proper disposition of his appeal. *See Harvey v. Andrist*, 754 F.2d 569, 571 (5th Cir.), cert. denied, 471 U.S. 1126 (1985). Therefore, Hicks must first obtain IFP status, convince this Court to certify that his appeal is not frivolous and presents a substantial question, then show why the transcript is necessary for the appeal.

Since it has been shown that Hicks should not be granted IFP status, this issue should go no further. The same is true as to the required showing of nonfrivolity, as it has already been shown that Hicks' proposed is frivolous, and these Defendants stand on their prior argument.

However, if IFP status is granted, the transcript should not be provided free of charge because Hicks does not satisfy the other two requirements: substantial question and necessity. Although apparent from Hicks' Motion that he disagrees with the Court's decision, he fails to point to any

10

BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954-761-8600

10 of 12

arguable evidentiary or other rulings that might give rise to reversible error. Instead, he merely asserts that he disagrees with the entry of directed verdict. Since he provides no reason for appellate determination, a substantial question is not presented to that court.

Hicks also fails to show necessity. Instead of showing that the record would support appealable theories, he rails against the performance of defense counsel and makes thoroughly conclusive arguments regarding non-determinative issues. Nowhere in his Motion does he state that the transcript is required to show that testimony was provided on the primary issue: that Defendant Uecker ordered surgery, and that order was never carried out. Because the transcript will not reveal such testimony, Hicks fails to show necessity, and his Motion should be denied. *See Rhodes v. Corps of Eng'rs*, 589 F.2d 358, 359-60 (8th Cir.1978) (per curiam) (denying transcript prepared at government expense where in forma pauperis appellant made only conclusory allegations that trial court erred in ruling against her).

### III.   Conclusion

For the foregoing reasons, the present Motion should be denied.

11

11 of 12   BUNNELL, WOULFE, KIRSCHBAUM, KELLER, McINTYRE & GREGOIRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340, 954·761·8600

I HEREBY CERTIFY that a true and correct copy of the forgoing was mailed this 28th day of December, 2004 to Williams M. Hicks, *pro se Plaintiff*, #664670, Lake Correctional Institution, 19225 US Highway 27, Clermont, Florida 34711-9025.

        BUNNELL, WOULFE, KIRSCHBAUM,
        KELLER, McINTYRE & GREGOIRE, P.A.
        One Financial Plaza, # 900
        100 S.E. 3rd Avenue
        Ft. Lauderdale, FL 33394
        Tel: 954-761-8600
        Fax: 954-463-6643
        E-mail: gat@bunnellwoulfe.com

BY:   s/Gregg A. Toomey
      GREGG A. TOOMEY
      Florida Bar No.: 159689

Richard T. Woulfe, Esquire/Gregg A. Toomey, Esquire/Attorneys for Defendants EMSA, Uecker, Cline, Davis, Weathers, G. Pearson and S. Pearson/Facsimile: 954-463-6643
William H. Hicks, /*pro se Plaintiff*/Facsimile not available